**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHRYN HYLAND, MELISSA GARCIA,
ELDON R. GAEDE, JESSICA SAINT-PAUL,
REBECCA SPITLER-LAWSON, MICHELLE
MEANS, ELIZABETH KAPLAN, JENNIFER
GUTH, and MEGAN NOCERINO, individually and
on behalf of all others similarly situated,

                Plaintiffs,

     v.

NAVIENT CORPORATION and NAVIENT
SOLUTIONS, LLC,

                Defendants.

ECF Case

Case No. 18-CV-09031 (DLC)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**


COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel.: (212) 841-1000

1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Tel.: (424) 332-4800

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................... iv

TABLE OF DEFINED TERMS ............................................................................... xiii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

I.      The Higher Education Act and FFELP and Direct Loan Programs ................................. 3

II.     Enforcement of Federal Servicing Requirements and Oversight of Servicers .................. 3

III.    The Federal Public Service Loan Forgiveness Program ........................................ 4

IV.     Plaintiffs' Federal Loan Contracts with ED and Other Lenders ............................... 4

V.      Navient's Servicing Contracts with ED ........................................................ 5

VI.     Plaintiffs' Alleged Interactions with Navient Customer Service Representatives ........... 6

ARGUMENT ............................................................................................................ 7

I.      The Higher Education Act Preempts Plaintiffs' Claims. ........................................ 7

        A.      Plaintiffs' Claims Are Expressly Preempted by Section 1098g of the HEA. ........... 7

        B.      Plaintiffs' Claims Are Subject to Conflict Preemption. .......................... 11

II.     Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted. ......................... 12

        A.      Plaintiffs' Contract and Tortious Interference Claims Fail (Counts I-IV) ........... 13

                1.      Plaintiffs' Claim for Breach of Their MPN Contracts Fails. ................. 14

                2.      Plaintiffs' Alternative Claim for Tortious Interference with Their
                        MPN Contracts Fails. ............................................... 17

                3.      Plaintiffs' Alternative Claim for Tortious Interference with
                        "Statutorily Created Expectancy" Fails. .............................. 18

                4.      Plaintiffs' Claim for Breach of Navient's Servicing Contracts
                        Fails. ............................................................. 19

        B.      Plaintiffs' Claim for Unjust Enrichment Fails (Count V) ............................ 20

C.      Plaintiffs' Claims for Breach of Fiduciary Duty, Negligence, and Negligent Misrepresentation Fail (Counts VI-XI)................................................ 22

D.      Plaintiffs' Deceptive Practices Claims Fail (Counts XII-XV)............................. 24

CONCLUSION................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero Techs., LLC v. Lockton Cos. Int'l, Ltd.*,
　2011 WL 7657475 (S.D. Fla. Apr. 25, 2011) .........................................................15

*Agwumezie v. Allstate Ins. Co.*,
　2002 WL 32361936 (D. Md. Aug. 8, 2002) ...........................................................15

*Ahan v. Grammas*,
　2004 WL 2724111 (Md. Cir. Ct. Nov. 19, 2004) ..................................................17

*Alborzian v. JPMorgan Chase Bank, N.A.*,
　235 Cal. App. 4th 29 (2015) ................................................................................24

*Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*,
　252 A.D.2d 414 (1st Dep't 1998) .........................................................................17

*Amenu-El v. Select Portfolio Servs.*,
　2017 WL 4404428 (D. Md. Oct. 4, 2017) .............................................................23

*Anwar v. Fairfield Greenwich Ltd.*,
　891 F. Supp. 2d 548 (S.D.N.Y. 2012) ..................................................................24

*Astra USA, Inc. v. Santa Clara Cty., Cal.*,
　563 U.S. 110 (2011) ........................................................................................13, 14

*Ayres v. Ocwen Loan Svcg., LLC*,
　2014 WL 4269051 (D. Md. Aug. 27, 2014) ..........................................................22

*Benjamin v. Citimortgage, Inc.*,
　2013 WL 1891284 (S.D. Fla. May 6, 2013) ..........................................................25

*Benson v. State*,
　389 Md. 615 (2005) .............................................................................................21

*Black v. Educ. Credit Mgmt. Corp.*,
　459 F.3d 796 (7th Cir. 2006) ............................................................................9, 10

*Blake v. Seterus, Inc.*,
　2017 WL 543223 (S.D. Fla. Feb. 9, 2017) ............................................................25

*Blondell v. Littlepage*,
　413 Md. 96 (2010) ...............................................................................................16

*Bradman v. Mental Health Network, Inc.*,
  2008 WL 5110525 (S.D. Fla. Dec. 2, 2008) ........................................16

*Brooks v. Sallie Mae, Inc.*,
  2011 WL 6989888 (Conn. Super. Ct. Dec. 20, 2011) .............................9

*Burdett v. Wells Fargo Bank, N.A.*,
  2015 WL 13611833 (D. Md. Jan. 20, 2015) .......................................23

*Calizaire v. Mortg. Elec. Registration Sys., Inc.*,
  2017 WL 895741 (E.D.N.Y. Mar. 6, 2017) ........................................22

*Cambridge Title Co. v. Transamerica Title Ins. Co.*,
  817 F. Supp. 1263 (D. Md. 1992) ......................................................19

*Carolina Cas. Ins. Co. v. Lanahan & Reilley, LLP*,
  2011 WL 3741004 (N.D. Cal. Aug. 25, 2011) ....................................14

*Carter v. Aramark Sports & Entm't Servs., Inc.*,
  153 Md. App. 210 (2003) .................................................................18

*Chae v. SLM Corp.*,
  593 F.3d. 936 (9th Cir. 2010) ...................................................... *passim*

*Cipollone v. Liggett Grp.*,
  505 U.S. 504 (1992) ...........................................................................7

*Cruickshank & Co. v. Sorros*,
  765 F.2d 20 (2d Cir. 1985) ...............................................................14

*Cty. of Santa Clara v. Astra USA, Inc.*,
  2006 WL 1344572 (N.D. Cal. May 17, 2006) ....................................16

*Dainty v. Wells Fargo Bank, N.A.*,
  2017 WL 750478 (D. Md. Feb. 24, 2017) ..........................................23

*Daniel v. Navient Solutions, LLC*,
  328 F. Supp. 3d 1319 (M.D. Fla. June 25, 2018) ..........................10, 11

*Davis v. Navient Corp.*,
  2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) ...................................10

*Diaz v. U.S. Bank, N.A.*,
  2014 WL 4639431 (S.D. Fla. Sept. 16, 2014) ....................................22

*Discover Grp., Inc. v. Lexmark Int'l, Inc.*,
  333 F. Supp. 2d 78 (E.D.N.Y. 2004) .................................................17

*Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp.*,
610 F.3d 44 (2d Cir. 2010) ........................................................................16

*Dobroshi v. Bank of Am., N.A.*,
65 A.D.3d 882 (1st Dep't 2009) ................................................................22

*Dragushansky v. Nasser*,
2013 WL 4647188 (S.D.N.Y. Aug. 28, 2013) ............................................14

*E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*,
758 F.3d 1162 (9th Cir. 2014) ...............................................................9, 10

*Earman v. United States*,
114 Fed. Cl. 81 (2013) ..............................................................................15

*Edwards v. Ocwen Loan Svcg., LLC*,
24 F. Supp. 3d 21 (D.D.C. 2014) ..............................................................15

*Ellicott Dredges, LLC v. DSC Dredge, LLC*,
280 F. Supp. 3d 724 (D. Md. 2017) ..........................................................18

*Envtl. Appraisers & Builders, LLC v. Imhof*,
143 A.D.3d 756 (2d Dep't 2016) ...............................................................15

*Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*,
2015 WL 5660945 (S.D.N.Y. Sept. 25, 2015) ...........................................22

*Fairbanks v. Super. Ct.*,
46 Cal. 4th 56 (2009) ................................................................................25

*Fellows v. CitiMortgage, Inc.*,
710 F. Supp. 2d 385 (S.D.N.Y. 2010) ...........................................16, 19, 20

*Ferris v. S. Fla. Stadium Corp.*,
926 So. 2d 399 (Fla. Dist. Ct. App. 2006) .................................................18

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) ..................................................................................11

*Fullmer v. JPMorgan Chase Bank, NA*,
2010 WL 2511178 (E.D. Cal. June 17, 2010) ............................................22

*Genna v. Sallie Mae, Inc.*,
2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012) .......................................10, 22

*Ghirardo v. Antonioli*,
14 Cal. 4th 39 (1996) ................................................................................21

*Gorbaty v. Wells Fargo Bank, N.A.*,
   2012 WL 1372260 (E.D.N.Y. Apr. 18, 2012) ...............................................13, 20

*Goss v. Bank of Am., N.A.*,
   917 F. Supp. 2d 445 (D. Md. 2013) ...............................................23

*Greenspan v. Allstate Ins. Co.*,
   937 F. Supp. 288 (S.D.N.Y. 1996).................................................23

*Griffin v. Green Tree Svcg., LLC*,
   166 F. Supp. 3d 1030 (C.D. Cal. 2015) ..........................................24

*Grochowski v. Phoenix Const.*,
   318 F.3d 80 (2d Cir. 2003).........................................................13, 14

*Harte v. Ocwen Fin. Corp.*,
   2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ................................23

*Hutchful v. Wells Fargo Bank*,
   2013 WL 12244330 (C.D. Cal. Sept. 26, 2013) .............................20

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ...........................................15

*In re Tuscany Energy, LLC*,
   581 B.R. 681 (Bankr. S.D. Fla. 2018) ...........................................18

*Integral Nuclear Assocs., LLC v. Nair*,
   2005 WL 3481353 (D. Md. Dec. 20, 2005).....................................17

*Island Park, LLC v. CSX Transp.*,
   559 F.3d 96 (2d Cir. 2009)...........................................................7

*Jamison v. Bank of Am., N.A.*,
   194 F. Supp. 3d 1022 (E.D. Cal. 2016).........................................24

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)..........................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .....................................................24

*Keefe v. N.Y. Law Sch.*,
   71 A.D.3d 569 (1st Dep't 2010) ...................................................16

*Kilgore v. Ocwen Loan Svcg., LLC*,
   89 F. Supp. 3d 526 (E.D.N.Y. 2015) ............................................21

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) ...........................................................19

*Kopel v. Kopel*,
229 So. 3d 812 (Fla. 2017).................................................................21

*Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*,
497 So. 2d 1261 (Fla. Dist. Ct. App. 1986) .......................................19

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
2018 WL 5621872 (N.D. Fla. Sept. 20, 2018)............................8, 9, 10

*Leather's Best, Inc. v. S.S. Mormaclynx*,
451 F.2d 800 (2d Cir. 1971)..........................................................14, 15

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ..............................................................19

*Linsley v. FMS Inv. Corp.*,
2012 WL 1309840 (D. Conn. Apr. 17, 2012) .......................................8

*Llado-Carreno v. Guidant Corp.*,
2011 WL 705403 (S.D. Fla. Feb. 22, 2011) .......................................24

*Long v. Marubeni Am. Corp.*,
2006 WL 1716878 (S.D.N.Y. June 20, 2006) .....................................16

*Lopez v. Musinorte Entm't Corp.*,
434 F. App'x 696 (9th Cir. 2011) .......................................................21

*Maalouf v. Salomon Smith Barney, Inc.*,
2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003).....................................24

*Mattocks v. Black Entm't Television LLC*,
43 F. Supp. 3d 1311 (S.D. Fla. 2014) .................................................16

*Mazonas v. Nationstar Mortg., LLC*,
2016 WL 2344196 (N.D. Cal. May 4, 2016) .......................................24

*Mazzei v. Money Store*,
308 F.R.D. 92 (S.D.N.Y. 2015) .........................................................15

*McCormick v. U.S. Bank, N.A.*,
2013 WL 990946 (S.D. Cal. Mar. 13, 2013) .......................................23

*McCulloch v. PNC Bank Inc.*,
298 F.3d 1217 (11th Cir. 2002) ...........................................................7

*Minidoka Irr. Dist. v. Dep't of Interior of U.S.*,
    154 F.3d 924 (9th Cir. 1998) ........................................................................14

*Montaquila v. Countrywide Home Loans, Inc.*,
    2008 WL 11342693 (C.D. Cal. May 7, 2008) ...........................................21

*Moore v. Way FM Media Grp. Inc.*,
    2012 WL 13012658 (C.D. Cal. Mar. 29, 2012)..........................................16

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016)........................................................21

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
    2017 WL 6501919 (S.D. Ill. Dec. 19, 2017)...........................................8, 9

*N.Y. Rest. Ass'n v. N.Y. Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009)..........................................................................7

*Nymark v. Heart Fed. Sav. & Loan Ass'n*,
    231 Cal. App. 3d 1089 (1991) ....................................................................22

*OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.*,
    123 A.D.3d 222 (1st Dep't 2014) ...............................................................17

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ...............................................................................18

*Parker v. Columbia Bank*,
    91 Md. App. 346 (1992) ..............................................................................16

*Parola v. Citibank*,
    894 F. Supp. 2d 188 (D. Conn. 2012).............................................13, 15, 16

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) .......................................................17

*PM Grp., Inc. v. Stewart*,
    154 Cal. App. 4th 55 (2007) .......................................................................17

*Precision Pine & Timber, Inc. v. United States*,
    596 F.3d 817 (Fed. Cir. 2010).....................................................................16

*QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*,
    94 So. 3d 541 (Fla. 2012)............................................................................16

*Rajamin v. Deutsche Bank Nat. Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014)..........................................................................20

*RealPage, Inc. v. Yardi Sys., Inc.*,
  2011 WL 3565112 (C.D. Cal. Aug. 11, 2011)....................................................18, 19

*Reysner v. Navient Sols., Inc.*,
  2018 WL 5879809 (E.D. Cal. Nov. 7, 2018).........................................................22

*Richard Bertram, Inc. v. Sterling Bank & Tr.*,
  820 So. 2d 963 (Fla. Dist. Ct. App. 2002) ...........................................................17

*Rivera v. Bank of Am. Home Loans*,
  2011 WL 1533474 (E.D.N.Y. Apr. 21, 2011) ...........................................14, 19, 20

*Rodriguez v. Ocwen Fin. Corp.*,
  2017 WL 3593972 (S.D. Fla. Aug. 21, 2017)......................................................25

*Saggio v. Select Portfolio Svcg., Inc.*,
  2015 WL 6760132 (E.D.N.Y. Nov. 5, 2015)........................................................23

*Saldate v. Wilshire Credit Corp.*,
  268 F.R.D. 87 (E.D. Cal. 2010) ..........................................................................16

*Sanon v. Dep't of Higher Educ.*,
  453 Fed. App'x 28 (2d Cir. 2011) .......................................................................13

*Sirohi v. Trs. of Columbia Univ.*,
  1998 WL 642463 (2d Cir. Apr. 16, 1998) ...........................................................15

*Sky Enters., LLC v. Offshore Design & Drilling Servs., LLC*,
  2017 WL 519115 (M.D. Fla. Feb. 8, 2017) .........................................................15

*Sourcing Sols. USA, Inc. v. Kronos Am., LLC*,
  2011 WL 13223514 (S.D. Fla. Jan. 26, 2011) .....................................................17

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F.3d 769 (4th Cir. 2013) .............................................................................24

*Spread Enters. v. First Data Merch. Servs. Corp.*,
  2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012).....................................................16

*Srinivasan v. Bank of N.Y. Mellon*,
  2012 WL 12886504 (C.D. Cal. Dec. 5, 2012) ...............................................22, 23

*Stallworth v. Hartford Ins. Co.*,
  2006 WL 2711597 (N.D. Fla. Sept. 19, 2006).....................................................14

*Stoiber v. Honeychuck*,
  101 Cal. App. 3d 903 (1980) .............................................................................15

*Sweeney v. Herman Mgmt., Inc.*,
  85 A.D.2d 34 (1st Dep't 1982) ...............................................................15

*Thompson v. Naval Acad. Athletic Ass'n*,
  2013 WL 3965100 (D. Md. Aug. 1, 2013) .....................................14, 15

*Trent v. Mortg. Elec. Registration Sys., Inc.*,
  618 F. Supp. 2d 1356 (M.D. Fla. 2007).................................................25

*True v. Allstate Ins. Co.*,
  160 F. App'x 616 (9th Cir. 2005) ...........................................................16

*United States v. Gorski*,
  2012 WL 12886823 (C.D. Cal. Mar. 22, 2012)....................................12

*Utts v. Bristol-Myers Squibb Co.*,
  251 F. Supp. 3d 644 (S.D.N.Y. 2017).....................................................24

*Vigoda v. DCA Prods. Plus Inc.*,
  293 A.D.2d 265 (1st Dep't 2002) ...........................................................18

*Vinogradova v. Suntrust Bank, Inc.*,
  162 Md. App. 495 (2005) .........................................................................22

*Watson v. Riptide Worldwide, Inc.*,
  2012 WL 383946 (S.D.N.Y. Feb. 7, 2012).............................................19

*Wellington Shields & Co. v. Breakwater Inv. Mgmt. LLC*,
  2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) ...............................18, 19

*White Marlin Open, Inc. v. Heasley*,
  262 F. Supp. 3d 228 (D. Md. 2017) ........................................................16

*Wickman v. Aurora Loan Servs., LLC*,
  2013 WL 4517247 (S.D. Cal. Aug. 23, 2013) ........................................23

*Wolff v. Rare Medium, Inc.*,
  171 F. Supp. 2d 354 (S.D.N.Y. 2001).....................................................15

**Statutes and Regulations**

20 U.S.C. § 1070.............................................................................. *passim*

20 U.S.C. §§ 1071 to 1087-4 ..........................................................................3

20 U.S.C. § 1078(d) ........................................................................................7

20 U.S.C. § 1082(a) ....................................................................................3, 4

20 U.S.C. § 1082(m)(1)(D) ................................................................4

20 U.S.C. § 1086 ............................................................................3

20 U.S.C. §§ 1087a-1087j ........................................................3, 4, 11

20 U.S.C. § 1091a ...........................................................................7

20 U.S.C. § 1095a(a) .......................................................................7

20 U.S.C. § 1098g ..................................................................... *passim*

34 C.F.R. § 682.203 .........................................................................3

34 C.F.R. § 682.703 .........................................................................4

34 C.F.R. § 685.219 .........................................................................4

Fed. R. Civ. P. 9(b) ...................................................................2, 23, 24

Fed. R. Civ. P. 12(b)(6) .............................................................12, 13

Cal. Civ. Code § 1761(a) ................................................................25

Cal. Civ. Code § 1770(a) ................................................................25

Fla. Stat. § 501.203(8) ....................................................................25

Fla. Stat. § 501.204(1) ....................................................................25

**Other Authorities**

United States Department of Education, Interpretation, *Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed. Reg. 10619-01, 10621 (Mar. 12, 2018) ................................................................ *passim*

# TABLE OF DEFINED TERMS

| | |
|---|---|
| 83 Fed. Reg. 10619-01 (Mar. 12, 2018) | United States Department of Education, Interpretation, *Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers* |
| California Statute (or CLRA) | California Consumers Legal Remedies Act, *see* Cal. Civ. Code § 1750 *et seq.* |
| Compl. | Plaintiffs' Class Action Complaint |
| Direct Loan | A loan originated under the Direct Loan Program |
| Direct Loan Program | William D. Ford Direct Loan Program, *see* 20 U.S.C. §§ 1087a-1087j |
| ED | United States Department of Education |
| FFELP Loan | A loan originated under FFELP |
| FFELP | Federal Family Education Loan Program, *see* 20 U.S.C. §§ 1071 to 1087-4 |
| Florida Statute (or FDUTPA) | Florida Deceptive and Unfair Trade Practices Act, *see* Fla. Stat. § 501.201 *et seq.* |
| FedLoan Servicing | ED's exclusive servicer for loans eligible for forgiveness under PSLF |
| FSA | ED's office of Federal Student Aid |
| HEA | Higher Education Act of 1965, *as amended*, *see* 20 U.S.C. § 1070 *et seq.* |
| IDR | Income-driven repayment |
| Maryland Statute (or MCPA) | Maryland Consumer Protection Act, *see* Md. Code Ann., Com. Law § 13-301 *et seq.* |
| MPN Contract | Master Promissory Note contract |
| Navient | Navient Corporation and Navient Solutions, LLC |
| New York Statute (or N.Y. Gen. Bus. L. § 349) | New York Consumer Protection from Deceptive Acts and Practices Law, *see* N.Y. Gen. Bus. L. § 349 *et seq.* |
| PSLF | Public Service Loan Forgiveness Program |
| Servicing Contracts | ED's federal loan servicing agreements with Navient |

**PRELIMINARY STATEMENT**

In this putative nationwide class action, nine borrowers with federal student loans—originated or guaranteed by the federal government under federal loan programs, and serviced by Navient pursuant to Servicing Contracts with the federal government—seek to challenge under *state law* alleged misstatements and omissions by Navient customer service representatives. Plaintiffs claim that Navient made misrepresentations to plaintiffs about their eligibility for the federal Public Service Loan Forgiveness Program ("PSLF") and the availability of income-driven repayment ("IDR") plans. They assert that these misrepresentations breached plaintiffs' federal student loan contracts with the United States Department of Education ("ED") and other lenders, and also breached Navient's Servicing Contracts with ED (Counts I, IV). In the alternative, plaintiffs allege that Navient tortiously interfered with their loan contracts or their "statutorily created expectancy" of loan forgiveness (Counts II-III). Finally, plaintiffs assert a grab-bag of claims for unjust enrichment (Count V), breach of fiduciary duty (Count VI), negligence (Count VII), negligent misrepresentation (Counts VIII-XI), and deceptive practices under California, Florida, Maryland, and New York Statutes (Counts XII-XV).

Plaintiffs' Complaint should be dismissed in its entirety because all of their claims are preempted by the Higher Education Act, 20 U.S.C. § 1070 *et seq.* (the "HEA"). The HEA expressly preempts "*any* disclosure requirements of *any* State law" that purport to apply to federal student loans like plaintiffs'. 20 U.S.C. § 1098g (emphasis added). As multiple courts have held and ED confirmed in a recent Interpretation, a state law prohibition on misrepresentations and omissions is "merely the converse of a State-law requirement that alternate disclosures be made." *Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed. Reg. 10619-01, 10621 (Mar. 12, 2018) (internal marks omitted). Since plaintiffs seek to hold Navient

liable under state law for alleged misstatements and omissions, the HEA expressly preempts their claims.  Conflict preemption independently bars plaintiffs' claims because state regulation of federal student loan servicers like Navient would undermine Congress's "unmistakable command" in enacting the HEA: "Establish a set of rules that will apply across the board."  *Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010); *accord* 83 Fed. Reg. at 10621.  It would also impede the "uniquely Federal interests" involved in the servicing of federal student loans pursuant to Servicing Contracts with the federal government.  83 Fed. Reg. at 10621.

Even if plaintiffs' claims were not preempted, they still fail as a matter of law.  *First*, plaintiffs' breach of contract and tortious interference claims are impermissible end-runs around the HEA, which confers no private right of action on borrowers.  These claims fail for numerous other reasons, including because Navient is not a party to plaintiffs' loan contracts (and thus cannot have breached them); plaintiffs are not parties to or third-party beneficiaries of Navient's Servicing Contracts with ED; plaintiffs identify no term of the contracts that was breached; an agent (such as Navient) cannot tortiously interfere with its principal's contracts; and there simply is no such thing as tortious interference with "statutorily created expectancy."

*Second*, plaintiffs' unjust enrichment claim fails because plaintiffs do not allege that they conferred any benefit on Navient.  *Third*, plaintiffs' breach of fiduciary duty, negligence, and negligent misrepresentation claims fail because—although Navient is dedicated to helping borrowers navigate the numerous and complex options available to them under federal student loan programs—courts have repeatedly held that lenders and loan servicers do not owe the alleged duties to borrowers upon which these claims are premised.  *Fourth*, plaintiffs' deceptive practices and misrepresentation claims fail because plaintiffs' allegations of misrepresentations do not satisfy Rule 9(b), and the California and Florida Statutes do not apply to loan servicers.

**BACKGROUND**

**I.        The Higher Education Act and FFELP and Direct Loan Programs**

Congress passed the HEA in 1964 and established the Federal Family Education Loan

Program ("FFELP").  *See* 20 U.S.C. §§ 1071 to 1087-4.  FFELP Loans were funded by private

lenders, but the federal government is the ultimate guarantor.  *See* Compl. ¶ 164.  Congress

directed ED to "prescribe such regulations as may be necessary to carry out the purposes" of

FFELP, including "to establish minimum standards" for servicers.  20 U.S.C. § 1082(a)(1).  The

federal government has purchased FFELP loans as far back as 2003, and ED is authorized to

contract with third parties to service FFELP Loans.  *See* Compl. ¶¶ 234-35 (citing 20 U.S.C.

§ 1086; 34 C.F.R. § 682.203), 241.

In 1994, the federal government began originating loans directly under the William D.

Ford Direct Loan Program.  *See* 20 U.S.C. §§ 1087a-1087j.  Congress directed ED to enter into

contracts for loan "servicing" and "such other aspects of the direct student loan program as the

Secretary determines are necessary."  20 U.S.C. § 1087f(b)(2), (4).  ED has broad and exclusive

authority to prescribe servicer requirements, *see* 20 U.S.C. §§ 1082(a)(1), 1087a, 1087e, and has

promulgated extensive regulations governing every aspect of federal student loan servicing,

including "a carefully crafted disclosure regime specifying what information must be provided."

83 Fed. Reg. at 10621 (citing statutes and regulations).

Plaintiffs have both FFELP and Direct Loans.  The Standard Repayment Plan for FFELP

and Direct Loans is 10 years.  *See* Compl. ¶ 187.  Borrowers may also enroll in other plans,

including IDR plans, which can result in monthly payments as low as $0.  *Id.* ¶¶ 188, 190.

**II.       Enforcement of Federal Servicing Requirements and Oversight of Servicers**

ED's office of Federal Student Aid ("FSA") oversees federal loan servicers to ensure

they are "adhering to regulatory and contractual requirements for servicing loans," including by

monitoring calls with borrowers. 83 Fed. Reg. at 10622. FSA also maintains a Feedback System for borrowers to file complaints about loan servicers, *id.*—a remedy Ms. Hyland availed herself of in March 2017. *See* Compl. ¶ 49. Although there is no private right of action under the HEA, *see* Part II.A below, ED may pursue informal compliance procedures against a servicer that is the subject of a complaint, *see* 34 C.F.R. § 682.703, or may file suit against the servicer, impose civil penalties, or terminate the servicer's participation in the loan program, *see Chae*, 593 F.3d at 943 n.6 (citing 20 U.S.C. § 1082(a)(2), (g)(1), (h)(1))).

## III. The Federal Public Service Loan Forgiveness Program

Under PSLF, the federal government will forgive any remaining balance on qualifying Direct Loans after (a) 120 on-time payments (b) made under a qualifying repayment plan (c) while the borrower is working full-time (d) for qualifying employers. 34 C.F.R. § 685.219; *see* Compl. ¶¶ 207-208. Qualifying plans include IDR plans. *See* Compl. ¶ 215. FFELP Loans are not eligible for PSLF, but borrowers may consolidate FFELP Loans into Direct Loans. *See id.* ¶ 209. Borrowers may confirm eligibility for PSLF by submitting Employment Certification Forms to ED's designated PSLF servicer, FedLoan Servicing. *See id.* ¶¶ 217, 220. Loans determined to be eligible are then transferred for servicing to FedLoan Servicing. *See id.* ¶ 221.

## IV. Plaintiffs' Federal Loan Contracts with ED and Other Lenders

Plaintiffs' FFELP and Direct Loans are governed by standardized Master Promissory Note contracts ("MPN Contracts") with either ED (for Direct Loans) or private lenders (for FFELP loans). *See id.* Ex. 1 (FFELP MPN), Ex. 2 (Direct Loan MPN). The MPNs are developed by ED pursuant to instructions from Congress. *See* 20 U.S.C. §§ 1082(m)(1)(D), 1087e(a)(1). Navient is not a party to plaintiffs' MPN Contracts.

The "Governing Law" provisions of the MPNs state that they will be interpreted in accordance with applicable federal law, statutes, and regulations, including the HEA and

applicable ED regulations. Compl. Ex. 1 at 2, 4; *id.* Ex. 2 at 3, 8 (un-paginated). Citing these provisions, plaintiffs assert that their MPN Contracts "incorporate[]" borrowers' "statutory rights" and "applicable [ED] regulations." *Id.* ¶¶ 176, 182; *see id.* ¶¶ 176-180, 184-185 (citing 34 C.F.R. §§ 682.201(e)(5)(i), 682.208, 682.215, 685.208, 685.209, 685.219, 685.221).

## V.    Navient's Servicing Contracts with ED

The HEA and ED regulations establish comprehensive rules governing the Direct and FFELP Loan Programs, and ED's contracts with loan servicers specify additional rules. As ED explained in its recent Interpretation, Direct Loan servicing contracts "specif[y] in detail the responsibilities and obligations of the servicers for Direct Loans and the benefits provided under that program such as [PSLF] and [IDR] plans." 83 Fed. Reg. at 10620. ED's contracts with loan servicers are "voluminous—spanning more than 600 pages and including provisions governing … internal monitoring, communications with borrowers, and many other topics." *Id.*

ED entered into Servicing Contracts with Navient to service plaintiffs' federal student loans. *See* Compl. ¶¶ 239, 241, 246, 251; *id.* Exs. 4-5 (Servicing Contracts). As plaintiffs recognize, the Servicing Contracts "govern Navient's interactions and communications with borrowers including with respect to providing information about repayment plans and forgiveness options for the benefit of the borrower," *id.* ¶ 248, and "are very specific in what … Navient can and can't do for borrowers," *id.* ¶ 247. Plaintiffs are not parties to the Servicing Contracts; nor are they intended beneficiaries under the terms of the Servicing Contracts. Plaintiffs allege that by entering into the Service Contracts, Navient "assumed the responsibility to comply with all applicable federal regulations." *Id.* ¶ 325; *see also id.* ¶ 249 (alleging that the "Federal statutory or legislative requirements described above … are expressly incorporated into the" contracts).

**VI.     Plaintiffs' Alleged Interactions with Navient Customer Service Representatives**

Although the Complaint describes highly disparate experiences among different plaintiffs, the alleged misstatements and omissions fall into three general categories. *First*, plaintiffs allege that Navient made misstatements and omissions regarding the eligibility of plaintiffs or their loans for PSLF. For example, plaintiffs allege that Navient failed to disclose to plaintiffs with FFELP Loans that their loans would need to be consolidated into Direct Loans in order to qualify for PSLF (¶¶ 72, 77) and told plaintiffs with FFELP Loans they were "on track" for PSLF or their loans would be forgiven, without disclosing that only Direct Loans qualify (¶¶ 45, 79). *See also id.* ¶¶ 55, 87, 96, 106, 117, 125. *Second*, plaintiffs allege that Navient made misstatements and omissions regarding forbearances and repayment plans. For example, plaintiffs allege that Navient told plaintiffs that forbearance was their best option for reducing payments, without disclosing the various IDR plans (¶¶ 42, 60, 67, 78, 124) and "steered" a plaintiff away from IDR plans and into forbearances or non-qualifying repayment plans (¶ 98). *See also id.* ¶¶ 59, 67, 80, 108, 115. *Third* plaintiffs allege that Navient made misstatements and omissions regarding Employment Certification Forms and FedLoan Servicing. For example, plaintiffs allege that, in response to questions about loan forgiveness programs, Navient told a plaintiff that Navient does not have such a program or "offer PSLF," without mentioning that FedLoan Servicing administers it (¶¶ 68-69); and that Navient told plaintiffs they did not need to submit Employment Certification Forms until they were ready to request loan forgiveness, without disclosing that borrowers can submit Employment Certification Forms at any time (¶¶ 44, 56, 79, 116). *See also id.* ¶¶ 58, 95.

**ARGUMENT**

**I.     The Higher Education Act Preempts Plaintiffs' Claims.**

"Under the Supremacy Clause of the United States Constitution, state laws that conflict

with federal law are without effect, and are preempted." *N.Y. Rest. Ass'n v. N.Y. Bd. of Health*,

556 F.3d 114, 123 (2d Cir. 2009) (citation and internal marks omitted); *see also Island Park,*

*LLC v. CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009).  "The purpose of Congress is the ultimate

touchstone in every pre-emption case." *N.Y. Rest. Ass'n*, 556 F.3d at 123 (internal marks

omitted) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).  Here, plaintiffs' claims are

expressly preempted by the HEA, and are also barred by conflict preemption.  *See Cipollone v.*

*Liggett Grp.*, 505 U.S. 504, 516 (1992) (explaining types of preemption).

**A.     Plaintiffs' Claims Are Expressly Preempted by Section 1098g of the HEA.**

"Express preemption arises when a federal statute expressly directs that state law be

ousted." *Island Park, LLC*, 559 F.3d at 101 (internal marks omitted).  Here, Congress enacted

several express preemption provisions applicable to FFELP and Direct Loans.  *See, e.g.*, 20

U.S.C. §§ 1078(d), 1091a(a)(2)(B), 1091a(b)(1)-(3), 1095a(a), 1098g.  Section 1098g, in

particular, provides that FFELP and Direct Loans "shall not be subject to *any* disclosure

requirements of *any* State law." 20 U.S.C. § 1098g (emphasis added).  Thus, "Congress

specifically intended for the HEA to preempt any State disclosure requirements relating to loans

under the federal guaranteed student loan program." *McCulloch v. PNC Bank Inc.*, 298 F.3d

1217, 1226 (11th Cir. 2002) (interpreting predecessor to 20 U.S.C. § 1098g).

As numerous courts have held, Section 1098g applies to—and precludes—any state law

claim based on alleged misrepresentations and omissions that is "in substance" "a challenge to

the allegedly-misleading method [that federal student loan servicers] used to communicate with

the plaintiffs." *Chae*, 593 F.3d at 942-43.  For example, in *Chae*, the plaintiffs claimed that

7

Navient (then "Sallie Mae") used billing statements and coupon books that tricked borrowers into thinking interest was calculated a certain way, and allegedly misrepresented that the plaintiffs' loans conferred rights, remedies, and obligations that did not exist. The federal government intervened, asserting that the plaintiffs' state law claims were preempted by the HEA. The Ninth Circuit agreed, holding that "[a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims." *Id.* at 942. The court reasoned that state laws purporting to prohibit misrepresentations are "'merely the converse' of a state-law requirement that alternate disclosures be made." *Id.* at 943 (quoting *Cipollone*, 505 U.S. at 527). The court rejected the plaintiffs' argument that because they did not seek to impose "specific disclosure[]" requirements on Sallie Mae, their claims were not preempted. *Id.*[1]

Applying *Chae*, courts have held that state law claims based on misrepresentations and omissions nearly identical to those alleged by plaintiffs here are expressly preempted under Section 1098g. For example, in *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, the court held that the HEA expressly preempted claims that a loan servicer misrepresented to borrowers that their FFELP loans were eligible for loan forgiveness under PSLF. 2018 WL 5621872, *2-4 (N.D. Fla. Sept. 20, 2018). In *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, the court held that claims that a loan servicer misrepresented borrowers' right to enter IDR plans, misrepresented that forbearance was their best option, and steered borrowers into forbearance were expressly preempted. 2017 WL 6501919, at *5 (S.D. Ill. Dec. 19, 2017). In *Linsley v. FMS Inv. Corp.*, claims that a debt collector misrepresented the number of consecutive monthly payments required for loan consolidation were held to be expressly preempted. 2012 WL 1309840, at *6

---

[1]    *Chae* found the rest of plaintiffs' claims preempted by conflict preemption, but not *express* preemption, because they did not involve misrepresentations. *Id.* at 943. By contrast, *all* of plaintiffs' claims here are based on alleged misstatements and omissions, and are therefore *all* expressly preempted.

(D. Conn. Apr. 17, 2012). And in *Brooks v. Sallie Mae, Inc.*, the court dismissed under express preemption claims that Sallie Mae allegedly gave borrowers incorrect information about the documentation required to determine eligibility for a deferment. 2011 WL 6989888, at *6 (Conn. Super. Ct. Dec. 20, 2011).[2]

In reaching these holdings, all four courts reasoned that the plaintiffs' misrepresentation claims were nothing more than "restyled improper-disclosure claims," *Chae*, 593 F.3d at 943. *See, e.g.*, *Nelson*, 2017 WL 6501919, at *5 ("The converse of these allegations is that [the loan servicer's] employees … should have disclosed all options to borrowers, and should have disclosed that forbearance may not be the 'best option'"); *see also Lawson-Ross*, 2018 WL 5621872, *3-4; *Linsley*, 2012 WL 1309840, at *4-6; *Brooks*, 2011 WL 6989888, at *6.

In its Interpretation issued earlier this year, ED expressly endorsed *Chae* and *Nelson* on this point, explaining that when state servicing laws attempt to impose "prohibitions on misrepresentation or the omission of material information, those laws would also run afoul of the express preemption provision in 20 U.S.C. 1098g." 83 Fed. Reg. at 10621. Such laws thus are "barred whether they are enacted legislatively or implied judicially in the context of a tort suit." *Id.* ED's views on the scope of express preemption under Section 1098g are entitled to deference from this Court. *See Lawson-Ross*, 2018 WL 5621872, *3-4 (according deference to ED's recent Interpretation); *see also, e.g.*, *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 758 F.3d 1162, 1173-74 (9th Cir. 2014); *Chae*, 593 F.3d at 948-49; *Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 800-801 (7th Cir. 2006).

---

[2]     Because the *Brooks* plaintiff's claim rested on allegations *other than* improper disclosures (which are not *expressly* preempted), the court in *Brooks* did not fully dismiss the plaintiff's claim. *Id.* at *6-7.

Here, all of plaintiffs' claims are premised on their allegations that Navient made misstatements and omissions regarding, for example, the eligibility of plaintiffs or their loans for PSLF, Direct Loan consolidation, borrowers' right to enter IDR plans, and whether forbearance was their "best option." Because plaintiffs seek to enforce state laws that would impose "prohibitions on misrepresentation or the omission of material information" by a federal loan servicer, 83 Fed. Reg. at 10621, their claims are expressly preempted.

Defendants respectfully disagree with three decisions holding that similar improper-disclosure claims were *not* expressly preempted under Section 1098g. *See Genna v. Sallie Mae, Inc.*, 2012 WL 1339482, at *7-9 (S.D.N.Y. Apr. 17, 2012); *Davis v. Navient Corp.*, 2018 WL 1603871, at *2-3 (W.D.N.Y. Mar. 12, 2018); *Daniel v. Navient Solutions, LLC*, 328 F. Supp. 3d 1319, 1323-24 (M.D. Fla. June 25, 2018). The courts in *Genna* and *Davis* did not have the benefit of ED's recent Interpretation in reaching their decisions, and the court in *Daniel* did not consider it. *See Lawson-Ross*, 2018 WL 5621872, at *3 (distinguishing *Genna* on this basis). The reasoning of these cases is also flawed. The courts in *Genna* and *Davis* held that because the alleged misstatements were not "explicitly regulated and sanctioned by federal law," express preemption did not apply; but express preemption asks only whether Congress intended to displace state regulation in a particular area—not whether a specific federal regulation is directly on point. In *Daniel*, the court reasoned that because the plaintiffs alleged that the loan servicer made misrepresentations—as opposed to merely failing to disclose information—their claims were not improper-disclosure claims. 328 F. Supp. 3d at 1324. This reasoning is squarely at odds with ED's Interpretation regarding the scope of express preemption (*see* 83 Fed. Reg. at 10621), and misses the point that these claims in essence are the converse of allegations that different information should have been disclosed (*see Chae*, 593 F.3d at 942).

**B.      Plaintiffs' Claims Are Subject to Conflict Preemption.**

Even if plaintiffs' claims were not expressly preempted, they would still be barred by conflict preemption.  Conflict preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).  Here, permitting plaintiffs' misrepresentation claims—thus endorsing the possibility of similar claims being asserted under the varying laws of the 50 states—would significantly undermine the purpose of the HEA to establish a uniform set of rules and regulations governing federal lending programs, including disclosure rules.

As the Ninth Circuit recognized in *Chae*, Congress provided "a clear command for uniformity" in the HEA with respect to the FFELP Program.  *Chae*, 593 F.3d at 945.  It did so for a simple reason: to encourage private lenders to make loans.  *Id.*  After all, "[o]ne need not have an advanced degree in risk management and financial practices to believe . . . that exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans."  *Id.*  In the rules governing the Direct Loan Program, Congress then "created a policy of inter-program uniformity."  *Id.* (citing 20 U.S.C. § 1087e(a)(1)); *see also* 83 Fed. Reg. at 10621 ("[T]he purpose of the Direct Loan Program [was] to establish a uniform, streamlined, and simplified lending program managed at the Federal level.").  Indeed, "Congress's instructions to [ED] on how to implement the student-loan statutes carry this unmistakable command: ***Establish a set of rules that will apply across the board***."  *Chae*, 593 F.3d at 945 (emphasis added).

Plaintiffs' state law claims would create a significant obstacle to the implementation of Congress's purpose of uniformity.  Permitting courts in 50 states to determine whether millions of conversations between Navient employees and borrowers were sufficient to inform them about (among other things) their eligibility for PSLF, Direct Loan consolidation, and IDR plans

would obliterate the uniformity ED has established in regulating loan servicers' communications with borrowers, including through detailed Servicing Contracts. "These conflicts with statutes, regulations, Federal contracts, and congressional objectives suggest that State regulation of loan servicers"—which is what plaintiffs are attempting to do here—"would be preempted by Federal law." 83 Fed. Reg. at 10621; *see Chae*, 593 F.3d at 947 (dismissing plaintiffs' other state law claims because they would "stand as an obstacle to the FFELP's uniform operation"); *United States v. Gorski*, 2012 WL 12886823, at *7-8 (C.D. Cal. Mar. 22, 2012) (dismissing similar claims as preempted under HEA).

That result is "even more evident where," as here, "State regulation implicates uniquely Federal interests." 83 Fed. Reg. at 10621. State servicing laws affect "the obligations and rights of the United States under its contracts with servicers and with student loan borrowers, the relationship between a Federal agency and the entity it regulates, and the rights of the Federal government related to federally held debt." *Id.* at 10619 (internal marks omitted) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504-05 (1988); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001); *United States v. Victory Highway Vill., Inc.*, 662 F.2d 488, 497 (8th Cir. 1981)). Thus, "the servicing of Direct Loans is an area 'involving uniquely Federal interests' that must be 'governed exclusively by Federal law.'" *Id.* (quoting *Boyle*, 487 U.S. at 504). That, in turn, means "the statutory and regulatory provisions and contracts governing the Direct Loan Program preclude State regulation, either of borrowers or servicers." *Id.* at 10621. By the same logic, state regulation of the servicing of FFELP Loans serviced by Navient pursuant to Servicing Contracts with ED is also precluded.

## II.     Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted.

Even if plaintiffs' claims were not preempted, the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

## A. Plaintiffs' Contract and Tortious Interference Claims Fail (Counts I-IV).

Plaintiffs' contract and tortious interference claims should be dismissed because they are "indirect attempts at privately enforcing" the HEA. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). "[T]he HEA does not provide student borrowers a private right of action to enforce its provisions." *Sanon v. Dep't of Higher Educ.*, 453 Fed. App'x 28, 30 (2d Cir. 2011). Where "no private right of action exists under the relevant statute, the plaintiffs['] efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the" statute. *Grochowski*, 318 F.3d at 86; *see also Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 113, 118 (2011) (where plaintiffs' suit was "in essence a suit to enforce" a federal statute lacking a private right of action, it was "incompatible with the statutory regime").

For example, in *Parola v. Citibank (S.D.) N.A.*, a federal student loan borrower sued her lender for breach of her MPN contract. 894 F. Supp. 2d 188, 196 (D. Conn. 2012). Citing the "Governing Law" provision, the plaintiff argued that "HEA compliance was a term of her contract" that her lender allegedly breached. *Id.* at 196-97. The court dismissed the claim, reasoning that "the HEA does not create a private right of action" and "reserves all enforcement activity" to ED. *Id.* at 198; *see also Grochowski*, 318 F.3d at 86 (dismissing third-party beneficiary claims for breach of government contracts as improper attempts to enforce federal statute with no private right of action); *Astra USA, Inc.*, 563 U.S. at 114 (same, reasoning that "[i]f [private] entities may not sue under the statute, it would make scant sense to allow them to sue on a form contract implementing the statute").

Here, as in *Parola*, plaintiffs' claims that Navient breached (or tortiously interfered with) their MPN Contracts are premised on the theory that the "Governing Law" provisions of those contracts "mandate[s] compliance with both the [HEA] and [ED] regulations," Compl. ¶ 361, and that Navient breached (or "induced" the breach) of these "obligations," *id.* ¶¶ 364, 370.

Plaintiffs' third-party beneficiary claim for breach of Navient's Servicing Contracts with ED is likewise premised, as in *Grochowski* and *Astra USA*, on the theory that those contracts "require that Navient comply with all federal and state laws and regulations," *id.* ¶ 389; and that "Navient breached these obligations," *id.* ¶ 391. And plaintiffs' claim for tortious interference with a "statutorily created expectancy" of loan forgiveness is a plain attempt to enforce the federal statute. *Id.* ¶ 377. Because these claims are nothing more than "impermissible 'end run[s]' around the" HEA, *Grochowski*, 318 F.3d at 86, they should be dismissed.

### 1.  Plaintiffs' Claim for Breach of Their MPN Contracts Fails.

Plaintiffs' claim for breach of their MPN Contracts fails for three additional reasons.

*First*, Navient is not a party to plaintiffs' MPN Contracts. Those contracts are between plaintiffs and ED (for Direct Loans) and private lenders or their assignees (for FFELP Loans). As a non-party to the contracts, Navient cannot be held liable for any alleged breach of their terms. *See Cruickshank & Co. v. Sorros*, 765 F.2d 20, 26 (2d Cir. 1985) (applying federal law).[3]

Plaintiffs try to overcome this defect by asserting that Navient acted as the agent of their lenders, *see* Compl. ¶¶ 359, 360, but an agent of a disclosed principal acting within the scope of its authority is not liable for breach of a contract between its principal and a third party. *See Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir. 1971) (applying federal

---

[3]     Federal law applies to plaintiffs' MPN Contracts. Compl. Ex. 1 at 2 ("Governing Law and Notices"), 4 (§ 1), Ex. 2 at 3 ("Governing Law"), 8 (§ 2); *see also Rivera v. Bank of Am. Home Loans*, 2011 WL 1533474, at *3 (E.D.N.Y. Apr. 21, 2011) ("Federal law controls the interpretation of contracts where the United States is a party to the contract."). Federal law is "determined by reference to traditional common law principles," *Minidoka Irr. Dist. v. Dep't of Interior of U.S.*, 154 F.3d 924, 926 (9th Cir. 1998), and is generally consistent with New York, California, Florida, and Maryland contract law. *See Dragushansky v. Nasser*, 2013 WL 4647188, *3 (S.D.N.Y. Aug. 28, 2013) ("in order for someone to be liable for breach of contract, that person must be a party to the contract" (internal marks omitted)); *accord Carolina Cas. Ins. Co. v. Lanahan & Reilley, LLP*, 2011 WL 3741004, at *3 (N.D. Cal. Aug. 25, 2011); *Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, at *7 (N.D. Fla. Sept. 19, 2006); *Thompson v. Naval Acad. Athletic Ass'n*, 2013 WL 3965100, at *6 (D. Md. Aug. 1, 2013).

law).[4]  "A significant majority of courts have concluded that loan servicers are not in privity of contract with [borrowers] where the servicers did not sign a contract with the [borrowers] or expressly assume liability."  *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016); *accord Edwards v. Ocwen Loan Svcg., LLC*, 24 F. Supp. 3d 21, 27-28 (D.D.C. 2014).  Since plaintiffs do not (and cannot) allege that Navient intended personally to be bound by plaintiffs' MPN Contracts, Navient cannot be liable for any alleged breach.

*Second*, plaintiffs identify no term of the MPNs that Navient breached by allegedly providing bad advice.  *See Earman v. United States*, 114 Fed. Cl. 81, 104 (2013), *aff'd*, 589 F. App'x 991 (Fed. Cir. 2015) (dismissing claim for breach of government contract because "plaintiff has failed to identify a contractual provision" allegedly breached).[5]  In *Parola*, the court rejected a nearly identical theory of breach of the plaintiff's MPN contract, reasoning that plaintiff

> cites no facts, MPN provision or law which would impose upon
> [her lender] the duty to take it upon itself to review Parola's loan,
> evaluate her eligibility for various borrower classifications and
> advise her of her options, much less the most beneficial option as
> Parola alleges [her lender] failed to do.

---

[4]      *Accord Envtl. Appraisers & Builders, LLC v. Imhof*, 143 A.D.3d 756, 757-58 (2d Dep't 2016); *Sweeney v. Herman Mgmt., Inc.*, 85 A.D.2d 34, 36 (1st Dep't 1982); *Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 929 (1980); *Aero Techs., LLC v. Lockton Cos. Int'l, Ltd.*, 2011 WL 7657475, at *3 (S.D. Fla. Apr. 25, 2011), *aff'd*, 467 F. App'x 824 (11th Cir. 2012); *Thompson*, 2013 WL 3965100, at *6 (applying Maryland law).

[5]      *See also Sirohi v. Trs. of Columbia Univ.*, 1998 WL 642463, at *2 (2d Cir. Apr. 16, 1998) (summary order) (affirming dismissal of breach of contract claim because plaintiff failed to identify the "specific provisions of the contract upon which liability is predicated"); *accord Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358-59 (S.D.N.Y. 2001); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016); *Sky Enters., LLC v. Offshore Design & Drilling Servs., LLC*, 2017 WL 519115, at *2 (M.D. Fla. Feb. 8, 2017); *Agwumezie v. Allstate Ins. Co.*, 2002 WL 32361936, at *3 (D. Md. Aug. 8, 2002), *aff'd*, 73 F. App'x 627 (4th Cir. 2003).

894 F. Supp. 2d at 199.  Although plaintiffs reference the "Governing Law" provision of their

loan contracts (*see* Compl. ¶¶ 176, 182), that provision "is not a covenant for compliance by the

lender."  *Parola*, 894 F. Supp. 2d at 198.

*Third*, plaintiffs allege (in the alternative) that Navient breached the implied covenant of

good faith and fair dealing in their MPN Contracts, *see* Compl. ¶ 367, but the implied covenant

cannot be used to "expand a party's contractual duties beyond those in the express contract,"

*Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010),[6] and here the

express contracts do not impose the duties plaintiffs allege.  Plaintiffs' implied covenant claim

fails for the independent reasons that (1) there is no contract *with Navient* out of which any

implied covenant could arise[7] and (2) the claim is based on the exact same facts as plaintiffs'

breach of contract claim, and is therefore "superfluous," *Dist. Lodge 26, Int'l Ass'n of Machinists

& Aerospace Workers v. United Techs. Corp.*, 610 F.3d 44, 54 (2d Cir. 2010).[8]  *See, e.g.*,

*Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 407 (S.D.N.Y. 2010) (dismissing implied

covenant claim where the plaintiff's "allegations are duplicative of those underlying his breach

---

[6]    *See also Long v. Marubeni Am. Corp.*, 2006 WL 1716878, at *1 (S.D.N.Y. June 20, 2006) ("To the extent the alleged unlawful conduct falls outside the scope of the contract, it may not form the basis of either a breach-of-contract claim or a claim for breach of the implied covenant of good faith and fair dealing."); *accord Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 105-06 (E.D. Cal. 2010); *Mattocks v. Black Entm't Television LLC*, 43 F. Supp. 3d 1311, 1320-21 (S.D. Fla. 2014); *Blondell v. Littlepage*, 413 Md. 96, 114 (2010); *cf. White Marlin Open, Inc. v. Heasley*, 262 F. Supp. 3d 228, 256 (D. Md. 2017) ("Maryland courts do not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing." (internal marks omitted), *aff'd*, 716 F. App'x 216 (4th Cir. 2018)).

[7]    *See Cty. of Santa Clara v. Astra USA, Inc.*, 2006 WL 1344572, at *9 (N.D. Cal. May 17, 2006) (an implied covenant claim "cannot exist independent of the contract claim" under federal law), *rev'd on other grounds*, 588 F.3d 1237 (9th Cir. 2009), *rev'd sub nom. Astra USA, Inc.*, 563 U.S. at 113; *accord Keefe v. N.Y. Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010); *Moore v. Way FM Media Grp. Inc.*, 2012 WL 13012658, at *4 (C.D. Cal. Mar. 29, 2012); *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012); *Parker v. Columbia Bank*, 91 Md. App. 346, 366 (1992).

[8]    *Accord Spread Enters. v. First Data Merch. Servs. Corp.*, 2012 WL 3679319, at *5 (E.D.N.Y. Aug. 22, 2012); *True v. Allstate Ins. Co.*, 160 F. App'x 616, 618 (9th Cir. 2005) (applying California law); *Bradman v. Mental Health Network, Inc.*, 2008 WL 5110525, at *2-3 (S.D. Fla. Dec. 2, 2008).

of contract claim, or seek to impose duties upon [the loan servicer] beyond those imposed by the Mortgage").

### 2. Plaintiffs' Alternative Claim for Tortious Interference with Their MPN Contracts Fails.

Plaintiffs' alternative claim that Navient induced plaintiffs' lenders to breach the MPN Contracts (Compl. ¶¶ 369-70) fails for three additional reasons. *First*, plaintiffs (again) do not identify a term of the MPN Contracts that was breached or disrupted. *See Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 252 A.D.2d 414, 418 (1st Dep't 1998) (dismissing tortious interference with contract claim because "plaintiff has not shown that defendants procured a breach of any agreement").[9]

*Second*, a servicing agent like Navient cannot tortiously interfere with its own principal's contracts. *See OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.*, 123 A.D.3d 222, 228-29 (1st Dep't 2014) ("[N]o action for tortious interference can lie against an agent acting within the scope of its duties on behalf of the principal.").[10] Plaintiffs try to plead around this bar to relief by asserting this claim in the alternative "if Navient establishes it is not an agent of [ED] for the purposes of the MPN Contracts." Compl. ¶ 369. But the factual allegations of the Complaint belie any other inference. *See, e.g.*, *id.* ¶ 359 ("[a]t all relevant times, Navient acted as an agent

---

[9]      *See also Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 84 (E.D.N.Y. 2004) (breach is a necessary element of a claim for tortious interference with contract); *accord Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015); *Sourcing Sols. USA, Inc. v. Kronos Am., LLC*, 2011 WL 13223514, at *3 (S.D. Fla. Jan. 26, 2011); *Integral Nuclear Assocs., LLC v. Nair*, 2005 WL 3481353, at *2 (D. Md. Dec. 20, 2005) (similar).

[10]      *See also PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007) ("[A]s a matter of law, [promisor] and his agents could not have interfered with the performance of these subcontracts."); *accord Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 965-66 (Fla. Dist. Ct. App. 2002); *Ahan v. Grammas*, 2004 WL 2724111, at *20 (Md. Cir. Ct. Nov. 19, 2004).

of the lender or [ED] in servicing federal student loans borrowed by Plaintiffs"); *see also* 83 Fed. Reg. at 10621 (federal loan servicers "stand in the shoes of the Federal government").

*Third*, plaintiffs do not allege that Navient *intentionally* interfered with plaintiffs' MPN contracts. *See Wellington Shields & Co. v. Breakwater Inv. Mgmt. LLC*, 2016 WL 5414979, at *5 (S.D.N.Y. Mar. 18, 2016) (conduct that "happened to constitute a breach" not sufficient to allege tortious interference; "the defendant's *objective* [must be] to procure such a breach").[11]

### 3. Plaintiffs' Alternative Claim for Tortious Interference with "Statutorily Created Expectancy" Fails.

Plaintiffs' (second) alternative claim for tortious interference with their "statutorily created expectancy" of PSLF loan forgiveness (Compl. ¶¶ 375-377) fails because this is not a cognizable claim under any state's law. Insofar as plaintiffs seek to assert a claim for tortious interference with prospective business or economic advantage (i.e., business interference), any such claim would fail because it is not premised upon any "business" or "economic" relationship with the probability of future economic benefit. *See, e.g.*, *Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266-67 (1st Dep't 2002).[12] Plaintiffs also fail to allege (as they must) that Navient's supposed interference was *intentional*. *See, e.g.*, *Wellington Shields & Co.*, 2016 WL 5414979,

---

[11] *See also In re Tuscany Energy, LLC*, 581 B.R. 681, 692 (Bankr. S.D. Fla. 2018) ("[A] claim for tortious interference with contract must be based on an intentional act done with the *aim*, at least in part, of interfering with the rights of another." (emphasis added)); *RealPage, Inc. v. Yardi Sys., Inc.*, 2011 WL 3565112, at *5 (C.D. Cal. Aug. 11, 2011) (an element of an action for the tort of interference with contract is "intentional acts designed to induce" a breach or disruption of the contractual relationship"); *accord Ellicott Dredges, LLC v. DSC Dredge, LLC*, 280 F. Supp. 3d 724, 731 (D. Md. 2017).

[12] *See also Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 n.2 (1990); *Ferris v. S. Fla. Stadium Corp.*, 926 So. 2d 399, 401 (Fla. Dist. Ct. App. 2006); *Carter v. Aramark Sports & Entm't Servs., Inc.*, 153 Md. App. 210, 240 (2003).

at *7 (plaintiff must show that defendant "direct[ed] some activities towards the third party and convince[d] the third party not to enter into a business relationship with the plaintiff").[13]

### 4. Plaintiffs' Claim for Breach of Navient's Servicing Contracts Fails.

Plaintiffs' claim for breach of Navient's Servicing Contracts with ED—on the theory that plaintiffs are "third-party beneficiaries" of those contracts (Compl. ¶ 390)—fails for three additional reasons. *First*, "a plaintiff claiming to be the intended third party beneficiary of a government contract must show [1] that he was intended to benefit from the contract and [2] that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it." *Rivera*, 2011 WL 1533474, at *4 (internal marks omitted) (applying federal common law); *see also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary.").

Here, plaintiffs cannot "identify any language in the [Servicing] Agreement[s] that evidences an intent to permit [them] to enforce the Agreement[s] against [Navient]." *Rivera*, 2011 WL 1533474, at *5-6 (dismissing third-party beneficiary claim for breach of servicing contract); *see also Fellows*, 710 F. Supp. 2d at 406 (same, because "no language in the Servicing Contract … clearly evidences the parties' intent to permit [borrower] to enforce the agreement against" the loan servicer); *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86-87 (2d Cir.

---

[13]     *See also Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. Dist. Ct. App. 1986) (dismissing claim because claimant did not properly allege that interference was "direct and intentional"); *accord Watson v. Riptide Worldwide, Inc.*, 2012 WL 383946, at *7 (S.D.N.Y. Feb. 7, 2012); *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1276 (D. Md. 1992), *aff'd*, 989 F.2d 491 (4th Cir. 1993); *see also RealPage, Inc.*, 2011 WL 3565112, at *5 (applying California law).  Although California law permits a claim for *negligent* business interference, plaintiffs have not plead such a claim here.  Even if they had, it would fail because an essential element of such a claim is a duty owed by the defendant to the plaintiff, *see LiMandri v. Judkins*, 52 Cal. App. 4th 326, 348 (1997), and California law is clear that loan servicers owe no such duty to borrowers.  *See* Part II.C below.

2014) (mortgagors were not third-party beneficiaries of Pooling and Servicing Agreements).

Notably, "federal courts that have addressed this issue have 'uniformly rejected' the notion that

borrowers are third-party beneficiaries of servicing guides." *Fellows*, 710 F. Supp. 2d at 395;

*accord Gorbaty v. Wells Fargo Bank, N.A.*, 2012 WL 1372260, at *15 (E.D.N.Y. Apr. 18, 2012);

*Hutchful v. Wells Fargo Bank*, 2013 WL 12244330, at *8 (C.D. Cal. Sept. 26, 2013). Indeed,

had the parties intended to confer third-party beneficiary status on borrowers, they would have

done so explicitly—as evidenced by the explicit "creation of third party beneficiary rights" in

*other* third parties. Compl. Ex. 4 at 7. Providing third-party beneficiary status to plaintiffs

would also be inconsistent with the "policy underlying" the Servicing Agreements—to

implement a statute with no private right of action. *Rivera*, 2011 WL 1533474, at *4.

*Second*, plaintiffs allege that Navient breached the Servicing Contracts "by giving

borrowers incorrect and misleading information about PSLF and income-driven repayment

plans," Compl. ¶ 391, but they do not point to any *term* of the Servicing Contracts that requires

Navient to disclose such information to borrowers.

*Third*, plaintiffs' alternative claim for breach of the implied covenant of good faith and

fair dealing in the Servicing Contracts (Compl. ¶ 394) fails for the same reasons their other

implied covenant claim fails: (1) no such duty can apply in the absence of a contract between

*plaintiffs* and Navient, (2) the doctrine cannot be invoked to add a substantive provision to the

contract, and (3) this "alternative" claim is redundant of the contract claim. *See* Part II.A.1

above.

### B.  Plaintiffs' Claim for Unjust Enrichment Fails (Count V).

Plaintiffs assert a claim for unjust enrichment, alleging that "it would be unequitable for

Navient to retain the benefit of the loan servicing fees that borrowers would otherwise not have

paid to Navient had Navient provided truthful and accurate information." Compl. ¶ 401. This

claim fails for two reasons.  *First*, loan servicing fees are paid to servicers by ED, not by borrowers.  *See id.* ¶¶ 264, 276.  Accordingly, no benefit was conferred on Navient at plaintiffs' expense, as required to state a claim for unjust enrichment.[14]  Although plaintiffs claim that Navient's alleged misrepresentations caused them to pay more principal and interest on their loans, Compl. ¶ 398, they do not explain how these principal and interest payments conferred any benefit on Navient as their loan servicer.  *See Kilgore v. Ocwen Loan Svcg., LLC*, 89 F. Supp. 3d 526, 537-38 (E.D.N.Y. 2015) (dismissing unjust enrichment claim, in part, for failure to allege how increase in debt conferred benefit on loan servicer).

*Second*, plaintiffs may not pursue an unjust enrichment claim when a contract governs the subject matter of the dispute, *see Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016), as this would violate the general prohibition against double recovery for the same injury, *see Lopez v. Musinorte Entm't Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011). Because plaintiffs' MPN Contracts plainly govern any dispute over whether plaintiffs paid excess principal and interest, their claim that Navient was unjustly enriched by those payments is barred.  *See, e.g.*, *Kilgore*, 89 F. Supp. 3d at 537 (dismissing claim against loan servicer, in part, because loan payment obligations were subject of underlying loan contract); *Montaquila v. Countrywide Home Loans, Inc.*, 2008 WL 11342693, at *3 (C.D. Cal. May 7, 2008) (same, because challenged fees were governed by loan contract).

---

[14]     *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (unjust enrichment requires the conferral of a "specific and direct" benefit on the defendant at the plaintiff's expense); *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (unjust enrichment requires plaintiff to "directly confer" a benefit on defendant); *see also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) ("A person is enriched if he receives a benefit at another's expense."); *Benson v. State*, 389 Md. 615, 651-52 (2005) (same).

### C. Plaintiffs' Claims for Breach of Fiduciary Duty, Negligence, and Negligent Misrepresentation Fail (Counts VI-XI).

Plaintiffs' fiduciary duty, negligence, and negligent misrepresentation claims are premised upon their allegations that Navient breached a fiduciary duty to borrowers "to provide accurate information regarding their options for loan repayment," Compl. ¶ 410; and breached a duty of care to borrowers, *id.* ¶¶ 417, 422, 429, 438, 444. These claims fail because, while Navient is committed to helping borrowers navigate the complex and numerous options available to them under the federal government's student loan programs, courts have repeatedly held that lenders and loan servicers—including student loan servicers[15]—do not owe a fiduciary or legal duty of care to borrowers.[16] Courts have applied this rule even where the loan servicer is alleged

---

[15] In this context, courts treat loan servicers and lenders the same. *See Ayres v. Ocwen Loan Svcg., LLC*, 2014 WL 4269051, at *4 (D. Md. Aug. 27, 2014); *see also Calizaire v. Mortg. Elec. Registration Sys., Inc.*, 2017 WL 895741, at *5 (E.D.N.Y. Mar. 6, 2017) ("[A] mortgage servicer [like a lender] owes no duty of care to a borrower."); *Fullmer v. JPMorgan Chase Bank, NA*, 2010 WL 2511178, at *6 (E.D. Cal. June 17, 2010) ("This rule has been applied to loan servicers."); *Diaz v. U.S. Bank, N.A.*, 2014 WL 4639431, at *7 (S.D. Fla. Sept. 16, 2014) (rejecting borrower's argument that different duties exist under Florida law when a lender acts as a servicer).

[16] *See Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*, 2015 WL 5660945, at *11-12 (S.D.N.Y. Sept. 25, 2015) (dismissing negligence claim under New York and Florida laws because no fiduciary duty or other special relationship normally exists between lender and borrower); *Genna*, 2012 WL 1339482, at *4 (dismissing New York negligent misrepresentation claims against student loan servicer because no legal duty exists); *Dobroshi v. Bank of Am., N.A.*, 65 A.D.3d 882, 884 (1st Dep't 2009) ("This Court has repeatedly held that an arm's length borrower-lender relationship is not of a confidential or fiduciary nature and therefore does not support a cause of action for negligent misrepresentation."); *Reysner v. Navient Sols., Inc.*, 2018 WL 5879809, at *10 (E.D. Cal. Nov. 7, 2018) (dismissing California negligence claim against student loan servicer because "a loan servicer does not owe a fiduciary duty to a borrower" (internal marks omitted)); *Srinivasan v. Bank of N.Y. Mellon*, 2012 WL 12886504, at *3 (C.D. Cal. Dec. 5, 2012) (dismissing California negligence claim against loan servicer because no legal duty of care generally exists between servicer and borrower); *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); *Diaz*, 2014 WL 4639431, at *7-8 (dismissing fiduciary duty and negligence claims because "[u]nder Florida law, a lender generally does not owe a fiduciary duty to its debtor"); *Ayres*, 2014 WL 4269051, at *4-5 (dismissing fiduciary duty and negligence claims under Maryland law because "[c]ourts have consistently held that banks and mortgage servicers do not owe customers a fiduciary duty"). There is no cause of action for breach of fiduciary duty under Maryland law. *See Vinogradova v. Suntrust Bank, Inc.*, 162 Md. App. 495, 510 (2005).

to have counseled borrowers incorrectly about their loans.  *See Harte v. Ocwen Fin. Corp.*, 2014

WL 4677120, at *15-16 (E.D.N.Y. Sept. 19, 2014) (collecting cases dismissing negligent

misrepresentation actions against loan servicers in such circumstances).[17]

Plaintiffs' negligent misrepresentation claims fail for the independent reason that they do

not plead any misrepresentations with the requisite particularity under Rule 9(b).  To satisfy Rule

9(b), plaintiffs must "specify the false or misleading statement, … state when and where the

statement was made, and … link the allegedly fraudulent statement to an individual speaker";

"attribution to a corporate entity or its representative is insufficient."  *Greenspan v. Allstate Ins.*

*Co.*, 937 F. Supp. 288, 291 (S.D.N.Y. 1996).  Here, the Complaint does not specify the dates on

---

[17]    *See, e.g.*, *Saggio v. Select Portfolio Svcg., Inc.*, 2015 WL 6760132, at *4, *9-11 (E.D.N.Y. Nov. 5, 2015) (holding that no fiduciary or special duty existed between loan servicer and borrower, where borrower alleged that parties discussed renegotiation of mortgage for over a year and that servicer misrepresented that borrower would be able to keep certain proceeds from FEMA); *Harte*, 2014 WL 4677120, at *15 (dismissing borrower's New York negligent misrepresentation claims because no duty of care existed, where loan servicer gave borrower advice and assigned her two dedicated "relationship managers"); *Wickman v. Aurora Loan Servs., LLC*, 2013 WL 4517247, at *5 (S.D. Cal. Aug. 23, 2013) (dismissing California negligent misrepresentation claim because no duty of care existed, where loan servicer allegedly "misrepresented [borrower's] ability to obtain a loan modification despite the fact [borrower] was receiving unemployment benefits"); *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 452 (D. Md. 2013), *aff'd sub nom.* 546 F. App'x 165 (4th Cir. 2013) (dismissing negligence and negligent misrepresentation claims under Maryland law because relationship between loan servicer and borrower did not establish duty in tort, even though defendants provided plaintiffs with a "Workout Negotiator"); *McCormick v. U.S. Bank, N.A.*, 2013 WL 990946, at *10 (S.D. Cal. Mar. 13, 2013) ("allegations that a lender instructed the borrower to fall behind in their loan payments in order to be considered for a loan modification are also insufficient to establish a legal duty"); *Srinivasan*, 2012 WL 12886504, at *3 (dismissing California negligence claim because no legal duty of care existed, where lender allegedly told borrower "to miss two payments and go into default in order to qualify for a loan modification"); *Amenu-El v. Select Portfolio Servs.*, 2017 WL 4404428, at *2, 5 (D. Md. Oct. 4, 2017) (dismissing Maryland negligence claim because no legal duty of care existed, where borrower alleged that servicer misrepresented that borrower's discharge in bankruptcy made her ineligible for loan modification); *Burdett v. Wells Fargo Bank, N.A.*, 2015 WL 13611833, at *2, 6 (D. Md. Jan. 20, 2015) (dismissing Maryland negligence claim for lack of duty of reasonable care, where borrower alleged that loan servicer "misled Plaintiff to believe that he would not be harmed by choosing to submit the Loss Mitigation Application as opposed to curing his current default"); *Dainty v. Wells Fargo Bank, N.A.*, 2017 WL 750478, at *1, 7 (D. Md. Feb. 24, 2017) (holding that no legal duty existed for Maryland negligence claim, where borrower alleged that loan servicer "provid[ed] guidance on materials to be submitted as part of [borrower's] application" for loan modification), *aff'd*, 708 F. App'x 117 (4th Cir. 2018).

which any of the alleged misrepresentations were made; the names or titles of the Navient representatives who allegedly made them; or how and where they were made. *See* Compl. ¶¶ 42, 45, 55-56, 58-60, 67-68, 77-80, 87, 95-96, 98, 106, 108, 115-117, 124-125. These claims thus should be dismissed. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 891 F. Supp. 2d 548, 553, 555 (S.D.N.Y. 2012) (allegation that misrepresentations started "in or about early May 2008" insufficient to satisfy Rule 9(b)); *Maalouf v. Salomon Smith Barney, Inc.*, 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003) (dismissing negligent misrepresentation claims under Rule 9(b)).

## D. Plaintiffs' Deceptive Practices Claims Fail (Counts XII-XV).

Plaintiffs' claims for deceptive practices fail for several reasons.

*First*, plaintiffs' allegations of misrepresentations and deceptive practices fail to satisfy Rule 9(b). *See* Part II.C above. That is fatal to their claims under the California, Florida, and Maryland Statutes, which are subject to Rule 9(b)'s elevated pleading standards.[18]

*Second*, plaintiffs' claim under the California Statute also fails because loan servicing is excluded from the reach of that statute. *See, e.g.*, *Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1032 (E.D. Cal. 2016) ("[M]ortgage services do not fall within the coverage of the CLRA."); *see also Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 40 (2015) (CLRA's prohibitions do not extend to ancillary services connected with servicing loans); *Mazonas v. Nationstar Mortg., LLC*, 2016 WL 2344196, at *3-4 (N.D. Cal. May 4, 2016) (same); *Griffin v. Green Tree Svcg., LLC*, 166 F. Supp. 3d 1030, 1054-55 (C.D. Cal. 2015) (dismissing CLRA claims against mortgage loan servicer and mortgagee because "mortgage loan

---

[18]     *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (holding that Rule 9(b) applies to CLRA claims that "sound in fraud" and dismissing CLRA claim); *see also Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 681-83 (S.D.N.Y. 2017) (same); *Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (same, for FDUTPA claim); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (same, for MCPA claim against mortgage servicer).

is not a good or service as those terms are defined in the CLRA"); *see also* Cal. Civ. Code §§ 1770(a), 1761(a); *Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 65 (2009).

*Third*, plaintiffs' claim under the Florida Statute similarly fails because that statute also does not apply to loan servicers. *See* Fla. Stat. §§ 501.204(1), 501.203(8); *Blake v. Seterus, Inc.*, 2017 WL 543223, at *2 (S.D. Fla. Feb. 9, 2017) ("Courts have … repeatedly found that the 'trade and commerce' requirement [of the FDUTPA] is often not met in cases dealing with borrowers alleging FDUTPA claims against their mortgage servicers." (internal marks omitted)); *see, e.g.*, *Rodriguez v. Ocwen Fin. Corp.*, 2017 WL 3593972, at *6 (S.D. Fla. Aug. 21, 2017) (defendants' "actions as loan servicers do not qualify as 'trade or commerce' under FDUTPA"); *Benjamin v. Citimortgage, Inc.*, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013) (same); *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) (same).

## CONCLUSION

For the above reasons, the Complaint should be dismissed in its entirety with prejudice.

Dated: New York, NY
      November 30, 2018

Respectfully submitted,

COVINGTON & BURLING LLP

By:   <u>s/ Andrew A. Ruffino</u>
      Andrew A. Ruffino

Alexander Setzepfandt
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
aruffino@cov.com
asetzepfandt@cov.com
Tel.: (212) 841-1000

Ashley Simonsen
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
asimonsen@cov.com
Tel.: (424) 332-4800

*Counsel for Defendants*