IC77HYLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

KATHRYN HYLAND, et al.,

                Plaintiffs,

            v.                          18 Civ. 9031 (DLC)

NAVIENT CORPORATION and
NAVIENT SOLUTIONS, LLC,

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        December 7, 2018
                                        12:20 p.m.

Before:

                    HON. DENISE L. COTE

                                        District Judge

                        APPEARANCES

SELENDY & GAY PLLC
     Attorneys for Plaintiffs
BY:  FAITH GAY
     YELENA KONANOVA
     MARGARET ENGLAND

COVINGTON & BURLING LLP
     Attorneys for Defendants
BY:  ASHLEY SIMONSEN
     ANDREW RUFFINO
     ALEX SETZEPFANDT

IC77HYLC

(Case called)

(In open court)

MS. GAY:  Good morning, your Honor.  Faith Gay for Selendy & Gay.  I would like to introduce my colleagues Yelena Konanova and Margaret England.

MS. SIMONSEN:  Good afternoon, your Honor.  Ashley Simonsen, Covington & Burling, for the defendants, and my colleagues Andrew Ruffino and Alex Setzepfandt.

THE COURT:  Welcome everyone.  I have a motion to dismiss I believe recently filed, and I think a schedule for an amended pleading potentially on January 16.  Do I understand that correctly, Ms. Gay?

MS. GAY:  That's correct, your Honor.

THE COURT:  OK.  And it's unlikely that you will be able to amend again after January 16 in response to any arguments made in the November 30th motion to dismiss.

MS. GAY:  Your Honor, we're fully aware of that and prepared to proceed with that ground rule in mind.

THE COURT:  Thank you very much.

And I have a 26(f) status report, which I looked at in preparation for today's conference, but why don't we just begin with a description of what this case is about.

Ms. Gay?

MS. GAY:  Thank you, your Honor.  And I'm going to defer on the 26(f) discussions to my colleague Ms. Konanova.

IC77HYLC

The case, your Honor, is generally a case on behalf of public servants -- firemen, public defenders, police officers -- who have the ability under a law passed by Congress in 2007 to get loan forgiveness.  Congress recognized that it wanted to encourage two things:  One, for folks to take up public service careers; and, two, recognizing that those folks should be as educated as possible, a public service loan forgiveness program that it envisioned as a mandatory program -- if people wanted to take advantage of it -- after they made 120 qualifying payments.

Under the program, this is how it works:  Students take out a direct loan from the Department of Education.  The Education Department hands off the loan servicing very explicitly to a loan servicer, here Navient.  The Education Department directs the borrowers to speak with Navient or whoever the public loan servicer is about repayment plans or any difficulties they might have.  Navient specifically holds itself out to be able to guide borrowers in dealing with their options for loan repayment, etc.  We've cited examples in the complaint, and we can talk more about that if your Honor is interested.

Navient promises -- promises -- and is required to inform borrowers about their available options for repayment. On the other hand we allege in our complaint -- and this will remain true in our amended complaint -- that Navient's

IC77HYLC

financial incentives are totally misaligned here. Once they hand over -- if someone qualifies for the public service loan forgiveness program, they go to a different servicer and Navient is not paid for that service.

We also allege that their incentives are misaligned because it takes more time, your Honor, to process these loans. When people call with questions about what they can do about loan forgiveness, it's much easier just to direct them to forbearance or other easy-to-sign-up solutions rather than helping them undergo the paperwork to qualify for the 120 payments and then give them at the end of ten years, essentially automatic loan forgiveness if they are public service workers.

THE COURT:  When the loan is forgiven, you don't get your money back.  Or I'm asking, do you get your money back? Or is it just you need make in order further payments?

MS. GAY:  You need make in order further payments. You don't get your money back.  It is a pure paperwork loan forgiven.

And with regard to that -- and of course there may be other reasons that show up in discovery, but that is our allegation, that they have a financial incentive to deny people information, and they have a pattern of affirmatively giving them bad information about public service loan forgiveness.

Your Honor, I think it's very clear to us already at

this early stage -- without discovery -- of the harm that has been occasioned by this.  The program was passed in 2007, so just now in 2017 people are actually eligible to have -- the ten years have passed, and if they had qualifying payments from the start, they should have their loans forgiven.  Only 98 people of 28,000 who applied for public service loan forgiveness -- all of these teachers, policemen, public aid lawyers, I guess 96 -- not even 98 -- out of 28,000 have been able to take advantage of this program that Congress wrote in mandatory language.  And the vast majority of that group, more than 70 percent, is because they did not make the qualifying payments, they did not follow the appropriate procedures.

And the crux of our complaint is that Navient has given these people when they call -- and Navient is the servicer designated by the Department of Education -- they have given them false information about qualifying and going through the appropriate paperwork steps to qualify for public service loan forgiveness.

So, our action is on behalf --

THE COURT:  Could you give me just one example of why someone doesn't qualify who with the right information would.

MS. GAY:  So essentially they do two types of things, your Honor, which we allege.  They either enter into forbearance, where they don't pay at all, instead of making the qualifying payments, so Navient directs them into a forbearance

IC77HYLC

period; or they direct them not to submit the appropriate forms as required in order to make their payments qualifying.  Those are two basic categories -- two basic types of examples.  And we think it's done in a consistent pattern with consistent call scripts.

THE COURT:  Now, the program, the loan forgiveness program, does it require you to make the 120 qualifying payments without any breaks for forbearance?

MS. GAY:  No, your Honor, they just have to be 120 qualifying payments.

THE COURT:  And forbearance being a period of time when you don't have to make any payments or make smaller payments?

MS. GAY:  Correct.

THE COURT:  So, if you were part of a forbearance program -- rightly or wrongly -- you could catch up with your 120 qualifying payments eventually and qualify for loan forgiveness?

MS. GAY:  Eventually, but while you're also racking up additional interest payments, etc. over time, and driving yourself further into what turns out to be a lifetime cycle of debt.

THE COURT:  But if correctly informed, someone may choose that option if they were accurately informed of the options.

IC77HYLC

MS. GAY:  Correct.  Correct.

THE COURT:  OK.

MS. GAY:  So, your Honor, in terms of the classes we are proposing as of the current complaint, it's a nationwide class of borrowers who both contacted Navient and would have monetary damages -- either have done it or will do it -- we're also seeking a nationwide injunctive relief for a class so these practices stop.  And we also have four state subclasses that are based on violations of state consumer protection loans, and those are New York, Maryland, Florida and California at this point in time, your Honor.  And the claims are laid out in the complaint.  I won't go through those for you unless you'd like me to.  Thank you.

THE COURT:  Ms. Gay, I didn't want to cut you off.  So is there other litigation like this?

MS. GAY:  There is other litigation like this, your Honor, but not directly like this.  This is one of two that deals with this particular program for public service employees, and with regard to that, that case is in a much different posture.  I will defer to Ms. Konanova on that.

But there are a number of cases out there both by private individuals and by various AG's offices not in New York, but there are three or four AG actions all concerns student loan servicing, but this one in particular is about the public service program that I just outlined from Congress in

2007, and we are the only one of the two that are seeking a nationwide injunctive relief class as well.

THE COURT:  OK.  So, Ms. Konanova, tell me about the other action.

MS. KONANOVA:  The Daniel action focuses not just, like Ms. Gay said, on a smaller set of plaintiffs, but it requires individuals to be in repayment, so it's a smaller set of individuals that they're trying to protect.

THE COURT:  Where is it filed?

MS. KONANOVA:  The Middle District of Florida.

THE COURT:  And when was it filed?

MS. KONANOVA:  Last year.  And after a very limited discovery -- discovery is soon to close in that action -- a number of motions to compel and a motion for sanctions for noncompliance with discovery orders are also pending in that action.

THE COURT:  OK.  So this Middle District of Florida action, the Daniel action, brings what kind of claim now?

MS. KONANOVA:  Similar claims for violation of the consumer protection laws of the four states.  It's a different subset of states.

THE COURT:  Which states?

MS. KONANOVA:  Colorado, D.C., Illinois and Florida.

THE COURT:  So there is one overlap of Florida again.

MS. KONANOVA:  One overlap of Florida.  And it seeks

IC77HYLC

relief under consumer protection laws as well as a breach of implied contract theory.

THE COURT:  OK.  And you said the theory is slightly different than the theory being pursued here?  Narrower perhaps, I think you said?

MS. KONANOVA:  It's narrower both in terms of the class of plaintiffs because it has more restrictions on what it would take to be a member of that purported class.  You have to actually be in repayment.  Whereas we allege individuals who have been steered into forbearance and are currently in forbearance have also been damaged by Navient's misrepresentations.  We also have a broader set of claims that we are alleging, including our tortious interference with statutorily created expectancy claim.  That is a claim that is not made in any of the other actions, including Daniel.

THE COURT:  Thank you very much.

So, is it Ms. Simonsen?

MS. SIMONSEN:  Yes, your Honor.

So, a bit about the case from Navient's perspective. This lawsuit at its heart is about alleged misrepresentations by Navient customer service representatives relating to federal student loans serviced by Navient pursuant to federal servicing contracts with the Department of Education about a federally offered program, the Public Service Loan Forgiveness Program.

There are two kinds of main points I would highlight

at the outset of this case, and one goes to the points about the alleged misrepresentations, and that's that although this case has been filed as a putative nationwide class action, at its core all of the plaintiffs' allegations come down to individualized allegations of alleged misrepresentations that go to individual conversations between borrowers and Navient customer service representatives.

Resolving each of those claims is going to require highly individualized inquiries into what was said in those conversations, borrower's actual eligibility for public service loan forgiveness, depending on what kind of employers they were working for.  You know, there are allegations in the complaint that Navient drove students into forbearance.  Well, as your Honor points out, for some students forbearance may have been the best option available to them at a particular time in their repayment plan if they couldn't afford to make payments at that time.

There will also be individualized questions about whether a particular borrower qualified for an income driven repayment plan, which is also one of the allegations of the complaint, that Navient didn't provide the borrowers with all of their options for income driven repayment plans.

So, this is all by way of illustrating, your Honor, that although we're not yet at the stage of class certification, we do believe it's going to be an enormous

IC77HYLC

hurdle for plaintiffs to certify a class in this case.

THE COURT:  So, did Navient have a centralized sales office?

MS. SIMONSEN:  Navient has a customer service -- has customer service call centers that respond to calls from borrowers.

THE COURT:  Was there more than one call service center?

MS. SIMONSEN:  I believe there are more than one call service centers, yes.

THE COURT:  Do you know how many?

MS. SIMONSEN:  I think there are probably about five. Maybe around five.  I don't know for sure.

THE COURT:  And roughly how many employees at those five centers?

MS. SIMONSEN:  I do not know the answer to that question.

THE COURT:  I'm sure that changed over time.

MS. SIMONSEN:  Yes.

THE COURT:  So, did those employees work from a script?

MS. SIMONSEN:  As I understand it, they did not.  The Department of Education instructs Navient in its servicing contracts with Navient -- and also in connection with change orders that are issued subsequent to the servicing contracts

IC77HYLC

having been entered -- about how to communicate with borrowers as it relates to public service loan forgiveness, and those instructions have changed over time, but in general the instruction is to refer the borrower to a different loan servicer -- and that different loan servicer is FedLoan Servicing -- or to the federal student aid website which provides information about the Public Service Loan Forgiveness Program.  As we understand it, you know, at this point in time there were not call center scripts that customer service representatives were following.

THE COURT:  So, what kind of questions would be answered then in a call to a call service center -- your client's center?

MS. SIMONSEN:  Well, it could have something to do with any aspect of their student loan.  And these could be federal student loans, they could be private student loans. They could be questions about -- you know, the allegations in this complaint is that they were questions about loan forgiveness programs, but they could also be questions about: I'm having trouble repaying my loan; what are my options?  Do I qualify for an income driven repayment plan?  That sort of thing.  So, it covers a range of topics, and our understanding is that a very small percentage of those conversations actually involve public service loan forgiveness, because this isn't a topic that Navient is going out and raising with borrowers

IC77HYLC

during phone calls.  These subjects would come up if borrowers are asking the questions on a call.

So, the second point I wanted to highlight relates to our primary argument in the motion to dismiss that we filed, which is, that all the plaintiffs' claims -- because they are claims about alleged misrepresentations -- are preempted under the Higher Education Act.  And the Higher Education Act expressly preempts any state law that purports to regulate disclosure requirements.

THE COURT:  And is there court authority regarding this preemption argument?  Have decisions come down responding to this argument?

MS. SIMONSEN:  Yes, they have.  The Ninth Circuit issued a decision in Chae case, in which Navient -- then Sallie Mae -- was also the defendant, holding that alleged misrepresentations under state law are in essence the converse of a disclosure requirement and, therefore, alleged misrepresentations are -- claims based on alleged misrepresentations are expressly preempted by the Higher Education Act.

There have also been a number of lower court decisions cited in our motion to dismiss which have held that alleged misrepresentations very similar to those alleged here are expressly preempted, and that includes alleged misrepresentations very, very similar to this case about a

borrower's eligibility for the Public Service Loan Forgiveness Program.  These other cases also involve alleged misrepresentations, as alleged here, about the availability of income-driven repayment plans, also about allegedly steering borrowers into forbearances.

THE COURT:  Why didn't the Daniel court agree with the preemption argument?

MS. SIMONSEN:  The Daniel court, as I read the decision, determined that because the plaintiff's claims in that case were misrepresentation claims and not claims based on omissions, the court believed that they were not subject to the express preemption provision.  But that holding is a misreading not only of the Ninth Circuit's decision in Chae -- which makes clear that a misrepresentation claim is simply the converse of a disclosure requirement -- it's also in conflict with recent guidance that was issued by the Department of Education this past spring, interpreting, offering its view on preemption in this context, and in that interpretation Ed made clear, specifically endorsed the Chae court's reasoning about how preemption would apply not only to alleged omissions but also to misrepresentation.

The Daniel court also does not appear to have considered the Ed's -- Department of Education's -- recent guidance.  I believe it was brought to the court's attention in supplemental briefing on the motion to dismiss, but it hadn't

IC77HYLC

yet been issued at the time that the motion was briefed.  That may have been why the court did not consider it, but that may have had an impact on the court's decision.

THE COURT:  Thank you.  What else do you wish to share with me, Ms. Simonsen?  Anything else?

MS. SIMONSEN:  Your Honor, I would be happy to walk through the claims and go through some the other reasons why they failed, but the primary argument here is that these claims are preempted under federal law.

THE COURT:  All right.  Thanks.

MS. KONANOVA:  Your Honor, may I have a few moments to respond?

THE COURT:  Ms. Konanova, yes, just briefly if there is anything you want to say.

MS. KONANOVA:  Very briefly, to correct a point about the call scripts.  The audit report done by the Department of Education of Navient in May of 2017, that became public just recently, incorporates a response from Navient to the audit, and it actually references -- and I'm quoting -- "extensive training programs and call flow procedures to guide representative discussions with borrowers".  So, based on that, our position is there are -- they don't call them scripts, they call them call flow procedures that guide call center interactions with borrowers.

THE COURT:  Thank you very much.

IC77HYLC

MS. KONANOVA:  And just on a preemption point, we disagree with the reading of Chae.  A number of courts have held that it only includes disclosure requirements because the state law at issue in Chae was attempting to set forth different requirements for how the student loan servicer had to disclose interest rate calculations.  And so it's just a very different allegation than the allegation that we're making, that the Daniel case is making, which is that Navient was making affirmative misrepresentations misleading borrowers.

A number of courts actually rejected the persuasiveness of the Department of Education's March 2018 interpretive guidance because it was poorly reasoned, because it misread Chae.  That point was made very clearly at the Nelson Seventh Circuit oral argument on this issue just in late October.  So, we don't believe that interpretive guidance has any persuasive value.

THE COURT:  Thank you.  Thank you.

So, I think we don't need to spend a lot of time talking about what schedule we may follow here.  I think everyone needs a ruling on the motion to dismiss, and I will give you that ruling as soon as I can after the briefing is fully submitted.  Then I think we will have another conference if the motion to dismiss is denied.  I understand that in order one wants to engage in mediation before I decide that motion, so I don't need to explore that with you either.

IC77HYLC

OK.  Anything else we need to do, Ms. Gay?

MS. GAY:  No, your Honor.  If we're going to proceed in that manner, we can hold everything else until we see you again.

THE COURT:  Good.  Thanks.

Ms. Simonsen, anything else?

MS. SIMONSEN:  Nothing further from us, your Honor.

THE COURT:  Thank you all.

- - -