**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELDON R. GAEDE, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-09031-DLC |
| Plaintiffs, | |
| v. | |
| NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC, | |
| Defendants. | |

## [PROPOSED] STIPULATED ORDER ESTABLISHING PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Upon agreement of the Parties for an order establishing a protocol for discovery of Electronically Stored Information (the "Stipulation"), Plaintiffs Kathryn Hyland, Melissa Garcia, Eldon R. Gaede, Elizabeth Taylor, Jessica Saint-Paul, Rebecca Splitter-Lawson, Michelle Means, Elizabeth Kaplan, Jennifer Guth, Megan Nocerino, and Anthony Church, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") and Defendants Navient Corporation and Navient Solutions, LLC (collectively, "Navient" or "Defendants") (Plaintiffs and Defendants, collectively, the "Parties"), hereby stipulate and the Court orders as follows:

A.    **DEFINITIONS**

The following terms in this Order shall have the agreed-upon meanings set forth below:

1.    **Electronically Stored Information ("ESI")**:  ESI is to be defined consistent with its meaning under Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

2.    **Keyword Search**:  Keyword Search means a search of the text of ESI for one or more words or set of characters or numbers that are specified by a user.

3.    **Native Format**:  Native Format means the format of ESI in which it was generated or as it is used by the Producing Party in the usual course of its business and in its regularly conducted activities.

4.    **OCR**:  OCR means an optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

5.    **On-Line Repository**:  On-Line Repository means a secure database of documents that makes documents accessible, searchable, and reviewable via the Internet.

6.    **Paper Discovery**:  Paper Discovery means responsive documents and things pursuant to Federal Rules of Civil Procedure 26(b)(1) and 34 which were originally created in paper format and which may or may not have been converted into digital format.

7.    **Producing Party**:  Producing Party means a Party (or non-party that avails itself of this Order) that produces ESI in This Litigation.

8.    **Production Load File**:   Production Load File means a file accompanying any production that facilitates the use of the produced files by a document management or litigation support system.  As specified further below, the Production Load File shall indicate how individual pages belong together as documents, including the parent/child (email/attachment) relationships of documents, and shall provide the agreed-upon metadata fields outlined below.

9.    **Production Media**:  Production Media means documents on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface).

10.    **Receiving Party**:  Receiving Party means a Party to whom ESI is produced.

11.    **Responsive ESI**:  Responsive ESI means ESI that is responsive to a Receiving Party's discovery and relevant under Federal Rule of Civil Procedure 26(b)(1) and the applicable Federal Rules of Evidence and is deemed reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

12.    **Sampling**:  Sampling means the process of testing a designated data set for existence or frequency of Responsive ESI.

13. **This Litigation**: This Litigation means the case captioned *Hyland, et al., v. Navient Corp., et al.,* No. 18-09031-DLC, which is currently pending in the Southern District of New York.

14. **TIFF**:  TIFF (Tagged Image File Format) refers to the Group IV, 300 DPI black-and-white graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

## B.   SCOPE

1. **General**:  The procedures and protocols set forth in this Order shall govern the production of ESI in This Litigation, unless the Parties agree in writing, including email, to change them or they are changed by the Court at the request of a Party.  To the extent that non-parties produce documents in this case, the Parties agree to request that such non-parties adopt this Order.

2. **Scope of Production**:  This Order provides a general framework for the production of ESI.  This Order does not establish any agreement as to either the temporal or subject matter scope of discovery.  The Parties shall meet and confer, as necessary, regarding custodial and non-custodial sources of potentially discoverable documents, including the production of databases or other structured data.

3. **Subsequent Orders**:  This Order shall not preclude subsequent agreements between the Parties relating to ESI, nor shall it preclude any Party from seeking relief from or an amendment to this Order upon a showing of good cause.

4

C.    **COST CONTAINMENT**

1.    **Objective**:  The procedures in this Order pertaining to production of ESI are subject to the development of reasonable and appropriate strategies to minimize the cost and burden that may be associated with production of ESI.

2.    **Keyword Searches**:  The Parties agree that a Producing Party may collect and review documents by conducting Keyword Searches using search terms that have been reasonably calculated in good faith to retrieve Responsive ESI without imposing unreasonable burdens to review irrelevant information.  The Parties will meet and confer in a good faith attempt to resolve any disputes that may arise regarding deficiencies in a Party's electronic document production.

3.    **Sampling**:  The Parties shall meet and confer, as necessary, regarding the scope of ESI subject to electronic discovery.  In the event a disagreement with respect to a data set to be reviewed and produced by a Producing Party exists, the Producing Party may utilize Sampling techniques in order to assist the Parties in making a determination regarding the existence and frequency of Responsive ESI within said data set.

D.    **PRODUCTION**

1.    **Production Format**:  Unless otherwise specified herein, a Producing Party shall produce electronic documents as TIFF images, as described more fully in section D(6).  All productions will include these additional specifications:

a.    An Opticon reference file, or any equivalent thereof that the Parties find mutually agreeable, containing the path and

filename to the image files described in section D(1);

b.   A Concordance delimited load file, or any equivalent format thereof that the Parties find mutually agreeable, identifying the ESI produced in the production and containing (i) the full path and filename to Native Files described further in section D(2), (ii) the path and filename to the document level .txt files described further in section D(1)(c), and (iii) the metadata fields described further in section D(3), unless such fields do not exist in the ordinary course of business, are unduly burdensome to produce, and/or would reveal privileged information; and

c.   Document level .txt files, or any equivalent format thereof that the Parties find mutually agreeable, for all native documents containing extracted searchable text—provided, however, that OCR text can be provided if extracted text is not available (in which case the Parties may meet and confer regarding the reason extracted text is not available) or if the document has been redacted pursuant to this protocol or the Protective Order that the Court will enter in This Litigation.

2.   **Production of Native Format ESI**:

a.   A Producing Party shall produce Excel spreadsheets, database files, audio files, and video files in their Native Format.  For Excel spreadsheets and database files with redactions, the

Producing Party shall produce a copy of the Native File with the relevant portions replaced with "[REDACTED]" or a similar mark. For audio files, including electronic phone recordings, the Producing Party must produce them in the format in which they are maintained in the ordinary course of business along with any metadata that exists in the ordinary course of business that can be reasonably extracted from the audio file. Additionally, any associated transcript for each audio file, if already generated in the ordinary course of business, must be produced. Video files must be produced in the format in which they are maintained in the ordinary course of business along with any metadata that exists in the ordinary course of business that can be reasonably extracted from the video file.

b. If production in Native Format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the Parties will confer in good faith concerning reasonable requests for either the production of the original document for inspection and copying or production of the document in Native Format.

3. **Production of Metadata**: As stated in section D(1)(b), the metadata for produced ESI shall be contained in a Concordance load file.

a. *Audio files.* Any metadata for produced audio files must include

the fields set forth in Appendix 1, to the extent those fields exist in the ordinary course of business and can be reasonably extracted from the audio file.

b.    *Non-Audio Files*.  The metadata for produced ESI other than audio files must include the fields set forth in Appendix 2, where those fields exist in the ordinary course of business and can be reasonably extracted from a document.

c.    To the extent that metadata does not exist, is not reasonably accessible or available, would be unduly burdensome to collect, or would reveal privileged information, nothing in this Stipulation shall require any party to extract, capture, collect, or produce such data.  The Parties are not obligated to populate manually any of the fields in Appendices 1 or 2 if such fields cannot be extracted automatically from a document using standard processing software, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) ConfidDesignation, (6) Custodian, (7) NativeLink (if documents are provided in Native Format), and (8) Source, all of which may be populated by the Party or the Party's vendor.

4.    **De-Duplication**: The Producing Party shall de-duplicate within non-custodial files, or between custodial files and non-custodial files, and the metadata provided in the Production Load File shall indicate from which other source(s) the

8

documents were de-duplicated.   A Producing Party shall de-duplicate exact duplicates based on MD5-Hash value prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved.

5. **Redactions**: To the extent that a document is produced in redacted form, any redactions shall be clearly indicated on the face of the document, and the Production Load File accompanying that document's production should indicate, for each redacted document, that there is a redaction, and the reason(s) for any redaction(s).   Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the non-redacted portions of the document.   The production of a document in a redacted form does not affect the Producing Party's obligation, if any, to properly document and substantiate the assertion of privilege over the content on a privilege log.   Except as provided above in paragraph D(2)(a), documents that are to be produced in Native Format, but that require redactions, may be produced as TIFF images (with extracted text) with the relevant portions redacted, or if a TIFF image production is not technically feasible, the Producing Party may produce a copy of the Native File with the relevant portions replaced with "[REDACTED]" or a similar mark.   If modification of a Native File is required for redaction purposes, metadata information associated with that file should remain unchanged, to the extent possible, unless it also requires redaction.

6. **Document Numbering for TIFF Images**:   Each page of a document

produced in TIFF file format shall have a legible, unique Bates number of up to eight digits electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. The unused digits of the unique number shall be filled with placeholder zeros (0) to facilitate electronic sorting of the documents.  Any Producing Party producing ESI in Native Format, as set forth above, shall produce a slip sheet in Black and White Group IV* TIFF that is endorsed with the Bates number.  If a document is produced subject to a claim that it is protected from disclosure under the Protective Order, the appropriate confidentiality designation, as provided under the Protective Order, shall be burned electronically onto each page of such document.  Any redacted page shall also include the word "Redacted" burned onto the TIFF image at the location of the redaction(s).

7.    **Color**:  Documents containing color need not be originally produced in color.  If an original document contains color necessary to understand the meaning or content of the document, however, the Producing Party shall honor reasonable requests for either the production of an original document for inspection and copying, or production of a color image of the document.

8.    **Appearance and Content**:    Other than as required in this paragraph, no electronic document may be intentionally manipulated to change how the source document would have appeared, without prior agreement of the Receiving Party, except that hidden information (such as redline or comments) will be revealed.  Additionally, all emails will be produced with the BCC field visible, to

the extent it is available with the document.  To the extent reasonably feasible, "dynamic fields" relating to date and time shall be produced showing the field code (*e.g.*, [DATE]), rather than the values for such fields existing at the time the file is processed.  Subject to any appropriate redaction and any revealed hidden information, each document's electronic image shall convey the same information and image as the original document.  This means that font size, bold, italics, underline and other font features shall be maintained.  If a document is illegible or unviewable to the Receiving Party, the Parties shall discuss appropriate measures to address the issue through an agreed-upon resolution, such as, for example, enlarging the font size.

9.    **Production Media**:  The Producing Party shall produce documents on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including but not limited to CD-ROM, DVD, and external hard drive (with standard PC compatible interface or access to a secure On-Line Repository agreed upon by the Parties) or via secure FTP site.  Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production.  The Producing Party shall accompany all document productions with a transmittal cover letter identifying the documents produced.

10.    **Original Documents**:   The Producing Party shall retain native electronic source documents for all ESI produced in This Litigation.  The Producing

Party shall take all reasonable measures to maintain the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of production in the event review of such metadata becomes necessary.

11. **Confidentiality of Produced ESI**:  Nothing in this Order is intended to be inconsistent with the Protective Order that the Court will enter in This Litigation, and where anything in this Order is inconsistent with the terms of the Protective Order, the terms of the Protective Order shall prevail.  If a document is produced subject to a claim that it is protected from disclosure under the Protective Order, the appropriate confidentiality designation, as provided under the Protective Order, shall be burned electronically onto each page of such document.

12. **Third-Party Software**:  To the extent ESI produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with the production of such ESI.  The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

## E.   **MISCELLANEOUS**

1. **English Language**:  To the extent any ESI exists in more than one language, the ESI shall be produced in English, if available.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of a document.

2.    **Duplicate Production Not Required**:  A Party producing ESI in electronic form need not produce the same document in paper format.

3.    **Cooperation**:  The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of ESI, including, but not limited to, database field definitions and structure or document delivery mechanisms.

4.    **Variance**:  Any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing by email or other writing.

5.    **Paper Discovery**:  Nothing in this Order is intended to interfere with, preclude, alter, or otherwise affect the Parties' independent obligations to engage in discovery involving and, where appropriate, produce materials that exist only in paper format.  All paper documents shall be produced as static images.  The images will be black-and-white, single page, 300 DPI, Group IV* TIFF images with corresponding OCR text in document level .txt format and standard load files, which can be used with commercially available litigation software packages. Producing paper documents in such form does not change their character from paper documents into ESI.  All other metadata that does not exist as part of the original document need not be produced for paper documents produced as TIFF images. The Parties shall meet and confer with respect to the unitizing of hard copy documents and grouping of documents into families.

6.    **Replacement Images**:  In the event that an already produced document or set of documents has to be re-produced with a different image or set of

images, the new production shall always maintain the same Bates number for any re-produced documents, with the addition of a suffix at the end of the Bates number.

**CONSENTED TO BY:**

SELENDY & GAY PLLC                    COVINGTON & BURLING LLP

By:   */s/  Lena Konanova*            By:   */s/  Andrew Ruffino*

    Faith Gay                              Andrew Ruffino
    (fgay@selendygay.com)                  (aruffino@cov.com)
    Maria Ginzburg
    (mginzburg@selendygay.com)             COVINGTON & BURLING LLP
    Yelena Konanova                        The New York Times Building
    (lkonanova@selendygay.com)             620 Eighth Avenue
    Margaret Siller                        New York, NY 10018-1405
    (msiller@selendygay.com)               Phone: (212) 841-1000
                                           Fax: (212) 841-1010
    SELENDY & GAY PLLC
    1290 Avenue of the Americas            Ashley Simonsen
    New York, NY 10104                     (asimonsen@cov.com)
    Phone: (212) 390-9040
    Fax: (212) 390-9399                    COVINGTON & BURLING LLP
                                           1999 Avenue of the Stars
    *Attorneys for Plaintiffs Kathryn*      Los Angeles, CA 90067-4643
    *Hyland, Melissa Garcia, Eldon R.*      Phone: (424) 332-4800
    *Gaede, Elizabeth Taylor, Jessica*      Fax: (424) 332-4749
    *Saint-Paul, Rebecca Splitter-*
    *Lawson, Michelle Means, Elizabeth*      *Attorneys for Defendants Navient*
    *Kaplan, Jennifer Guth, Megan*          *Corp. and Navient Solutions, LLC*
    *Nocerino, and Anthony Church,*
    *individually and on behalf of all*
    *others similarly situated*

### **<u>ORDER</u>**

Based on the foregoing Stipulation, and good cause appearing therefore, **IT IS SO ORDERED** this _____ day of _____, 2019.

_____
United States District Judge

**Appendix 1: Audio Metadata & Coding Fields[1]**

| Field Name | Description of Field |
| --- | --- |
| AgentName | Name of agent/employee |
| AgentId | Unique identifier of agent/employee |
| Group | Name for a collection of agents |
| Supervisor | Name of the agent's supervisor |
| Site | Location of call facility |
| DNIS | Dialed Number Identification Service, identifies the number that was originally called |
| Extension | Extension where call was routed |
| CallDirection | Identifies whether the call was inbound, outbound, or internal |
| CallType | Purpose of the call |
| Duration | Duration of call |
| CustomerId | Customer's identification number |
| CustomerCity | Customer's city of residence |
| CustomerState | Customer's state of residence |
| CallDateTime | Date and start time of call (MM/DD/YYYY HH:MM:SS) |
| CustomerName | Name of person called |
| ConfidDesignation | Confidentiality designation |
| FileName | Filename of audio file |
| BegBates | Unique number of the audio file |
| CalledPartyNumber | Call center or phone number called |
| FileSize | File size of audio file |
| CallService | Call service code |

[1] All field codes in these Appendices to be produced only to the extent they exist in the ordinary course of business and can be reasonably extracted.

| HashValue | MD5 or SHA-1 hash value, unique document identifier |
|---|---|
| Custodian | Individual(s) or department(s) from which the recording originated |
| FolderPath | Folder path of the audio file in the original source |
| TimeZone | Time zone of the original call |

**Appendix 2: ESI Metadata & Coding Fields**

| Field Name | Description of Field |
|---|---|
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| Custodian | Individual from whom the document originated |
| AllCustodians | Where a file is de-duplicated, a list of all custodians that had custody of the file |
| AttachmentCount | Number of attachments |
| Author | Author field extracted from the metadata of the native file |
| From | Sender of the email message |
| Recipient(s) | Recipient(s) of the email message (To) |
| CC | Recipient(s) of "carbon copies" of the email message |
| BCC | Recipient(s) of "blind carbon copies" of the email message |
| Subject | Subject field extracted from the metadata of the native file |
| SentDate | Date the email message was sent (produced in "MM/DD/YYYY" format) |
| SentTime | Time the email message was sent |
| PgCount | Page count |
| DateRecvd | Date received |
| DateMod | Date modified |
| PrintDate | Date last printed |
| FileType | Mail, attachment, individual file |
| FileExtension | File extension of document (e.g., .msg, .doc, .xls, etc.) |
| FolderPath | Folder path of the document in the original source |
| FileName | Name of original file |
| Title | Title of a non-email document (Microsoft Title field) |
| HashValue | MD5 or SHA-1 hash value, unique document identifier |

| Field Name | Description of Field |
| --- | --- |
| NativeLink | Relative file path to each native file on production media |
| Date Created | For non-emails (produced in "MM/DD/YYYY" format) |
| ConfidDesignation | Confidentiality designation |
| Source | Name of the producing party |
| Redaction | Indicate "YES" |
| RedactionReason | Reason for the redaction (e.g., Attorney-Client Privilege) |
| TimeMod | Time an electronic file was last modified |
| FileSize | Size of native file/email in KB |
| Company | Company (organization) metadata from electronic files |
| TextPath | Contains path to OCR/extracted text file that is titled after the document BegBates |
| TimeSent | Time email was sent |
| TimeReceived | Time email was received |
| TimeZone | Time zone processed in |
| ConversationIndex | Conversation thread ID/index value |
| ParentID | This field will display the Image Tag / "BegBates" field value of the attachment record's parent |