**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELDON R. GAEDE, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>        Defendants. | No. 18-cv-9031-DLC |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Date:  March 18, 2019

Mark Richard
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
Telephone: (305) 412-8322
E-mail: mrichard@phillipsrichard.com
(*pro hac vice*)

Faith Gay
Maria Ginzburg
Yelena Konanova
Margaret Siller
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 390-9000
E-mail: fgay@selendygay.com
      mginzburg@selendygay.com
      lkonanova@selendygay.com
      msiller@selendygay.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................4

    A.    The Promise Of PSLF ....................................................................................4

    B.    The Misconduct Of Navient............................................................................5

ARGUMENT .............................................................................................................6

I.     BORROWERS' CLAIMS ARE NOT PREEMPTED BY THE HEA ............................6

    A.    The HEA Does Not Expressly Preempt Borrowers' Claims ...................................6

          1.    Claims Based On Affirmative Misrepresentations Are Not Preempted Under § 1098g .................................................................8

          2.    ED's March 2018 Interpretation Of § 1098g Is Not Entitled To Deference ..........................................................................11

    B.    Borrowers' Claims Are Not Subject To Implied Preemption.............................13

    C.    Borrowers Do Not Assert A Private Right Of Action Against Navient In Violation Of The HEA ...................................................................................15

II.    BORROWERS STATE VALID CLAIMS AGAINST NAVIENT ...............................19

    A.    Navient Breached Its Servicing Contracts By Making Misrepresentations To Borrowers Regarding PSLF ....................................................................19

    B.    Navient Tortiously Interfered With Borrowers' Contracts...................................22

    C.    In The Alternative, Navient Breached An Implied Warranty By Making Representations About Its Alleged Expertise .......................................................23

    D.    Navient Tortiously Interfered With Borrowers' Statutorily Created Expectancy Of PSLF....................................................................................25

    E.    Navient Owes A Fiduciary Duty To Borrowers ...................................................27

    F.    Navient Violated State Laws Against Deceptive Practices ..................................28

    G.    Navient Was Unjustly Enriched As A Result Of Its Affirmative Misrepresentations To Borrowers....................................................................30

i

CONCLUSION.........................................................................................................................30

## **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008) ................................................................................................ 7

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
   2019 WL 858770 (D.D.C. Feb. 22, 2019) ...................................... 3, 19, 25, 26

*Anyakora v. Sallie Mae Corp.*,
   255 F. App'x 457 (11th Cir. 2007) ................................................................... 16

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
   870 F.3d 1140 (9th Cir. 2017) ........................................................................... 8

*Astra USA, Inc. v. Santa Clara Cty.*,
   563 U.S. 110 (2011) .................................................................................... 17, 18

*Auer v. Robbins*,
   519 U.S. 452 (1997) .................................................................................... 11, 12

*Auguston v. Spry*,
   282 A.D.2d 489 (2d Dep't 2001) ...................................................................... 30

*Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*,
   265 A.D.2d 513 (2d Dep't 1999) ...................................................................... 22

*Bank of Am., N.A. v. Zaskey*,
   2016 WL 2897410 (S.D. Fla. May 18, 2016) ................................................... 29

*Barbata v. Latamie*,
   2012 WL 2422740 (S.D.N.Y. June 26, 2012) .................................................. 12

*Bates v. Dow Agrosciences LLC*,
   554 U.S. 431 (2005) ............................................................................................ 7

*Bd. of Regents of State Colls. v. Roth*,
   408 U.S. 564 (1972) .......................................................................................... 25

*Beckwith v. Dahl*,
   141 Cal. Rptr. 3d 142 (Cal. Ct. App. 2012) .................................................... 26

*Benjamin v. CitiMortgage Inc.*,
   2013 WL 1891284 (S.D. Fla. May 6, 2013) ..................................................... 29

*Blake v. Seterus, Inc.*,
　　2017 WL 543223 (S.D. Fla. Feb. 9, 2017) ................................................................ 29

*Brown v. La. Office of Student Fin. Assistance*,
　　2007 WL 2296543 (N.D. Tex. Aug. 10, 2007) ......................................................... 16

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
　　580 F. Supp. 2d 273 (S.D.N.Y. 2008) ...................................................................... 21

*Chae v. SLM Corp.*,
　　593 F.3d 936 (9th Cir. 2010) ............................................................. 10, 11, 12, 14

*Chase Bank USA, N.A. v. McCoy*,
　　562 U.S. 195 (2011) ........................................................................................... 11, 12

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
　　467 U.S. 837 (1984) ........................................................................................... 11, 12

*Cipollone v. Liggett Grp., Inc.*,
　　505 U.S. 504 (1992) ............................................................................................. 8, 10

*Cliff v. Payco Gen. Am. Credits, Inc.*,
　　363 F.3d 1113 (11th Cir. 2004) .......................................................................... 14, 15

*Coll. Loan Corp. v. SLM Corp.*,
　　396 F.3d 588 (4th Cir. 2005) ................................................................. 14, 16, 17, 18

*Crawford v. Franklin Credit Mgmt. Corp.*,
　　758 F.3d 473 (2d Cir. 2014) ...................................................................................... 8

*Daniel v. Navient Sols., LLC*,
　　328 F. Supp. 3d 1319 (M.D. Fla. 2018) ..................................................................... 9

*Davis v. Navient Corp.*,
　　2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) ........................................................... 9

*Decker v. Nw. Envtl. Def. Ctr.*,
　　568 U.S. 597 (2013) ................................................................................................. 11

*DePetris & Bachrach, LLP v. Srour*,
　　71 A.D.3d 460 (1st Dep't 2010) ............................................................................... 24

*Devlin v. United States*,
　　352 F.3d 525 (2d Cir. 2003) .................................................................................... 26

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
　　822 F.2d 1242 (2d Cir. 1987) ................................................................................... 28

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
   2008 WL 2428225 (S.D.N.Y. June 13, 2008) ................................................ 21

*E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*,
   758 F.3d 1162 (9th Cir. 2014) ........................................................................ 13

*Edwards v. INS*,
   393 F.3d 299 (2d Cir. 2004)............................................................................ 12

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990)........................................................................................... 18

*Ensign Yachts, Inc v. Arrigoni*,
   2010 WL 918107 (D. Conn. Mar. 11, 2010) ................................................... 21

*Estate of Landers v. Leavitt*,
   545 F.3d 98 (2d Cir. 2008)............................................................................... 12

*Fantozzi v. Axsys Techs., Inc.*,
   2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ................................................... 21

*Fellows v. CitiMortgage, Inc.*,
   710 F. Supp. 2d 385 (S.D.N.Y. 2010)............................................................. 20

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995)......................................................................................... 13

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000)......................................................................................... 15

*Gen. Motors Corp. v. Abrams*,
   897 F.2d 34 (2d Cir. 1990)........................................................................... 7, 8

*Genna v. Sallie Mae, Inc.*,
   2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012).................................. 8, 9, 14, 15

*Goldberg v. Kelly*,
   397 U.S. 254 (1970)......................................................................................... 25

*Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*,
   941 F. Supp. 2d 406 (S.D.N.Y. 2013).............................................................. 19

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003)......................................................................... 17, 18

*Harris v. Tams*,
   179 N.E. 476 (N.Y. 1932)................................................................................ 24

*Harte v. Ocwen Fin. Corp.*,
 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ............................................................. 27

*Hernandez v. Hilltop*,
 622 F. Supp. 2d 842 (N.D. Cal. 2007) ...................................................................... 28

*Hernandez v. Sutter W. Capital*,
 2010 WL 539133 (N.D. Cal. Feb. 8, 2010) ................................................................ 28

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*,
 747 F.3d 44 (2d Cir. 2014) ...................................................................................... 19

*Illinois v. Navient Corp.*,
 17 CH 761 (Ill. Cir. Ct. July 10, 2018) ...................................................................... 9

*In re Bernard L. Madoff Inv. Sec. LLC*,
 779 F.3d 74 (2d Cir. 2015) ...................................................................................... 12

*In re Canon Cameras*,
 2006 WL 1751245 (S.D.N.Y. June 23, 2006) ............................................................ 30

*In re WorldCom, Inc.*,
 723 F.3d 346 (2d Cir. 2013) .................................................................................... 12

*Int'l Paper v. Ouellette*,
 479 U.S. 481 (1987) ................................................................................................ 18

*Jefferson v. Chase Home Fin. LLC*,
 2007 WL 1302984 (N.D. Cal. May 3, 2007) .............................................................. 28

*Kafka v. Hess*,
 2017 WL 2439142 (D. Md. June 6, 2017) .................................................................. 26

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
 2018 WL 5621872 (N.D. Fla. Sept. 20, 2018) ...................................................... 11, 13

*Leberman v. John Blair & Co.*,
 880 F.2d 1555 (2d Cir. 1989) .................................................................................. 22

*Linsley v. FMS Inv. Corp.*,
 2012 WL 1309840 (D. Conn. Apr. 17, 2012) ............................................................. 11

*Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*,
 52 F. Supp. 3d 601 (S.D.N.Y. 2014), *aff'd*, 607 F. App'x 123 (2d Cir. 2015) ............... 22

*Martorella v. Deutsche Bank Nat'l Tr. Co.*,
 931 F. Supp. 2d 1218 (S.D. Fla. 2013) ..................................................................... 29

*McDowell v. CGI Fed. Inc.*,
    2017 WL 2392423 (D.D.C. June 1, 2017)................................................................ 20, 21

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009)................................................................................... 7

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995)............................................................................................ 12

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
    2017 WL 6501919 (S.D. Ill. Dec. 19, 2017)............................................................. 11

*Netrix Leasing, LLC v. K.S. Telecom, Inc.*,
    2001 WL 228362 (S.D.N.Y. Mar. 7, 2001) ............................................................. 21

*Pac. Gas & Elec. Co. v. Energy Res. Comm'n*,
    461 U.S. 190 (1983)............................................................................................ 7

*Parola v. Citibank (S.D.) N.A.*,
    894 F. Supp. 2d 188 (D. Conn. 2012).................................................................. 17, 18

*Pennsylvania v. Navient Corp.*,
    354 F. Supp. 3d 529 (M.D. Pa. 2018)................................................. 9, 11, 12, 13, 15, 18

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)..................................................................... 27

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009)................................................................................ 19, 20

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    136 S. Ct. 1938 (2016)........................................................................................ 7

*Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of N.Y. Mellon*,
    2014 WL 3858469 (S.D.N.Y. July 30, 2014) ........................................................... 21

*Sampson v. Wells Fargo Home Mortg., Inc.*,
    2010 WL 5397236 (C.D. Cal. Nov. 19, 2010)........................................................... 20

*Sanchez v. ASA Coll., Inc.*,
    2015 WL 3540836 (S.D.N.Y. June 5, 2015) ........................................................... 12, 13

*Sanon v. Dep't of Higher Educ.*,
    453 F. App'x 28 (2d Cir. 2011) ........................................................................... 15, 16

*Schmidt & Schmidt, Inc. v. Town of Charlton*,
    68 A.D.3d 1314 (3d Dep't 2009),
    *overruled on other grounds*, 103 A.D.3d 1011 (3d Dep't 2013).............................. 22, 23

vii

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018) ............................................................................... 8

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) .................................................................................... 12, 15

*Solow v. Stone*,
    994 F. Supp. 173 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998) ........................... 23

*Sprint Spectrum L.P. v. Mills*,
    283 F.3d 404 (2d Cir. 2002) ........................................................................... 13, 14

*Student Loan Serv. All. v. District of Columbia*,
    351 F. Supp. 3d 26 (D.D.C. 2018) ............................................................. 11, 12, 13, 15

*United States ex rel. Ladas v. Exelis, Inc.*,
    824 F.3d 16 (2d Cir. 2016) ................................................................................... 28

*United States v. Gorski*,
    2012 WL 12886823 (C.D. Cal. Mar. 22, 2012) ......................................................... 15

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ........................................................................................... 12

*United States v. Locke*,
    529 U.S. 89 (2000) .............................................................................................. 7

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*,
    2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) ........................................................... 23

*Wilder v. Va. Hosp. Ass'n*,
    496 U.S. 498 (1990) ........................................................................................... 25

*Wright v. City of Roanoke Redev. & Hous. Auth.*,
    479 U.S. 418 (1987) ........................................................................................... 25

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ........................................................................................... 15

## Statutes & Regulations

12 U.S.C. § 1831x(c) .............................................................................................. 8

15 U.S.C. § 1334(b) ............................................................................................... 8

20 U.S.C. § 1083(e)(1) ......................................................................................... 8, 9

20 U.S.C. § 1083(f)(2) ........................................................................................... 14

20 U.S.C. § 1087e(m) ............................................................................................ 25

20 U.S.C. § 1098a ................................................................................................. 12

20 U.S.C. § 1098g ............................................................ 2, 6, 8, 9, 10, 11, 12, 13

83 Fed. Reg. 10619 ............................................................................................... 11

Fla. Stat. § 501.203(8) .......................................................................................... 29

Fla. Stat. § 501.204(1) .......................................................................................... 29

**Treatises**

32 Fla. Jur. 2d Interference § 22 ......................................................................... 26

Restatement (Second) of Torts § 774B (1979) .................................................... 26

Restatement (Third) of Agency § 6.10 (2006) ................................................ 23, 24

Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011) ............... 30

**Other**

U.S. Dep't of Educ., Office of Inspector Gen., Federal Student Aid: Additional Actions
      Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for
      Servicing Federally Held Student Loans (2019),
      https://www2.ed.gov/about/offices/list/oig/auditreports/fy2019/a05q0008.pdf ................ 2

## PRELIMINARY STATEMENT

At stake in this case is the financial and emotional well-being of millions of teachers, nurses, public employees, and others who have dedicated their professional lives to public service, taking on substantial student loan debt to obtain the necessary education.  Yet, in the motion to dismiss, Defendants Navient Corporation and Navient Solutions, LLC (collectively, "Navient") attempt to manipulate preemption and other doctrines to shield Navient from any accountability for using—indeed, exploiting—that student debt for their own corporate profits.  The motion to dismiss should be denied.

Navient has held itself out not simply as a servicer, but as an expert on student loans, offering to "help customers understand the complex array of federal loan repayment options so they can make informed choices about the plans that are aligned with their financial circumstances and goals."  Am. Compl. ("AC") ¶ 12.  Navient promised Borrowers[1] to provide "[e]xpert guidance while in school and beyond" with "[h]elp [that] is a phone call away."  *Id*. ¶ 315.  It proclaimed: "We're here to answer your questions [and] provide you with solutions[.]"  *Id.* ¶ 316.

In reality, Navient has done quite the opposite.  It misrepresents Borrowers' options as to the Public Service Loan Forgiveness ("PSLF") program and repayment plans, depriving Borrowers of their statutorily guaranteed entitlement to forgiveness of federal student loan debt after a decade of qualifying payments.  Over and over, Navient falsely informs Borrowers they are "on track" for PSLF when their loan type or repayment plan do not qualify and advises Borrowers not to submit their Employment Certification Forms ("ECF"), preventing Borrowers from pursuing PSLF.  Consequently, countless educators, healthcare professionals, and other public employees, who otherwise should be on track for PSLF, have been sentenced to a lifetime of debt and lost

---

[1] "Borrowers" refers to Named Plaintiffs and all others similarly situated.

years of qualifying payments.  Only 206 out of 41,221 Borrowers who have submitted applications received PSLF, with the vast majority denied because of a failure to meet program requirements—exactly the area of servicer misrepresentations.  At the same time, Navient massively profited, reaping the benefit of its misconduct by keeping accounts of Borrowers that would otherwise be transferred to another servicer and cutting costs by encouraging the shortest possible calls with Borrowers, steering them into the easiest-to-administer repayment options—not PSLF.

Navient's betrayal of public employees is not only morally repugnant but also violates the law.  Still, Navient attempts to sweep its misconduct under the rug and avoid accountability under state law by arguing Borrowers' claims are preempted by Title IV of the Higher Education Act of 1965 (the "HEA") and are legally deficient.  Those efforts should fail.  The need to right this wrong is all the more pressing given the Department of Education ("ED") Office of Inspector General's recent report of widespread "instances of servicers' not servicing federally held student loans in accordance with Federal requirements," which ED is failing to mitigate.[2]

Borrowers' claims are not preempted by the HEA.  Navient takes the untenable position that in the HEA—a statute aimed at making it easier to go to college—Congress intended to immunize loan servicers from any and all claims alleging that a servicer lied and took advantage of Borrowers.  Navient's argument has been rightly rejected by a majority of courts that considered it because 20 U.S.C. § 1098g—the express preemption provision of the HEA—displaces only State "disclosure requirements" and does not preclude Borrowers' claims arising under state laws prohibiting loan servicers from making affirmative misrepresentations.  Nor does the HEA bar

---

[2] U.S. Dep't of Educ., Office of Inspector Gen., Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans 2 (2019), https://www2.ed.gov/about/offices/list/oig/audit-reports/fy2019/a05q0008.pdf.

Borrowers' claims under any implied preemption doctrine: State laws prohibiting Navient from affirmatively misrepresenting information do not conflict with, or present an obstacle to, federal law, nor do they create an otherwise barred right of action.

Nor does the hodge-podge of other theories Navient advances bar Borrowers' claims. *First*, as evidenced by the language of the contracts and the policy underlying their execution, Borrowers are intended third-party beneficiaries of Navient's Servicing Contracts with ED, which expressly require, among other things, that Navient comply with federal and state law—which it has utterly failed to do. *Second*, an agent may be liable for independent tortious acts that interfere with its principal's contract—here the Borrower's Master Promissory Note ("MPN")—when the agent acts outside the scope of its agency, as Navient did here by making false representations as to PSLF eligibility and repayment programs. *Third*, Navient now contends that it was never authorized to give the very advice it purported to offer—going so far as to remove statements from its website after this lawsuit was filed. But, as pled in the alternative, if Navient did not have a contractual obligation to advise Borrowers, it breached an implied warranty of authority when it held itself out as the Borrowers' trusted advisor acting on ED's behalf, inducing Borrowers to rely on its servicing advice to their financial detriment. *Fourth*, Borrowers' tortious interference with expectancy claim is a recognized common law tort, and PSLF is a statutorily created property right. *See, e.g.*, *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 2019 WL 858770, at *23 (D.D.C. Feb. 22, 2019). *Fifth*, by holding itself out as a student loan expert and inducing Borrowers to rely on it, Navient assumed a duty of care to Borrowers, which it violated by making affirmative misrepresentations. *Sixth*, Navient is subject to liability under the California and Florida consumer protection laws because it engaged in conduct over and above simple debt collection. *Finally*, Navient

was unjustly enriched with servicing fees by preventing the transfer of Borrowers' PSLF-eligible loans to another servicer. Navient's motion to dismiss should be denied.

## BACKGROUND

### A.     The Promise Of PSLF

In 2007, Congress created the PSLF program to encourage students aspiring to careers in public service to do so without succumbing to a lifetime of debt. AC ¶¶ 251-52. Relying on that promised safeguard, millions of students took out federal loans—more than a decade later, federal student loans account for over 90% of outstanding student loan debt (approximately $1.44 trillion out of $1.56 trillion). *Id.* ¶¶ 1, 208. The scope of the promised impact of this program cannot be overstated—there are as many as 32 million individuals potentially eligible for PSLF. *Id.* ¶ 19. Sadly, the program's goals remain elusive. Only 206 out of 41,221 individuals who have submitted applications received forgiveness so far, with the vast majority denied because of a failure to meet program requirements—squarely the purview of servicers. *See id.* ¶¶ 19-20.

That is not at all what Congress envisioned. The PSLF program was designed to forgive loan balances on Direct Loans (loans originated by the federal government directly to borrowers) after 120 on-time Borrower payments under a qualifying repayment plan while working full-time for a qualifying employer. *Id.* ¶¶ 6, 254. Recognizing the unique financial constraints faced by public servants, Congress also ensured that Borrowers could enter into qualifying income-driven repayment ("IDR") plans, allowing them to make proportionately lower monthly payments while making progress toward forgiveness. *Id.* ¶¶ 7, 27, 240. To safeguard that progress, ED encourages Borrowers to submit an ECF as early as possible to confirm whether the Borrower possesses qualifying loans, is employed in a qualifying job, and is in a qualifying repayment plan. *Id.* ¶¶ 31, 33. Once an ECF is approved and the Borrower is on track for PSLF, the Borrower's federal loan

servicing is transferred away from Navient to FedLoan Servicing ("FedLoan").  *Id.* ¶ 31.

    **B.**    **The Misconduct Of Navient**

    Navient is a private for-profit student loan servicer under contract with ED to provide Borrowers with the guidance necessary to navigate the complexities of repayment and PSLF.  ED instructs Borrowers to "maintain contact" and to discuss repayment options and PSLF with their servicer:  "Your loan servicer will be able to help" determine "whether one of these plans is right for you."  *Id.* ¶¶ 302, 304, 307.  In the limited portions of the Servicing Contracts that are publicly disclosed, ED requires Navient "to manage all types of [federal] student aid obligations, including … servicing and consolidation of outstanding debt," in compliance with "all statutory and legislative requirements," purporting "to strengthen incentives for [servicers] to provide excellent customer service and help borrowers stay up-to-date on their payments."  *Id.* ¶¶ 286, 291, 297.

    The Servicing Contracts, in Navient's own words, require Navient to act "for the benefit of the borrower."  Mot. 6.  Indeed, before this suit, Navient expressly promised Borrowers that it would carry out the responsibilities bestowed upon it by ED.  It aimed to "[l]everag[e] four decades of expertise" to "help customers understand the complex array of federal loan repayment options so they can make informed choices about the plans that are aligned with their financial circumstances and goals."  AC ¶ 12.  Navient offered Borrowers "[e]xpert guidance while in school and beyond," with "[h]elp [that] is a phone call away."  *Id.* ¶¶ 315, 317.  It told Borrowers: "We're here to answer your questions [and] provide you with solutions[.]"  *Id.* ¶ 316.  Notably, Navient removed these statements from its website after this lawsuit was filed.  *Id.* ¶¶ 14-15, 315-16.

    Heeding those directions, Borrowers routinely seek advice from Navient, only to be stymied at every turn.  *Id.* ¶ 35.  Navient incorrectly tells Borrowers that they are "on track" for PSLF when they have the wrong loan type or are in the wrong repayment program; others are dissuaded by Navient from submitting ECFs to discover whether they are "on track;" and still others are

actively persuaded to take steps to stop making qualifying payments, such as entering forbearance. *Id.* ¶ 17.  As a result, Borrowers are forced to make excess payments, accrue unpaid interest on their loan principal, or lose PSLF eligibility altogether.  *Id.* ¶ 34.

Navient's misconduct is no accident:  Navient's incentives remain drastically misaligned with the intended beneficiaries of the Servicing Contracts—the Borrowers whose loans it services. Most glaringly, because Navient receives a flat fee per loan, it must cut costs to increase its profits, which it does by reducing the amount of time its employees spend on calls with Borrowers.  *Id.* ¶¶ 24-25.  Former Navient employees reported a target of less than 7 minutes per call, *id.* ¶ 25— obviously insufficient to assist Borrowers, present appropriate options, and advise on program requirements.  Instead, Navient's employees rush Borrowers into non-qualifying plans, deferments, or forbearances—actions done over the phone, without any paperwork.  *Id.* ¶¶ 28-29; 335- 38.  Moreover, assisting a Borrower with PSLF results in that Borrower being transferred to Fed Loan and Navient relinquishing any servicing fees associated with that Borrower.  *Id.* ¶¶ 31, 321.

The PSLF program was intended to encourage students to choose and remain in public service careers despite lower pay.  *See id.* ¶¶ 36-37, 253.  Navient's misconduct deprives Borrow ers of the benefits of the program by condemning them to a lifetime of debt, all in the service of Navient's profits.  This suit aims to make things right.

## **ARGUMENT**

## I.    **BORROWERS' CLAIMS ARE NOT PREEMPTED BY THE HEA**

### A.    **The HEA Does Not Expressly Preempt Borrowers' Claims**

Section 1098g provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] shall not be subject to any disclosure requirements of any State law."  20 U.S.C. § 1098g.  Navient wrongly argues (Mot. 7-13) that this section expressly

preempts Borrowers' claims.  But Borrowers' claims are based solely on Navient's affirmative misrepresentations to Borrowers—historically regulated by the States' police powers—rather than Navient's failure to comply with disclosure requirements regulated by federal law.

The Supremacy Clause empowers, but does not require, Congress to preempt state laws, *see Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008); thus, the "'purpose of Congress is the ulti-mate touchstone,'" *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (quoting *United States v. Locke*, 529 U.S. 89, 107 (2000)).  Courts are required to presume Congress did not intend to preempt state laws enacted pursuant to the States' "historic police pow-ers" unless it was the "clear and manifest purpose of Congress."  *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1990) (citing *Pac. Gas & Elec. Co. v. Energy Res. Comm'n*, 461 U.S. 190, 206 (1983)).  "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States."  *Altria Grp.*, 555 U.S. at 77.  A state law enacted pursuant to the States' historic police powers and within a field traditionally regulated by the States is preempted ***only*** if that is the ***sole*** plausible reading of the preemption clause; if the "preemption clause is ambiguous or open to more than one plausible reading, courts 'have a duty to accept the reading that disfavors pre-emption.'"  *N.Y. State Rest. Ass'n*, 556 F.3d at 123 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

This heightened presumption against preemption applies here because laws aimed at pro-tecting consumers are part of the historic police powers of the States and fall within "a field tradi-tionally regulated by the [S]tates." *Gen. Motors Corp.*, 897 F.2d at 41.[3]  The central focus of state

---

[3] Contrary to Navient's assertion (Mot. 8, 12-13), the presumption against preemption of laws is not affected by *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938 (2016).  Unlike the HEA, the statute in *Franklin* was not enacted pursuant to state historic police powers.  Other Circuits have continued to apply the presumption for laws enacted pursuant to those powers.  *See,*

consumer protection law, and negligent misrepresentation, is the prohibition of false statements of material fact or affirmative misrepresentations. *See, e.g.*, *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014). Those are the state laws Borrowers seek to enforce. The HEA separately mandates certain "[r]equired disclosures during repayment," such as "current balance" and "interest rate," 20 U.S.C. § 1083(e)(1); Borrowers do not assert violations of state laws setting forth any alternative "required disclosures."

### 1.   Claims Based On Affirmative Misrepresentations Are Not Preempted Under § 1098g

The language of § 1098g makes clear that Congress did not intend "disclosure requirements of any State law" to encompass state prohibitions on affirmative misrepresentations; at minimum, it does not demonstrate Congress's "clear and manifest" intent to preempt such prohibitions. *See Gen. Motors Corp.*, 897 F.2d at 41. Rather, by preempting "requirements," not "prohibitions," Congress seized on the well-established distinction between laws requiring disclosure and those prohibiting misrepresentations. *See, e.g.*, 12 U.S.C. § 1831x(c)(1), (2) (distinguishing disclosure requirements and prohibitions on affirmative misrepresentations); 15 U.S.C. § 1334(b) ("No requirement or prohibition based on smoking and health shall be imposed under State law….").[4]

Numerous courts have held that state law claims based on affirmative misrepresentations are not expressly preempted under the HEA. For example, in *Genna v. Sallie Mae, Inc.*, a borrower sued his servicer for making false statements about his enrollment in an auto-pay program. 2012 WL 1339482, at *1-2 (S.D.N.Y. Apr. 17, 2012). Judge Sand held the statements at issue "were

---

*e.g.*, *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018); *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1146 (9th Cir. 2017).

[4] In *Cipollone v. Liggett Group, Inc.*, the plurality held certain state law fraudulent misrepresentation claims preempted by 15 U.S.C. § 1334(b) ***only because*** Congress clearly drafted the statute to expressly preempt "both requirements and ***prohibitions***." 505 U.S. 504, 527 (1992) (emphasis added). In contrast, here, § 1098g does not reference State prohibitions.

neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law" and "nothing in the HEA [] standardizes or coordinates how a customer service representative of a third-party loan servicer like Sallie Mae shall interact with a customer like Genna in the day-to-day servicing of his loan." *Id.* The court explicitly distinguished between affirmative misrepresentations made in day-to-day servicing—conduct challenged in *Genna* and here—and a servicer's written statements made pursuant to explicit federal law, not at issue here. *Id.* at *8; *see also Davis v. Navient Corp.*, 2018 WL 1603871, at *3 (W.D.N.Y. Mar. 12, 2018) ("[T]o the extent that plaintiff's claims arise from Navient Solutions' unregulated conduct over the telephone, they are similar to those in *Genna*, and are not subject to express preemption.").

Courts in other Circuits agree. In *Daniel v. Navient Solutions, LLC*, borrowers challenged a servicer's false statements regarding eligibility for PSLF. 328 F. Supp. 3d 1319 (M.D. Fla. 2018). There, the state law claims were not preempted by § 1098g because "Plaintiffs [we]re not claiming that Defendant merely failed to disclose the requirements of the PSLF program, but rather … that Defendant made affirmative misrepresentations to them." *Id.* at 1324; *see Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 549-50 (M.D. Pa. 2018) (holding § 1098g does not preempt "state consumer protection law" claims based on "unfair and deceptive conduct").[5]

All the allegations here arise from Navient's affirmative misrepresentations. Specifically:

- Navient "doesn't do" PSLF when Borrowers serviced by Navient are eligible for PSLF;

---

[5] The court in *Pennsylvania* quoted another decision finding that "'claims concerning practices related to enrolling borrowers in repayment plans … are not "restyled disclosures" because the core of the [] allegations is that Navient schemed to steer borrowers into forbearances, not just that Navient failed to disclose the availability of IDR plans.'" 354 F. Supp. 3d at 551 (quoting *Illinois v. Navient Corp.*, No. 17 CH 761, at *12-13 (Ill. Cir. Ct. July 10, 2018)). In other words, § 1083(e)(1)(I)'s required disclosure that "the borrower has the option to change repayment plans" is drastically different from a servicer's affirmative misrepresentation that a borrower is eligible for or would benefit from a particular repayment plan.

- Borrowers were on track for PSLF when in fact they had ineligible FFEL Loans (that must be consolidated into qualifying Direct Loans) or were not in a qualifying repayment plan;

- There were no income-driven options for repayment and that forbearance was the right choice, without properly walking Borrowers through IDR plans;

- Borrowers' payments must be consecutive to qualify, which is not true;

- Multiple part-time jobs were not eligible for PSLF, which is not true; and

- Borrowers should not submit their ECFs until after 120 payments, which is also not true.

AC ¶¶ 17, 35, 414, 435.  For example, for three years, Navient informed Ms. Hyland she was "on track" for PSLF when, in fact, she had ineligible FFEL loans.  *Id.* ¶ 35.  Similarly, despite knowing Ms. Garcia sought PSLF, Navient directed her into forbearance and the extended repayment plan— neither of which qualifies for PSLF.  *Id.*  Those are just two examples of Navient's affirmative misrepresentations.  Borrowers do not make any allegations that Navient failed to disclose information or otherwise to fulfill a duty to speak; thus, no laws requiring disclosure are at issue.

In arguing for express preemption, Navient relies almost entirely on a misguided application of *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), which—contrary to Navient's assertions—shows that state law claims for fraudulent and deceptive practices are ***not*** expressly preempted.[6]  In *Chae*, plaintiffs alleged that Sallie Mae's practices of calculating interest, assessing late fees, and setting the repayment dates violated California's consumer protection statute.  *Id.* at 938.  The court found these state law claims to be preempted because the federally-mandated written billing statements were regulated by a "federal statutory and regulatory scheme."  *Id.* at 942-

---

[6] The reasoning in *Chae* is itself suspect, as *Chae* misapplies *Cipollone* by ignoring a key sentence of the decision.  *Chae* states that a "***prohibition*** ... 'is merely the converse' of a state-law ***requirement*** that alternate disclosures be made."  *Chae*, 593 F.3d at 943 (emphasis added) (quoting *Cipollone*, 505 U.S. at 527).  But the very next sentence of *Cipollone*—not cited in *Chae*—explains that the federal law at issue "pre-empts ***both requirements and prohibitions***."  *Cipollone*, 505 U.S. at 527 (emphasis added).  Contrary to *Chae*, the state laws in *Cipollone* were preempted not because prohibitions are the converse of requirements, but because the federal law expressly preempted ***both*** categories.  Here, because § 1098g preempts "disclosure ***requirements***," only state laws imposing requirements—not prohibitions—are preempted.

43.  Continuing, the court held claims of "fraudulent and deceptive practices apart from the billing statements" were *not* expressly preempted and "not impacted by any … express preemption provisions."  *Id*. at 943.  Here, no federally-regulated written disclosure requirements are at issue—only Navient's deceptive practices in making affirmative misrepresentations not regulated by federal law.  Navient's remaining cases (Mot. 9-10) rely on an incorrect reading of *Chae*.[7]

### 2.  ED's March 2018 Interpretation Of § 1098g Is Not Entitled To Deference

Navient further argues (Mot. 10-12) this Court should defer to ED's March 2018 Interpretation of § 1098g.  That is meritless.  At least three courts have declined similar invitations.  *See, e.g.*, *Student Loan Serv. All. v. District of Columbia* ("*SLSA*"), 351 F. Supp. 3d 26, 48-49 (D.D.C. 2018); *Pennsylvania*, 354 F. Supp. 3d at 552 (certificate of appealability granted); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 2018 WL 5621872, at *3 (N.D. Fla. Sept. 20, 2018).  And Navient cites no decision in which a court accorded any controlling weight to the Interpretation.

Navient mistakenly relies (Mot. 10-11) on *Auer* deference as its *sole* basis for according controlling weight to the Interpretation.  *Auer* deference does not apply here; it attaches only "[w]hen an agency interprets its own regulation."  *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 613 (2013); *see Auer v. Robbins*, 519 U.S. 452, 461-63 (1997).  The Interpretation purports to express ED's view of § 1098g, a federal statute, not ED's own regulation.  *See* 83 Fed. Reg. 10619-01, 10621 (Mar. 12, 2018); *see also Lawson-Ross*, 2018 WL 5621872, at *3 ("Because the Interpretation is one interpreting a federal statute, … *Auer* deference does not apply.").[8]  "*Chevron*

---

[7] Two of the decisions are on appeal. *See Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 2018 WL 5621872 (N.D. Fla. Sept. 20, 2018).  *Linsley v. FMS Inv. Corp.*, 2012 WL 1309840 (D. Conn. Apr. 17, 2012), involved written statements explicitly governed by HEA regulations, unlike here.

[8] Navient's cases (Mot. 11) deferring to agency "interpretive letters and amicus briefs" are inapposite.  In *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 197, 210 (2011), the Court deferred

deference is the deference afforded to an agency's interpretation of a statute…." *Edwards v. INS*, 393 F.3d 299, 308 n.11 (2d Cir. 2004); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Navient has forfeited any argument as to *Chevron* deference by failing to assert it in its opening brief. *See, e.g.*, *Barbata v. Latamie*, 2012 WL 2422740, at *2 (S.D.N.Y. June 26, 2012) (Cote, J.) (rejecting argument first raised in reply).[9]

Navient argues in the alternative (Mot. 11-12) that the Interpretation is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Navient is wrong because the Interpretation does not have "the 'power to persuade'" as required by *Skidmore*. *Id.* at 140. An agency's interpretation is unpersuasive when the position it espouses "is novel" and "inconsistent with its positions in other cases." *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 83 (2d Cir. 2015). The *SLSA* court demonstrated in detail that ED's view in the Interpretation "represents a stark, unexplained change" from prior ED positions. 351 F. Supp. 3d at 50. ED's preemption position careened from expansive in *Chae*, 593 F.3d at 949, to limited in *Sanchez v. ASA College, Inc.*, 2015 WL 3540836 (S.D.N.Y. June 5, 2015), back to expansive in the Interpretation. *See SLSA*, 351 F. Supp. 3d at 50. That inconsistency led *SLSA* to conclude the Interpretation "is a retroactive, ex-

---

under *Auer* to an agency interpretation of its own regulation, not a statute. Deference was appropriate in *NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Co.*, 513 U.S. 251, 256-57 (1995), only because of "longstanding precedent" that Congress delegated unique authority to the Comptroller of the Currency in the National Bank Act, *United States v. Mead Corp.*, 533 U.S. 218, 231 n.13 (2001), which Congress has not delegated to ED in the HEA.

[9] If this Court were to consider the issue, "the Supreme Court has made clear that official agency interpretations lacking the force of law are not entitled to *Chevron* deference." *In re WorldCom, Inc.*, 723 F.3d 346, 358 (2d Cir. 2013). An agency acts with the force of law when it follows the "formal administrative procedure" prescribed by Congress. *Mead Corp.*, 533 U.S. at 230; *see also Estate of Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008). ED indisputably failed to satisfy the notice and comment procedures provided for in 20 U.S.C. § 1098a when it issued the Interpretation; therefore, it cannot displace this Court's authority to interpret § 1098g under *Chevron*. *See SLSA*, 351 F. Supp. 3d at 49 (*Chevron* deference not applicable because ED "did not undergo the proper rulemaking procedures"); *Pennsylvania*, 354 F. Supp. 3d at 552 (refusing "to adopt … [the] Interpretation whole cloth, as it is an informal statement of interpretation of the HEA").

post rationalization for [ED's] policy changes, and therefore does not merit *Skidmore* deference." *Id.*; *accord Pennsylvania*, 354 F. Supp. 3d at 552.[10]

The cases Navient offers in support of *Skidmore* deference are unpersuasive.  *Lawson-Ross*'s analysis is cursory; it does not confront the inconsistency between ED's Statement in *Sanchez* and the Interpretation.  2018 WL 5621872, at *3.  Navient admits *E.M. ex rel. E.M. v. Pajaro Valley Unified School District Office of Administrative Hearings*, 758 F.3d 1162, 1173-74 (9th Cir. 2014), analyzed two ED interpretations of a different federal law, rendering that case irrelevant to whether the Interpretation is persuasive.  Moreover, the interpretations at issue in *E.M.* were over twenty years old by the time the case was decided, indicating ED's position was long-held and consistent.  *See id.* at 1172-74.  By contrast, ED has taken three different positions on the scope of § 1098g in less than a decade.  *See SLSA*, 351 F. Supp. 3d at 50.

## B.    Borrowers' Claims Are Not Subject To Implied Preemption

Navient argues (Mot. 13-16) Borrowers' claims are barred by conflict preemption.  This argument is equally meritless.  As Navient acknowledges, implied preemption analysis begins with *Freightliner Corp. v. Myrick*, which recognized an express preemption clause "supports a reasonable inference" that "Congress did not intend to pre-empt … matters" outside the scope of that clause.  514 U.S. 280, 288 (1995); *see, e.g.*, *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 415 (2d Cir. 2002) ("[W]here the federal statute contains 'a provision explicitly addressing [preemption], …' preemption is restricted to the terms of that provision.'" (quoting *Freightliner*, 514 U.S. at 288)).  Congress's inclusion of § 1098g in the HEA gives rise to such a reasonable inference.

---

[10] Contrary to Navient's assertion (Mot. 16 n.4), *SLSA* acknowledged *Sanchez* "involv[ed] a for-profit college's lending practices."  351 F. Supp. 3d at 50.  There is no material distinction between for-profit colleges and loan servicers in this context; the text of § 1098g draws none.

The sole statute Navient argues conflicts with Borrowers' claims is titled "Consequences of nondisclosure"; it precludes any "claim for civil damages" based on "[t]he failure of an eligible lender to provide information as required." 20 U.S.C. § 1083(f)(2).  As explained above, Borrowers' claims are based on Navient's affirmative misrepresentations, not on any failure by Navient to provide information; § 1083(f)(2) is thus irrelevant.  Therefore, unlike in *Chae*, in which the Ninth Circuit outlined actual conflicts between state law claims and specific ED regulations regarding late fees, repayment start dates, and interest-rate calculations, 593 F.3d at 938, 947-50, Navient has not identified any regulation with which Borrowers' claims conflict.

Instead, Navient's implied preemption claim reduces to arguing that Congress designed "the HEA to establish a uniform set of rules and regulations governing federal lending programs." Mot. 13.  Couched by Navient as "conflict preemption," the argument that general notions of "uniformity" preclude any state law claims is correctly described as field preemption.  Multiple courts have easily rejected similar arguments conflating conflict and field preemption under the HEA. For example, in *Genna*, Sallie Mae "argue[d] that state law claims must be [conflict] preempted lest they interfere with the levers and pulleys of the federal statutory scheme" of the HEA.  2012 WL 1339482, at *9.  Judge Sand concluded that "cut[] too broad a swath" and was, "in effect," an argument for "field preemption" under the HEA, which courts have uniformly rejected.  *Id.*; *see, e.g.*, *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 596 n.5 (4th Cir. 2005) ("[I]t is clear that Congress could not have intended the HEA to so 'occupy the field' that it would automatically preempt all state laws."); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1126 (11th Cir. 2004) ("[T]he HEA does not 'occupy the field'…..").  More recently, the court in *Pennsylvania* rejected this exact argument, explaining that simply prohibiting Navient from engaging in "unfair or deceptive conduct" in servicing would not undermine "the standard parameters of the federal

student loan programs." 354 F. Supp. 3d at 553.  The court also acknowledged that Navient's "uniformity"-based argument would require the court to find field preemption, which courts have consistently rejected.  *Id.*[11]

Navient also argues (Mot. 15) yet again for deference to ED's Interpretation.  In the conflict preemption context, however, courts do not "defer[] to an agency's ***conclusion*** that state law is pre-empted" and only give "'some weight' to an agency's views about the impact of [state] law on federal objectives when 'the subject matter is technica[l] and the relevant history and background are complex and extensive.'"  *Wyeth v. Levine*, 555 U.S. 555, 576 (2009) (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 883 (2000)).  Even then, "[t]he weight" accorded "depends on [the agency's] thoroughness, consistency, and persuasiveness."  *Id.* at 577; *see also SLSA*, 351 F. Supp. 3d at 49.  Here, Borrowers' claims arise under well-established common law principles and consumer protection laws, and the affirmative misconduct is providing misinformation to borrowers—not complex, technical issues requiring deference to agency expertise.  *Cf. Geier*, 529 U.S. at 883 (deference warranted in case involving technical vehicle safety features).[12]

### C.  Borrowers Do Not Assert A Private Right Of Action Against Navient In Violation Of The HEA

Navient contends (Mot. 16-18) that by failing to include a federal private right of action in the HEA, Congress impliedly barred Borrowers' state law claims for breach of contract, implied warranty of authority, and tortious interference with both the MPN contracts and statutorily created expectancy.  This argument, too, misapplies congressional intent underlying the HEA.

Navient begins with the undisputed proposition that the HEA "does not provide student

---

[11] *United States v. Gorski*, 2012 WL 12886823, at *1, *7-8 (C.D. Cal. Mar. 22, 2012), a non-binding decision rejecting in one paragraph a *pro se* borrower's counterclaim as conflict preempted, is unpersuasive in light of contrary, considered authority in *Genna* and *Pennsylvania*.

[12] As explained above, the Interpretation does not deserve *Skidmore* deference.

borrowers a private right of action to enforce its provisions."  Mot. 16 (quoting *Sanon v. Dep't of Higher Educ.*, 453 F. App'x 28, 30 (2d Cir. 2011) (summary order)).  Borrowers agree, which is why they assert state law claims, not direct claims under the HEA.  *Cf. Sanon*, 453 F. App'x at 30 (dismissing claims brought directly under HEA).[13]  But Navient goes much further—asking this Court to find that Congress impliedly barred state law claims that refer to violations of the HEA.  At bottom, this argument is another unfounded attempt to manufacture field preemption from the HEA.  In fact, the Fourth Circuit in *College Loan Corp.*, 396 F.3d at 598, rejected this exact argument, explaining that "the fact that only [ED] is authorized to enforce the HEA" does not "compel the conclusion that … state law claims, relying in part on violations of the HEA or its regulations, will obstruct the federal scheme" and should be barred.  The court considered it "obvious" that a claim for breach of a contract term in which the parties "***expressly agreed*** to comply with the HEA" is actionable.  *Id.*  The contrary position would permit student loan servicers "to enter into a contract that invoked a federal standard as the indicator of compliance" and then "proceed to breach its duties thereunder and to shield its breach by pleading preemption."  *Id.*  Navient has not come close to establishing Congress intended such a result.

As in *College Loan*, Navient breached express, bargained-for provisions in the Servicing Contracts to adhere to federal standards and to "support servicing of all Direct Loans," which includes PSLF.  *See* AC ¶¶ 411-12.  These promises are sufficient to sustain Borrowers' Servicing

---

[13] *Anyakora v. Sallie Mae Corp.*, 255 F. App'x 457 (11th Cir. 2007) (per curiam) and *Brown v. Louisiana Office of Student Financial Assistance*, 2007 WL 2296543 (N.D. Tex. Aug. 10, 2007) are inapplicable here.  *See* Mot. 17 n.5.  In both cases, a *pro se* plaintiff brought claims directly under the HEA, with a series of "peripheral" theories premised on the same conduct.  *Anyakora*, 255 F. App'x at 457; *see Brown*, 2007 WL at 2296543, at *2.  Both courts summarily concluded that each plaintiff's HEA claims were barred for want of a private right of action.  *Anyakora*, 255 F. App'x at 457; *Brown*, 2007 WL at 2296543, at *2.

Contract claims independent of any violations of the HEA, and there is no indication that Congress intended the HEA to preempt claims based on Navient's violations of its agreements.

*Parola v. Citibank (South Dakota) N.A.*, 894 F. Supp. 2d 188 (D. Conn. 2012), is distinguishable.  There, the plaintiff sued her student loan lender (not servicer) for breach of the MPN contract's "Governing law" provision.  *Id.* at 196.  In dismissing the claim, *Parola* distinguished *College Loan*, reasoning that "[u]nlike the [contract] in *College Loan* which was negotiated at arms-length by both parties, the MPN is a document drafted by [ED] and its use is mandated by statute."  *Id.* at 197.  Therefore, because Citibank was required to use the MPN, it did not specifically "covenant to comply with the HEA."  *Id.*  That is simply not the case here, where Navient expressly agreed to abide by the HEA and related regulations in the Servicing Contracts it negotiated at arms-length with ED.  *See* AC ¶¶ 285-89.

*Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003), which arose in a materially different statutory context, is similarly irrelevant.  There, the plaintiffs brought a breach of contract claim, instead of invoking administrative remedies under the Davis-Bacon Act.  *Id.* at 83-85.  Because Congress had adopted a "regulatory scheme providing administrative remedies," the court held the plaintiffs' contract claims are "inconsistent with the underlying purpose of the legisla[tion]" and barred them as "indirect attempts at privately enforcing" the Davis-Bacon Act.  *Id.* at 85-86.  Likewise, in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), the Supreme Court barred state claims only after finding compelling evidence in the federal statutory and regulatory scheme of "the incompatibility of private suits with" the congressionally-adopted Medicaid Drug Rebate Program.  *Id.* at 121.  *Grochowski* and *Astra USA* are inapposite here because there is no federal remedial scheme outlined in the HEA.

In fact, as the court in *College Loan* explained, in the HEA context, "the availability of a

state law claim is even ***more*** important" because "no federal private right of action exists."  396 F.3d at 598. "[I]t would be difficult to believe" that "Congress would without comment, remove all means of recourse for those injured by illegal conduct" in the HEA.  *Id.*  Here, Navient has failed to identify any statutory or administrative HEA remedial scheme analogous to those in *Grochowski* and *Astra USA*, from which it would be reasonable to infer Congress considered Borrowers' state law claims inconsistent with the underlying purpose of the HEA.  Rather, given the structure of the HEA statutory scheme, "the states are … entitled to impose more stringent common law and statutory requirements in areas regulated by [the HEA], so long as such requirements are not incompatible with those established under federal law," which is the case here.  *See id.* at 599 (citing *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498 (1987)).

*College Loan* also demonstrates why Borrowers' claim for tortious interference with the MPN contracts survives.  That court "authorized state tort claims" in the HEA context because the claims were not inconsistent with the statutory scheme, even though "such claims [were] in some manner premised on violations of federal regulations."  *Id.* at 598-99 (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 85 (1990)).  Similarly, Borrowers' tortious interference with MPN claim reflects Navient's violations of the HEA but also alleges more.  *See, e.g.*, AC ¶ 434 (Navient intentionally induced breach of the MPN Contracts); *id.* ¶ 435 (Navient "gave [B]orrowers incorrect and misleading information").  Nothing about Borrowers' claim, premised on Navient's affirmative misrepresentations, interferes with the HEA.  *See Pennsylvania*, 354 F. Supp. 3d at 553 ("The uniformity of the HEA … is not harmed by prohibiting unfair or deceptive conduct in the operation of those programs that is not explicitly permitted by the HEA[.]").  *Parola*, which only considered breach of contract claims, does not refute this point.  *See* 894 F. Supp. 2d at 196-98.

The remaining claims Navient moves to dismiss on this basis—breach of an implied

warranty of authority and tortious interference with expectancy—do not rely on any violation of

the HEA.  Borrowers allege Navient breached its implied warranty of authority by "purporting to

act as an advisor and agent on behalf of [ED]" and "repeatedly [giving] borrowers … inaccurate

and misleading information about their options for income-driven repayment plans and their eli-

gibility for PSLF," not by violating the HEA.  AC ¶ 423.  Borrowers also allege Navient tortiously

interfered with a statutory expectancy by making those misrepresentations.  *Id.* ¶¶ 444-47.  Federal

law is relevant only insofar as it confers PSLF benefits on Borrowers and creates a statutory ex-

pectancy in a property interest.  *See id.* ¶¶ 421, 441; *Am. Bar Ass'n*, 2019 WL 858770, at *23.

## II.   BORROWERS STATE VALID CLAIMS AGAINST NAVIENT

Navient's remaining challenges to Borrowers' claims fail.

### A.   Navient Breached Its Servicing Contracts By Making Misrepresentations To Borrowers Regarding PSLF

Navient also contends that Borrowers' breach of contract claim fails because Borrowers

(i) are not third-party beneficiaries of Navient's Servicing Contracts with ED and (ii) have failed

to identify a specific term that was breached.  That is false.  "[A] plaintiff claiming to be the

intended third party beneficiary of a government contract must show [i] that he was intended to

benefit from the contract and [ii] that third-party beneficiary claims are consistent with the terms

of the contract and the policy underlying it."  *Grand Manor Health Related Facility, Inc. v. Ham-

ilton Equities Inc.*, 941 F. Supp. 2d 406, 418 (S.D.N.Y. 2013).  Both prongs are met here.  The

Servicing Contracts "'clearly evidence[] an intent to permit enforcement'" by Borrowers.  *Hillside

Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (quoting

*Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)).  The Contracts require

Navient to "manage all types of … student aid obligations" and to provide "high levels of customer

satisfaction," AC ¶¶ 286, 289, 292 (quoting the Servicing Contracts)—all, in Navient's own words,

"for the benefit of the borrower," Mot. 6.  When those terms are breached, Borrowers are harmed.
*See, e.g.*, *Sampson v. Wells Fargo Home Mortg., Inc.*, 2010 WL 5397236, at *3 (C.D. Cal. Nov. 19,
2010) ("[T]he intended beneficiaries of such an agreement, whose objective is to modify mort-
gages and to prevent foreclosures, are homeowners at risk of foreclosure.").  Moreover, when en-
tering into the Servicing Contracts, ED made clear its intent was to ensure Navient provided "ex-
cellent customer service" to "***help borrowers stay up-to-date on their payments***," such "that ***bor-
rowers receive the highest quality support***[.]" AC ¶ 297 (emphasis added).  Thus, the contract
terms and the underlying policy are consistent with Borrowers as third-party beneficiaries.

Navient's arguments to the contrary are misleading.  Borrowers do not have to be specifi-
cally identified as third-party beneficiaries.  *See Sampson*, 2010 WL 5397236, at *2.  Navient cites
*Fellows v. CitiMortgage, Inc*. to argue that courts have rejected borrowers as third-party benefi-
ciaries of servicing guides but fails to mention that the guide at issue there expressly disclaimed
borrowers as third-party beneficiaries.  710 F. Supp. 2d 385, 406 (S.D.N.Y. 2010) ("Servicing
Guide unambiguously states that a borrower, like Fellows, is ***not*** 'intended to be a legal beneficiary
of the [servicing contract] or to obtain any such rights or entitlements through our lender commu-
nications [including the servicing guide].'").  Here, no such disclaimer is present.

Finally, Navient erroneously claims the Borrowers failed to identify the specific breached
terms of the Servicing Contracts.  That is false.  *See* AC ¶¶ 286, 289, 291-93, 296 (breached terms
include, but are not limited to, requirements that Navient obey all statutory and regulatory provi-
sions, fulfill certain compliance activities, and manage all types of student aid obligations).  In any
event, the complete Servicing Contracts are "voluminous—spanning more than 600 pages"
(Mot. 6) and are not publicly available.  Therefore, Borrowers' claims cannot be dismissed at this
juncture.  *See, e.g.*, *McDowell v. CGI Fed. Inc*., 2017 WL 2392423, at *7 (D.D.C. June 1, 2017)

(whether plaintiff is an intended beneficiary is dependent "on the specific language contained in the contract … that should not be resolved in deciding the Motion to Dismiss when the contract is not before the Court"); *Netrix Leasing, LLC v. K.S. Telecom, Inc*., 2001 WL 228362, at *11 (S.D.N.Y. Mar. 7, 2001) (party should have the opportunity to conduct discovery to determine whether the contract establishes third-party beneficiary status).

Navient incorrectly argues (Mot. 19-20) that Borrowers' alternative claim for breach of the implied covenant of good faith and fair dealing fails because (i) there is no contract between the parties and (ii) it is based on the same facts as the breach of contract claim.  *First*, contract privity is not required because Borrowers are third-party beneficiaries.  *See, e.g*., *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 284 (S.D.N.Y. 2008) (denying motion to dismiss implied covenant claim where plaintiff "alleges that he is the third-party beneficiary of a contract"); *Netrix Leasing*, 2001 WL 228362, at *11 (same); *see also Ensign Yachts, Inc v. Arrigoni*, 2010 WL 918107, at *12 (D. Conn. Mar. 11, 2010) ("If a plaintiff adequately pleads third party beneficiary status under a contract, it may assert a claim for breach of the covenant of good faith and fair dealing.").  *Second*, "[a] claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative." *Fantozzi v. Axsys Techs., Inc.*, 2008 WL 4866054, *7-8 (S.D.N.Y. Nov. 6, 2008).  Alternative pleading is especially appropriate because "the scope[] or meaning of the contract is in dispute." *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of N.Y. Mellon*, 2014 WL 3858469, at *4 (S.D.N.Y. July 30, 2014); *see also E*Trade Fin. Corp. v. Deutsche Bank AG*, 2008 WL 2428225, at *26 (S.D.N.Y. June 13, 2008) ("[B]ecause the meaning of the parties' contract has yet to be determined, it is too soon to address whether the plaintiffs' claim of breach of the covenant of good faith and fair dealing is duplicative.").  The

21

scope of the contract will determine whether Navient acted "in a manner that, although not expressly forbidden by any contractual provision," deprived Borrowers of the "right to receive the benefits under the[] agreement." *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 265 A.D.2d 513, 514 (2d Dep't 1999); *see also Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014), *aff'd*, 607 F. App'x 123 (2d Cir. 2015) ("The covenant 'precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.'") (quoting *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989)).

### B.   Navient Tortiously Interfered With Borrowers' Contracts

Navient's arguments as to why Borrowers' claim for tortious interference with the MPN between Borrowers and ED should be dismissed are unavailing. Navient incorrectly argues that Borrowers failed to cite a provision of the MPN with which it interfered. In fact, Borrowers alleged interference with the Governing Law provision,[14] which requires compliance with HEA and ED regulations, and the Borrower's Rights and Responsibilities Statement, which guarantees the availability of IDR plans and PSLF, among other things. AC ¶¶ 221-32; Exs. 7, 8. By making affirmative misrepresentations, Navient prevented ED from meeting its contractual duties under the MPN to provide Borrowers with access to IDR plans and PSLF.

Navient also argues that, as an agent of ED, it cannot be held liable for tortiously interfering with its principal's contract. That is incorrect. An agent can be liable for tortious interference if it acts outside the scope of its authority or does "not act in good faith and commits independent torts or predatory acts directed at another for personal pecuniary gain." *Schmidt & Schmidt, Inc. v. Town of Charlton*, 68 A.D.3d 1314, 1316 (3d Dep't 2009) (internal quotation marks omitted) (denying defendant agent's summary judgment motion as to tortious interference claim because

---

[14] Navient admits "plaintiffs reference the 'Governing Law' provision" of their MPN. Mot. 22.

agent interfered with plaintiff's contract with principal), *overruled on other grounds*, 103 A.D.3d

1011, 1014-15 (3d Cir. 2013); *see also Solow v. Stone*, 994 F. Supp. 173, 182 (S.D.N.Y.

1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998) ("To the extent that [agents] caused [third-party] to

breach the contract with plaintiff, they did so in the exercise of th[eir] authority.").  Navient has

acted outside the scope of its authority and committed independent tortious acts by making mis-

representations about PSLF eligibility for its gain and, in doing so, tortiously interfered with the

MPN. *See* AC ¶¶ 17, 24-31.[15]

### C.     In The Alternative, Navient Breached An Implied Warranty By Making Representations About Its Alleged Expertise

Navient argues (Mot. 20-21) that Borrowers are precluded from asserting claims for breach

of the implied warranty of authority as an alternative to their claim for breach of the Servicing

Contracts, because Borrowers have supposedly failed to allege an attempt by Navient to bind its

principal, ED.   Navient is wrong, because its actions did, in fact, bind its principal, inducing Bor-

rowers to modify their contracts with ED by opting into new, less favorable repayment plans.  *See*

AC ¶¶ 21-23.  In any event, the law is quite clear that:

> A person who purports to make a contract, ***representation***, or con-
> veyance ***to or with a third party on behalf of another person, lack-
> ing power to bind that person, gives an implied warranty of au-
> thority*** to the third party and is subject to liability to the third party
> for damages for loss caused by breach of that warranty, including
> loss of the benefit expected from performance by the principal ….

---

[15] *Wellington Shields & Co. LLC v. Breakwater Investment Management LLC*, 2016 WL 5414979
(S.D.N.Y. Mar. 18, 2016) (Mot. 23, 24), is distinguishable.  The court granted defendant's motion
for summary judgment as to plaintiff's tortious interference with contract claim because the record
was devoid of evidence that defendant had any intention of interfering, "especially since it [wa]s
not clear that [defendant] even ***knew*** of [p]laintiff's contract with [third party]." *Id.* at *7.  In
contrast, Borrowers have alleged that Navient is aware of the MPNs and intentionally interfered
with the MPNs by misrepresenting information regarding repayment plans and PSLF.  AC ¶¶ 428-
39.

Restatement (Third) of Agency § 6.10 (2006) (emphasis added).  As the Commentary suggests, "[a]n agent's implied warranty of authority is a solution to a problem otherwise confronted by third parties who deal with persons whom they believe to act as agents with power to bind a principal." *Id.*, cmt. b.  Without private remedies to discourage individuals from exceeding the scope of their agency, rogue agents, like Navient, would doubtless "be tempted to act beyond the bounds imposed by the principal's manifestation of assent to that agent, in the hope that, if the transaction turns out to be advantageous for the principal, the principal will ratify what the agent has done."  *Id.*

Consistent with the Restatement, courts have allowed claims for breach of the implied warranty to proceed where an alleged agent purports to represent a principle to third parties, induces them to act on its false authority, and causes injury.  *See Harris v. Tams*, 179 N.E. 476, 478 (N.Y. 1932) (affirming "the[] well-established rules" that an "agent is liable to the injured party for all damages which flow naturally from reliance upon the agent's assertion of authority"); *see also DePetris & Bachrach, LLP v. Srour*, 71 A.D.3d 460, 462 (1st Dep't 2010) (firm stated a "viable claim for breach of the implied warranty of authority" where purported agent represented the principal would cover the firm's legal fees but agent "lacked the authority to bind the [principal]").

These principles apply with equal strength here.  Prior to this suit, Navient prominently and explicitly touted its alleged expertise and role as a trusted resource upon which Borrowers should rely for advice in assessing how to manage their student loans.  After the suit was filed, Navient removed a number of these statements from their website.  AC ¶¶ 14-15, 315-16.  And now, it argues in its brief that giving advice to Borrowers is outside the scope of its Servicing Contracts and it is just a paper-pusher, responsible for processing loan payments and little else. *See, e.g.*, Mot. 2, 25-26 ("[A]lthough Navient is dedicated to helping borrowers navigate the numerous and complex options available to them under federal student loan programs[,]" it does "not

24

owe the alleged duties to borrowers upon which these claims are premised."). If the Servicing Contracts do so limit Navient's role, then it exceeded the scope of its agency when it held itself out both as ED's servicer and a trusted advisor. When it induced Borrowers to modify their loan repayment terms on that basis, Navient was liable for the harm it caused—prolonging or worsening Borrowers' indebtedness by steering them away from PSLF. *See* AC ¶¶ 21-23.

> **D.     Navient Tortiously Interfered With Borrowers' Statutorily Created Expectancy Of PSLF**

By enacting the College Cost Reduction and Access Act ("CCRAA"), an amendment to the HEA, Congress provided borrowers, who work in the public sector and make ten years of qualifying payments, a property interest in PSLF. *Am. Bar Ass'n*, 2019 WL 858770, at \*23 (the PSLF statute "creates [property] rights for those borrowers who are entitled to benefits under the PSLF program"). The law states: "the Secretary [of Education] ***shall*** cancel the balance of interest and principal due … on any eligible Federal Direct Loan … for a borrower who …. has made 120 monthly payments." 20 U.S.C. § 1087e(m) (emphasis added). By "set[ting] out guidelines for [ED] to follow in determining [PSLF eligibility]," Congress created an entitlement to PSLF that is "'sufficiently specific and definite to qualify as an enforceable right … and [i]s not ... beyond the competence of the judiciary to enforce.'" *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 511-12 (1990) (quoting *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 432 (1987)); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined."); *Goldberg v. Kelly*, 397 U.S. 254, 261 (1970) (a public benefit is a "matter of statutory entitlement for persons qualified to receive them"). Borrowers thus have a statutorily guaranteed expectancy in PSLF with which Navient has interfered.

Intentional interference with expectancy of an entitlement, specifically an expected inheritance, is a common law tort. *See Devlin v. United States*, 352 F.3d 525, 540 (2d Cir. 2003) ("[O]ne's interest as a beneficiary or heir is sufficient to support liability in tort…."); Restatement (Second) of Torts § 774B (1979). Borrowers' allegations meet all elements for an intentional interference with expectancy claim: (i) the existence of an expectancy; (ii) reasonable certainty that the expectancy would have been realized, but for the interference; (iii) intentional interference with that expectancy; and (iv) damages. *See* 32 Fla. Jur. 2d Interference § 22; *Kafka v. Hess*, 2017 WL 2439142 (D. Md. June 6, 2017); *Beckwith v. Dahl*, 141 Cal. Rptr. 3d 142, 156 (Cal. Ct. App. 2012). ***First***, as discussed *supra*, the CCRAA creates an expectancy for public servants with federal student loan debt. *See Am. Bar Assoc.*, 2019 WL 858770 at *23 ("The PSLF statute grants an entitlement to debt relief for borrowers determined to be eligible …."). ***Second***, Borrowers would have realized their PSLF entitlement after 120 qualifying payments but for Navient's affirmative misrepresentations. AC ¶¶ 431-34. ***Third***, because Navient made knowing misrepresentations to Borrowers, Navient acted intentionally. *Id.* ¶¶ 444-45. ***Fourth***, as a result of Navient's intentional interference, Borrowers have suffered damages in the form of the loss of the benefit of PSLF. *Id.* ¶¶ 448-49.

Navient incorrectly argues (Mot. 23-24) that Borrowers failed to allege its interference was intentional. Borrowers have sufficiently pled that Navient intentionally interfered by knowingly misrepresenting information regarding PSLF eligibility and repayment plans to Borrowers. Navient deliberately prevented Borrowers from meeting PSLF eligibility requirements to avoid relinquishing its servicing fees for PSLF borrower loans, AC ¶¶ 31-32, and to maximize its revenue by minimizing the length of calls with Borrowers, *id.* ¶¶ 24-25. Navient should not be permitted to line its pockets at the expense of Borrowers' statutorily guaranteed PSLF benefit.

### E.    Navient Owes A Fiduciary Duty To Borrowers

Navient argues (Mot. 25-26) that although it "is committed to helping borrowers navigate the complex and numerous options available to them under the federal government's student loan programs," it does not owe a fiduciary or legal duty to borrowers.  That is untenable, especially considering Navient actively held itself out as an expert advisor in student loan programs, inducing Borrowers to rely on it for guidance.  AC ¶¶ 461-66.  Navient established a relationship of confidence and trust by virtue of its specialized knowledge, Borrowers' lack of expertise, and Navient's affirmative solicitation of Borrowers' reliance on its advice, thereby creating Navient's fiduciary duty and duty of care as required for claims for breach of fiduciary duty, negligence, and negligent misrepresentation.  *See, e.g.*, *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 195-200 (S.D.N.Y. 2006) (denying motion to dismiss as to: (i) breach of fiduciary duty claim because defendant had superior expertise and "held itself out … as having policies and procedures to ensure" accuracy of information provided to investors; and (ii) negligence and negligent misrepresentation claims because defendant was aware investors would rely on the provided information and its marketing materials).  By making affirmative misrepresentations to Borrowers regarding IDR plans and PSLF with the knowledge that Borrowers would rely on such information, Navient breached that duty.  AC ¶¶ 459-66, 471-72, 477-80.

Navient cites *Harte v. Ocwen Financial Corp.*, 2014 WL 4677120, at *15-16 (E.D.N.Y. Sept. 19, 2014), and other similar cases (Mot. 26 n.18) for the proposition that loan servicers generally do not owe a fiduciary or legal duty of care to borrowers.  All of those cases are inapposite—they do not involve affirmative inducements to rely on the servicer's advice, which courts like *Pension Commission* have found sufficient to allege a duty.

Finally, Navient argues (Mot. 27) that Borrowers did not plead their negligent misrepresentation claim with the requisite particularity under FRCP 9(b), which requires "fair notice" of a

claim.  *U.S ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25-26 (2d Cir. 2016).  Borrowers detail—in

over 120 paragraphs—the substance of Navient's misrepresentations to the Named Plaintiffs,

when they were made, and how the Named Plaintiffs relied upon them to their detriment.  AC

¶¶ 35, 43-166, 480.  Those allegations sufficiently place Navient on notice to defend its conduct.

Moreover, because Navient has recordings of every call with the Borrowers, the facts constituting

the misrepresentations are peculiarly within Navient's knowledge and readily obtainable by Na-

vient.  *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247-48 (2d Cir. 1987).

### F.   Navient Violated State Laws Against Deceptive Practices

Navient contends (Mot. 28) that Borrowers' deceptive practices claims fail because loan

servicing is excluded from the California ("CLRA") and Florida ("FDUTPA") statutes.[16]  That is

incorrect.  Borrowers adequately allege claims under CLRA and FDUTPA because Navient's in-

teractions with Borrowers went beyond mere servicing and debt collection, extending to advising

Borrowers and managing their obligations.

CLRA applies to a transaction "where the lenders' interaction with the borrower goes be-

yond a contract to extend credit," such as being involved in "developing, securing and maintain-

ing" a loan.  *See Hernandez v. Sutter W. Capital*, 2010 WL 539133, at *4 (N.D. Cal. Feb. 8, 2010)

(quoting *Hernandez v. Hilltop*, 622 F. Supp. 2d 842, 851 (N.D. Cal. 2007)).  In *Hilltop*, the court

concluded CLRA applied because the defendants "advis[ed] plaintiffs and manag[ed] their loan."

622 F. Supp. at 851.  Similarly, in *Jefferson v. Chase Home Finance LLC*, the loan transactions

involved "more than the provision of a loan; they also include [the] financial services [of managing

the loan]."  2007 WL 1302984, at *2-3 (N.D. Cal. May 3, 2007).  Here, Navient's conduct far

exceeds mere debt collection or extension of credit.  Navient is obligated to advise and inform

---

[16] Navient's Rule 9(b) argument fails for the reasons described above.  *See* Part II.E, *supra*.

Borrowers about their loans, including available repayment options and eligibility for PSLF.  AC ¶¶ 286, 292, 297, 303, 422, 530.  The cases on which Navient relies (Mot. 28-29), involve defendants engaging in traditional mortgage servicing and are thus inapposite.

Similarly, FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  "Trade or commerce" includes "[a]dvertising, soliciting, providing, offering, or distributing … any good or service[.]"  *Id*. § 501.203(8).  Like CLRA, FDUTPA applies in cases in which lenders employ deceptive practices ***beyond*** the mere collection of debt or exercise of a legal right by "[a]dvertising, soliciting, providing, offering, or distributing" a service.  *See, e.g.*, *Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *11 (S.D. Fla. May 18, 2016) (FDUTPA applied when servicer wrongfully demanded the purchase of insurance "to confuse and frustrate [plaintiff's] efforts to resolve [an] error committed by" the defendants); *Martorella v. Deutsche Bank Nat'l Trust Co*., 931 F. Supp. 2d 1218 (S.D. Fla. 2013) (FDUTPA applied where defendants wrongly quadrupled monthly escrow and refused to accept correct payment).  That is what Borrowers allege here.

The cases cited by Navient (Mot. 29), are irrelevant because the defendants—who merely attempted to collect a debt or enforce a legal right—did not "advertise, solicit, provide, offer or distribute" anything to the plaintiffs.  *See Blake v. Seterus, Inc*., 2017 WL 543223, at *2 (S.D. Fla. Feb. 9, 2017) (no FDUTPA claim against "defendant who is simply collecting a debt"); *Benjamin v. CitiMortgage Inc*., 2013 WL 1891284 (S.D. Fla. May 6, 2013) (no FDUTPA claim where defendant "proceeded to take efforts to enforce the terms of [a] mortgage").  In contrast, in addition to its debt collection efforts, Navient "provide[d]" and "offer[ed]" a service by assuming an obligation to advise and inform Borrowers about their loans; thus, Navient's deception occurred in "trade or commerce."  *See* AC ¶¶ 286, 292, 297, 303, 422.

29

### G.    Navient Was Unjustly Enriched As A Result Of Its Affirmative Misrepresentations To Borrowers

Navient incorrectly argues (Mot. 24) that because ED pays its loan servicing fees—which generated $148 million in servicing revenue for Navient in 2018 alone[17]—no benefit was conferred on Navient at Borrowers' expense.  But an unjust enrichment claim does not require plaintiff to bestow the benefit directly on defendant.  *See* Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011) (requiring "'a benefit conferred by the plaintiff on the defendant' [is] seriously out of place in any discussion of restitution of wrongful gain"); *In re Canon Cameras*, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006) (unjust enrichment "do[es] not require … direct benefit … on the defendant").  Navient was unjustly enriched by receiving servicing fees for loans that would have been transferred to FedLoan but for Navient's misconduct.  AC ¶ 321.  Navient also maximized its revenue at the Borrowers' expense by minimizing the length of calls—to no more than seven minutes—and distributing false information.  *Id*. ¶¶ 24-25.  It is unequitable for Navient to retain the benefit of those fees, which it would not have collected had it been truthful.

Navient's argument that Borrowers cannot assert an unjust enrichment claim because the MPN governs "any dispute over whether plaintiffs paid excess principal and interest" (Mot. 25), is disingenuous.  Borrowers' claim is not based on excess principal and interest payments but on the servicing fees Navient received from preventing the transfer of Borrowers' loans to FedLoan.[18]

### CONCLUSION

Navient's Motion to Dismiss the Amended Class Action Complaint should be denied.

---

[17] Navient Corp., 2018 Annual Report (Form 10-K) (released Feb. 26, 2019).

[18] Navient asserts (Mot. 17) both that it is not bound by the MPN and that an unjust enrichment claim is barred because the MPN governs this dispute.  Navient cannot have it both ways.  In any event, Borrowers are permitted to plead unjust enrichment in the alternative.  *See Auguston v. Spry*, 282 A.D.2d 489, 491 (2d Dep't 2001).

Dated:   March 18, 2019                    Respectfully submitted,
         New York, NY
                                           SELENDY & GAY PLLC


                              By:   */s/  Faith Gay*
Mark Richard (*pro hac vice*)       Faith Gay
PHILLIPS, RICHARD & RIND,           Maria Ginzburg
P.A.                                Yelena Konanova
9360 SW 72 Street, Suite 283        Margaret Siller
Miami, FL 33173                     SELENDY & GAY PLLC
Telephone: (305) 412-8322           1290 Avenue of the Americas
E-mail:                             New York, NY 10104
mrichard@phillipsrichard.com        Telephone: (212) 390-9000
                                    E-mail: fgay@selendygay.com
                                            mginzburg@selendygay.com
                                            lkonanova@selendygay.com
                                            msiller@selendygay.com


                                    *Attorneys for Plaintiffs*