**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELDON R. GAEDE, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH, individually and on behalf of all others similarly situated, | Case No. 18-CV-09031 (DLC) |

Plaintiffs,

v.

NAVIENT CORPORATION and NAVIENT
SOLUTIONS, LLC,

Defendants.

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

COVINGTON & BURLING LLP

1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Tel.: (424) 332-4800

The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel.: (212) 841-1000

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

I.     THE HIGHER EDUCATION ACT PREEMPTS PLAINTIFFS' CLAIMS. ................... 1

       A.     Section 1098g of the HEA Expressly Preempts Plaintiffs' Claims. ...................... 1

       B.     Plaintiffs' Claims Are Subject to Conflict Preemption. ........................................ 5

       C.     ED's Recent Interpretation Confirms that Plaintiffs' Claims Are
              Preempted. ............................................................................................................ 6

II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE
       GRANTED. ........................................................................................................................ 7

       A.     Plaintiffs' Breach of Contract, Implied Warranty of Authority, and
              Interference Claims Fail for Multiple Reasons (Counts I-IV). ............................. 7

              1.     Plaintiffs' Claims Are End-Runs Around the Absence of a Private
                     Right of Action in the HEA. ...................................................................... 7

              2.     Plaintiffs Do Not and Can Not Allege Essential Elements for
                     Third-Party Beneficiary Recovery (Count I). ............................................ 9

              3.     Plaintiffs' "Implied Warranty of Authority" Claim Fails (Count II). ........ 10

              4.     Plaintiffs Fail to Allege Essential Elements of Their Claim for
                     Tortious Interference with Their MPN Contracts (Count III). ................. 10

              5.     "Tortious Interference with Statutorily Created Expectancy" Does
                     Not Exist (Count IV). ............................................................................... 12

       B.     Plaintiffs Cannot Sue for Unjust Enrichment Because They Conferred No
              Benefit on Navient and Their MPN Contracts Govern (Count V). ...................... 12

       C.     Loan Servicers Do Not Owe Tort Duties to Borrowers (Counts VI-XI). ............. 13

       D.     The Deceptive Practices Statutes Plaintiffs Invoke are Inapplicable to
              Navient's Loan Servicing (Counts XII-XV). ......................................................... 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alborzian v. JPMorgan Chase Bank, N.A.*,
  235 Cal. App. 4th 29 (2015) ...................................................................14

*American Bar Ass'n v. United States Dep't of Educ.*,
  2019 WL 858770 (D.D.C. Feb. 22, 2019) ..............................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................11

*Association des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
  870 F.3d 1140 (9th Cir. 2017) ..................................................................2

*Astra USA, Inc. v. Santa Clara Cty., Cal.*,
  563 U.S. 110 (2011)...............................................................................7, 8

*Bank of Am., N.A. v. Zaskey*,
  2016 WL 2897410 (S.D. Fla. May 18, 2016) ..........................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................11

*Brooks v. Sallie Mae, Inc.*,
  2011 WL 6989888 (Conn. Super. Ct. Dec. 20, 2011) ...............................2

*Canale v. Colgate-Palmolive Co.*,
  258 F. Supp. 3d 312, 319 (S.D.N.Y. 2017)...............................................2

*Chae v. SLM Corp.*,
  593 F.3d 936, 943 (9th Cir. 2010) ..................................................*passim*

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992).................................................................................2, 4

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120, 130 (E.D.N.Y. 2018) ..............................................2

*College Loan Corp. v. SLM Corp.*,
  396 F.3d 588 (4th Cir. 2005) .....................................................................8

*Daniel v. Navient Solutions, LLC*,
  328 F. Supp. 3d 1319 (M.D. Fla. June 25, 2018).....................................3, 4

*Davis v. Navient Corp.*,
  2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018)........................................................3

*Fairbanks v. Superior Court*,
  46 Cal. 4th 56 (2009) ........................................................................................14, 15

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995)...................................................................................................5

*Genna v. Sallie Mae, Inc.*,
  2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012)...........................................................3

*Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*,
  941 F. Supp. 2d 406 (S.D.N.Y. 2013)........................................................................9

*Grochowski v. Phoenix Const*
  318 F.3d 80 (2d Cir. 2003).....................................................................................7, 8

*Harte v. Ocwen Fin. Corp.*,
  2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ........................................................13

*Hernandez v. Hilltop Fin. Mortg., Inc.*,
  622 F. Supp. 2d 842 (N.D. Cal. 2007) ....................................................................14

*Hernandez v. Sutter W. Capital*,
  2010 WL 539133 (N.D. Cal. Feb. 8, 2010) .............................................................14

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*,
  747 F.3d 44 (2d Cir. 2014)........................................................................................9

*Jefferson v. Chase Home Fin. LLC*,
  2007 WL 1302984 (N.D. Cal. May 3, 2007).............................................................14

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000).....................................................................................13

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
  2018 WL 5621872 (N.D. Fla. Sept. 20, 2018)...........................................................2

*Linsley v. FMS Inv. Corp.*,
  2012 WL 1309840 (D. Conn. Apr. 17, 2012)............................................................2

*Martorella v. Deutsche Bank Nat. Tr. Co.*,
  931 F. Supp. 2d 1218 (S.D. Fla. 2013) ....................................................................15

*McCormick v. U.S. Bank, N.A.*,
  2013 WL 990946 (S.D. Cal. Mar. 13, 2013) ...........................................................13

*McDowell v. CVI Fed. Inc.*,
  2017 WL 2392423 (D.D.C. June 1, 2017) ............................................................10

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
  2017 WL 6501919 (S.D. Ill. Dec. 19, 2017) ..........................................................2

*Netrix Leasing, LLC v. K.S. Telecom, Inc.*,
  2001 WL 228362 (S.D.N.Y. Mar. 7, 2001) ..........................................................10

*Olmstead v. Bayer Corp.*,
  2017 WL 3498696 (N.D.N.Y. Aug. 15, 2017) ........................................................2

*Parola v. Citibank (South Dakota) N.A.*,
  894 F. Supp. 2d 188 (D. Conn. 2012) ..............................................................8, 11

*Pennsylvania v. Navient Corp.*,
  354 F. Supp. 3d 529 (M.D. Pa. 2018), *motion to certify interlocutory appeal
  granted*, 2019 WL 1052014 (M.D. Pa. Mar. 5, 2019) ........................................3, 4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ................................................................13

*Picini v. Chase Home Fin. LLC*,
  854 F. Supp. 2d 266 (E.D.N.Y. 2012) ..................................................................9

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
  136 S. Ct. 1938 (2016) ..................................................................................1, 2

*Rivera v. Bank of Am. Home Loans*,
  2011 WL 1533474 (E.D.N.Y. Apr. 21, 2011) ........................................................9

*Sampson v. Wells Fargo Home Mort., Inc.*,
  2010 WL 5397236 (C.D. Cal. Nov. 19, 2010) ......................................................9

*Sanchez v. ASA College, Inc.*,
  2015 WL 3540836 (S.D.N.Y. June 5, 2015) ......................................................6, 7

*Schmidt & Schmidt, Inc. v. Town of Charlton*,
  68 A.D.3d 1314 (3d Dep't 2009) ......................................................................11

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018) ..............................................................................2

*Solow v. Stone*,
  994 F. Supp. 173 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998) ........................11

*Student Loan Servicing All. v. District of Columbia*,
  351 F. Supp. 3d 26 (D.D.C. 2018) ......................................................................7

*Trent v. Mortg Elec. Reg. Sys., Inc.*,
   618 F. Supp. 2d 1356 (M.D. Fla. 2007)..................................................................15

*Wyeth v. Levine*,
   555 U.S. 555 (2009).................................................................................................6

**Statutes & Regulations**

15 U.S.C. § 1334(b) ......................................................................................................4

20 U.S.C. § 1083 ...........................................................................................................5

20 U.S.C. § 1098g.................................................................................................. *passim*

Federal Preemption and State Regulation of the Department of Education's
   Federal Student Loan Programs and Federal Student Loan Servicers, 83 Fed.
   Reg. 10619 (Mar. 12, 2018).............................................................................2, 4, 5, 6

Fed. R. Civ. P. 9(b) ................................................................................................14, 15

N.Y. Gen. Bus. L. § 349 ................................................................................................2

**Other Authorities**

Restatement (Second) of Torts § 774B (1979) ............................................................12

Restatement (Third) Of Agency § 6.10 (2006)............................................................10

Plaintiffs' overheated rhetoric does not obscure the multiple fundamental infirmities in their claims.  Contrary to the aspersions littered throughout plaintiffs' opposition, Navient is committed to helping borrowers navigate the numerous and complex options available to them under federal student loan programs—the contours of which are laid out in borrowers' loan contracts, other required disclosures, and the website of the Office of Federal Student Aid ("FSA").  *See* FAC[1] Exs. 7-8; Moving Brief at 3-4.  If borrowers misunderstand advice given to them by Navient, or if Navient's customer service representatives make mistakes, borrowers have recourse through Navient or FSA.  But they may not prosecute state law claims seeking to enforce the HEA or claim damages for alleged misrepresentations; the HEA contains no private right of action, and it expressly preempts "any disclosure requirements of any State law."  20 U.S.C. § 1098g.  Plaintiffs' attempt to avoid this result is based on mischaracterizations of the law and a plea for discovery.  But the purpose of discovery is to find additional facts about a well-pleaded claim—not to determine whether such a claim exists in the first place.  The FAC should be dismissed in its entirety with prejudice.

## I.    THE HIGHER EDUCATION ACT PREEMPTS PLAINTIFFS' CLAIMS.

### A.    Section 1098g of the HEA Expressly Preempts Plaintiffs' Claims.

Plaintiffs' arguments proceed from the erroneous premise that a presumption against preemption applies here because they invoke consumer protection laws enacted under states' "historic police powers."  Opp. at 7-8 & n.3.  But in *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938 (2016), the Supreme Court confirmed that courts "do not invoke any presumption against pre-emption" when analyzing express preemption provisions like Section 1098g.  *Id.* at 1946.  *Franklin* recognized no exception for state laws affecting police powers, and

---

[1]    Defined terms have the same meaning as in Navient's opening brief.

in other misrepresentation cases before courts in this Circuit, the argument for a presumption

against preemption has been rejected as "frivolous." *Olmstead v. Bayer Corp.*, 2017 WL

3498696, at *2-3 & n.2 (N.D.N.Y. Aug. 15, 2017) (finding state-law misrepresentation claims

expressly preempted); *see also Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 319

(S.D.N.Y. 2017) (same, with respect to N.Y. Gen. Bus. L. § 349 claims); *Colella v. Atkins*

*Nutritionals, Inc.*, 348 F. Supp. 3d 120, 130 (E.D.N.Y. 2018) (same).[2]

Plaintiffs' argument that Section 1098g does not apply to state law claims based on

"affirmative misrepresentations" (Opp. at 8-10) is without merit.  As many courts have held,[3]

and as the Department of Education ("ED") confirmed in its recent Interpretation, 83 Fed. Reg.

10619-01, 10621 (Mar. 12, 2018), such claims are "merely the converse" of state law

requirements that alternative disclosures be made, and are thus expressly preempted.  *See*

Moving Brief at 8-10.  This view is consistent with the analytical approach the Supreme Court

has followed in other preemption cases.  *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 527

(1992) (holding that state laws prohibiting affirmative misstatements were "merely the converse

of a state-law *requirement*" to include specified disclosures) (emphasis in original).

Plaintiffs characterize cases contradicting their position as "misguided application[s]" of

the Ninth Circuit's decision in *Chae*.  Opp. at 10-11.  According to plaintiffs, *Chae* "held claims

---

[2]     Plaintiffs' reliance on *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018) and
*Association des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140 (9th Cir.
2017) ("*Becerra*") is unavailing.  Opp. at 7-8 & n.3.  *Becerra* ignored *Franklin* altogether, while
*Shuker* improperly narrowed the application of *Franklin* to the federal Bankruptcy Code, 885
F.3d at 771 & n.9.

[3]     *See Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010); *Lawson-Ross v. Great Lakes
Higher Educ. Corp.*, 2018 WL 5621872, *2-4 (N.D. Fla. Sept. 20, 2018); *Nelson v. Great Lakes
Educ. Loan Servs., Inc.*, 2017 WL 6501919, at *5 (S.D. Ill. Dec. 19, 2017); *Linsley v. FMS Inv.
Corp.*, 2012 WL 1309840, at *6 (D. Conn. Apr. 17, 2012); *Brooks v. Sallie Mae, Inc.*, 2011 WL
6989888, at *6 (Conn. Super. Ct. Dec. 20, 2011).

of 'fraudulent and deceptive practices apart from the billing statements' were **not** expressly preempted." *Id.* at 11 (emphasis in Opp.).  But *Chae* held that state law claims alleging affirmative misrepresentations—which happened to be located in billing statements and coupon books—were expressly preempted under Section 1098g.  593 F.3d at 942-43.  Contrary to plaintiffs' suggestion, *Chae* did not premise its ruling on the existence of "federally-regulated written disclosure requirements" specifically governing "written billing statements."  Opp. at 10-11.  Rather, the court relied on the fact that "[a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims."  593 F.3d at 942.  The court found Section 1098g inapplicable to the plaintiffs' other claims, not because they did not involve "billing statements," but because they did not involve *misrepresentations*.  *Id.* at 947-48 (finding claims challenging the *methods* of calculating interest, late fees, and repayment dates conflict preempted).  *Chae* also expressly rejected the argument—echoed by plaintiffs here—that because plaintiffs did not seek to impose "specific disclosure[]" requirements on Navient, their claims were not preempted.  *Id.* at 943.

The only "misguided application" of *Chae* to be found is in the four district court decisions relied on by plaintiffs.  *See* Opp. at 8-9.  Navient already addressed three of those cases[4] in its opening brief (Moving Brief at 12-13), with no rebuttal from plaintiffs.  Plaintiffs' reliance on *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529 (M.D. Pa. 2018), *motion to certify interlocutory appeal granted*, 2019 WL 1052014 (M.D. Pa. Mar. 5, 2019), is equally misplaced.  As an initial matter, *Pennsylvania* concerned allegations of "forbearance steering" and IDR plan "recertification practices"—not alleged misrepresentations about borrowers' eligibility for PSLF.  *Id.* at 548-49.  Furthermore, *Pennsylvania* (like *Genna* and *Davis*) is

---

[4]      *See Genna v. Sallie Mae, Inc.*, 2012 WL 1339482, at *7-9 (S.D.N.Y. Apr. 17, 2012); *Davis v. Navient Corp.*, 2018 WL 1603871, at *2-3 (W.D.N.Y. Mar. 12, 2018); *Daniel v. Navient Solutions, LLC*, 328 F. Supp. 3d 1319, 1323-24 (M.D. Fla. June 25, 2018).

predicated on the flawed premise that Section 1098g preempts *only* state law claims based on a failure to disclose information explicitly governed by HEA regulations. *Id.* at 550-51. But express preemption asks only whether Congress intended to displace state regulation in a particular area—not whether a specific federal regulation is directly on point. *See* Moving Brief at 12. Like *Daniel*, *Pennsylvania* also improperly applied a "presumption against [express] preemption" (354 F. Supp. 3d at 547-48) and ignored ED's recent Interpretation (*see id.* at 552-53), which confirms that "prohibitions on misrepresentation … run afoul of the express preemption provision in 20 U.S.C. 1098g." 83 Fed. Reg. at 10621. In any event, *Pennsylvania* recognized that its holding was contrary to decisions issued by other courts on similar claims, found that there was at least a "substantial ground for difference of opinion" on the preemptive effect of the HEA, and certified this issue for interlocutory appeal. 2019 WL 1052014, at *5.

Plaintiffs also argue that if Congress had intended Section 1098g to preempt state law claims prohibiting misrepresentations, it would have preempted both state law disclosure "requirements" and also state law "prohibitions" on misrepresentations. Opp. at 8-9 & n.4 (citing *Cipollone*, 505 U.S. 504 at 527). According to plaintiffs, *Cipollone* "held certain state law fraudulent misrepresentation claims preempted by 15 U.S.C. § 1334(b) ***only because*** Congress clearly drafted the statute to expressly preempt 'both requirements and ***prohibitions***.'" Opp. at 8 n.4 (emphasis in Opp.). To the contrary, *Cipollone* expressly held that a "*prohibition*" on misleading statements "is merely the converse of a state-law [disclosure] *requirement*." 505 U.S. at 527, 540 n.5 (emphases in original). The Court drew no distinction between "requirements" and "prohibitions." Far from "misappl[ying]" *Cipollone*, as plaintiffs suggest (Opp. at 10 n.6), *Chae* (and the courts that have followed *Chae*) faithfully applied this principle.

B.    **Plaintiffs' Claims Are Subject to Conflict Preemption.**

Plaintiffs argue that the inclusion of an express preemption provision in the HEA gives

rise to a "reasonable inference" that conflict preemption does not apply.  Opp. at 13.  But the

case they cite for this principle—*Freightliner Corp. v. Myrick*, 514 U.S. 280 (1995)—held that

this inference does not establish any "rule" against preemption.  *See id.* at 288-89 (rejecting

argument that "implied pre-emption cannot exist when Congress has chosen to include an

express pre-emption clause in a statute" as "without merit").

Plaintiffs also argue that Navient has identified no specific regulation with which

plaintiffs' claims conflict.  Opp. at 14.  But Navient in fact identified dozens of federal rules and

regulations establishing "a carefully crafted disclosure regime specifying what information must

be provided" to borrowers.  83 Fed. Reg. at 10621; *see* Moving Brief at 3-4 & n.1.  Navient

further explained how state laws prohibiting misrepresentations threaten the uniformity of this

regime.  *Id.* at 13-14.  *Chae* pointed to many of these same rules and regulations—not just

"regulations regarding late fees, repayment start dates, and interest-rate calculations" (Opp. at

14)—in finding the plaintiffs' claims conflict preempted in that case.  593 F.3d at 944-45.

Navient has also explained that plaintiffs' claims would contravene 20 U.S.C.

§ 1083(f)(2), which states that the failure to provide "thorough and accurate" information to

borrowers "shall not … provide a basis for a claim for civil damages."  20 U.S.C. § 1083(a),

(f)(2); *see* Moving Brief at 14.  Plaintiffs' argument that this provision does not apply to claims

based on "affirmative misrepresentations" (Opp. at 14) again overlooks that laws requiring

certain disclosures are equivalent to laws prohibiting misrepresentations.

Finally, plaintiffs argue that Navient's conflict preemption argument is equivalent to

arguing for "field preemption."  Opp. at 14-15.  This is a straw man.  Navient does not argue that

Congress intended to occupy the entire field of federal student loan servicing; rather, it argues

that state laws prohibiting misrepresentations would conflict with Congress's command for a uniform disclosure regime under the HEA.  Moving Brief at 13-16.  And plaintiffs simply ignore Navient's argument that applying state law would affect "the obligations and rights of the United States under its contracts with servicers and with student loan borrowers."  83 Fed. Reg. at 10619 (internal marks omitted); *see* Moving Brief at 14-15.

### C.   ED's Recent Interpretation Confirms that Plaintiffs' Claims Are Preempted.

Plaintiffs assert that ED's recent Interpretation, which strongly supports Navient's preemption arguments, is not entitled to *Auer* deference because it concerns ED's view of "a federal statute, not ED's own regulation."  Opp. at 11-12.  To the contrary, the ED Interpretation interprets a "disclosure regime" that *includes* ED's own rules and regulations.  83 Fed. Reg. at 10621.  Those regulations were promulgated pursuant to the "unmistakable command" of Congress to "[e]stablish a set of rules that will apply across the board"—which is "evidence that Congress intended [ED] to have the authority to preempt state law."  *Chae*, 593 F.3d at 945, 948 (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 174 (1982)).

Plaintiffs' reliance on *Wyeth v. Levine*, 555 U.S. 555 (2009) (Opp. at 15), is also misplaced.  In *Wyeth*, the court declined to defer to a conclusory statement of preemption in a preamble to an FDA regulation; the court independently found that (1) all evidence of congressional intent pointed away from preemption and (2) the FDA had recently and abruptly changed its view on preemption.  *Id.* at 576-81.  By contrast, here—as in *Chae*—the ED Interpretation is "in harmony with the evidence of congressional intent."  593 F.3d at 948-50 (distinguishing *Wyeth*).  Nor is the ED Interpretation "inconsistent" with the United States' Statement of Interest in *Sanchez v. ASA College, Inc.* (*see* Opp. at 12-13), which did not address a claim of express preemption under Section 1098g, or even conflict preemption under the HEA.  No. 1:14-CV-5006 (S.D.N.Y. Jan 23, 2015), Dkt. No. 64; *see also* 2015 WL 3540836, at *4 n.2

6

(S.D.N.Y. June 5, 2015).  Moreover, *Sanchez* involved alleged misrepresentations by for-profit colleges about the value of their degree programs, not statements by loan servicers about borrowers' eligibility for PSLF.  *See* Moving Brief at 15-16.  Plaintiffs' only response to this argument is to assert without explanation that there is "no material distinction between for-profit colleges and loan servicers in this context."  Opp. at 13 n.10.  And plaintiffs do not deny that the court in *Student Loan Servicing Alliance v. District of Columbia*, 351 F. Supp. 3d 26 (D.D.C. 2018) failed to analyze this important distinction.  *See* Moving Brief at 16 n.4.

## II.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

### A.     Plaintiffs' Breach of Contract, Implied Warranty of Authority, and Interference Claims Fail for Multiple Reasons (Counts I-IV).

#### 1.     Plaintiffs' Claims Are End-Runs Around the Absence of a Private Right of Action in the HEA.

Plaintiffs seek to circumvent the absence of any private right of action in the HEA by insisting that they "assert state law claims, not direct claims under the HEA."  Opp. at 16 & n.13. But that is precisely the point: as the Second Circuit and Supreme Court have made clear, where "no private right of action exists under the relevant statute, the plaintiffs['] efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the" statute. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003); *accord Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 118 (2011).  Contrary to plaintiffs' suggestion, *Grochowski* and *Astra USA* did not turn on the fact that the statutes in those cases provided "remedial scheme[s]" (Opp. at 17-18); they turned on the fact that "[a]t bottom, the plaintiffs' state-law claims are indirect attempts at privately enforcing" a statute with no private right of action.  *Grochowski*, 318 F.3d at 86; *see also Astra USA*, 563 U.S. at 118 ("when a government contract confirms a statutory obligation, a third-party private contract action to enforce that obligation would be

inconsistent with the legislative scheme to the same extent as would a cause of action directly under the statute" (internal marks omitted) (quoting *Grochowski*, 318 F.3d at 86)).  That is exactly what Counts I-IV seek to do here.  In any event, the HEA—like the statutes at issue in *Grochowski* and *Astra USA*—also provides a remedial scheme.  *See* Moving Brief at 4-5.[5]

Plaintiffs' view that *College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005) "rejected this exact argument" (Opp. at 16) mischaracterizes that decision.  In *College Loan*, the Fourth Circuit rejected an argument that conflict preemption applied to claims arising from the alleged breach of a contract *between consolidation lenders*, where the parties had "*expressly agreed* to comply with the HEA."  396 F.3d at 597-98 (emphasis in original); *see Chae*, 593 F.3d at 946 (distinguishing *College Loan* on this basis).  Here, by contrast, plaintiffs are not parties to Navient's Servicing Contracts with ED; they are instead seeking to enforce the HEA on the theory that (1) Navient agreed in the Servicing Contracts to comply with the statute and (2) plaintiffs are third-party beneficiaries.  *See* FAC ¶¶ 411, 414.  That puts this case on all fours with *Grochowski* and *Astra USA*—not *College Loan*.

Plaintiffs also maintain that *Parola v. Citibank (South Dakota) N.A.*, 894 F. Supp. 2d 188 (D. Conn. 2012), does not apply to their "Servicing Contract claims" (Opp. at 17-18), but Navient never argued that it does.  *Parola* requires dismissal of plaintiffs' claim for tortious interference with their MPN Contracts.  Moving Brief at 17.  Plaintiffs observe that *Parola* involved a claim for breach of an MPN contract—whereas Navient allegedly "induce[d]" the breach of their MPN Contracts (FAC ¶ 434) (Opp. at 18)—but that is not a material distinction.

---

[5]     Plaintiffs assert that Counts II and IV (for breach of implied warranty of authority and tortious interference with "statutorily created" expectancy) "do not rely on any violation of the HEA."  Opp. at 19.  Yet elsewhere they clearly acknowledge that these claims seek benefits and "property interests" purportedly provided under the HEA.  *See* FAC ¶ 421; Opp. at 19, 25-26.

### 2. Plaintiffs Do Not and Can Not Allege Essential Elements for Third-Party Beneficiary Recovery (Count I).

Plaintiffs' claim for third-party beneficiary breach of the Servicing Contracts should be dismissed because they have identified no language in these government contracts that could overcome the presumption that plaintiffs are mere incidental beneficiaries. Moving Brief at 18-19. Although plaintiffs reference various provisions of the Servicing Contracts in their opposition (Opp. at 20), none of these provisions "evidences an intent to permit [plaintiffs] to *enforce*" the contracts. *Rivera v. Bank of Am. Home Loans*, 2011 WL 1533474, at \*5 (E.D.N.Y. Apr. 21, 2011) (emphasis added).

Plaintiffs' repeated assertion that Navient stated "in [its] own words" that these contracts are "for the benefit of the borrower" is also false. Opp. at 5, 19-20. Those words come directly from the FAC (¶ 295), which Navient merely quoted in its opening brief.

Plaintiffs' cited authority only reinforces that their claims should be dismissed. In *Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406 (S.D.N.Y. 2013), the court dismissed breach of contract claims asserted by a third party because the contract at issue did not "purport[] to give any rights to [plaintiffs] to enforce any obligations in the [agreement]." *Id.* at 420. In *Hillside Metro Associates LLC v. JPMorgan Chase Bank, National Association*, 747 F.3d 44 (2d Cir. 2014), the Court of Appeals affirmed the dismissal of similar claims because the contract did not "clearly evidence an intent to permit enforcement." *Id.* at 49 (internal marks omitted). The third decision plaintiffs cite, *Sampson v. Wells Fargo Home Mort., Inc.*, 2010 WL 5397236, at \*3 (C.D. Cal. Nov. 19, 2010), is not persuasive because it was issued "under time constraints" and has been rejected by other courts. *See Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 273 (E.D.N.Y. 2012) ("With more time than the *Sampson* court to consider the issue, this Court reaches a different conclusion.").

Plaintiffs' final argument is that they should get discovery so they can try to find language suggesting that they are intended beneficiaries. Opp. at 20-21. But it is plaintiffs' obligation to plead factual allegations giving rise to a plausible claim for relief *before* the case proceeds to discovery. The cases cited by plaintiffs in support of this backward argument permitted discovery only after findings that third-party beneficiary status had been adequately alleged. *See McDowell v. CVI Fed. Inc.*, 2017 WL 2392423, at *7 (D.D.C. June 1, 2017); *Netrix Leasing, LLC v. K.S. Telecom, Inc.*, 2001 WL 228362, at *11 (S.D.N.Y. Mar. 7, 2001).

### 3. Plaintiffs' "Implied Warranty of Authority" Claim Fails (Count II).

Plaintiffs' claim for breach of implied warranty of authority should be dismissed because plaintiffs do not allege that Navient made a promise or representation that purported to—but did not in fact—"bind" ED. Moving Brief at 20-21. Plaintiffs confusingly claim that Navient "did, in fact, bind its principal, inducing Borrowers to modify their contracts with ED by opting into new, less favorable repayment plans." Opp. at 23. But if Navient "did, in fact, bind its principal," then this tort theory—which applies only to situations where an agent "lack[s] power to bind" its principal—is inapplicable. *See* Restatement (Third) Of Agency § 6.10 (2006).

Plaintiffs also argue, apparently in the alternative, that Navient somehow disavowed its authority to bind ED. Opp. at 24-25. But the sections of Navient's brief quoted by plaintiffs make no mention of Navient's authority to act on behalf of ED; they instead make the legal point that plaintiffs' *tort* claims fail because no tort duty exists. Moving Brief at 2, 25-28.

### 4. Plaintiffs Fail to Allege Essential Elements of Their Claim for Tortious Interference with Their MPN Contracts (Count III).

Seeking to stave off dismissal of their claim for tortious interference with the MPN Contracts, plaintiffs assert that Navient caused ED to breach the "Governing Law" and "Borrower's Rights and Responsibilities Statement" of the MPN Contracts. Opp. at 22. But as

discussed above, ED did not breach the "Governing Law" clause because that provision "is not a covenant for compliance by the lender." *Parola*, 894 F. Supp. 2d at 198; *see* Moving Brief at 22. With respect to ED's purported breach of the "Borrower's Rights and Responsibilities Statement," plaintiffs still have not pointed to any particular part of this 13-page section that ED breached or explained how, exactly, ED breached that section. *See* Opp. at 22.

To support their claim that Navient "intentionally" interfered with the MPNs, plaintiffs cite 12 paragraphs of the FAC. Opp. at 23 n.15. Only one conclusory sentence in those paragraphs asserts that Navient acted intentionally. *See* FAC ¶ 434 ("Navient acts intentionally when it induces the Department of Education and others to breach the [MPN Contracts]."). Because plaintiffs have not alleged *facts* giving rise to a reasonable inference that Navient's customer service representatives deliberately misled borrowers or intended to cause ED to breach the MPN Contracts, this claim should be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007))).

Plaintiffs also argue that Navient "act[ed] outside the scope of its authority" (Opp. at 23), but point to no allegations plausibly supporting this assertion. In fact, the FAC alleges that ED "deputized Navient" to act as its agent and to communicate with plaintiffs about their loans. *See* FAC ¶¶ 311-12. The cases plaintiffs cite are inapposite. *See Schmidt & Schmidt, Inc. v. Town of Charlton*, 68 A.D.3d 1314, 1315 (3d Dep't 2009) (tortious interference claim could proceed because agent acted "maliciously" in convincing principal to terminate contract); *Solow v. Stone*,

994 F. Supp. 173, 182 (S.D.N.Y.) (*dismissing* tortious interference claim where agent acted *within* scope of authority), *aff'd*, 163 F.3d 151 (2d Cir. 1998).

### 5.   "Tortious Interference with Statutorily Created Expectancy" Does Not Exist (Count IV).

Confronted with the fact that tortious interference with "statutorily created expectancy" does not exist, plaintiffs rely entirely on cases addressing tortious interference with "expected inheritance." Opp. at 26. But this case has nothing to do with any "inheritance or gift" (Restatement (Second) of Torts § 774B (1979)), and plaintiffs do not even try to suggest it does. And in any event, any attempt to assert a claim for purported violations of statutory rights would run headlong into the absence of any private right of action in the relevant statutes, as explained above.

Plaintiffs also cite *American Bar Association v. United States Department of Education*, 2019 WL 858770 (D.D.C. Feb. 22, 2019), but that case involved claims that ED violated the Administrative Procedures Act—not claims for interference with any "statutorily created expectancy." *Id.* at *1. And contrary to plaintiffs' suggestion, the court did *not* hold that "the PSLF statute 'creates [property] rights for those borrowers who are entitled to benefits under the PSLF program.'" Opp. at 25. The court held that "the PSLF statute does *not* create any property rights for the ABA," and suggested that it creates "rights"—not "property rights"—for borrowers entitled to benefits. 2019 WL 858770, at *23.

### B.   Plaintiffs Cannot Sue for Unjust Enrichment Because They Conferred No Benefit on Navient and Their MPN Contracts Govern (Count V).

Plaintiffs argue that an unjust enrichment claim is viable here, even though plaintiffs conferred no benefits on Navient, because Navient benefited indirectly through servicing fees from ED. Opp. at 30. But the sole S.D.N.Y. authority cited in support of this argument is

irreconcilable with *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000), which held that plaintiffs must allege the conferral of a "specific and direct" benefit.  Moving Brief at 24.

Plaintiffs argue that Navient cannot argue both that "it is not bound by the MPN" and that the "MPN governs this dispute."  Opp. at 30 n.18.  Plaintiffs are wrong.  Because plaintiffs seek to recover allegedly excess principal and interest payments, their MPN Contracts with ED— pursuant to which those payments were made—govern this dispute.  At the same time, Navient is not a party to those contracts, and therefore is not bound by them.  Moving Brief at 25.  There is nothing inconsistent about Navient's arguments.

Finally, plaintiffs argue this claim "is not based on excess principal and interest payments but on the servicing fees Navient received."  Opp. at 30.  But that is precisely why it fails: plaintiffs cannot seek double recovery in equity for an injury redressable in contract.  Moving Brief at 25.

### C.     Loan Servicers Do Not Owe Tort Duties to Borrowers (Counts VI-XI).

In the face of overwhelming authority holding that loan servicers do not owe legal duties to borrowers, plaintiffs cite just one decision for their contrary argument, *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) (Opp. at 27).  That decision, however, concerned the duties fund administrators owe to investors—not the duties loan servicers owe borrowers.  *Id.* at 170, 196-99.

Plaintiffs argue that the cases Navient cites are inapposite because they "do not involve affirmative inducements to rely on the servicer's advice."  Opp. at 27.  But in fact, these decisions did involve affirmative inducements, such as affirmative recommendations and directions.  *See, e.g.*, *Harte v. Ocwen Fin. Corp.*, 2014 WL 4677120, at *12 (E.D.N.Y. Sept. 19, 2014) (allegations included that servicer's "relationship managers" directed borrower "not to make payments while loan modification was pending"); *McCormick v. U.S. Bank, N.A.*, 2013

WL 990946, at *10 (S.D. Cal. Mar. 13, 2013) (allegations included that the "lender instructed the borrower to fall behind in their loan payments"); *see also* Moving Brief at 26 n.19.

Plaintiffs assert that their allegations survive Rule 9(b) because they "detail—in over 120 paragraphs—the substance of" their allegations. Opp. at 28. But plaintiffs are unable to point to even one example of the date on which an alleged misrepresentation was made, the title or name of a single representative with whom they allegedly spoke, or the means by which any alleged misrepresentation was made. Plaintiffs argue that "Navient has recordings of every call," Opp. at 28, but this argument ignores the multiple decisions cited in Navient's opening brief, establishing that where a plaintiff alleges misrepresentations, the date, place, and contents of those statements are *not* facts "peculiarly within defendants' knowledge." Moving Brief at 28.

**D.    The Deceptive Practices Statutes Plaintiffs Invoke are Inapplicable to Navient's Loan Servicing (Counts XII-XV).**

Plaintiffs argue that they can sue under the California Consumers Legal Remedies Act because Navient's actions went beyond the "mere debt collection or extension of credit." Opp. at 28. But the decisions plaintiffs cite[6] are no longer good law, because two of the decisions predate the California Supreme Court's decision in *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009), and all three of the decisions predate the California Court of Appeals' decision in *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 40 (2015). *Fairbanks* held that even when insurers provide "ancillary services"—such as helping customers pick an insurance policy—their conduct falls outside the ambit of the California Statute, 46 Cal. 4th at 65; and

---

[6]    *See Hernandez v. Sutter W. Capital*, 2010 WL 539133, at *4 (N.D. Cal. Feb. 8, 2010); *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 851 (N.D. Cal. 2007); *Jefferson v. Chase Home Fin. LLC*, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007). These decisions are also inapposite as they involved the provision of financial advice in connection with real estate transactions.

*Alborzian* held that *Fairbanks* "applies with equal force to lenders."  235 Cal. App. 4th at 40; *see* Moving Brief at 28-29.  Plaintiffs do not even attempt to address, let alone distinguish, these cases.

Plaintiffs assert that their claims are viable under the Florida Deceptive and Unfair Trade Practices Act because Navient went beyond "the mere collection of debt," Opp. at 29, but the cases they cite involved servicers engaged in the provision or purchasing of *insurance.  See Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *11 (S.D. Fla. May 18, 2016) (defendant "sought and obtained lender-placed insurance"); *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013) ("provision of insurance" is a "trade or commerce").  Navient, by contrast, is engaged in loan servicing.  *See, e.g.*, *Trent v. Mortg Elec. Reg. Sys., Inc*., 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) (servicer's communications did not "fall within the purview of 'trade or commerce'").

Plaintiffs also provide no further argument for why these claims should survive Rule 9(b) (*see* Opp. at 28-29), and these claims should be dismissed for that reason as well.

## CONCLUSION

This Court made clear at the December 7, 2018 initial conference that it would be "unlikely [plaintiffs] will be able to amend again" after filing their amended complaint in January, seeking to address the infirmities that Navient identified in its original motion to dismiss, which was filed last year.  Tr. at 2; *see also* Dkt. No. 27.  Because plaintiffs have failed to address and cannot rectify those infirmities, the FAC should be dismissed in its entirety and without another opportunity to replead.

Dated: New York, NY
      April 8, 2019

Respectfully submitted,

COVINGTON & BURLING LLP

By:    *s/Ashley Simonsen*
        Ashley Simonsen

1999 Avenue of the Stars
Los Angeles, CA 90067-4643
asimonsen@cov.com
Tel.: (424) 332-4800

Andrew A. Ruffino
Alexander Setzepfandt
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
aruffino@cov.com
asetzepfandt@cov.com
Tel.: (212) 841-1000

*Counsel for Defendants*