```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
KATHRYN HYLAND, MELISSA GARCIA, ELDON  :
R. GAEDE, JESSICA SAINT-PAUL, REBECCA  :
SPITLER-LAWSON, MICHELLE MEANS,        :          18cv9031(DLC)
ELIZABETH KAPLAN, JENNIFER GUTH, and   :
MEGAN NOCERINO, individually and on    :          OPINION AND ORDER
behalf of all others similarly         :
situated,                              :
                                       :
                  Plaintiffs,          :
                                       :
           -v-                         :
                                       :
NAVIENT CORPORATION and NAVIENT        :
SOLUTIONS, LLC,                        :
                                       :
                  Defendants.          :
                                       :
---------------------------------------X
```

APPEARANCES

For the Plaintiffs:
Faith Gay
Maria Ginzburg
Yelena Konanova
Margaret Siller
Selendy & Gay PLLC
1290 Avenue of the Americas
New York, NY 10104

Mark Richard
Phillips, Richard & Rind, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173

For the Defendants:
Ashley Simonsen
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067

Andrew A. Ruffino
Alexander Setzepfandt

Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018

DENISE COTE, District Judge:

Defendants Navient Corporation and Navient Solutions, LLC (collectively "Defendants" or "Navient")[1] have moved to dismiss the First Amended Complaint ("FAC") in this action for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.  For the reasons that follow, that motion is granted in part.  All claims are dismissed with the exception of the claim brought under New York's General Business Law Section 349.

## Background

Navient is a student loan servicer.  At the heart of this lawsuit is Navient's advice to public servants about a federal loan forgiveness program that applies to certain federally-backed student loans.

Two Loan Programs:  Guaranteed and Direct Loans

There are two categories of federally-backed student loans at issue here.  The first is the Federal Family Education Loan Program ("FFEL"), established by the Higher Education Act ("HEA") in 1964.  20 U.S.C. § 1071 et seq.  Under that program, the federal government guarantees student loans that are funded

---

[1] Navient Corp. is the parent company of Navient Solutions, LLC.

by private lenders ("Guaranteed Loans").  The second category is loans originated by the federal government through the William D. Ford Direct Loan Program ("Direct Loans"), which was established in 1994.  20 U.S.C. § 1087a et seq.  Both Guaranteed Loans and Direct Loans are serviced by third parties through servicing contracts with the United States Department of Education (the "Department").  When a student borrower takes out a Guaranteed or a Direct Loan, he or she must enter into a Master Promissory Note ("MPN") contract with either the private lender (in the case of Guaranteed loans) or the Department (for a Direct Loan).  Congress requires the MPNs for both Guaranteed and Direct Loans to be standardized.

The MPN for Guaranteed Loans specifies that the borrower will have the opportunity to choose from one of four repayment plans, including the Standard Repayment Plan and the Income-Sensitive Repayment Plan.  The Standard Repayment Plan is ten years.  The Income-Sensitive Repayment Plan is an income-driven repayment plan which bases repayment obligations on the borrower's income and family size.  The Direct Loan MPN offers a wider variety of repayment plans than the Guaranteed Loan MPN, including four income-driven repayment plans.

Borrowers who are having difficulty making their loan payments may enter into deferment or forbearance if they meet certain criteria.  These options essentially postpone the

borrower's payment of a loan.  Loans continue to accrue interest during the period of postponement.  Borrowers will not make any payments during deferment or forbearance.

Public Service Loan Forgiveness

In 2007, as part of the College Cost Reduction and Access Act, Congress created the Public Service Loan Forgiveness Plan ("PSLF").  Through PSLF, teachers and other public servants may have their loan balances forgiven after making 120 on-time payments under a qualifying repayment plan -- including certain income-driven plans -- while working for a qualifying employer. Only Direct Loans qualify for PSLF.  The Direct Loan MPN contains a section titled "Public Service Loan Forgiveness" that informs the borrower of the availability of this program.[2]  A borrower who has Guaranteed Loans must consolidate them into Direct Loans in order to qualify for PSLF.  If a borrower consolidates Guaranteed Loans into Direct Loans, payments previously made on the Guaranteed Loans will not count toward the required 120 qualifying payments.  Moreover, periods of deferment or forbearance do not count toward the 120 qualifying payments.

---

[2] The Guaranteed Loan MPN does not contain this section.  Only Direct Loans are eligible for PSLF.

PSLF requires a borrower to verify that he or she is employed full time by a qualified public service employer by completing an Employment Certification Form ("ECF").  ECFs may be submitted at any time during repayment.  When a borrower submits an ECF, the Department will verify that the borrower is on track for PSLF.  The ECF must be submitted to the Department's designated servicer for PSLF loans, FedLoan Servicing ("FedLoan"), rather than the borrower's existing servicer.  If the borrower's employment qualifies for PSLF, the borrower's Direct Loans will be transferred to FedLoan for servicing.  Once a borrower makes 120 on-time qualifying payments, he or she must complete a PSLF Application for Forgiveness, which is also submitted to FedLoan.

<u>Navient's Government Contracts</u>

Federal law provides that the Department "may enter into contracts for . . . the servicing and collection of [Direct Loans]"  20 U.S.C. § 1087f(b)(2).  A private lender who originates a Guaranteed Loan may similarly contract with another entity to perform its functions under the Guaranteed Loan program.  34 C.F.R. § 682.203(a).  Such a delegation does not relieve the private lender of its duty to comply with the statutory FFEL requirements and the private lender must monitor the activities of the contracting entity for compliance with those requirements.  <u>Id.</u>; 20 U.S.C. § 1086(a).

In 2009, Navient's predecessor entered into a Servicing Contract with the Department, pursuant to which Navient is delegated the duties of the lender for Guaranteed Loans and the duties of the Department for Direct Loans.  This Servicing Contract states that its "Objective" is to "[a]cquire efficient and effective commercial contract services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt."  The Servicing Contract also states:

> It is the intent of the Department to procure a performance-based contract(s) that promotes competition and provides best of business services. To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction.

Navient entered into an additional Servicing Contract with the Department in 2014.  In a press statement surrounding the release of this Servicing Contract, the Department stated that the new Servicing Contract would

> strengthen incentives for [federal student loan servicers] to provide excellent customer service and help borrowers stay up-to-date on their payments. This action will help ensure that borrowers receive the highest quality support as they repay their federal student loans and help the Department better monitor the performance of loan servicers to help them continue to improve.

Both the Department and Navient advertise to borrowers that Navient can assist borrowers with navigating the student loan

repayment process.  For example, the Department's website
encourages borrowers to contact their loan servicers for
information about their repayment plans, including for
information about income-driven repayment and PSLF.  It
specifically advises borrowers that loan servicers

> are responsible for collecting payments on a loan,
> advising borrowers on resources and benefits to better
> manage their federal student loan obligations,
> responding to customer service inquiries, and
> performing other administrative tasks associated with
> maintaining a loan on behalf of the U.S. Department of
> Education.

In the Direct Loan MPN, the Department advises borrowers that it
"contract[s] with servicers to process Direct Loan payments,
deferment and forbearance requests, and other transactions, and
to answer questions about Direct Loans."

On its website, Navient encourages borrowers to "[c]ontact
us to discuss your student loan obligations.  We can answer any
questions you have about paying back your loans and the types of
repayment plans available to you."  Navient states that it
"help[s] students navigate the lifecycle of their loan with:
Expert guidance while in school and beyond," "Counseling as
needed to stay on track with payments," and "Tools and
information to explore repayment plan options that best meet
their needs."  Navient's advertised services include "financial
literacy tools and in-depth customer service" to "help our
customers successfully pay their education loans and build their

credit." Navient represents that it is "committed to helping our student loan customers achieve successful loan repayment, and we are here to help you. If you are having trouble managing your student loans, contact us."

Navient earns revenue through interest on Guaranteed Loans and through servicing fees that come out of loan payments made by borrowers. When a borrower consolidates a Guaranteed Loan into a Direct Loan Navient, as the owner of the Guaranteed Loan, loses revenue in the form of interest income on the Guaranteed Loan. Further, when a borrower pursues the PSLF program, the borrower's loans are transferred to FedLoan for servicing. In that event, Navient loses income from the fees it earns by servicing Direct Loans.

The Servicing Contracts between Navient and the Department set a fixed cap on the total revenue a servicer can earn from the Department. Plaintiffs allege that this creates an incentive for Navient to increase profits by reducing costs. They further allege that the cost of compensating employees for the time and skills necessary to provide a borrower with accurate information about PSLF is higher than the amount of money Navient stands to lose from a borrower entering into forbearance, and that this provides an economic incentive for Navient to steer borrowers toward forbearance, rather than PSLF.

Navient compensates its customer service representatives according to incentive plans that are based, in part, on the employee's average call time.  Plaintiffs allege that this creates an incentive for Navient representatives to avoid lengthy conversations with the borrower, and to counsel them away from repayment plans that require complicated documentation and could thus multiply the number and duration of telephone calls between borrowers and Navient customer service representatives.  For example, placing borrowers in an income-driven repayment plan requires the submission of documentation regarding the borrower's income.  Placing a borrower in some of the other plans, including deferment or forbearance, can be done quickly over the telephone.  These plans, however, do not qualify for PSLF.

The Plaintiffs' Experiences with Navient

The plaintiffs are educators and public servants who financed their education through Guaranteed and Direct Loans serviced by Navient.  They have alleged that Navient misrepresented their eligibility for PSLF and the PSLF program requirements.[3]  Plaintiff Katherine Hyland, for example, was

---

[3] While the FAC alleges that Navient also omitted material information about the PSLF program in its discussions with borrowers, in opposition to the motion to dismiss, particularly in response to Navient's preemption argument, the plaintiffs

informed by Navient representatives that she was "on track" for
PSLF even though she was making payments on Guaranteed rather
than Direct Loans.  The payments she made on these loans did not
count toward her 120 qualifying payments for loan forgiveness.

Plaintiffs also allege that Navient representatives
encouraged them not to submit their ECFs until they have made
120 qualifying payments.  While a borrower may submit an ECF at
any time, the Department encourages borrowers to submit these
forms as soon as possible after beginning repayment in order to
confirm that their employment, loans, and payment plan qualify
for PSLF.  As described above, ECFs must be submitted to
FedLoan, not to Navient.  When a borrower submits an ECF, his or
her loans will be transferred away from Navient to FedLoan for
servicing.  One plaintiff, Ms. Hyland, alleges that she
submitted an ECF to Navient in January 2015.  Navient told her
that her ECF would be kept "on file" until she completed her
payments.  In 2017, Navient informed Hyland that it had no
record of the ECF.

Plaintiffs also allege that Navient recommended forbearance
or other repayment plans that do not qualify for PSLF.  One
plaintiff, Eldon R. Gaede, alleges that Navient informed him

---

primarily rely on their allegations that Navient made
affirmative misrepresentations to them.

that there was no option for him to reduce his loans payments based on his income, and instead steered him into forbearance. Further, income-driven plans require borrowers to recertify their income every year.  Navient has allegedly delayed processing these certifications.  Borrowers are required to make their full monthly payments under the standard plan while the certification is under review.

As a result of these and other statements, plaintiffs allege that their entry into PSLF has been delayed and they have had to pay more toward their student loans than they would have if they were properly advised by Navient.

Procedural History

The plaintiffs commenced this putative class action by filing a complaint on October 3, 2018 on behalf of a nationwide class of individuals who have been employed full time by a PSLF-eligible employer and contacted Navient regarding their eligibility for PSLF, as well as four sub-classes consisting of those same individuals who have resided in or taken out loans in Maryland, Florida, New York, and California.  The plaintiffs also proposed a Nationwide Injunctive Class which consists of those individuals who are part of the nationwide class and also intend to contact Navient in the future regarding their eligibility for PSLF.  Defendants moved to dismiss that complaint on November 30, 2018.

Plaintiffs filed the FAC on January 16, 2019, thereby mooting the November 30 motion to dismiss.  The FAC asserts fifteen causes of action under various state laws, including breach of contract, breach of implied warranty of authority, tortious interference with contract, tortious interference with expectancy, unjust enrichment, breach of fiduciary duty, negligence, negligent misrepresentation, and violations of Maryland, Florida, New York, and California consumer protection statutes.  This Opinion addresses Navient's renewed motion to dismiss, which was filed on February 2 and became fully submitted on April 8.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation omitted).  A claim to relief is plausible when the factual allegations in a complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017).  The plaintiff must plead enough

facts to "nudge[] [his] claims across the line from conceivable to plausible . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted). A court may also consider documents that are "integral to the complaint." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

I. Preemption

It is undisputed that there is no private right of action under the HEA. See, e.g., Thomas M. Cooley Law Sch. v. Am. Bar Ass'n, 459 F.3d 705, 710-11 (6th Cir. 2006). Navient argues that plaintiffs' state law claims are also barred as preempted by the HEA. That argument is unavailing.

The Supremacy Clause of the United States Constitution establishes that federal law "shall be the supreme Law of the

Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl.2. "A fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000).

> In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

New York SMSA Ltd. Partnership v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted). "The key to the preemption inquiry is the intent of Congress." Id. "We begin with the assumption that the historic police powers of the States are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." Figueroa v. Foster, 864 F.3d 222, 232 (2d Cir. 2017) (citation omitted).

Express preemption "occurs when Congress withdraws specified powers from the States by enacting a statute containing an express preemption provision." Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir. 2014) (citation omitted). "Even where a federal law contains an express preemption clause, the court still may be required to consider implied preemption

as it considers the question of the substance and scope of Congress' displacement of state law." Town of Clarkstown, 612 F.3d at 104 (citation omitted).

"Conflict preemption arises where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Coalition for Competititve Elec., Dynergy, Inc. v. Zibelman, 906 F.3d 41, 49 (2d Cir. 2018) (citation omitted). "Impossibility pre-emption is a demanding defense." Wyeth v. Levine, 555 U.S. 555, 573 (2009). Courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 565 (citation omitted). "To establish implied preemption, evidence of Congressional intent to displace state authority is required." Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n, 634 F.3d 206, 209-210 (2d Cir. 2011).

"The inclusion in a federal statute of an express provision regarding preemption does not necessarily foreclose the possibility that aspects of a state law not expressly within the federal preemption provision may be preempted by implication." Sprint Spectrum L.P. v. Mills, 283 F.3d 404, 415 (2d Cir. 2002). "[W]here the federal statute contains a provision explicitly

15

addressing preemption, and when that provision provides a reliable indicium of congressional intent with respect to state authority, preemption is restricted to the terms of that provision." Id. (citation omitted).

"Under field preemption, a state law is preempted if Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law." Zibelman, 906 F.3d at 49 (citation omitted). Field preemption and conflict preemption "are not rigidly distinct, although they remain independent bases for preemption." Figueroa, 864 F.3d at 228 (citation omitted).

A. Express Preemption

Navient contends that § 1098g of the HEA expressly preempts the plaintiffs' claims. That section provides: "Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g. The plaintiffs' state law claims are not expressly preempted by § 1098g.

"Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area." General Motors Corp. v. Abrams, 897 F.2d 34, 41-42 (2d Cir. 1990). Plaintiffs here do not seek to impose state law "disclosure requirements" on

federal student loans.  Rather, they seek to hold Navient liable
for affirmative misrepresentations made in the course of
performing its duties under various contracts.  The language of
§ 1098g does not express the "clear and manifest purpose of
Congress" to preempt such claims.  Figueroa, 864 F.3d at 232
(construing the National Labor Relations Act, 29 U.S.C. § 151 et
seq.).  As the Honorable Robert D. Mariani held in a related
lawsuit filed against Navient,

> [t]he HEA and its associated regulations only require
> that particular disclosures are to be made in the
> delivery of federal student loans and generally
> prescribes how those disclosures should be made.  It
> does not preempt the enforcement of a statute of
> general applicability under a state's traditional
> police power.

Pennsylvania v. Navient Corp., 354 F. Supp. 3d 529, 549-50 (M.D.
Pa. 2018) (citation omitted);  see also Daniel v. Navient
Solutions, LLC, 328 F. Supp. 3d 1319, 1324 (M.D. Fla. 2018);
Genna v. Sallie Mae, Inc., 11cv7371 (LBS), 2012 WL 1339482, at
*9 (S.D.N.Y. Apr. 17, 2012).  The Seventh Circuit has recently
held that "State law could impose liability on . . . affirmative
misrepresentations without imposing additional disclosure
requirements on [the loan servicer], and thus avoid preemption
under § 1098g."  Nelson v. Great Lakes Educ. Loan Servs., No.
18-1531, 2019 WL 2636822, at *8 (7th Cir. June 27, 2019).

Navient relies principally on Chae v. SLM Corp., 593 F.3d
936 (9th Cir. 2010), in which the Ninth Circuit held that the

HEA expressly preempted some of the state law omission and misrepresentation claims asserted there.  The Ninth Circuit held that the claims that challenged misstatements made in billing statements, and which themselves were subject to particular statutory and regulatory requirements, were "improper-disclosure claims."  Id. at 942.  It permitted state law claims addressed to other alleged fraudulent and deceptive practices "apart from the billing statements" to proceed.  Id. at 943.

The holding in Chae has little application to the facts alleged in the FAC.  As the Honorable Leonard B. Sand observed, "[t]here is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer . . . shall interact with a customer . . . in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity."  Genna, 2012 WL 1339482, at *8.

Navient also relies heavily on an "Interpretation" of § 1098g issued by the Department.  The Department issued that notice in 2018 "to clarify its view that State regulation of the servicing of Direct Loans impedes uniquely Federal interests, [and] that State regulation of the servicing of the FFEL Program is preempted to the extent that it undermined uniform administration of the program."  83 Fed. Reg. 10,619, 10,620 (Mar. 12, 2018).  Of particular relevance to this Opinion, the

18

Interpretation states:  "To the extent that State servicing laws attempt to impose new prohibitions on misrepresentations or the omission of material information, those laws would also run afoul of the express preemption provision in 20 U.S.C. § 1098g." Id. at 10,621.  The Department asserts in the Interpretation, as it did in its intervenor brief in Chae, that "such additional requirements are barred whether they are enacted legislatively or implied judicially in the context of a tort suit."  Id. (citation omitted).  The Interpretation echoes Chae's holding that "the State-law prohibition on misrepresenting a business practice is merely the converse of a State-law requirement that alternate disclosures be made."  Id. (citing Chae, 593 F.3d at 943).

Navient's argument that this Interpretation should be accorded so-called Auer deference is misplaced.  See Auer v. Robbins, 519 U.S. 452 (1997); Kisor v. Wilkie, No. 18-15, 2019 WL 2605554 (U.S. Sup. Ct. June 26, 2019).  "Auer deference is warranted only when the language of the regulation is ambiguous."  Halo v. Yale Health Plan, Director of Benefits & Records Yale University, 819 F.3d 42, 53 (2d Cir. 2016) (emphasis supplied).  Auer deference has no application where, as here, the agency is interpreting a federal statute rather than its own regulation.

Navient's argument that the Interpretation interprets a "disclosure regime" that "includes [the Department's] own rules and regulations" provides no help.  "An agency may not convert an issue of statutory interpretation into one of deference to an agency's interpretation of its own regulations simply by pointing to the existence of regulations whose relevance is tenuous at best."  Guerra v. Shanahan, 831 F.3d 59, 64 (2d Cir. 2016).

Navient alternatively argues that the Interpretation should be given deference according to its "power to persuade" under the doctrine of Skidmore v. Swift, 323 U.S. 134, 140 (1944). The persuasive value of the Interpretation in the context of this lawsuit is limited.  First, the Interpretation is primarily directed to addressing cases in which States have "enacted regulatory regimes or applied existing State consumer protection statutes that undermine these goals by imposing new regulatory requirements on the Department's Direct Loan servicers, including State licensure to service Federal student loans."  83 Fed. Reg. at 10,619.  This is a private tort suit alleging misrepresentations regarding federal loan programs; it does not seek to impose new regulatory obligations on loan servicers.

Further, as the Seventh Circuit has noted, the Interpretation "is not persuasive because it is not particularly thorough and it represents a stark, unexplained change in the

Department's position." <u>Nelson</u>, 2019 WL 2636822, at *9 n.2
(citation omitted); <u>see also</u> <u>Student Loan Servicing Alliance v.</u>
<u>District of Columbia</u>, 351 F. Supp. 3d 26, 50 (D.D.C. 2018).  In
a Statement of Interest filed by the United States in a case in
this District, the United States had declared:

> [n]othing in the HEA or its legislative history even
> suggests that the HEA should be read to preempt or
> displace state or federal laws.  Nor is there anything
> in the HEA or the regulations promulgated thereunder
> to evince any intent of Congress or [the Department]
> that the HEA or its regulations establish an exclusive
> administrative review process of student claims
> brought under state or federal law, even if the
> conduct alleged may separately constitute an HEA
> violation.

<u>Sanchez v. ASA College, Inc.</u>, 14cv5006(JMF), ECF No. 64
(S.D.N.Y. Jan. 23, 2015).  The persuasive value of an agency's
interpretation may be undermined when it is "novel" or
"inconsistent with its positions in other cases."  <u>In re Bernard</u>
<u>L. Madoff Inv. Sec. LLC</u>, 779 F.3d 74, 83 (2d Cir. 2015).

    B. Implied Preemption

    Nor are the state law claims impliedly preempted by the HEA
under a conflict preemption theory.  Defendants urge that
subjecting loan servicers such as Navient to the police powers
of the fifty States would interfere with the accomplishment of
the HEA's purpose of ensuring uniformity for federal student
loans.  While uniformity is undoubtedly one of the goals of the
HEA, it does not follow that the HEA broadly preempts any state
law cause of action that may be applied to a federal loan

servicer.  As the court recognized in <u>Genna</u>, such a broad reading "would be, in effect, to find field preemption, which precedent precludes us from doing."  <u>Genna</u>, 2012 WL 1339482, at *9.  Courts have consistently held that field preemption does not apply to the HEA.

II. Failure to State a Claim

Although plaintiffs' claims are not preempted by the HEA, only their claim pursuant to New York General Business Law § 349 survives this motion to dismiss.

A. Breach of Contract

Plaintiffs' claim for breach of Navient's Servicing Contracts fails because plaintiffs are not intended third party beneficiaries of the contracts.  Federal common law governs interpretation of "a federal government contract."  <u>Hillside Metro Associates, LLC v. JPMorgan Chase Bank, Nat. Ass'n</u>, 747 F.3d 44, 49 (2d Cir. 2014).  The federal common law of contracts incorporates "general principles of contract law."  <u>Id.</u> (citation omitted).  Under federal common law,

> [p]roving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question.  In the case of government contracts, individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.

<u>Id.</u> (citation omitted).

Plaintiffs have failed to identify any language in the Servicing Contracts that clearly evidences an intent to permit enforcement by the third party in question.  It is not enough that the borrowers incidentally benefit from Navient's performance under the Servicing Contracts.  Such incidental benefit does not rise to the level of intent to permit enforcement.

The plaintiffs' argument that they should be permitted to proceed to discovery in order to determine whether the Servicing Contracts contain such language is meritless.  The very unavailability of the contracts itself supports the conclusion that borrowers are not intended third party beneficiaries of the Servicing Contracts.  It would be surprising if parties to a contract, intending that contract to be enforceable by third parties, withheld the terms of that contract from those same third parties.  The plaintiffs' claim for breach of the Servicing Contracts (Count One of the FAC) is dismissed.

B. Breach of an Implied Warranty of Authority

In the alternative to their claim for breach of contract, plaintiffs plead a claim for breach of an implied warranty of authority.  This claim also fails.  The Restatement of Agency defines an implied warranty of authority as follows:

> A person who purports to make a contract, representation, or conveyance to or with a third party on behalf of another person, lacking power to bind

> that person, gives an implied warranty of authority to
> the third party and is subject to liability to the
> third party for damages for loss caused by breach of
> that warranty, including loss of the benefit expected
> from performance by the principal . . . .

Restatement (Third) of Agency § 6.10 (2006).[4]  The core of the

plaintiffs' argument with respect to this claim is that Navient,

holding itself out as an agent of the Department, misled the

plaintiffs with respect to their loan repayment options and

thereby caused them damage.  Plaintiffs have not alleged,

however, that Navient purported to "enter into a contract" with

them on behalf of the Department or "to take some legally

significant action" on behalf of the Department.  Id. at cmt. b.

Navient's alleged representations about its expertise and its

role in offering advice do not establish that it held itself out

as an agent with the authority to bind the Department.  Nor does

----

[4] The law of New York, Maryland, Florida, and California with
respect to this doctrine generally follows the Restatement.  See
Riverside Research Institute v. KMGA, Inc., 68 N.Y.2d 689, 692
(1986); DePetris & Bachrach, LLP v. Srour, 898 N.Y.S.2d 4, 6
(1st Dep't 2010); Mobitech Regenerative Medicine, Inc. v. Bakken
Value Creators, LLC, 15cv8286(LGS), 2016 WL 7192090, at *5-*6
(S.D.N.Y. Dec. 12, 2016); Hall v. Barlow, 260 Md. 327, 345-46
(1971); Burkhouse v. Duke, 190 Md. 44, 46 (1948); Margolis v.
Andromides, 732 So.2d 507, 509 (Fla. Dist. Ct. App. 1999)
(citing Tedder v. Riggin, 65 Fla. 153, 157 (1913)); Elof Hansson
Paper & Board, Inc. v. Caldera, 11-20495-CV-WILLIAMS, 2012 WL
12865853, at *5 (S.D. Fla. Apr. 26, 2012); West's Ann. Cal. Civ.
Code §§ 2342, 2343; Jeppi v. Brockman Holding Co., 34 Cal.2d 11,
18-19 (1949); Kurtin v. Elieff, 215 Cal. App. 4th 455, 485
(2013).

the FAC make clear what promises or contracts Navient may have made on the Department's behalf.

Puzzlingly, the plaintiffs argue that they have alleged an attempt by Navient to bind the Department because Navient's actions "did, in fact, bind its principal, inducing Borrowers to modify their contracts with [the Department] by opting into new, less favorable repayment plans."  This makes little sense.  An implied warranty of authority is breached when a defendant purports to bind a principle, but in fact lacks that authority. Count Two of the FAC is dismissed.

C. Tortious Interference with Contract

Plaintiffs' claim for tortious interference with their MPNs also fails.  To state a claim for tortious interference under New York law, a plaintiff must show "(1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of contract without justification, and (4) damages."  Kaplan v. Reed Smith LLP, 919 F.3d 154, 160 (2d Cir. 2019) (citation omitted). Similarly, in California, in order to state a claim for intentional interference with contractual relations, a plaintiff must show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or

25

disruption of the contractual relationship; (4) actual breach or
disruption of the contractual relationship; and (5) resulting
damage."  Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal.
4th 26, 55 (1998) (citation omitted).  "The elements of a
Florida law tortious interference with contractual relations
claim are: (i) the existence of a contract; (ii) the defendant's
knowledge thereof; (iii) the defendant's intentional and
unjustified procurement of a breach thereof; and (iv) damages."
Sun Life Assurance Co. of Canada v. Imperial Premium Finance,
LLC, 904 F.3d 1197, 1215 (11th Cir. 2018).  Finally, the
elements required to establish the tort of wrongful interference
with contractual or business relations in Maryland are "(1)
intentional and willful acts; (2) calculated to cause damage to
the plaintiffs in their lawful business; (3) done with the
unlawful purpose to cause such damage and loss, without right or
justifiable cause on the part of the defendants (which
constitutes malice); and (4) actual damage and loss resulting."
Kaser v. Fin. Prot. Mktg, Inc., 376 Md. 621, 628-629 (2003)
(citation omitted).  There are "two general types" of tort
actions for interference with business relationships in
Maryland, "inducing the breach of an existing contract and, more
broadly, maliciously or wrongfully interfering with economic
relationships in the absence of a breach of contract."  Nat.

Design, Inc. v. Rouse Co., 302 Md. 47, 69 (1984).  The
plaintiffs have pleaded only the former type.

The plaintiffs have failed adequately to allege that
Navient intentionally procured the Department's breach of any
provision of the MPN.  They point to the sections of the MPNs
entitled "Governing Law" and "Borrower's Rights and
Responsibilities," which explain the repayment options that
borrowers have available to them.  They argue that those options
were not available to them because Navient steered them away
from those plans.  While Navient's alleged misrepresentations
may have made it more difficult for the plaintiffs to take
advantage of their contractual rights, this does not establish
that the Department breached its contractual obligations to
borrowers.  Count Three of the FAC is therefore dismissed.

D. Tortious Interference with Statutorily Created
Expectancy

"Tortious interference with statutorily created expectancy"
is not a recognized cause of action, nor does it have any basis
in law.  That claim is therefore dismissed.

Even assuming that borrowers have a "property right" or an
"expectancy" in PSLF, the plaintiffs have failed to cite any law
that suggests that they may maintain a private cause of action
against a third party for interference with that right.  The law
that they do cite deals with interference with an expected

inheritance.  The plaintiffs' suggested analogy between a
statutorily created property right and inheritance of property
from a decedent is inapposite.  Count Four of the FAC is
dismissed.

    E. Breach of Fiduciary Duty, Negligence, and Negligent
Misrepresentation.

    Plaintiffs' claims for breach of fiduciary duty are
dismissed because the FAC does not adequately allege that
Navient owed fiduciary duties to the plaintiffs.  Under New York
law, the elements of a claim for breach of fiduciary duty are:
"(i) the existence of a fiduciary duty; (ii) a knowing breach of
that duty, and (iii) damages resulting therefrom."  Spinelli v.
Nat'l Football League, 903 F.3d 185, 207 (2d Cir. 2018)
(citation omitted).  "A fiduciary relationship exists under New
York law when one person is under a duty to act for or to give
advice for the benefit of another upon matters within the scope
of the relation."  Id. (citation omitted).  "It exists only when
a person reposes a high level of confidence and reliance in
another, who thereby exercises control and dominance over him."
People v. Coventry First LLC, 13 N.Y.3d 108, 115 (2009).

    In Florida, "[t]he elements of a claim for breach of
fiduciary duty are: the existence of a fiduciary duty, and the
breach of that duty such that it is the proximate cause of the
plaintiff's damages."  Gracey v. Eaker, 837 So.2d 348, 353 (Fla.

2002).  "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation."  Doe v. Evans, 814 So.2d 370, 374 (Fla. 2002) (citation omitted).

Under California law, "[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 820 (2011).  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal.4th 375, 386 (2008).

In Maryland, "although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty."  Int'l Bhd. Of Teamsters v. Willis Corroon Corp. of Maryland, 369 Md. 724, 727 n.1 (2002).  To the extent that the plaintiffs bring a claim for breach of fiduciary duty under Maryland law, that claim is simply duplicative of their negligence claim.

The general rule is that a lender does not owe tort duties to a borrower.  Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310,

318 (2d Cir. 1993).  Courts applying New York, Florida,
California, and Maryland law have applied that rule to both
lenders and loan servicers.  See Harte v. Ocwen Fin. Corp.,
13cv5410(MKB), 2014 WL 4677120, at *12 (E.D.N.Y. Sept. 19,
2014); Diaz v. U.S. Bank, N.A., 14-CIV-20741, 2014 WL 4639431,
at *7 (S.D. Fla. Sept. 16, 2014); Fullmer v. JPMorgan Chase
Bank, N.A., 2:09-cv-1037 JFM, 2010 WL 2511178, at *6 (E.D. Cal.
June 17, 2010) (collecting cases); Marks v. Ocwen Loan
Servicing, No. C-07-2133 SI, 2009 WL 975792, at *7 (N.D. Cal.
Apr. 10, 2009) ("Moreover, a loan servicer does not owe a
fiduciary duty to a borrower beyond the duties set forth in the
loan contract."); Ayres v. Ocwen Loan Servicing, LLC, Civil No.
WDQ-13-1597, 2014 WL 4269051, at *5 (D. Md. Aug. 27, 2014)
("Courts have consistently found that a mortgage servicer does
not owe a tort duty to its loan customer.")

Plaintiffs argue that, notwithstanding this general rule,
they have sufficiently alleged the existence of a fiduciary
relationship because they have alleged that Navient actively
held itself out as a source of guidance and expertise with
respect to student loan repayment and encouraged borrowers to
rely on its advice and representations.  These allegations,
however, do not establish that Navient exercised the level of
"control and dominance" necessary for the existence of a
fiduciary relationship.  At bottom, plaintiffs base their breach

30

of fiduciary duty claim on allegations that Navient made representations on its public-facing website about the quality of its customer service.  These representations do not establish that Navient has undertaken a fiduciary duty to act or give advice for the benefit of its borrowers.

Plaintiffs do not make a separate argument in defense of their negligence and negligent misrepresentation claims.  A threshold requirement of both of these claims is that Navient owed plaintiffs a duty.  The FAC pleads that Navient owed a duty of care to the plaintiffs due to its "special position of confidence and trust."  These claims appear to stem from Navient's purported fiduciary obligations which, as just discussed, have not been adequately alleged to exist. Plaintiffs' claims for breach of fiduciary duty, negligence, and negligent misrepresentation must therefore be dismissed.[5]

F. Statutory Deceptive Practices Claims

The parties agree that the plaintiffs' claims under the California, Maryland, and Florida deceptive practices statutes[6]

---

[5] Plaintiffs' negligent misrepresentation claims sound in fraud. See Utts v. Bristol-Meyers Squibb Company, 226 F. Supp. 3d 166, 188 (S.D.N.Y. 2016).  They are thus subject to the heightened pleading standard contained in Rule 9(b), Fed. R. Civ. P.  As discussed further below, all but one of the plaintiffs has failed to meet this standard.  The negligent misrepresentation claims brought by the remaining plaintiffs must therefore be dismissed on this additional ground.

[6] The statutes at issue are:  the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301 et seq.; the Florida

sound in fraud and thus are subject to the heightened pleading
standard contained in Fed. R. Civ. P. 9(b).  See Kearns v. Ford
Motor Co., 567 F.3d 1120, 1122 (9th Cir. 2009); Spaulding v.
Wells Fargo Bank, N.A., 714 F.3d 769, 781 (4th Cir. 2013); Leon
v. Continental AG, 301 F. Supp. 3d 1203, 1225-26 (S.D. Fla.
2017).

    Claims that sound in fraud must be pleaded with
particularity pursuant to Fed. R. Civ. P. 9(b).  United States
ex rel. Polansky v. Pfizer, Inc., 822 F.3d 613, 617-18 (2d Cir.
2016).  "To satisfy this Rule, a complaint alleging fraud must
(1) specify the statements that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when
the statements were made, and (4) explain why the statements
were fraudulent."  United States ex rel. Ladas v. Exelis, Inc.,
824 F.3d 16, 25 (2d Cir. 2016) (citation omitted).  Although
Rule 9(b) allows knowledge to be averred generally, a plaintiff
must "plead facts giving rise to [a] 'strong inference' of
actual knowledge" in order to survive a motion to dismiss.
Lerner v. Fleet Bank, N.A., 459 F.3d 273, 293 (2d Cir. 2006)
(citation omitted).  "The primary purpose of Rule 9(b) is to

---

Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201
et seq.; the New York Consumer Protection from Deceptive Acts
and Practices Law, N.Y. Gen. Bus. Law § 349 et seq.; and the
California Consumers Legal Remedies Act, Cal. Civ. Code § 1750
et seq.

afford defendant fair notice of the plaintiff's claim and the factual ground on which it is based." Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000) (citation omitted).

With one exception, the FAC does not meet the heightened pleading standards of Rule 9(b). It broadly alleges that, in an unspecified number of conversations over a range of years, Navient made certain representations to the named plaintiffs. In most cases, the FAC simply identifies the approximate year in which these conversations took place. In other cases, it gives no date range at all, and simply alleges that the named plaintiff "repeatedly" contacted Navient. Such general allegations are insufficient to afford Navient "fair notice" of the factual basis for the plaintiffs' claims sounding in fraud.

Plaintiffs argue that where much of the factual information needed to fill out plaintiff's complaint lies "peculiarly within the opposing parties' knowledge," the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced. DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1248 (2d Cir. 1987). The information relevant to these plaintiffs' claims, however, is not peculiarly within Navient's knowledge. Plaintiffs were parties to the telephone conversations in which they allege unspecified Navient representatives made the misrepresentations that are the subject of their claims. It is of little consequence to this motion to

33

dismiss that Navient may have maintained better records of these conversations than the plaintiffs did.

Only one named plaintiff, Rebecca Spitler-Lawson ("Spitler-Lawson"), makes allegations sufficient to meet the particularity requirements of Rule 9(b).  She alleges that she "called Navient in July 2016 to inquire about her eligibility for PSLF" and that a Navient representative falsely informed her that she would need to work full time in one position in order to qualify.

Spitler-Lawson's claim under the California Consumer Legal Remedies Act, however, must be dismissed because the CCLRA does not cover loan servicers like Navient.  The CCLRA prohibits various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a). California Civil Code § 1761 defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes" and "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Id. § 1761(a), (b).  California courts have long held that loans are not "goods" or "services."  See, Lloyd v. Navy Fed. Credit Union, 17cv1280(BAS)(RBB), 2018 WL 1757609, at *19 (S.D. Cal. Apr. 12, 2018); Griffin v. Green Tree

Servicing, 166 F. Supp. 3d 1030, 1054 (C.D. Cal. 2015);
Alborzian v. JPMorgan Chase Bank, N.A., 235 Cal. App. 4th 29, 40
(2015); Berry v. Am. Express Publ'g, Inc., 147 Cal. App. 4th
224, 233 (2007).

Plaintiffs argue that the CCLRA nevertheless applies to
Navient because they provided services beyond mere servicing and
debt collection.  That argument is foreclosed by California law.
In Fairbanks v. Superior Court, 46 Cal. 4th 56 (2009), the
California Supreme Court concluded that using the existence of
"ancillary services to bring intangible goods within the
coverage of the Consumer Legal Remedies Act would defeat the
apparent legislative intent in limiting the definition of
'goods' to include only 'tangible chattels.'"  Id. at 65 (citing
Cal. Civ. Code § 1761, subd. (a).)  As the California Court of
Appeal has recognized, this reasoning "applies with equal force
to lenders."  Alborzian, 235 Cal. App. 4th at 40; see also
Jamison v. Bank of America, N.A., 194 F. Supp. 3d 1022, 1031-32
(E.D. Cal. 2016).

Beyond their preemption argument, which has already been
rejected, the defendants make no further argument in support of
their motion to dismiss the plaintiffs' claim under Section 349

of the New York General Business Law.[7]   Count Fourteen of the FAC
therefore survives.

    G. Unjust Enrichment

    The final claims are claims of unjust enrichment.  To
prevail on a claim for unjust enrichment in New York, a
plaintiff must establish "(1) that the defendant benefitted; (2)
at the plaintiff's expense; and (3) that equity and good
conscience require restitution."  Myun-Uk Choi v. Tower Research
Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018).  The theory of
unjust enrichment, however, "lies as a quasi-contract claim.  It
is an obligation the law creates in the absence of any
agreement."  Beth Israel Med. Ctr. v. Horizon Blue Cross and
Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir.
2006) (citation omitted) (emphasis in original).

> [U]njust enrichment is not a catchall cause of action
> to be used when others fail.  It is available only in
> unusual situations when, though the defendant has not
> breached a contract nor committed a recognized tort,
> circumstances create an equitable obligation running
> from the defendant to the plaintiff.  Typical cases
> are those in which the defendant, though guilty of no
> wrongdoing, has received money to which he or she is
> not entitled.  An unjust enrichment claim is not
> available where it simply duplicates, or replaces, a
> conventional contract or tort claim.

---

[7] Unlike the consumer protection statutes of the other three
states, Section 349 is subject only to the pleading requirements
of Rule 8, Fed. R. Civ. P.  City of New York v. Smokes-
Spirits.com, Inc., 541 F.3d 425, 455 (2d Cir. 2008).

36

Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012) (citation omitted).

Similarly, under Maryland law, unjust enrichment consists of

> 1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

Hill v. Cross Country Settlements, LLC, 402 Md. 281, 295 (2007). "A successful unjust enrichment claim serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." Id. at 295-96 (citation omitted).

Florida unjust enrichment law is similar. "Florida courts have long recognized a cause of action for unjust enrichment to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." State Farm Fire & Cas. Co. v. Silver Star Health and Rehab, 739 F.3d 579, 584 (11th Cir. 2013) (citation omitted). "[T]o prevail on an unjust enrichment claim, the plaintiff must directly confer a

benefit to the defendant." Kopel v. Kopel, 229 So.3d 812, 818 (Fla. 2017).

Finally, in California, "an individual may be required to make restitution if he is unjustly enriched at the expense of another. . . . A person is enriched if he receives a benefit at another's expense." Ghirardo v. Antonioli, 14 Cal.4th 39, 51 (1996). "[A] benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." Id. "Ordinarily, a plaintiff must show that a benefit was conferred on the defendant through mistake, fraud, coercion, or request." CRV Imperial-Worthington, LP v. Gemini Ins. Co., 770 F. Supp. 2d 1074, 1078 (S.D. Cal. 2010).

The plaintiffs have failed to state a claim for unjust enrichment. The core of an unjust enrichment claim is that the defendant has received something that does not belong to it, and that rightly belongs to the plaintiff. This is not the plaintiffs' claim. As described in their opposition to this motion to dismiss, the plaintiffs' theory of unjust enrichment is that Navient unjustly retained servicing fees that should have gone to FedLoan. Count Five of the FAC is therefore dismissed.

## **Conclusion**

Navient's February 15 motion to dismiss the FAC is granted except as to Count Fourteen (New York General Business Law § 349).

Dated:   New York, New York
         July 8, 2019

DENISE COTE
United States District Judge