# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

EDWING D. DANIEL,
WILLIAM COTTRILL,
BROOKE PADGETT, and
ELAINE LAREINA LAI,

        Plaintiffs,

v.

NAVIENT SOLUTIONS, LLC,

        Defendant.
_____/

Case No. 8:17-cv-2503-T-24JSS

**O R D E R**

Before the Court is Plaintiffs Edwing D. Daniel, William Cottrill, Brooke Padgett and Elaine Lareina Lai's Amended Motion for Class Certification and Supporting Memorandum with exhibits. (Docs. 111, 128, 129). Defendant Navient Solutions, LLC ("NSL") responded in opposition with exhibits. (Docs. 136, 140). The Court, having carefully considered the parties' submissions, finds that Plaintiffs' Motion must be denied for the reasons advanced by NSL.

## I. INTRODUCTION

Plaintiffs' proposed "class action seeks redress for affirmative misrepresentations [Defendant Navient Solutions, LLC ("NSL")] made to numerous borrowers that their student loans qualified for the Public Service Loan Forgiveness [("PSLF")] program when in fact the loans did not qualify because they were not the right loan type and/or the borrower was not on a

qualifying repayment plan." (Doc. 128, p. 1). Plaintiffs assert that this is the result of systemic issues within NSL and they estimate that NSL has made such representations to at least tens of thousands of borrowers. (*Id.* at 1, 9). Specifically, Plaintiffs bring claims against NSL, a servicer of federally-owned or guaranteed student loans, for: (1) breach of fiduciary duty; (2) negligence; (3) unjust enrichment; and (4) breach of implied-in-law contract. (Doc. 19, Amended Complaint, ¶¶ 118–37). In addition, Plaintiffs assert state-specific consumer law claims against NSL under the Florida Consumer Collection Practices Act, § 559.72, Fla. Stat. (Count V) and the Colorado Consumer Protection Act, Colo. Rev. Stat. 6-1-101, *et seq.* (Count VIII). (*See id.* at ¶¶ 138–47; 161–67).[1]

## II. BACKGROUND

### A. The PSLF Program and Defendant NSL's Loan Servicing Operations

The United States Department of Education ("the DOE") established the PSLF program in 2007. Pursuant to the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965), only Direct Loans originating under the William D. Ford Direct Loan Program, 20 U.S. C. § 1087a, *et seq.*, are eligible for loan forgiveness under PSLF. A borrower can obtain a Direct Loan from the DOE or a borrower can consolidate loans under certain federal programs into a Direct Consolidation Loan. *See* 34 C.F.R. § 685.220. To qualify for consolidation, the underlying loan(s) must: (1) be in a grace period or in repayment; and (2) not subject to a judgment or wage garnishment. 34 C.F.R. § 685.220(d).

Under 20 U.S.C. § 1087 *et seq.*, certain borrowers with Direct Loans are eligible to enroll

---

[1] Count VI of the Amended Complaint, a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act and Count VII, a claim for violation of the District of Columbia Consumer Protection Procedures Act, were dismissed when Plaintiffs Michael Fanella and James Morgan, on whose behalf the two counts were raised, were voluntarily dismissed from this case. (*See* Docs 43, 106).

in PSLF and, ultimately, may earn loan forgiveness. 20 U.S.C. § 1087e(m) sets forth the criteria for loan forgiveness, requiring that the borrower:

> (1) make 120 timely monthly payments on a Direct Loan;
> (2) under a qualifying repayment plan;
> (3) be employed full-time in a "public service job" at the time of forgiveness; and
> (4) had been employed full-time in a public service job during the period in which the borrower made each of the 120 qualifying payments.

The eligible repayment plans include: (1) income-based repayment plans under 20 U.S.C. § 1098e; (2) standard repayment plans under 20 U.S.C. § 1087e(d)(1)(A), based on a 10-year repayment period; (3) monthly payments under a repayment plan pursuant to 20 U.S.C. § 1087e(d)(1) or (g) of not less than the monthly amount calculated under 20 U.S.C. § 1087e(d)(1)(A), based on a 10-year repayment period; or (4) an income contingent repayment plan under 20 U.S.C. § 1087e(d)(1)(D). *See* 20 U.S.C. § 1087e(m)(1)(A)(i)–(iv).

For purposes of PSLF, a "public service job" is defined as:

> (i) a full-time job in emergency management, government (excluding time served as a member of Congress), military service, public safety, law enforcement, public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics), public education, social work in a public child or family service agency, public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization), early childhood education (including licensed or regulated childcare, Head Start, and State funded pre-kindergarten), public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library sciences and other school-based services, or at an organization that is described in section 501(c)(3) of title 26 and exempt from taxation under section 501(a) of such title; or (ii) teaching as a full-time faculty member at a Tribal College or University as defined in section 1059c(b) of this title and other faculty teaching in high-needs

3

>subject areas or areas of shortage (including nurse faculty, foreign language faculty, and part-time faculty at community colleges), as determined by the Secretary.

20 U.S.C. § 1087e(m)(3)(B). A borrower can submit an Employment Certification Form ("ECF") to the DOE in order to verify that he or she has a "public service job." (*See* Doc. 136, Ex. A.) The ECF requires the borrower and the borrower's employer provide specific information regarding the borrower's place of employment, dates of employment and whether the borrower works full-time, and also allows the DOE to request supplemental documentation.

The DOE oversees the PSLF program through its Federal Student Aid division (the "FSA")—the office of DOE responsible for providing financial aid, managing federal student aid applications and enforcing the rules and regulations related to federal student loans. (Doc. 136, Ex. B, Declaration of Lisa Stashik ("Stashik Dec."), ¶ 2.) In 2011, FSA implemented a comprehensive program for administering the PSLF program and, since that time, FSA has instructed NSL to refer its borrowers who are interested in PSLF to FedLoan Servicing and/or the DOE for more information. (*Id.* at ¶ 5–9.) NSL sends the interested borrowers ECFs and written correspondence drafted by FSA, which advise the borrowers on the eligibility requirements for PSLF. (*Id.*) NSL advises the borrowers to contact FSA by telephone or to visit their website for more information on the PSLF program. (*Id.* at ¶ 10.) NSL includes information about PSLF on its own website, and its customer service agents can access information about PSLF from NSL's resources when talking to borrowers, including that only Direct Loans qualify for the PSLF program. (*Id.* at ¶ 11.) While NSL provides its customer service representatives with information regarding PSLF in an online system, it does not provide its customer service representatives with any scripts related to PSLF. (Doc. 111, Ex. 1 at 22, 40, 90, 104 & Doc. 111, Ex. 1 at Ex. 22, Ex. 40). NSL's compensation policies for customer service

representatives provide financial incentives for keeping average call times short and satisfying callers on their first call. (Doc. 111, Ex. 20; Ex. 27 at 24, 28 & Exs. 4–5; Ex. 29 at ¶¶ 8–12). These compensation policies have been in place since before the PSLF program was implemented. (Doc. 111, Ex. 27 at 30–31).

### B. The Named Plaintiffs

The Named Plaintiffs assert that their experiences (and those of other borrowers) demonstrate a pattern of NSL customer service representatives making affirmative misrepresentations to borrowers regarding their eligibility for PSLF. Plaintiff Edwing D. Daniel ("Daniel") currently works for the University of South Florida, in Tampa, Florida, as the Assistant Dean of Medical School Admissions and has been employed there since 2013. (Doc. 136, Deposition of Edwing Daniel ("Daniel Dep."), Defendant's Ex. D, at 29:18–30:1). He was previously employed at the University of Central Florida for seven years. (*Id.* at 32:21–25.) Daniel is the borrower on five federal student loans serviced by NSL that are not Direct Loans. (Doc. 136, Declaration of Andrew Reinhart, Defendant's Ex. E, ("Reinhart Dec.") at ¶ 3).

NSL has recordings of telephone calls to or from Daniel dating back to April 30, 2013. (Reinhart Dec. at ¶ 3 and attached transcripts of calls with Daniel at Ex. 2). None of the calls contains any discussion of PSLF or Daniel's eligibility for that program. (Reinhart Dec. at Ex. 2a; Ex. 2b; Ex. 2c). The calls do reflect, however, that Daniel at times missed payments and requested forbearances, which would affect his eligibility for the PSLF program. (*Id.*) Nevertheless, Daniel alleges he had one conversation with NSL regarding the PSLF program sometime in or around 2010. (Daniel Dep. at 57:18–21; 73:2–9; 94:18–23). He did not recall the name of NSL's agent, whether he spoke to a male or female or whether the agent had an accent. (*Id.* at 69:1–6.) According to Daniel, he phoned to inquire about "loan forgiveness

5

options for state employees." (*Id.* at 57:25; 58:1–2). Daniel asserts that the agent advised him as to the "parameters" for qualifying, such as making 120 timely payments, and also stated something to the effect that, if he kept "making payments and was not late and was communicating with [NSL] any issues then [he] would be fine." (*Id.* at 58:3–11; 68:11–17.) Daniel admits that NSL never told him that he was enrolled in PSLF, that he was on track for it or that he had the correct types of loans to qualify. (*Id.* at 85:2–11; 86:11–13.)

NSL's notes contradict Daniel's account of the phone calls. The notes reflect one conversation on January 22, 2010, during which Daniel asserted that he did not take out a loan to attend Remington College. (Reinhart Dec. at ¶ 3 and Exhibit 1 at Bates No.NSL_ED_0000699). The notes say nothing about PSLF. (*Id.*) Daniel did not follow up with NSL about the PSLF program. (Daniel Dep. at 71:16–25.) He also did no independent research or due diligence to ensure that he was on track for PSLF, he did not visit the DOE website for more information, he does not recall reviewing any written correspondence, and he did not speak to or consult with anyone else about PSLF. (*Id.* at 72:1–13; 64:5–10; 83–84.)

Plaintiff William Cottrill ("Cottrill"), a resident of Monroe County, Florida, has worked as a forecaster for the National Weather Service since June 2007. (Doc. 136, Deposition of William Cottrill ("Cottrill Dep."), Defendant's Ex. F, at 22:25; 23:1–25). In 2005, before the PSLF program existed, Cottrill consolidated his federal student loans into two loans, which are serviced by NSL, but are not Direct Loans. (Reinhart Dec. at ¶ 4 and attached referenced pages from Cottrill's Correspondence History at Ex. 3 at Bates No. NSL_ED_0006779). Thereafter, Cottrill enrolled in a 30-year repayment plan. (Cottrill Dep. at 55:19–23.)

NSL has two recordings of telephone calls related to Cottrill's account dating back to August 9, 2017. (Reinhart Dec. at ¶ 4 and attached transcripts of calls with Cottrill at Ex. 4.)

Neither of those calls contains any discussion of PSLF or Cottrill's eligibility for that program. (*Id.* at Ex. 4a; 4b). Cottrill asserts that he had one conversation with NSL concerning the PSLF program sometime in or around 2010. (Cottrill Dep. at 33:1–4; 36:9–13). He asserts that during this alleged conversation an NSL agent told him three times that he was "set to go" and that all he needed to do was apply for the PSLF program just before his 10-year work anniversary. (*Id.* at 33:1–17). Cottrill concedes, however, that the agent told him that he had to make timely payments for 10 years and provided him with a telephone number to use if he had further questions. (*Id.* at 33:18–25; 34:1–3; 36:17–19.)

Cottrill's correspondence history reflects only three conversations with NSL in 2010, none of which involved PSLF. (Reinhart Dec. at ¶ 4 and Ex. 3 at Bates Nos. NSL_ED_0006792, NSL_ED_0006793 and NSL_ED_0006794). For nearly 7 years, between the alleged conversation that he recalls until he completed his application for PSLF loan forgiveness in 2017, Cottrill did not check to see if he was on track. (Cottrill Dep. at 39:11–24.) He did perform his own research on the PSLF program, which included searches on the internet. (*Id.* at 31:2–21.) But, after learning that he could potentially consolidate his loans into Direct Loans, he chose not to do so. (*Id.* at 60:21–22.)

Plaintiff Brooke Padgett ("Padgett") works for the Office of the State Attorney in Tampa, Florida. (Deposition of Brooke Padgett ("Padgett Dep."), Defendant's Ex. H at 20:13–21:1.) She has worked for the State Attorney's Office since graduating from law school in 2010, first in Marion County, then in Jacksonville and now in Tampa. (*Id.* at 20:9–25.) Before consolidating her loans into Direct Loans in October 2017, her federal student loans were a mix of other types of loans. (Reinhart Dec. at ¶ 6).

NSL has recordings of telephone calls related to Padgett's account dating back

7

to February 19, 2013. (Reinhart Dec. at ¶ 5 and attached transcripts of calls with Padgett at Ex. 8). These calls show that on February 19, 2013, an NSL agent advised that Padgett's loans did not qualify for PSLF, because she needed Direct Loans, and that she had to consolidate her current loans. (*Id.* at Ex. 8a). In a call on April 27, 2015, Padgett admitted that she knew she had to consolidate in order to qualify for PSLF, and that the NSL agent advised her to visit studentloans.gov and provided the correct number to call. (*Id.* at Ex. 8b.)

On June 29, 2017, three separate NSL agents (in three separate calls) again explained to Padgett that only Direct Loans qualify for PSLF and she would need to consolidate. (*Id.* at Ex. 8d–8f). Padgett called again on June 30, 2017 and received the same information. (*Id.* at Ex. 8g). Still, Padgett maintains that NSL misled her about her PSLF eligibility requirements. She claims she first spoke to NSL regarding PSLF in either 2010 or 2011, although she does not remember the details of any conversation, other than that an NSL agent allegedly told her a payment of $0 would count towards PSLF eligibility. (Padgett Dep. at 32:1–6). Padgett asserts that she discussed PSLF with her co-workers and that she did independent research online regarding requirements for the program. (*Id.* at 31:1–8; 31:23–25).

Plaintiff Elaine Lareina Lai ("Lai"), a resident of Denver, Colorado, has worked as an environmental scientist for the Environmental Protection Agency for the last 14 years. (Doc. 136, Deposition of Elaine Lai ("Lai Dep."), Defendant's Ex. G at 25:23–25; 26:1; 29:18–22.) Her student loans that are serviced by NSL are not Direct Loans. (Reinhart Dec. at ¶ 5). Lai claims she recalls a few conversations over a few days sometime in late 2013 or January 2014 in which NSL allegedly confirmed that her loans qualify for PSLF. (Lai Dep. at 46:5–10; 48:6–15.)

NSL has eight recordings of telephone calls related to Lai's account dating back to January 21, 2014. (Reinhart Dec. at ¶ 5 and attached transcripts of calls with Lai at Ex. 6). The transcripts for these calls establish that on January 21, 2014, an NSL agent informed Lai that she should check online for the eligibility and program requirements and referred her to the DOE website. (*Id.* at Ex. 6a). On January 27, 2014, the NSL agent informed Lai that she did not have a Direct Loan. (*Id.* at Ex. 6b). On August 3, 2015, Lai asked an NSL agent whether her loans were eligible, the agent told her that they were not eligible and then advised Lai to contact the DOE to consolidate them into a Direct Loan and provided the contact number for the DOE. (*Id.* at Ex. 6c). Lai did not follow this advice and took no action at that time because she "hop[ed] [NSL] was wrong." (Lai Dep. at 55:16–25; 56:1–4.) Lai followed up with NSL more than two and a half years later, on February 13, 2018. (Reinhart Dec. at ¶ 5 and Ex. 6d). Lai already knew that her loans did not qualify, but the NSL agent again confirmed. (*Id.*) Lai has done independent research on the PSLF program since its inception, which included internet searches, as well as viewing PSLF-related web pages from NSL and the DOE. (Lai Dep. at 51:8–19; 48:20–25; 61:22–25.) Lai even printed, reviewed and kept a hard copy of the law describing PSLF when it was enacted. (*Id.* at 49:4–8; 54:1–13; 59:5–16).

### III. THE PROPOSED CLASSES

Through the instant Motion, the Named Plaintiffs seek, pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure, to certify a nationwide class consisting of:

> All individuals in the United States who: (1) have federal student loans that are or were serviced by [NSL]; (2) are, or after October 1, 2007, were employed full-time in public service by a qualifying organization for purposes of the PSLF program; (3) were told by [NSL] their loans were eligible for the PSLF program; and (4) on or after October 25, 2013, learned they were ineligible for the PSLF program because their federal student loans are not Direct

9

>Loans and/or they were not on a payment plan that is eligible for the PSLF program.

(Doc. 128, pp. 10–11.) Plaintiffs also seek certification of the following subclasses:

>Florida Subclass
>All individuals who: (1) are residents of Florida; (2) have federal student loans that were serviced by [NSL]; (3) are, or after October 1, 2007, were, employed full-time in public service by a qualifying organization for purposes of the PSLF program; (4) were told by [NSL] their loans were eligible for the PSLF program; and (5) on or after October 25, 2015, learned they were ineligible for the PSLF program because their federal student loans are not Direct Loans and/or they were not on a payment plan that is eligible for the PSLF program.
>
>Colorado Subclass
>All individuals who: (1) are residents of Colorado; (2) have federal student loans that were serviced by [NSL]; (3) are, or after October 1, 2007, were, employed full-time in public service by a qualifying organization for purposes of the PSLF program; (4) were told by [NSL] their loans were eligible for the PSLF program; and (5) on or after January 30, 2015, learned they were ineligible for the PSLF program because their federal student loans are not Direct Loans and/or they were not on a payment plan that is eligible for the PSLF program.

(*Id.*)

## IV. DISCUSSION

### A. Burden of Proof

The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). The Eleventh Circuit has held that "a plaintiff class should not be certified unless membership therein is 'adequately defined and clearly ascertainable.'" *Karhu v. Vital Pharms, Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Furthermore, "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA,*

*Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citations omitted). Rule 23(a), Federal Rules of Civil Procedure, requires the plaintiff establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Importantly, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original). Plaintiffs fail to meet their burden of proof for class certification. Because Plaintiffs do not contend that NSL delivered a common message to all borrowers via the same method at the same time (such as sending a letter containing the alleged misrepresentations), Plaintiffs' claims require a highly fact-intensive and individualized analysis of the different conversations that NSL had with potentially hundreds of thousands of borrowers over the course of more than

11

ten years.  Therefore, this action is not suitable for class certification.

## B. Analysis

### 1. Ascertainability of the Classes

Plaintiffs offer *Ocwen Loan Servicing, LLC v. Belcher*, 2018 WL 3198552 (11th Cir. June 29, 2018), as support for the proposed classes being clearly ascertainable.  However, the instant case is materially distinguishable from *Belcher*.  In *Belcher*, class membership was based on whether the putative class members had "received loan-delinquency letters," *i.e.*, written communications, "while participating" in a particular mortgage program.  *Id.*  The receipt of the letters was an objectively verifiable fact, which did not go to the merits of the claims.  The district court specifically found that "it would not be administratively feasible to identify discrete oral collection communications in which an *Ocwen* customer was allegedly threatened," and re-wrote the class definition to include only individuals who received the written communication. *Belcher v. Ocwen Loan Servicing, LLC* ("*Belcher II*"), 2018 WL 1701963, *6–7 (M.D. Fla. March 9, 2018).  The only question before the appellate court was whether the individual had received the written delinquency notice, and as the appellate court noted, "[defendant] does not deny that the delinquency notice records are in its possession."  *Belcher*, 2018 WL 3198552 at n. 1; *Belcher II*, 2018 WL 1701963.

Here, in contrast, Plaintiffs seek to have putative class members "self-identify" as having "received affirmative misrepresentations from [NSL]."  (Doc. 128, p. 27).  However, NSL does not have records that would readily confirm supposed class membership.  And, Plaintiffs do not propose a reasonable method for notifying borrowers of the ability to "self-identify," or even which borrowers would be notified.  It seems that Plaintiffs would rely on NSL's records to compile a notice list of all borrowers, and then would purport to send a notice to all of the

millions of borrowers who have outstanding federal student loans. "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" *Karhu*, 621 F. App'x at 946 (quoting *Bussey v. Macon Cty, Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)). This Judge agrees with NSL that the cost of the proposed endeavor, along with the extreme overbreadth and the potential for borrower confusion and harm to NSL's reputation equates to no methodology whatsoever. Further, because NSL does not manage the PSLF program, it does not know whether borrowers work in public service jobs or whether any particular borrower would meet the program requirements and qualify for loan forgiveness. The Court is not convinced that Plaintiffs' proposed class is workable and, thus, Plaintiffs fail the test for class ascertainability.

### 2. Numerosity

The class proponent must proffer evidence of the number of members of the purported class or a reasonable estimate of that number. *Grillasca v. Hess Corp.*, 2007 WL 121726, at *7 (M.D. Fla. July. 24, 2007). Plaintiff "may not rely on conclusory allegations that joinder would be impracticable, or rely on mere speculation regarding the class size." *Id.* "While the [c]ourt may make common sense assumptions in order to find support for numerosity, [it] will not just accept a number pulled out of thin air." *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 550 (M.D. Fla. March 15, 2007) (internal citations omitted).

Here, Plaintiffs are only able to offer an estimate of the class size. (Doc. 128, p. 13). Although they provide several statistics about the number of borrowers who may be eligible for the PSLF program, they fail to tie those numbers to NSL. As set forth above, NSL does not administer the PSLF program, but rather, it performs the day-to-day servicing of borrowers' loans. Plaintiffs cite general figures about complaints made to the Consumer Financial

Protection Bureau regarding NSL and PSLF, but they fail to offer any specific details of those complaints or how they relate to Plaintiffs' allegations in this lawsuit. (*Id.* at 14.) Plaintiffs state that "26 people have contacted Plaintiffs' counsel" with allegedly similar claims, and "more than 50 people have complained" to NSL. (*Id.*) From there, they use guesswork to reach a conclusion that there are "thousands and likely tens of thousands of [class] members." (*Id.* at 15.) Because Plaintiffs come to that conclusion, they simply assume without further explanation that joinder of the proposed class members is impracticable.

### 3. Commonality and Typicality

The Eleventh Circuit has held that the commonality and typicality requirements of Rule 23(a) overlap in many ways. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). These two requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the S.W.*, 457 U.S. at 157, n.13. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S.Ct. at 2551. "[T]ypicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman*, 221 F.3d at 1279. The claim must depend on a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original).

Commonality and typicality are particularly difficult to establish when, as here, Plaintiffs' claims are based on misrepresentations. *See Amarelis v. Notter School of Culinary Arts, LLC*, 2013 WL 5798573, at *5 (M.D. Fla. Oct. 28, 2013) ("To the extent that the causes of action require individual proof of reliance on the allegedly fraudulent representations and practices, the need for such individualized proof also undermines a finding of commonality."); *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 321–22 (M.D. Fla. 1997) (denying motion for class certification on fraud in the inducement because proof of individual reliance on specific false representation undermined commonality and typicality). This is because, "dissimilarities within the proposed class concerning [d]efendant's actual knowledge and the varying language of the [representations] at issue have the potential here to impede the generation of common answers." *Nazario v. Prof'l Account Servs., Inc.*, 2018 WL 1449177, at *5 (M.D. Fla. Feb. 13, 2018). In light of these factors, many courts in the Eleventh Circuit have held that claims like those asserted by Plaintiffs here lack commonality. *See, e.g., Amarelis*, 2013 WL 5798573 at *5 (finding lack of commonality for fraudulent misrepresentation and breach of fiduciary duty claims); *Oginski v. Paragon Props. of Costa Rica, LLC*, 282 F.R.D. 672, 679 (S.D. Fla. June 21, 2012) (finding lack of commonality for breach of fiduciary duty and contract claims); *Vega*, 564 F.3d 1256 at 1274 (finding lack of commonality for unjust enrichment claims); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 619 (S. D. Fla. Oct. 18, 2010) (finding lack of commonality on FCCPA claim); *McCamis v. Servis One, Inc.*, 2017 WL 589251, at *6 (M.D. Fla. Feb. 14, 2017) (finding lack of commonality on FCCPA claim).

Although Plaintiffs recite a list of common questions, their misrepresentation theory requires a highly fact-intensive and individualized analysis of the conversations that many different NSL representatives had with hundreds of thousands of borrowers over the course of

more than ten years. As NSL explains, this would require a thorough examination of call recordings, account servicing notes and testimony in order to determine: (1) the subject of a given communication (*i.e.*, about PSLF or not); (2) if the conversation was about PSLF, what was the content; (3) based on that content, could anything be construed as a misrepresentation that the borrower's loans qualified for PSLF; (4) whether there were any other communications with the borrower about PSLF that would negate any purported reliance on the alleged misrepresentation; and (5) whether the borrower was harmed by the supposed misrepresentation. Then, an additional set of highly individualized questions would be raised as to whether a borrower was, in fact, both eligible for PSLF and had fulfilled the program requirements over a span of ten years. Given these circumstances, Plaintiffs cannot make the requisite showing of commonality and typicality under Rules 23(a)(2) and 23(a)(3).

### 4. Predominance

The Eleventh Circuit has held that "[c]ommon issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). Common issues do not predominate over individual questions "if, 'as a practical matter, the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Cooper v. S. Co.*, 390 F.3d 695, 722 (11th Cir. 2004). Plaintiffs admit that courts typically decline to certify cases like this—*i.e.*, involving oral misrepresentations. (Doc. 128, p. 22). The factual circumstances of the Named Plaintiffs themselves plainly demonstrate that individual questions will predominate in this lawsuit. The Named Plaintiffs do not allege that NSL conveyed the "same message" to each of them. Plaintiff Daniel's claim is based on one conversation that supposedly took place nearly

eight years ago, and he admits that NSL never told him that he was enrolled in the PSLF program, that he was on track for it or that he had the correct types of loans to qualify (and NSL's account notes contradict his recollection of a misrepresentation anyway). Daniel also did not make the payments required under the program. Plaintiff Cottrill's claim is also based on a single conversation, from 2010, and although he conducted internet searches about eligibility and Direct Loan consolidation, he never followed up (and NSL's account notes also contradict his recollection of a misrepresentation). With respect to Plaintiff Padgett, she knew that she had to consolidate her loans in order to be eligible for the PSLF program, but she delayed taking the necessary action. Finally, as to Plaintiff Lai, NSL's call recordings show that NSL provided her with accurate information.

As NSL points out, Plaintiffs also overlook the individualized inquiries that will be necessary to determine whether the applicable statute of limitations has run for their various claims.[2] Furthermore, with respect to Plaintiffs' unjust enrichment claim, the Eleventh Circuit has found that such claims are not suitable for class certification, holding that "common questions will rarely, if ever, predominate in an unjust enrichment claim." *Vega*, 564 F.3d at

---

[2] *See Amato v. City of Miami Beach*, 208 So. 3d 235, 238 (Fla. Dist. Ct. App. 2016) (4-year SOL for breach of fiduciary duty); Fla. Stat. Ann. § 95.11(3)(a) (4-year SOL for negligence); *Beltran v. Vincent P. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla. Dist. Ct. App. 2013) (4-year SOL for unjust enrichment); Fla. Stat. Ann. § 95.11(3)(k) (4-year SOL for breach of implied contract); Fla. Stat. Ann. § 559.77(4) (2-year SOL for FCCPA claims); Colo. Rev. Stat. Ann. § 6-1-115 (3-year SOL for CCPA claims). Plaintiffs allege NSL's misrepresentations took place over a period of twelve years. The SOLs for the various claims, however, would have accrued, at the very least, when the borrowers learned the alleged representations were false, *i.e.* through self-education, media coverage, friends, coworkers, financial advisors, etc. *See, e.g. Jones v. Childers*, 18 F.3d 899, 906 (11th Cir. 1994) ("Florida courts . . . have broadly adopted the discovery principle, holding in a variety of legal contexts that the statute of limitations begins to run when a person has been put on notice of his right to a cause of action"). Thus, in order to determine whether the SOL has run for each class member, the fact finder would have to determine: (1) whether there was a misrepresentation; (2) when the misrepresentation occurred, (3) the nature of the misrepresentation, (4) whether the borrower later learned the representation was false, and, if so, (4) when the borrower learned the representation was false.

1274. Plaintiffs cite two decisions to the contrary, but they are distinguishable from the instant case inasmuch as the defendants' conduct in both of those cases was the same with respect to all plaintiffs. More specifically, in *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. March 28, 2011), defendants allegedly charged all members of the putative class more than was allowed as a matter of law for repairs. And, in *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 663 (S.D. Fla. March 15, 2010), defendants allegedly failed to remit certain taxes to all members of the putative class. In light of the foregoing, the Court finds that Plaintiffs fail to meet their burden in demonstrating predominance under Rule 23(b)(3)

### 5. Superiority.

The Court must consider alternative methods of adjudicat[ing] the dispute in determining superiortiy. *Grillasca*, 2007 WL 2121726, at *18 (citation omitted). "[T]he less common the issues, the less desirable a class action will be as a vehicle for resolving them." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010). The Court cannot agree with Plaintiffs' contention that a class action is superior to separate actions for each member of the putative class. Individualized issues predominate in Plaintiffs' claims, rendering a class action unmanageable. Where, as here, "[p]laintiffs' allegations are predicated on claims of fraud, individual showings of proof are appropriate," meaning that "individual actions are a superior vehicle for recovery." *Bacon v. Stiefel Labs, Inc.*, 275 F.R.D. 681, 699 (S.D. Fla. July 21, 2011). For these reasons, Plaintiffs fail to meet their burden in demonstrating superiority under Rule 23(b)(3).

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Plaintiffs Edwing D. Daniel, William Cottrill, Brooke Padgett and Elaine Lareina Lai's Amended Motion for Class Certification (Doc. 128) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of April, 2019

SUSAN C. BUCKLEW
United States District Judge

**Copies provided to:**
All Parties
Counsel of Record