July 30, 2019

**Selendy**
**&Gay**

**Via ECF and Hand Delivery**

**Re:**    *Hyland v. Navient Corp.*, No. 1:18-cv-09031 (July 26, 2019 Order (Dkt. 57))

Dear Judge Cote:

Plaintiffs seek certification under Rule 23(b)(2) and/or (b)(3) of a class of public servants with federal education loans to whom Navient made uniform misrepresentations regarding PSLF eligibility—conservatively estimated at ~40,000 financially distressed New York public/nonprofit borrowers. In *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 292, 303, 311, 319 (3d Cir. 1998) (Exhibit A), the Third Circuit upheld certification based on "a fraud-ulent scheme to sell life insurance policies through" three "deceptive sales practices," evidenced by "implementation of that scheme, the training of … agents in conformity with it, and the use of pre-approved materials," largely identified through the deposition testimony of 20 employees. In *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) (Exhibit B), the Ninth Circuit upheld certification based on "a centrally-orchestrated scheme to mislead borrowers" as to loan fees "through a standardized protocol the sales agents were carefully trained to perform." Absence of a "specifically-worded false statement repeated to each and every borrower …, traceable to a spe-cific directive" was no bar; "[t]he class action mechanism would be impotent if a defendant could escape ... by simply altering the wording or format of his misrepresentations across the class." *Id.* at 992. In *Roberts v. C.R. Eng., Inc.*, 318 F.R.D. 457, 507, 519 (D. Utah) (Exhibit C), *appeal denied*, 2017 WL 3611971 (10th Cir. Mar. 27, 2017), the court certified a class of truck driver trainees based on "a uniform policy and approach" to fraudulently enroll recruits, articulated in recruiting strategies, profit analyses, and training guides, and supported by depositions. In each case, the courts rejected defense arguments that oral misrepresentations perpetrated on buyers, borrowers, and drivers—all with individualized circumstances—defeated class treatment, recog-nizing that, like here, those cases make little economic sense absent a class.

Navient orchestrated a scheme to maximize profits by misleading borrowers about PSLF—steering New York class members, regardless of their specific financial circumstances, away from qualification with two materially uniform misrepresentations: (i) falsely telling Plaintiffs they were on track for PSLF (Dkt. 32 ¶¶ 50, 65, 68, 90, 343–50); and (ii) directing Plaintiffs into forbearance or a non-qualifying plan instead of a PSLF-eligible plan (*id.* ¶¶ 47, 66–67, 75, 366–85). Navient's misrepresentations were misleading, consumer-oriented, and by keeping borrowers away from PSLF, injured Plaintiffs. This conduct violates GBL § 349—a broad remedial statute that bars deceptive practices affecting consumers (reliance is not required). For efficiency, in addition to the *Daniel* production, Plaintiffs request early depositions (at minimum of those Navient agents who lied to Plaintiffs) to guide additional targeted document requests on Navient's training, compen-sation, and related processes, with all production completed by November 30. The Second Circuit does not "require … uniform written scripts for any oral communications and uniform training of sales agents" to show uniform misrepresentations. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir. 2002). Depositions of call center agents, call retention policies, and generalized proof like Navient's internal analytics are key—exactly what the *Daniel* plaintiffs did not get before the certification motion. Fewer than 1% of public servants who should have received debt relief under PSLF have obtained it. Relief—including through an injunction to change Navient's deceptive business practices and protect New York consumers—is needed.

Respectfully submitted,

*/s/ Lena Konanova*

Lena Konanova
cc (via ECF): Defendants' counsel