J7Q6HYLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

KATHRYN HYLAND, et al.,

                Plaintiffs,

         v.                            18 CV 9031(DLC)

NAVIENT CORPORATION and
NAVIENT SOLUTIONS, LLC,,

                Defendants.

------------------------------x
                                       New York, N.Y.
                                       July 26, 2019
                                       3:00 p.m.

Before:

                    HON. DENISE L. COTE,

                                       District Judge

                        APPEARANCES

SELENDY & GAY, PLLC
     Attorneys for Plaintiffs
BY:  FAITH E. GAY
     YELENA KONANOVA
     MARGARET M. SILLER

COVINGTON & BURLING, LLP
     Attorneys for Defendants
BY:  ASHLEY M. SIMONSEN
     ANDREW A. RUFFINO
     ALEX SETZEPFANDT

J7Q6HYLC

(Case called)

THE COURT:  I recently issued a decision on the motion to dismiss.  There is one claim remaining under New York General Business Law.  Fortunately the time for reconsideration has past and so we know where we are in terms of the claims that are outstanding.  The defendant's answer is due August 12th.  This is a jury case.  When we had the original conference in this case on December 7th, at that time there were two public service employee actions, one in Florida and one before me.  I am going to want an update with respect to that.

I understand that there are other cases brought by attorneys general around the country.  I want to talk to the parties about mediation and/or settlement discussions and when we should pursue them and under what forum.

Finally, I want to focus on the timing of class action litigation and setting up discovery so we can bring that motion as promptly as possible with as little additional litigation expense as possible.  No doubt you have worked on confidentiality grievance and ESI protocol, but I will take an update with respect to that.

Ms. Konanova, I will hear from you first.

MS. KONANOVA:  Thank you very much, your Honor.  Thank you for this Court's guidance in the July 8th decision.  We look forward to vindicating the interests of the individuals

J7Q6HYLC

wronged by Navient.

THE COURT:  Are there two of them right now?

MS. KONANOVA:  Four.

THE COURT:  Named plaintiffs.

MS. KONANOVA:  There are four named plaintiffs from New York.  The minimum number of class members in New York we believe based on preliminary statements number in the tens of thousands and with a very preliminary estimate of damages of about 20 to 30,000 a person.  We believe that a substantial number of damages is at issue in this case.  So we are looking forward to vindicating those rights under in the GBL 349 law which is a powerful remedy under -- powerful remedy for consumer fraud as indicated by the New York legislature.  So I would like to answer your Honor's questions regarding the other actions pending against Navient and to talk about the scheduling matters in this case.

So with respect to the other class action that was pending in Florida, class certification was briefed in that case based on somewhat constraint discovery as it was related to the named plaintiffs in that case.  That class certification motion was denied and a motion for summary judgment is currently pending.  That is the status of that proceeding.

With respect to the enforcement proceedings, there are several in Pennsylvania.  The CFPD one and the Pennsylvania Attorney General one that are currently stayed.  There is a

J7Q6HYLC

decision by the District Court with respect to preemption holding that the claims weren't preempted as this Court held and then an interlocutory appeal was allowed from that to the Third Circuit.  So that briefing is currently ongoing and the district court proceedings there are stayed.

In the Washington case and the California case, those cases are proceeding.

With respect to the question with respect to any mediation, as before we are completely open to any mediation discussions with Navient.

With respect the ESI issue as well, the ESI protocol and confidentiality protocol have already been entered by this Court.  They are on the docket.

THE COURT:  Good thank you.

MS. KONANOVA:  That has been taken care of.

With respect to going forward here, I would like to address a proposed narrow amendment of our complaint at this stage.  We would like to narrowly amend the complaint on two grounds in light of this Court's July 8th decision and on the basis of the discovery that we've received from Navient so far after we filed the First Amendment complaint.  The first one would be to add specificity under Rule 9(b).  As this Court articulated in its decision for two additional plaintiffs to state consumer deceptive practices claims.  So one for Mr. Anthony Church from Florida and one for Ms. Kaplan from

J7Q6HYLC

Marylander.  Even based on the limited discovery we received so far, we can meet the 9(b) standard articulated by this Court and specifically evidence misrepresentations by Navient on specific dates to those plaintiffs.  That is based on documents we received in May of 2019.  So about five months after we filed the first amended a complained.

The second ground on which we would propose to --

THE COURT:  That is a Florida plaintiff and?

MS. KONANOVA:  A Maryland plaintiff.

With respect to the second ground, we move to amend to state negligent misrepresentation claims for all four of the state subclasses -- New York, Florida, Maryland, and California.  That would be based on contracts that we have received in March of 2019 between the Department of Education and services such as Navient that expressly require Navient to inform borrowers of the PSLF benefit and how to qualify.  If you recall, your Honor, last time we were in front of you, counsel for Navient stood up and said that Navient has no obligation to disclose truthful information about PSLF to borrowers.  Based and these official contract orders produced in March of 2019, we now know that is not correct.  That the Department of Education doesn't in fact require Navient to provide accurate and appropriate counseling to borrowers and give borrowers specific information related to PSLF.  We believe that will allow us to show the duty of care needed for

J7Q6HYLC

negligent misrepresentation claims, which this Court held based on the information we had available to us and pled in the first amended complaint wasn't met as of the time of the July 8th decision.

We would propose to submit a motion for leave to amend and the proposed amended complaint within 21 days of today by August 16th.  Otherwise we propose that we set a schedule for discovery.  The parties in their negotiations prior to the initial conference had agreed on a very expedited schedule that we would propose.  We start as the parties agreed to coming off of the date of the motion to dismiss decision so that would be July 8th.

THE COURT:  I looked at the Rule 26(f) joint status report in preparation for today's conference.  I am hoping that we can look at this afresh and think about something more targeted and focused that gets us to the class certification motion substantially faster.

MS. KONANOVA:  Yes, your Honor.  In that 26(f) report, the parties have proposed document discovery taking place over four months, following the motion to dismiss decision, and then fact depositions for four additional months.  The parties had agreed and that would be consistent with what happened in other Navient class actions to merge class certification and merits discovery in this case.  The discovery that would be relevant to plaintiff's proving class-wide misrepresentations and the

merits of the misrepresentations themselves significantly overlap. That's the call recordings and internal Navient documents that would allow plaintiff to prove both. So we believe it would be much more efficient to merge those two sets of discovery.

The parties also agreed on class certification experts. We believe that is crucial. That is something that was missing in the Daniel Florida class action. We have retained experts both on industry -- the servicing industry as well as econometric experts that would allow us to the show the uniformity of misrepresentations and damages to class members. So we do propose to engage in class expert discovery.

We're open to discussing any changes to this schedule, but the parties have proposed simultaneous affirmative reports and then rebuttal reports following that discovery.

THE COURT: Describe the experts you have retained.

MS. KONANOVA: A econometrician that would allow us to show uniformity of misrepresentations as well as damages on a class-wide basis and an industry expert in the student loan servicing field that would help us show how Navient's financial incentive structure actually led it to create policies to form misrepresentations for its call center representatives when they are speaking to borrowers.

Again, the parties have proposed a simultaneous exchange and affirmative rebuttal reports. If the Court has

ideas, we're happy to discuss them.  I think that we had envisioned this as a fairly aggressive schedule.  If other class actions against Navient or any guide, we do expect some pushback from Navient as to discovery requests.  But all the discovery that we have asked for so far and that we're prepared to ask for immediately has been ordered in other cases against Navient.  That includes the Daniel case, the Washington, California and Pennsylvania enforcement actions and the CFPD actions where in particular nationwide borrowing data was ordered produced.  So we know that information is readily accessible to Navient and will not be burdensome to produce.  That is along the lines the discovery that we intend to ask for from Navient.

THE COURT:  Nationwide what?

MS. KONANOVA:  Nationwide borrower data.  So that would be --

THE COURT:  Nationwide?

MS. KONANOVA:  Nationwide borrower data.  In this case certainly any subset of that sort of data we believe would be easy and administrable for Navient to produce very quickly.

THE COURT:  Thank you.  Thank you.  Very much helpful.

I will hear from Ms. Simonsen.

MS. SIMONSEN:  Thank you, your Honor.

Your Honor, now that we have more clarity on the claims and what is left in this case following the motion to

dismiss, we would propose consistent with your Honor's suggestion that we move forward expeditiously toward plaintiff's filing of a class certification motion.  We would propose by March of 2020.

Here is how I think we get there:  In this case we've already exchanged initial disclosures.  Navient has produced over 215,000 pages of documents through informal discovery.  We have also produced 59 call recordings including substantially all of the call recordings for the New York plaintiffs that remain in the case.  Additionally, your Honor mentioned the Daniel case pending in the Middle District of Florida.  We have a proposal that we think can significantly streamline discovery here, and it would be to reproduce the 500,000 pages of documents that were produced in the Daniel case in the Hyland matter.

The claim in these cases overlap substantially.  The materials that were produced in the Daniel case relate to PSLF.  They relate to income-driven repayment plans.  They we relate to compensation -- the compensation structure at Navient.  They relate to the average handle time or calls with customer service representatives.  All subjects that plaintiffs have put at issue in this case.  What we would propose to do is produce a first tranche of that discovery in the next month with the second tranche to follow in the second month.  If plaintiffs are able to identify something missing, we would open to

targeted discovery requests for those limited pieces of documents that may be outstanding; but otherwise we think we can complete document discovery in the next several months.  We would then propose having depositions occur in late 2019 and early 2020 followed as I mentioned earlier by a class certification motion from plaintiffs in March.

Now, your Honor, I know that the parties had previously discussed the idea of expert discovery in connection with class certification; but as we gain greater familiarity with the claims in this case and have a better understanding of the much narrower scope of the case and also on the heels of the class certification order in Daniel denying class certification, and I will add without any expert discovery, we don't believe that expert discovery is necessary for this class certification motion.  This case is about misrepresentations that were allegedly made to individual borrowers.  In order for plaintiffs to prove their case, they each have to show that individual plaintiffs were told what they were told in conversations with Navient customer service representatives, whether what those Navient customer service representatives said was accurate or not, whether each individual one of them would actually have qualified for public service loan forgiveness which is a complicated individualized inquiry, whether they would have qualified for income driven repayment which is the only avenue that they can get to forgiveness on

their public loan of service.

Your Honor, we submit that expert opinion is not necessary to prove or disprove misrepresentations.  I don't know what kind of an expert you would need or could opine on uniformity of misrepresentations.  It is really plain from the face of the complaint that the misrepresentations here are not uniform.  I would be happy to walk you through even the misrepresentations alleged as to each of the named plaintiffs which differ dramatically.

So in light of that, your Honor, particularly given that almost identical claims another court in Florida has already denied class certification, in the interest preserving the parties' sources and also those of the court, we believe moving forward expeditiously with class certification by March would be the most efficient course.

THE COURT:  So let us say that the plaintiffs serve with their class certification motion expert reports and you would have an opportunity then to serve rebuttal reports, to take depositions of the plaintiffs' experts or to ignore the expert discovery and oppose the motion for class certification by in essence arguing as you have now that the expert discovery doesn't help the plaintiffs cross the goal line in certification decision, is that workable?

MS. SIMONSEN:  I think so, your Honor.  I think we would probably want to build in some time to explore some

rebuttal expert testimony.  Not that I anticipate we would necessarily need it, but I think that with an opposition brief that is due about two and a half months after their class certification motion is due, I think that would be doable.

I am just looking to my colleagues to confirm here.  I think that that makes a lot of sense.

THE COURT:  Or perhaps an opposition due a month after the motion is made unless you ask for additional time because you decide you want to put in expert discovery or take discovery of their experts?

MS. SIMONSEN:  I think that is a great idea, yeah. Maybe six weeks for the opposition as sort of the baseline with an opportunity to put in a request for more time if we want to put in expert rebuttal reports.  I think that would be a workable solution here.

Your Honor, I am happy to talk more about the schedule and move on to the other subjects that you raised at the outset.

THE COURT:  Is there any from your point of view purpose in having mediation until we have a decision on the class action issue?

MS. SIMONSEN:  Your Honor, as I mentioned earlier we see no way a class could be certified in this case.  So we're not particularly interested in mediating on a class-wide basis until this class certification motion is decided.  We would be

J7Q6HYLC

open to entertaining mediation of the individual named plaintiffs' claims, however.  Certainly if that is something that the plaintiffs are open to, we would entertain.

THE COURT:  What about this motion to amend, are you consenting to that or do you want it scheduled for opposition?

MS. SIMONSEN:  Well, your Honor, unfortunately this is the first time we've heard that plaintiffs are interested in filing an amended complaint.  It would have been nice to be able to talk about this in advance of the conference.  I obviously haven't had a chance to consult with my client as a result.  I do think your Honor was very clear at the December conference when you told plaintiffs it is unlikely you will be able to amend again after January 16th in response to any arguments made in the November 30th motion to dismiss.  Ms. Gay responded, We're fully aware of that and prepared to proceed with that ground rule in mind.

I also think, your Honor, with respect to this notion that they can add specificity on their 9(b) claims, again this is a case about misrepresentations.  These plaintiffs are alleging there were misrepresentations made to them.  Either they knew what those misrepresentations were before they filed this case or they don't exist.  So I am not sure what the production of call recordings, which by the way we don't think support any of their claims.

So I am not sure exactly what details they are

intending to add, but we don't see why that should be a basis for amendment.  They could have moved for reconsideration I suppose on the basis of newly discovered evidence.  They didn't do that.  So for those reasons we think that they shouldn't be permitted to amend their complaint.  If your Honor is inclined to allow them to do so, we would just ask for the opportunity to move to dismiss any amended complaint that your Honor does permit them to file.

THE COURT:  I don't know and I don't believe I should or could prevent anyone from filing a motion that is permitted by the Federal Rules of Civil Procedure.  That said, we do have a set of ground rules here and the parties invested energy into pleading and a motion to dismiss based on that set of ground rules.  Of course I relied on them.  I am not going to bar a motion that can be presented under the Federal Rules of Civil Procedure.

MS. SIMONSEN:  Your Honor, if that is the case, we would say go ahead and let the plaintiffs get their amended complaint on file and we'll just file a motion to dismiss.  To the extent that as we believe there will be arguments that we can make for dismissal just to avoid an unnecessary expenditure of resources.

THE COURT:  So I think what we should do is plan this case as if there will be no amended pleading, that we're dealing just with a New York GBL claim and nothing else because

that we know exists.  That can guide our life marching forward.

So it sounds to me, counsel, that you didn't have another meet and confer in advance of today's conference about the schedule here, that you were thinking independently about these issues.

Am I right, Ms. Simonsen?

MS. SIMONSEN:  That is correct, your Honor.

THE COURT:  I am going to take a brief recess to give you a chance to confer with each other.  I certainly like the idea of a motion for class certification no later than March.  I would be happy to take it earlier than that.  Let me give you a chance to talk with each other and let Ms. Rojas know when you are ready to resume.

MS. SIMONSEN:  Thank you, your Honor.

MS. KONANOVA:  Thank you, your Honor.

THE DEPUTY CLERK:  All rise.

(Recess)

THE COURT:  I will take a report, counsel.

MS. KONANOVA:  Thank you, your Honor.

The parties have come to an agreement on a discovery schedule.  Defendants have represented to us that within the next 60 days they are able to reproduce to us the discovery that was produced in the Daniel Florida action minus the named plaintiffs in that case.  So we would receive that by September 30th.  We would then have an opportunity to review

that discovery and ask for any additional discovery that we need in our case with document discovery then completing by late January 2020.

The parties agreed to hold depositions by late March of 2020 and for plaintiffs to submit their class certification motion together with expert reports by May 15th.  Defendants would ask for a default date of 45 days for their opposition with the caveat that should they choose to rebut the expert reports or for further motion practice the expert reports, they would come to the Court for an amendment of that schedule.  In the default the parties agree to 30 days for reply to the class certification motion.

Did I get that right?

MS. SIMONSEN:  Yes, you did.

THE COURT:  So, Ms. Konanova, do the plaintiffs wish to engage in settlement discussions for the named plaintiffs or not?

MS. KONANOVA:  Your Honor, we're certainly happy to engage in mediation if the Court finds it useful.  We do intend to proceed with this as a class action.  So I think we are prepared to do that; but if defendants want to put a constraint on the scope of that mediation, that might not be the most productive use of our time.  We're certainly willing to engage in it if the Court thinks it will be helpful.

THE COURT:  You certainly have -- I am not suggesting

you are not aware of this -- an ethical obligation to talk to your clients about this since their individual interests may far outweigh their interest in serving as a named plaintiff for a class. We're entering a summer period here where some folks have vocations scheduled. I am going to suggest that you let me know in two weeks whether or not I should make a referral for this limited mediation on an individual nonclass basis.

Let's talk about who that should be to. Should it be to a mediator or a magistrate judge?

Let me just ask Ms. Rojas who your magistrate judge is. She is going to find out for me.

MS. KONANOVA: We would be happy to do that, your Honor.

THE COURT: I want to make sure we're on the same wavelength. We're going to approach this class certification issue with respect to our New York class only. I don't really care with respect to the amendment adding in Florida or Maryland plaintiffs. I think there is an enormous hurdle to certifying this class. If it can't happy for New York, the likelihood it can happen for Florida or Maryland should those claims survive review I think is limited. Let's keep ourselves focused on the one claim we know survives, the GBL claim for New York plaintiffs, and think about class certification on that claim.

MS. KONANOVA: Understood, your Honor. There is case

law in the S.D.N.Y. and around the United States certifying classes based on oral misrepresentations.  The *Rodriguez* case from 2014 by Judge Stein is just one of those.  We believe based on documents we have already received and will receive from Navient, including their call flow procedures and their training manuals and internal documents, we will be able to show uniform oral misrepresentations to these borrowers.

THE COURT:  I just can't imagine there would be any uniformed oral representation.  Because anyone who picks up a phone to call Navient has a question and a question comes out of their individual circumstances and needs.  Many of the people who call couldn't be a part of our class.  They are not public servants.  Then we get down to those who are public servants with their own financial circumstances, their own employment circumstances.  So there could be a new uniform script.  There is going to have to be such an individualized inquiry and of course the question they have about, gee, what can I do about repaying my loans given who I am working for and my financial needs at the moment will depend also on who is on the other line and how knowledgeable they are and how well they understand the question and how quickly they get to the right material, etc., etc.  Assuming good faith and all that on the part of individual human beings, and knowing that the plaintiffs' theory is that there is this incentive to have short calls and fast calls and push people into a program that

leaves Navient as the servicer, etc., etc., assuming all of that to be true, it still comes down to a very individual conversation.

So here we are heading into months and months of expensive litigation when it's hard to predict that there is going to be a class certified. So I would love to look at any case, Ms. Konanova even a lowly District Court case in which a class has been certified in similar circumstances. I will read that with interest and I won't wait until whenever I have this. I would like to read it next week when I am focused on these issues. Because I think it sounds like the plaintiffs already have a lot of discovery and understanding of the defendant's business. I would hope we could get some core document discovery produced within a month, take a couple of quick depositions in September and October and brief class certification in November. That I think is actually in everybody's interest, including counsel for the plaintiffs. If this case is going to be made, it is going to be made. If it is not going to be made, let's treat it as an individual named plaintiff action and move forward with that kind of case.

I appreciate that counsel have had this conversation with each other about a schedule. Let me read some cases next week and see if I can see an opening here given Supreme Court jurisprudence on what is required for class certification particularly with a claim like this GBL claim which must focus

on the particular conversation with an individual borrower.

MS. KONANOVA:  Of course, your Honor.  There is case law.  This *Rodriguez* case is one of them where classes have been certified based on individual misrepresentations and the New York GBL statute does not require reliance.  So that makes it more consumer friendly than many other statute.  Other courts have also found evidence of uniformed harm to borrowers in exactly the same situations where borrowers have made changes to their pension plans, for example, that were economically irrational based on misrepresentations they received from call representatives.  So there is case law out there that supports discovery in this situation.

In terms of discovery in our case, we are prepared to move as quickly as possible.  This set of information of discovery form Daniel that Navient has agreed to produce to us we haven't seen that yet.  I will let Ms. Simonsen speak to this, but it sounds the soonest they can get it to us is within 60 days, but we would like to see that as quickly as possible so we can see that additional set of information.

THE COURT:  I think she described producing it on a rolling basis during the course of two months.

MS. KONANOVA:  Yes.  I understand we should expect one tranche in 30 days and completion in 60 days.  As far as the information we have so far, it has been quite constrained.  We received 59 call recordings out of 101 listed calls for named

plaintiffs, change orders from the Department of Education, and then certain call flow procedures that Navient produced to us that are these calls scripts that call center representatives used to guide in a uniform fashion what happens when they pick up the phone when borrowers call.  We received those in only a PDF format.  That was the subject of our motion to compel to your Honor earlier this year.  The documents are stored in an interactive database that Navient representatives use.

So far, though, based on even that limited information, we are able to see that when borrowers call in and they are distressed over their debt and they mention that they are interested in forgiveness or interested in income driven income repayment plan, there is enormous uniformity in how Navient responds.  Navient will misrepresent to these borrowers that they are either on track even though the borrowers are not on track or to certain borrowers that PSLF is not something that Navient offers, which is also a misrepresentation because certainly federal loan borrowers are eligible for this program.

We think there is a tremendous amount of uniformity in the way these call representatives respond to borrowers who are our class members, who are calling in for public service loan forgiveness.  We would like to move with all speed ahead to get additional discovery from Navient.

THE COURT:  I don't want to be asking counsel to brief anything and I don't want to read a voluminous amount of

material.  So I will ask each of you by Tuesday to just send me a one-page letter with at most three case cites that you think are the three cases I should read to change my view as to whether or not class certification can be granted or can't be granted in this kind of case.

Again, we'll focus after I read those three cases or six cases.  There probably is not going to be an overlap. We'll see if we revisit the schedule or not.

MS. KONANOVA:  Thank you, your Honor.

MS. SIMONSEN:  Your Honor, if I may respond to a few points.  It is supervising to me the representations Ms. Konanova has made to you.  The call flow procedures that we produced in this case, which contain information available to call center representatives when they are talking to borrowers, first of all they are not scripts.  Second of all, they are entirely accurate.

The alleged misrepresentations that Ms. Konanova described to you are misrepresentations that the borrowers in this case say they experienced.  They appear nowhere in Navient call flow procedures.  So to the extent that is what she was suggesting, it simply is not true and they have had those documents for a long time.  I am surprised to hear it.

I also want to point out we produced 59 call recordings.  Ms. Konanova said out of 101.  As we just explained to Ms. Konanova when we were meeting and conferring,

J7Q6HYLC

we have looked diligently for every single call recording that may exist for all of these borrowers.  To the extent that we were unable to find some recordings, they of course were not produced.  We just explained to Ms. Konanova that prior to 2011 and even in 2011 many call recordings there simply no longer retained in Navient's system.  That is the reason they have not been produced.  It is not because we're withholding anything.  We engaged in extensive informal discovery with these plaintiffs while our motion to dismiss was pending.  As your Honor pointed out, they do have a lot of documents and information as it stands.

I also just wanted to say, your Honor, that we will do our best to reproduce the Daniel production in 30 days.  I want to make sure we have sufficient time to get the named plaintiffs specific materials out and in addition anything that is already been produced in this case.  We will certainly do our best to produce as many of these documents as soon as possible.  To the extent we can get them out in 30 days, we're happy to move forward with depositions the following month and we think class cert for November makes sense.

THE COURT:  I will get back to you some time next week.

MS. SIMONSEN:  Thank you, your Honor.

-o-