**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated, | No. 18-cv-9031-DLC |
| Plaintiffs, | |
| v. | |
| NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC, | |
| Defendants. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**</u>

Date:  April 24, 2020

Mark Richard
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
Telephone: (305) 412-8322
E-mail: mrichard@phillipsrichard.com
(*pro hac vice*)

Faith Gay
Maria Ginzburg
Yelena Konanova
Margaret Siller
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
E-mail:  fgay@selendygay.com
        mginzburg@selendygay.com
        lkonanova@selendygay.com
        msiller@selendygay.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ............................................................................................................2

    A.    Plaintiffs' Factual Allegations ..........................................................2

    B.    Procedural History .........................................................................3

    C.    Proposed Settlement........................................................................4

        1.    Business Practice Enhancements ..............................................5

        2.    *Cy Pres* Award....................................................................6

        3.    Release ................................................................................6

        4.    Incentive Awards And Attorneys' Fees .....................................7

DISCUSSION ...............................................................................................................7

I.    The Settlement Structure Satisfies The Requirements Of Rule 23(e)(2) And Is Consistent With Past Approved Settlements ...................................................8

    A.    The Settlement Is Presumptively Fair, Adequate, And Reasonable Because It Was Negotiated At Arm's Length With The Benefit Of Mediation By Magistrate Judge Moses..........................................................10

    B.    The *Grinnell* Factors Support Settlement Of This Action .....................10

II.    Conditional Certification Of The Rule 23(b)(2) Class Is Appropriate .............18

    A.    The Rule 23(a) Requirements Are Met.............................................18

    B.    The Rule 23(b)(2) Requirements Are Met..........................................22

    C.    Plaintiffs' Counsel Should Be Appointed As Class Counsel................................22

    D.    The Proposed Class Notice Is Appropriate .........................................24

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ....................................................................... 8, 9

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)................................................................................ 19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................ 10

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................................... 22

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).............................................................................. 21

*Fresco v. Auto Data Direct, Inc.*,
2007 WL 2330895 (S.D. Fla. May 14, 2007) .................................................... 9

*General Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982)........................................................................................... 19

*Hirsch v. Citibank, N.A.*,
2018 WL 1779376 (S.D.N.Y. Mar. 26, 2018) .................................................. 25

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ................................................. 20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................ 11, 12

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992).............................................................................. 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ................................................... 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018) ...................................................................... 10

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................... 25

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
    314 F.R.D. 580 (N.D. Ill. 2016) ........................................................... 9

*In re Traffic Exec. Ass'n-E. Railroads*,
    627 F.2d 631 (2d Cir. 1980) .............................................................. 8

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Google*"),
    934 F.3d 316 (3d Cir. 2019) ......................................................... 14, 18

*Ingles v. Toro*,
    438 F. Supp. 2d 203 (S.D.N.Y. 2006) ................................................ 14

*Jermyn v. Best Buy Stores, L.P.*,
    2012 WL 2505644 (S.D.N.Y. June 27, 2012) ................................. 13, 14

*Jermyn v. Best Buy Stores, L.P.*,
    256 F.R.D. 418 (S.D.N.Y. 2009) ....................................................... 22

*Marisol A. ex rel. Forbes v. Giuliani*,
    185 F.R.D. 152 (S.D.N.Y. 1999) ............................................ 12, 13, 14

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .............................................................. 22

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ............................................................ 17

*MZ Wallace Inc. v. Fuller*,
    2018 WL 4007645 (S.D.N.Y. Aug. 22, 2018) ................................... 13

*O'Dell v. AMF Bowling Centers, Inc.*,
    2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009) .................................... 8

*Orellana v. Macy's Retail Holdings, Inc.*,
    2018 WL 3368716 (S.D.N.Y. July 10, 2018) .................................... 17

*Peoples v. Annucci*,
    180 F. Supp. 3d 294 (S.D.N.Y. 2016) ............................................... 18

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982) .............................................................. 12

*Port Authority Police Benevolent Ass'n v. Port Authority*,
    698 F.2d 150 (2d Cir. 1983) .............................................................. 19

*Rapoport-Hecht v. Seventh Generation, Inc.*,
    2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017)................................................ 20

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...................................................................... 21

*Shepard v. Rhea*,
    2014 WL 5801415 (S.D.N.Y. Nov. 7, 2014)................................................ 16

*Spann v. AOL Time Warner Inc.*,
    2005 WL 1330937 (S.D.N.Y. June 7, 2005) ............................................... 21

*Talone v. Am. Osteopathic Ass'n*,
    2018 WL 6318371 (D.N.J. Dec. 3, 2018)................................................... 22

*Trief v. Dun & Bradstreet Corp.*,
    144 F.R.D. 193 (S.D.N.Y. 1992) ......................................................... 19, 20

*Vincent v. Money Store*,
    304 F.R.D. 438 (S.D.N.Y. 2015) ............................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................ 7, 10, 11

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)............................................... 17

## **Statutes**

28 U.S.C. § 1715........................................................................................ 25

## **Rules**

Fed. R. Civ. P. 23(b)(2)........................................................................ passim

## **Other Authorities**

DEP'T OF EDUC. OFFICE OF FED. STUDENT AID, SERVICER PORTFOLIO BY REPAYMENT
    PLAN, https://studentaid.gov/data-center/student/portfolio ............................ 19

DEP'T OF EDUC., STUDENT LOANS OVERVIEW: FISCAL YEAR 2020 BUDGET PROPOSAL ............. 19

WILLIAM B. RUBENSTEIN ET AL., *Newberg on Class Actions* § 11.27 ......................... 18

## PRELIMINARY STATEMENT

Subject to the Court's approval, the parties have settled their dispute. Defendants Navient Corporation and Navient Solutions, LLC (collectively, "Navient") have agreed to implement meaningful practice enhancements to ensure accurate information is provided to public service borrowers seeking to qualify for Public Service Loan Forgiveness ("PSLF") and to fund a $1.75 million *cy pres* award to an organization that will be newly formed to provide education and counseling services to student loan borrowers in public service. In exchange, the class will release injunctive relief claims related to the alleged conduct as well as the right to pursue aggregate actions for damages, while preserving the right to bring individual damages claims. The proposed settlement satisfies all of the criteria for preliminary settlement approval under federal law.

Plaintiffs respectfully request the Court (1) grant preliminary approval of the Settlement Agreement attached as Exhibit 1 to the Declaration of Yelena Konanova in Support of Plaintiffs' Motion for Preliminary Approval; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(2) and appoint Plaintiffs as Class Representatives; (3) appoint Selendy & Gay PLLC ("S&G") and Phillips, Richard & Rind, P.A. ("PR&R") as class counsel; and (4) approve the proposed notice to class members (attached as Exhibits B and C to the Settlement Agreement) and direct its distribution.

The settlement satisfies the requirements of Fed. R. Civ. P. 23(e)(2) because it is fair, adequate, and reasonable. It was reached after months of arm's-length negotiation between the parties through experienced counsel, with the benefit of formal mediation before Magistrate Judge Moses, and reflects the parties' careful consideration of the benefits of settlement and risks of proceeding to trial. The settlement ensures that Navient will ask questions to identify borrowers who might benefit from PSLF and distribute comprehensive and accurate information about how to qualify, which are meaningful business practice enhancements. It also includes a *cy pres* award to fund

counseling and education of student loan borrowers in public service—directly addressing the alleged harm suffered by the class. The settlement will allow the parties to avoid complex, time-consuming, and costly further proceedings, mitigating the risks identified by this Court facing Plaintiffs in maintaining a class action through trial. Federal courts have previously approved settlement structures identical to this one, in which the defendant agrees to provide non-monetary relief to a Rule 23(b)(2) class in exchange for a release of all injunctive claims and aggregate damages claims. Preserving class members' right to file individual lawsuits for damages is particularly significant here, where individual litigation could be worthwhile. Because the settlement easily falls within the "range of possible approval," the Court should permit notice to be sent to class members.

## BACKGROUND

### A. Plaintiffs' Factual Allegations

Plaintiffs allege in their Amended Complaint as follows:

Public servants who have dedicated themselves to helping others, including teachers, nurses, and police officers, have been hit especially hard by the skyrocketing cost of higher education in the United States. Those workers, who are not highly compensated, often must take out substantial student loans in order to meet job requirements and maintain professional certifications, and many of them struggle to pay back their student debt while meeting day-to-day financial needs.

To help ease these financial burdens on public servants, and to enable students aspiring to careers in public service to do so without taking on a lifetime of debt, Congress in 2007 created PSLF. Amended Complaint ("Compl.") ¶¶ 251–52. The PSLF program was designed to forgive loan balances on loans originated by the federal government directly to borrowers ("Direct Loans") after 120 on-time borrower payments under a qualifying repayment plan while the borrower was working full-time for a qualifying employer. *Id.* ¶¶ 6, 254.

The Department of Education ("ED") has contracted with Navient, a private for-profit student loan servicer, to service borrowers' loans and, Plaintiffs allege, to provide borrowers with the guidance necessary to navigate the complexities of repayment and PSLF. Compl. ¶ 10. Plaintiffs are borrowers who allege that they are employed full-time by a PSLF-eligible employer and have contacted Navient regarding their PSLF eligibility. They allege that despite Navient's obligations under its contracts with ED (*id.* ¶¶ 286, 291, 296–97) and its promises to borrowers (*id.* ¶¶ 12, 315–17), Navient's advice to borrowers has stymied efforts to satisfy PSLF requirements. *Id.* ¶ 35.[1] Plaintiffs allege, for example, that Navient incorrectly tells borrowers they are "on track" for PSLF when they have the wrong loan type or are in the wrong repayment program, has informed others not to submit certification forms to determine eligibility, and has advised others to enter forbearance, during which they cannot make qualifying payments. *Id.* ¶ 17. Plaintiffs allege that, as a result, borrowers are forced to make excess payments, accrue unpaid interest on their loan principal, or lose PSLF eligibility altogether. *Id.* ¶ 34.

B.    Procedural History

Plaintiffs commenced this action on October 3, 2018 on behalf of a putative nationwide class of individuals who have been employed full-time by a PSLF-eligible employer and contacted Navient regarding their PSLF eligibility (including sub-classes consisting of such individuals who have resided in or taken out loans in Maryland, Florida, New York, and California), and a nationwide injunctive class consisting of individuals who intend to contact Navient in the future regarding their PSLF eligibility. Compl. ¶ 396. Following an Amended Complaint and briefing, this Court on July 8, 2019 granted in part and denied in part Navient's motion to dismiss, holding Plaintiffs' claims were not preempted by federal law, and allowing Plaintiffs' claims under New

_____

[1] Pursuant to this Court's order of October 16, 2019 (Dkt. 78), Plaintiff Eldon R. Gaede withdrew from this action. References in this brief to "Plaintiffs" do not include Mr. Gaede.

York General Business Law ("GBL") § 349 to proceed. Dkt. 53 at 2; Compl. ¶¶ 520–21.

The parties engaged in substantial discovery before agreeing to settle this case. Navient produced hundreds of thousands of pages of documents, including internal documents and records of Navient's communications with Plaintiffs; written guidance to call center employees for responding to borrower inquiries about various topics relevant to this action, including loan repayment plans, consolidation, PSLF, forbearance, deferment, and default; records of contacts with Plaintiffs via telephone, email, and through Navient's website; and documents sent between Plaintiffs and Navient such as loan statements, notices of interest accrual during forbearances, student loan interest statements for tax purposes, deferment and forbearance applications, and income-driven repayment certification forms. Plaintiffs engaged expert witnesses to examine issues relevant to their claims, including the standard of care in the loan servicing industry, methods of proving their claims through econometrics and data analysis, and methods of calculating damages.

### C.    Proposed Settlement

The parties began settlement negotiations following a July 26, 2019 Scheduling Conference with the Court. Initially, the parties were extremely far apart. To help bridge the gap, the parties agreed to mediation before Magistrate Judge Barbara Moses, which included written statements and a mediation conference attended by all ten Plaintiffs. With additional telephonic conferences before Judge Moses, the parties engaged in substantial further negotiations, including over the scope of the release and the amount of fees, costs, and a potential *cy pres* award. On January 17, 2020, the parties executed a Memorandum of Understanding memorializing the key settlement terms. On April 24 2020, the parties executed the Settlement Agreement, agreeing Plaintiffs will seek certification of a mandatory, nationwide Rule 23(b)(2) Settlement Class and Navient will provide the relief summarized below (described in Settlement Agreement Section V).

### 1. Business Practice Enhancements

<u>Call Center Representatives Must Explore Borrowers' PSLF Eligibility.</u>  Navient will require customer service representatives to listen for keywords or phrases that indicate borrower eligibility for forgiveness programs and to ask leading questions regarding employment by a government or not-for-profit organization.  Interested borrowers who appear to be eligible for PSLF will receive additional information regarding forgiveness options, direction to the Federal Student Aid website and/or to call FedLoan Servicing, and/or an informative email referenced in section V.B.2 of the Settlement Agreement.  Representatives will also be directed to discuss loan forgiveness, including PSLF, with borrowers prior to offering forbearance, and to review and determine loan forgiveness eligibility, including PSLF, during calls in which borrowers express an interest in repayment options or indicate they are having difficulty repaying their loans.

<u>Updated Communications With Borrowers.</u>  Navient will create and update template forms sent to borrowers who request additional information about PSLF or express interest in PSLF or consent to forbearance to provide another reminder that loan forgiveness options, including PSLF, may be available, and to direct them to the Federal Student Aid website and FedLoan Servicing to learn more about PSLF.  Navient will also maintain direct access to the National Student Loan Data System, which is ED's central database for federal student aid, through featured links on Navient's website.  Navient will ensure that borrowers potentially eligible for PSLF who contact Navient through any means are asked leading questions regarding forbearance and repayment options and/or provided additional information about loan forgiveness, including PSLF.

<u>Training and Monitoring of Call Center Representatives.</u>  Navient will provide training to customer service representatives on the above-described practice enhancements and will maintain required training on PSLF for customer service representatives.  Navient will also maintain regular monitoring of a sample of calls by customer service representatives to ensure compliance.

Navient has agreed to implement the Business Practice Enhancements by no later than 60 days after execution of the Settlement Agreement. Within ten days following implementation, or the Effective Date of the Settlement Agreement, whichever is later, Navient will provide class counsel with documentation on a confidential basis sufficient to show such implementation. Navient will maintain the Business Practice Enhancements for a minimum of three years from the Effective Date of the Settlement Agreement and will certify compliance with the Business Practice Enhancements on an annual basis for three years. *See* Exhibit D to the Settlement Agreement.

Navient will additionally hold one stakeholder meeting with Plaintiffs within 30 days after the Effective Date of the Settlement Agreement, which will include a representative from Navient with decision-making authority as to the Business Practice Enhancements, to gather feedback on PSLF issues Plaintiffs allegedly faced. Navient will notify class counsel of any updates to the Business Practice Enhancements within 60 days thereof.

### 2. *Cy Pres* **Award**

The parties have agreed that Navient will fund a $1.75 million *cy pres* award to an organization that will be newly formed in accordance with the parties' Term Sheet for Cy Pres Recipient and PSLF Project Proposal, attached as Exhibit E to the Settlement Agreement ("the *cy pres* recipient"), to launch the PSLF Project Proposal described therein and detailed further below (at 15-16). The *cy pres* recipient will devote the *cy pres* funds to providing education and student loan counseling to borrowers employed in public service.

### 3. **Release**

Plaintiffs, as proposed Class Representatives, have agreed to release on behalf of the "Settlement Class"[2] all claims for injunctive relief and all claims for damages brought in a class

---

[2] The Settlement Class includes all individuals who, at any point between October 1, 2007 and the Effective Date of the Settlement Agreement: (i) have or had Federal Family Education Loans

action or any aggregate action in which five or more separate individuals propose to prosecute their claims in the same legal proceeding, that arise out of the identical factual predicate of the Complaint or the Amended Complaint (the "Covered Conduct").[3] Members of the Settlement Class will not release, but instead will expressly retain, the right to file individual lawsuits for damages. The Settlement Agreement also confirms that the release will not have any preclusive or *res judicata* effect on actions or investigations by any governmental agency, including for restitution benefitting Plaintiffs or members of the Settlement Class. The proposed Class Representatives have agreed to release all individual damages and injunctive relief claims.

### 4.    Incentive Awards And Attorneys' Fees

Navient has agreed to pay $15,000 incentive awards to each of the proposed Class Representatives, and not to oppose a $500,000 fee award to class counsel, which shall include all fees, costs, and other expenses for all attorneys (and their employees, consultants, experts, and other agents) who performed work in connection with this action on behalf of the Settlement Class members. This award represents a substantial discount to the actual fees and expenses incurred by class counsel in connection with this action, which as of March 31, 2020 are approximately $5.4 million.

### DISCUSSION

The Second Circuit has recognized the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116

---

("FFEL") or Direct Loans serviced by Navient; (ii) are or were employed full-time by a qualifying public service employer or employers for purposes of PSLF; and (iii) spoke to a Navient customer service representative about subjects relating to eligibility for PSLF.

[3] The classwide release of class and aggregate mechanisms for damages claims expressly excludes litigation proceedings in which an external authority or court require particular actions to be prosecuted together including, but not limited to: (i) multi-district litigation as determined by the Judicial Panel on Multidistrict Litigation; (ii) actions that the court determines should be coordinated or consolidated for efficiency; (iii) actions that individuals mark as potentially related and are deemed related by the court; or (iv) actions that are required to be brought together based on the Federal Rules of Civil Procedure or the local rules of the local, state, or federal court.

(2d Cir. 2005). Preliminary approval of a settlement is warranted if "the proposed Settlement Agreement is within the range of possible settlement approval, such that notice to the Class is appropriate." *O'Dell v. AMF Bowling Centers, Inc.*, 2009 WL 6583142, at *1 (S.D.N.Y. Sept. 18, 2009). Notice to class members of a proposed settlement is appropriate upon "the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Accordingly, preliminary approval amounts to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

## I. The Settlement Structure Satisfies The Requirements Of Rule 23(e)(2) And Is Consistent With Past Approved Settlements

Courts have previously approved as fair, reasonable, and adequate a settlement structure identical to what is proposed here, in which Rule 23(b)(2) class members release all injunctive claims and aggregate damages claims but maintain individual damages claims, and the defendant agrees to provide non-monetary relief. For example, in *Berry v. Schulman*, the Fourth Circuit affirmed the approval of a settlement in which Rule 23(b)(2) class members released claims for injunctive relief, statutory damages, and punitive damages but "retain[ed] the right to seek actual damages individually," in exchange for "purely injunctive relief—a fundamental change in the product suite that [defendant] offers . . . that will result in a significant shift from the currently accepted industry practices." 807 F.3d 600, 606–07 (4th Cir. 2015) (internal quotation marks omitted). Finding that the settlement offered "the benefit to the (b)(2) Class of substantial injunctive relief without the risk of litigation"—and observing that "[t]here was no realistic prospect that [defendant] could or would provide meaningful monetary relief to a class of 200 million people"—the court affirmed the ruling of the district court that the "settlement [was] fair,

8

reasonable, and adequate under Rule 23(e)." *Id.* at 615 (internal quotation marks and alterations omitted).

Similarly, in *Fresco v. Auto Data Direct, Inc.*, the district court granted preliminary approval of a settlement where "the Settling Defendants . . . agreed to implement an injunctive relief program" complying with federal statutory obligations, instituting internal assessments and written compliance procedures, to the "benefit [of] all settlement class members." 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007). In exchange, the Rule 23(b)(2) class released "claims for equitable relief, statutory liquidated damages, and punitive damages," while preserving "individual claims for actual damages, subject to a waiver of the class-action procedural device." *Id.* Emphasizing the proposed "substantial injunctive relief," and observing that the parties' discovery and contentious motion practice meant that "the parties and the Court are well placed to assess the strength of this case and the comparative benefits of the proposed settlement," the court held the proposed settlement was "fair, reasonable, and adequate" and granted preliminary approval. *Id.* at *6.

Here, in addition to non-monetary relief, Navient has also agreed to fund a substantial *cy pres* award. In that respect, the proposed settlement is similar to *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, in which a Rule 23(b)(2) settlement class released the ability to assert class-wide claims but retained the right to pursue individual claims, 314 F.R.D. 580, 604–05 (N.D. Ill. 2016), in exchange for the NCAA's agreement to implement changes to its concussion-management and return-to-play policies, and to fund a medical monitoring program to track and treat the long-term effects or neurodegenerative conditions related to concussions, *id.* at 586–87. Observing that there was "very little likelihood that a Rule 23(b)(3) [class] . . . could be certified on a nationwide . . . basis," the district court granted preliminary approval of the settlement. *Id.* at 604, 608. The same result should follow here.

**A.    The Settlement Is Presumptively Fair, Adequate, And Reasonable Because It Was Negotiated At Arm's Length With The Benefit Of Mediation By Magistrate Judge Moses**

Under Fed. R. Civ. P. 23(e)(2), "[a] court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores*, 396 F.3d at 116. "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Id*. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal citations omitted). "[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018) (same). Here, the Settlement Agreement was reached after months of arm's-length negotiation between the parties through their experienced counsel after meaningful discovery (*see supra* at 4). Moreover, the Settlement Agreement was reached with the benefit of the involvement of Judge Moses in a formal mediation and several telephonic conferences. The Settlement Agreement is therefore presumptively fair, adequate, and reasonable.

**B.    The *Grinnell* Factors Support Settlement Of This Action**

"In this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores*, 396 F.3d at 117. Those factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; the risks of establishing (4) liability and (5) damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund given (8) the best possible recovery and (9) all the attendant risks

of litigation. *Id.* "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

### 1. Litigating Plaintiffs' Claims Would Be Complex, Expensive, And Lengthy

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78. Absent settlement, proceeding to trial in this action would require complex, time-consuming, and extremely costly further proceedings. The parties would need additional discovery, necessitating further negotiations over outstanding requests (*e.g.*, additional custodial searches, a subject of Plaintiffs' October 11, 2019 motion to compel); Plaintiffs' production of documents; and depositions of numerous individuals, including Navient call center representatives who spoke with class members regarding PSLF, supervisors, and other managers involved in creating and implementing policies for advising borrowers regarding PSLF, and a corporate representative. Plaintiffs additionally would need to continue working with experts on complex analyses of various issues, including the standard of care in the loan servicing industry, methods of proving alleged uniform misrepresentations and reliance through econometrics and voice data analysis, and calculation of damages. The parties would also need to brief and argue Plaintiffs' motion for class certification and motions for summary judgment, conduct a fact-intensive trial that would likely require the testimony of Plaintiffs, Navient employees, and expert witnesses, and litigate an inevitable appeal.

### 2. The Reaction Of The Class

Although notice of the settlement has not yet been sent to the class, each of the Plaintiffs have expressed their support for the settlement by signing the Settlement Agreement.

### 3. The Settlement Was Reached After A Detailed Factual Investigation

"To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982)). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *Id.* (internal quotation marks and alterations omitted). "Additionally, the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement, but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (internal quotation marks and alterations omitted).

The parties have engaged in a more-than-sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement. In total, Navient produced approximately 700,000 pages of documents, allowing Plaintiffs to conduct a detailed factual investigation and to form a detailed view as to the most effective practice enhancements to assist borrowers, which are reflected in the Business Practice Enhancements provided for by the Settlement Agreement. Moreover, the repeated discovery disputes between the parties[4] and Navient's aggressively litigated motion to dismiss demonstrate that the proceedings have been adversarial.

### 4. Plaintiffs Would Face Risks In Establishing Liability At Trial

In order to evaluate this factor, the court "does not need to decide the merits of the case or resolve unsettled legal questions." *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164

---

[4] The parties had multiple discovery disputes, several requiring Court intervention. *See* Dkt. 45 (May 30, 2019 motion to compel Navient to produce call recordings and an interactive, hyperlinked database used by Navient call center employees); Dkt. 77 (Oct. 11, 2019 motion to compel Navient to produce transcripts of depositions of Navient employees, names of call agents who spoke to Plaintiffs, and documents related to unnamed New York class members, and asking this Court to resolve the parties' impasse regarding custodial searches).

(S.D.N.Y. 1999) (internal quotation marks and alterations omitted), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000). Instead, it need only "weigh the likelihood of success by the plaintiff class against the relief offered by the Settlement Agreements." *Id.* If the Court denies preliminary approval of the settlement, Plaintiffs' sole remaining claim is GBL § 349. *See* Dkt. 53 at 2. "Section 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *MZ Wallace Inc. v. Fuller*, 2018 WL 4007645, at *4 (S.D.N.Y. Aug. 22, 2018) (internal quotation marks and alterations omitted). To prevail on a claim for a GBL § 349 violation, a plaintiff must prove that a defendant has engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* (internal quotation marks omitted).

Navient continues to deny Plaintiffs' allegations of wrongful conduct and damages, Settlement Agreement at 5, and were this matter to proceed to trial, Navient would vigorously defend itself on the merits. For example, Navient would likely argue individual Plaintiffs cannot prove their GBL § 349 injury was caused by Navient's allegedly deceptive acts and practices and challenge Plaintiffs' ability to prove class-wide injury and damages, which is often extremely challenging even with detailed expert analyses. A trial would require detailed fact-finding on issues such as Navient's communications with borrowers. Thus, although Plaintiffs are confident that they would have prevailed, there is "inherent risk in litigating these claims through trial," which is "particularly acute here both because of the fact-intensive nature of these claims," and because "a jury's reaction to the somewhat unusual structure of a class trial [is] unpredictable." *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *6 (S.D.N.Y. June 27, 2012).

### 5. Plaintiffs Would Face Risks In Obtaining Comparable Remedies After Trial

Where plaintiffs seek "declaratory and equitable relief, rather than damages, the Court still

considers the risks of establishing the sought-after 'remedy' in examining whether [a] Settlement Agreement[] [is] fair, reasonable, and adequate." *Marisol A.*, 185 F.R.D. at 164; *see also Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006). Because the Settlement Agreement expressly preserves the right of Settlement Class Members to file individual lawsuits for damages, the *cy pres* award is not a damages award. As the Third Circuit has explained, "a *cy pres*-only (b)(2) settlement that satisfies Rule 23's certification and fairness requirements . . . 'belong[s]' to the class as a whole, and not to individual class members as monetary compensation." *In re: Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Google*"), 934 F.3d 316, 328 (3d Cir. 2019).

In their Complaint, Plaintiffs sought broad equitable relief, including "enjoining Navient from continuing to improperly incentivize Navient's employees to steer Plaintiffs and members of the Classes into [non-qualifying plans], rather than income-driven repayment plans that qualify under PSLF," and "enjoining Navient from continuing to misrepresent to Plaintiffs and members of the Classes that they are not eligible for PSLF, providing incorrect information to Plaintiffs and members of the Classes regarding PSLF, and affirmatively restricting Plaintiffs and members of the Classes' ability to enroll in PSLF." Compl. at 128. By providing for practice enhancements devised with the benefit of Plaintiffs' experiences with Navient and Navient's internal knowledge, the Settlement Agreement substantially accomplishes the goals of the equitable relief sought without the "inherent risk" of seeking such relief at trial. *See Jermyn*, 2012 WL 2505644, at *6.

For example, Plaintiffs alleged that many PSLF-eligible borrowers were inappropriately steered into non-qualifying repayment plans instead of given the option of pursuing PSLF. *E.g.*, Compl. ¶¶ 324–41, 366–85. The Business Practice Enhancements in the Settlement Agreement directly address this allegation. Navient will ensure that customer service representatives determine borrowers' eligibility for loan forgiveness, including PSLF, during calls in which borrowers

express an interest in repayment options or indicate they are having difficulty repaying their loans, and discuss loan forgiveness with borrowers prior to offering forbearance. The Business Practice Enhancements will also help ensure that borrowers potentially eligible for PSLF receive adequate information on their options, by requiring representatives to ask leading questions regarding forbearance, repayment options, and employment by a government or not-for-profit organization, providing additional information about loan forgiveness during webchat conversations, and providing borrowers with additional information regarding forgiveness options.

Plaintiffs additionally alleged that Navient incorrectly informed borrowers that they were "on track" for PSLF, incorrectly informed other borrowers that they were ineligible for PSLF, and incorrectly advised borrowers not to submit necessary paperwork for PSLF. *E.g.*, Compl. ¶¶ 343–65, 386–95. The Business Practice Enhancements will help ensure that Navient's employees deliver correct information to borrowers regarding eligibility for PSLF and avoid restricting borrowers' ability to enroll in PSLF, by maintaining required training on PSLF, regularly monitoring calls with borrowers to ensure adherence to policies and procedures, designing forms that can be sent to borrowers who request additional information on or express interest in PSLF, and providing borrowers with direct links from Navient's website to ED's central database for federal student aid. The Business Practice Enhancements will thus provide material benefits to the Settlement Class in their continuing relationships with Navient, and to many future borrowers.

Settlement Class members will receive a further substantial benefit via the *cy pres* award to the *cy pres* recipient for the purposes of providing education and student loan counseling to borrowers employed in public service. As described in Exhibit E to the Settlement Agreement, the PSLF Project will be the first comprehensive national project to use public education, direct services, and advocacy to assist student loan borrowers in obtaining relief and bringing meaningful

changes to the PSLF program. The *cy pres* recipient will use the funds to build a robust public education program across college campuses to provide instruction and information for students who are planning to go into public service and are interested in PSLF. Its attorneys and staff members will conduct in-person presentations and convene in-person and online trainings for career services offices across the country interested in conducting sessions for their students and alumni. In addition, the *cy pres* recipient plans to conduct trainings and webinars for partner organizations, including public employee unions, state and federal government agencies and local school districts. The webinars, which will be posted on YouTube and other widely trafficked sites, will provide additional instruction on enrollment in eligible repayment plans and information on qualifying employers. The *cy pres* recipient also plans to make the webinars and other PSLF resources publicly available on its website so that they are easily accessible for a broader audience.

The *cy pres* recipient further plans to develop digital toolkits that provide assistance to student borrowers seeking PSLF discharges and will have a staff member dedicated to communicating with student loan borrowers on email and social media. It plans to train law students across the country to serve as PSLF Project "ambassadors," to conduct trainings and answer questions from borrowers about PSLF, and to organize and expand a nationwide network of attorneys to assist borrowers through guidance on applications or assistance in challenging denials.

In total, the *cy pres* recipient expects that PSLF Project activities will reach as many as 11,250 borrowers annually. Given the significant benefits that class members will receive from the tailored Business Practice Enhancements and *cy pres* award, the "possibility of achieving [through an adversarial process] additional relief over and above that afforded by the negotiated relief does not outweigh the benefits of the Settlement." *Shepard v. Rhea*, 2014 WL 5801415, at *10 (S.D.N.Y. Nov. 7, 2014).

### 6.    Plaintiffs Would Face Risks In Maintaining The Class Action Through Trial

To obtain class certification on their GBL § 349 claim, Plaintiffs would be required to present "a suitable methodology for establishing the critical elements of causation and injury on a class-wide basis," showing they "could prove at trial using common evidence that putative class members" suffered an injury as a result of Navient's allegedly deceptive acts and practices. *See Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010). Parties seeking to certify GBL § 349 claims "face significant challenges at the class certification stage" if the alleged "oral (mis)representations . . . vary significantly among the plaintiffs[,]" because such variation "poses a problem for plaintiffs in establishing predominance." *Orellana v. Macy's Retail Holdings, Inc.*, 2018 WL 3368716, at *20–21 (S.D.N.Y. July 10, 2018); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Where there are material variations in the nature of the misrepresentations made to each member of the proposed class . . . class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations . . . ."); *Vincent v. Money Store*, 304 F.R.D. 438, 444–45 (S.D.N.Y. 2015) ("Because evaluating the fraud claim would require looking to what was sent to each individual borrower, the plaintiffs have not shown predominance . . . to satisfy Rule 23(b)."), *aff'd sub nom. Garrido v. Money Store*, 649 F. App'x 103 (2d Cir. 2016).

While Plaintiffs are confident they could successfully make such a showing, this Court has indicated that Plaintiffs face substantial risks in obtaining class certification. *E.g.*, July 26, 2019 Conf. Tr., Dkt. 63 at 17:14-18:9 (Court believes "there is an enormous hurdle to certifying this class" because it "just can't imagine there would be any uniform[] oral representation[s]"); Oct. 17, 2019 Conf. Tr., Dkt. 81 at 33:18-34:9 (Court suggested that "there is an underlying problem

here with respect to the plaintiffs' theory" and expressed skepticism that "a sample of conversations" between Navient and borrowers "is going to have the . . . ability to make the broader point" that Navient's misrepresentations were uniform). Navient would vigorously contest class certification outside of the settlement context. Accordingly, absent a settlement, Plaintiffs would face significant risks in maintaining a class action through trial.

### 7. The Remaining *Grinnell* Factors Do Not Apply In This Case

Because the Settlement Agreement expressly preserves the right of Settlement Class Members to file individual lawsuits for damages, the *cy pres* award is not a damages award. *See Google*, 934 F.3d at 328 (*cy pres* award that was not "intended to compensate class members monetarily[,]" but rather "enhances the settlement's deterrent effect by funding . . . institutions that will work to prevent similar [harm] from occurring in the future[] . . . accords with the purpose of the Rule 23(b)(2) class structure"). Thus, "[t]he remainder of the *Grinnell* factors do not apply in this case as they address monetary damages." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016). For the foregoing reasons, the *Grinnell* factors weigh strongly in favor of settlement, and the settlement is therefore fair, adequate, and reasonable in satisfaction of Fed. R. Civ. P. 23(e)(2).

## II. Conditional Certification Of The Rule 23(b)(2) Class Is Appropriate

Navient consents to certification of the proposed class solely for the purposes of settlement. Ex. 1, Settlement Agreement at 7; *see also* WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 13:12 n.1 (5th ed. 2019) ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). The proposed settlement class satisfies the requirements of Rules 23(a) and 23(b)(2).

### A. The Rule 23(a) Requirements Are Met

Rule 23(a) provides that one or more members of a class may sue as representative parties

on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

1.  Numerosity

"[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (internal citation omitted). Plaintiffs easily satisfy this requirement, estimating that there are approximately 324,900 potential claimants, based on Navient's current federal loan portfolio and ED's estimate that 19% of income-drive repayment plan participants will receive PSLF.[5]

2.  Commonality

The commonality requirement tests "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). It "does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citing *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153–54 (2d Cir. 1983)). "Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Id.*

---

[5] *See* DEP'T OF EDUC., STUDENT LOANS OVERVIEW: FISCAL YEAR 2020 BUDGET PROPOSAL, Q-9-Q-10 (2020) (ED estimates that 19% of income-driven repayment plan participants would qualify for PSLF); DEP'T OF EDUC. OFFICE OF FED. STUDENT AID, SERVICER PORTFOLIO BY REPAYMENT PLAN, https://studentaid.gov/data-center/student/portfolio (as of December 31, 2019 Navient serviced 1.71 million borrowers on income-driven repayment plans, including Income Contingent, Income Sensitive, Income Based, Pay As You Earn, and Revised Pay As You Earn plans).

Plaintiffs' unjust enrichment claim satisfies the commonality requirement of Rule 23(a).[6] "[N]umerous courts have certified nationwide classes based on a common claim of unjust enrichment," reflecting the fact that "although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences, and regardless of which state's law applies, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched." *Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017) (internal quotation marks and alterations omitted). The "two fundamental elements of an unjust enrichment claim" are "that the defendant received a benefit from the plaintiff," and that "it would be inequitable for the defendant to retain that benefit without compensating the plaintiff." *Id.* (internal quotation marks omitted). Common issues of fact or law on Plaintiffs' unjust enrichment claim include (1) whether the class members have conferred a benefit upon Navient including, but not limited to, Navient's loan servicing fees, *see* Compl. ¶ 453, and (2) whether it would be inequitable for Navient to retain the benefit of any fees it may not otherwise have received but for Navient's alleged misrepresentations, *see* Compl. ¶ 456.

3.   Typicality

Typicality is met when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); the representatives' claims need not be identical to those of the class members, *Trief*, 144 F.R.D. at 200. "When it is alleged

---

[6] That this Court previously granted Navient's motion to dismiss the unjust enrichment claim poses no barrier to certifying a settlement class based on that claim. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) (certifying a settlement class and approving the settlement of claims that were previously dismissed); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *48 (N.D. Cal. Jan. 8, 2013) ("[C]ase law has long recognized the ability to settle claims that had been previously dismissed on the merits ...."), *R&R adopted*, 2014 WL 12879520 (N.D. Cal. June 27, 2014).

that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). The named Plaintiffs variously allege that Navient incorrectly advised them that they were "on track" for PSLF; incorrectly advised them not to submit required paperwork for PSLF; steered them into non-qualifying repayment plans; incorrectly stated that they were ineligible for PSLF; and otherwise provided them misleading and inaccurate information regarding PSLF. Compl. ¶ 35. This alleged unlawful conduct arises from the same course of events as the unlawful conduct that allegedly affected the Settlement Class as a whole. *See* Compl. ¶ 17.

4.    Adequacy

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "A conflict or potential conflict alone will not, however, necessarily defeat class certification—the conflict must be 'fundamental.'" *Id.* Plaintiffs have no claims that are antagonistic to those of the members of the class; instead, as discussed above, Plaintiffs' claims arise from common issues of law and fact that affect all class members, and are based on alleged unlawful conduct typical of the conduct allegedly affecting class members as a whole. While Plaintiffs will receive incentive awards should the Court approve the settlement, such incentive awards do nothing to undermine Plaintiffs' adequacy as Class Representatives. *See, e.g.*, *Spann v. AOL Time Warner Inc.*, 2005 WL 1330937, at *9 (S.D.N.Y. June 7, 2005) ("An incentive award of $10,000 for each named plaintiff is appropriate" and "may be given to compensate named plaintiffs for efforts expended for the benefit of the lawsuit." (internal citation and quotation marks omitted)); *Talone v. Am.*

*Osteopathic Ass'n*, 2018 WL 6318371, at *17 (D.N.J. Dec. 3, 2018) (in Rule 23(b)(2) settlement, approving $15,000 service awards to each of the class representatives). For the foregoing reasons, Plaintiffs and the Settlement Class satisfy the requirements of Fed. R. Civ. P. 23(a).

### B.      The Rule 23(b)(2) Requirements Are Met

"Class certification is appropriate where the defendant has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (citing Fed. R. Civ. P. 23(b)(2)). Plaintiffs, as discussed above, have alleged that Navient made misrepresentations regarding eligibility and the requirements for PSLF that are generally applicable to the class. Accordingly, the Business Practice Enhancements provided for in the Settlement Agreement are an appropriate manner of remedying Navient's alleged wrongdoing. *See, e.g.*, *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 434 (S.D.N.Y. 2009) (finding that a proposed class "meets the requirements of Rule 23(b)(2)" where "there is overwhelming positive value to the injunctive relief that the class seeks" because "[s]uch an injunction would prevent [the defendant] from continuing to perpetrate its alleged deceptive . . . [p]olicy on all New York consumers in violation of New York law").

### C.      Plaintiffs' Counsel Should Be Appointed As Class Counsel

Plaintiffs respectfully request that the Court appoint S&G and PR&R as class counsel. "In deciding whether counsel is adequate to represent the class, a court must consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (internal quotation marks and alterations omitted) (quoting Fed. R. Civ. P. 23(g)). S&G and PR&R investigated and identi-

fied the claims in this action and filed this action on Plaintiffs' behalf. Moreover, S&G has extensive experience in class actions and public interest litigation, as well as complex litigation generally. S&G's partners have represented plaintiffs and defendants at every phase of the class action process, in consumer disputes, antitrust, insurance, intellectual property, privacy and data breaches, RICO, and securities fraud. S&G partners' representative engagements include:

- American Federation of Teachers, a public servants union, and other investors against most major money center banks (including Goldman Sachs, Merrill Lynch, Barclays, Citigroup, and others) in litigation arising from their dealings in the $13 trillion U.S. Treasuries market and alleging violations of the Sherman Act based on collusion.

- The Coca-Cola Company, in defending multiple class action lawsuits, including in MDL proceedings, concerning alleged misleading advertising of its VitaminWater beverages, obtaining a favorable negotiated resolution with no damages.

- AOL, a web and online service provider, defending two separate putative class action lawsuits seeking statutory damages in excess of $650 million under the Electronic Communications Privacy Act relating to a data breach that was referred to at the time as the "Exxon Valdez" of data breaches.

S&G additionally has significant experience in public interest matters, including:

- Successfully defending New York City charter schools against suits challenging their ability to co-locate in Department of Education ("DOE") school buildings and demanding they pay rent to the DOE, obtaining denials of preliminary injunctions in both instances.

- Successfully defending a consent decree governing the delivery of medical services to Medicaid-eligible children in Tennessee in the Sixth Circuit.

- Representing a foundation that benefits elementary schools in uncovering a Ponzi scheme, resulting in the arrest of the principal, as well as jail time and seizure of assets.

- Representing a class of patients at a large hospital in litigation challenging inhumane conditions of care, and obtaining, along with the government, a consent judgment.

Mark Richard of PR&R brings substantial experience in representing organized workers in public service. He has been involved in public and private sector organizing, bargaining, and coalition building for over three decades, including the negotiation of more than 250 collective bargaining agreements in both the public and private sector. These include contracts for state and

local government employees, teachers and paraprofessionals, college professors, attending and resident physicians, nurses, social workers, fire and public safety professionals, and aviation employees. S&G and PR&R should be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g).

### D. The Proposed Class Notice Is Appropriate

Under Rule 23(c)(2)(A), for any class certified under Rule 23(b)(2), the court may direct "appropriate" notice to the class. In this case, the proposed notice program goes well beyond "appropriate" notice and satisfies most of the more specific and rigorous standards typically used to assess notice for purposes of classes certified under Rule 23(b)(3) seeking monetary damages. Those notice standards generally call for individual notice to class members who can be identified through reasonable effort, with concise and clear explanations about the nature of the action, the class definition, the claims at issue, class members' rights to enter appearances through counsel, and the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2)(B). Pursuant to the Settlement Agreement, the Settlement Administrator will employ numerous methods for circulating information about the settlement to Settlement Class members. Navient will identify individuals who have or had FFEL or Direct Loans currently serviced by Navient or that Navient has serviced at any time since October 1, 2007 and (a) whose correspondence histories in Navient's servicing systems contain at least one reference to PSLF or variations of public service in entries dating back six years from the filing of this lawsuit, or (b) whose loans were transferred for servicing to FedLoan Servicing, and will send direct email and/or postcard communications to these recipients. These communications will, at a minimum, notify the recipients that they are potential members of the Settlement Class (and the definition of the Settlement Class), a settlement has been reached, their rights may be affected, and they may be permitted to object to the settlement. The notice will also refer them to a class settlement website. Notice will also be published in national newspapers and on Navient's website.

The Settlement Administrator will maintain the class settlement website, which will post important settlement documents including the Settlement Agreement and will include a description of the Business Practice Enhancements, frequently asked questions, and procedural information regarding the status of the Court-approval process. The Settlement Administrator will also maintain a toll-free telephone number to provide Settlement Class members with access to live responders and to recorded information that includes answers to frequently asked questions and directs them to the class settlement website. The parties request the Court approve the form of notice attached as Exhibit C to the Settlement Agreement (the "Long-Form Notice"), pursuant to Fed. R. Civ. P. 23(c)(2)(A) and 23(e)(1)(B), designed to provide comprehensive and easily understandable notice of the terms of the Agreement, also to be posted on the class settlement website. This fulsome notice will provide appropriate notice in a reasonable manner, including individual notice to all members who can be identified through reasonable effort. *See, e.g.*, *Hirsch v. Citibank, N.A.*, 2018 WL 1779376, at *1, *3 (S.D.N.Y. Mar. 26, 2018) (court approved notice to class in the form of postcard notices to potential class members and the establishment of a settlement website and toll-free number); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").[7]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Settlement, Certification of the Settlement Class and Appointment of Plaintiffs as Class Representatives, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement.

---

[7] Navient shall also serve notice of the settlement that meets the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, on the appropriate federal and state officials not later than ten days after the filing of the motion for preliminary approval.

Dated:  New York, NY                    Respectfully submitted,
        April 24, 2020

                                        SELENDY & GAY PLLC


                                By:      */s/ Faith Gay*
                                        Faith Gay
                                        Maria Ginzburg
                                        Yelena Konanova
                                        Margaret Siller
                                        SELENDY & GAY, PLLC
                                        1290 Avenue of the Americas
                                        New York, NY 10104
                                        Tel: (212) 390-9000
                                        E-mail:  fgay@selendygay.com
                                                 mginzburg@selendygay.com
                                                 lkonanova@selendygay.com
                                                 msiller@selendygay.com

                                        Mark Richard
                                        PHILLIPS, RICHARD & RIND, P.A.
                                        9360 SW 72 Street, Suite 283
                                        Miami, FL 33173
                                        Telephone: (305) 412-8322
                                        E-mail: mrichard@phillipsrichard.com
                                        (admitted *pro hac vice*)

                                        *Attorneys for Plaintiffs*