**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>         Defendants. | No. 18-cv-9031-DLC-BLM |

**DECLARATION OF YELENA KONANOVA IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,**
**APPOINTMENT OF PLAINTIFFS AS CLASS REPRESENTATIVES AND**
**PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND**
**APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT**

YELENA KONANOVA, an attorney duly admitted to practice law before this Court, declares as follows:

1.      I am a member of the law firm of Selendy & Gay PLLC ("S&G"), who along with co-counsel, Mark Richard at Phillips, Richard & Rind, P.A. ("PR&R," and collectively with S&G, "Class Counsel"), are counsel for Plaintiffs Kathryn Hyland, Melissa Garcia, Elizabeth Taylor, Jessica Saint-Paul, Rebecca Spitler-Lawson, Michelle Means, Elizabeth Kaplan, Jennifer Guth, Megan Nocerino, and Anthony Church (collectively, "Plaintiffs" or "Class Representatives") in the class action proceeding captioned above (the "Litigation").  I make this Declaration based on my own personal knowledge, pursuant to 28 U.S.C. § 1746, and in support of Plaintiffs' motion,

pursuant to Rules 23(b)(2) and 23(e) of the Federal Rules of Civil Procedure, for: (i) preliminary approval of the proposed class action settlement; (ii) conditional certification of the Settlement Class[1]; (iii) appointment of Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; and (iv) approval of Plaintiffs' proposed notice of settlement (the "Motion").

## COUNSEL'S QUALIFICATIONS AND EXPERIENCE

2. S&G, together with our co-counsel, PR&R, have personally: investigated and identified all the potential claims in this Litigation from its inception; handled extensive outreach to and from potential Settlement Class Members as described in ¶ 3 below; researched and verified all the factual and legal bases for proceeding with those claims; and prepared all filings in connection with the same.

3. Prior to the filing of the Litigation, S&G spoke to over 200 potential Settlement Class Members individually. Since the filing of the Litigation, over 350 potential Settlement Class Members have contacted S&G regarding the pending Litigation.

4. S&G's partners bring many decades of combined legal experience to bear on this Litigation. They have specialized expertise in class actions, public interest litigation, and complex litigation generally.

5. S&G's partners have represented plaintiffs and defendants at every phase of the national class action process, in matters including antitrust, consumer disputes, insurance, intellectual property, privacy and data breaches, Racketeer Influenced and Corrupt Organizations Act, and securities fraud. S&G partners' representative engagements include:

       a. American Federation of Teachers, a union of public service professionals, and other investors against most major money center banks (including

---

[1] All terms not defined herein have the meaning ascribed to them in the Settlement Agreement.

Goldman Sachs, Merrill Lynch, Barclays, Citigroup, and others) in litigation arising from their dealings in the $13 trillion U.S. Treasuries market and alleging violations of the Sherman Act based on collusion.

b. The Coca-Cola Company, in defending multiple class action lawsuits, including in multi-district litigation, concerning alleged misleading advertising of its vitaminwater beverages, obtaining a favorable negotiated resolution with no damages.

c. AOL, a web and online service provider, defending two separate putative class action lawsuits seeking statutory damages in excess of $650 million under the Electronic Communications Privacy Act relating to a data breach that was referred to at the time as the "Exxon Valdez" of data breaches.

d. Lincoln National Life Insurance Company, obtaining dismissal of two putative class action lawsuits claiming damages in the hundreds of millions of dollars arising from the company's use of retained asset accounts to pay death benefits.

6. S&G's partners have significant additional experience in public interest matters, including:

a. Successfully defending New York City charter schools against suits challenging their ability to co-locate in NY Department of Education school buildings and demanding they pay rent to NY Department of Education, obtaining denials of preliminary injunctions in both instances.

b. Successfully defending a consent decree governing the delivery of medical services to Medicaid-eligible children in Tennessee in the Sixth Circuit.

c. Representing a foundation that benefits elementary schools in uncovering a Ponzi scheme run as a hedge fund, resulting in the arrest of the principal, as well as jail time and seizure of assets.

d. Helping residential solar customers get just and reasonable payments for power they export to the grid by representing a non-profit advocating for solar customers in the renewable energy market.

e. Representing a class of psychiatric inpatients and emergency room patients at a large metropolitan New York City hospital in constitutional litigation challenging inhumane conditions of care, and obtaining, along with the Department of Justice, a groundbreaking consent judgment entered by the Eastern District of New York.

7. Mark Richard of PR&R brings substantial experience in representing organized workers in public service professions. He has been involved in public and private sector

3

organizing, bargaining, and coalition building for over three decades, including the negotiation of more than 250 collective bargaining agreements. These include contracts for state and local government employees, teachers and paraprofessionals, college professors, attending and resident physicians, nurses, social workers, fire and public safety professionals, and aviation employees.

## RELEVANT PROCEDURAL HISTORY

8.      Following extensive investigation by counsel, described at ¶¶ 2–3, *supra*, nine Plaintiffs commenced this Litigation on October 3, 2018, alleging that, *inter alia*, Defendants Navient Solutions, LLC and Navient Corporation (collectively, the "Defendants," together with Plaintiffs, the "Parties") misrepresented critical information to qualifying borrowers about their eligibility for loan forgiveness under the Public Service Loan Forgiveness Program ("PSLF"), enacted by Congress in 2007 as part of the College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401, 121 Stat. 784, 800 (2007) (codified at 20 U.S.C. § 1087e(m)). Dkt. 1. Defendants sought to dismiss that initial complaint on November 30, 2018. Dkts. 22–23.

9.      Thereafter, on January 16, 2019, eleven Plaintiffs[2] filed an amended class action complaint adding new allegations and claims against the Defendants. Dkt. 32. On February 15, 2019, Defendants filed a new motion to dismiss that complaint in its entirety (the "Motion to Dismiss"). Dkts. 39–40.

10.      Following substantial briefing by the Parties, this Court granted in part and denied in part the Motion to Dismiss in a July 8, 2019 memorandum opinion and order (the "Decision"), which preserved Plaintiffs' claim for violation of New York General Business Law § 349. Dkt. 53.

---

[2] One of those Plaintiffs—Eldon R. Gaede—withdrew from the Litigation on October 16, 2019, citing certain health issues. Dkt. 78. His individual claim against Defendants was voluntarily dismissed without prejudice to the broader class. *Id.*

11.     Thereafter, the Court convened a status conference on July 26, 2019 (the "July 26 Conference") to discuss scheduling matters related to the Litigation.  At that conference, the Court raised the possibility that the Parties begin settlement negotiations.  S&G indicated it would consult with Plaintiffs about their desire to do so and so informed the Court on August 9, 2019.  Dkt. 65.

## DISCOVERY & CLASS CERTIFICATION

12.     During the pendency of the Motion to Dismiss briefing, Plaintiffs continued their thorough investigation into the facts and law in this Litigation, and began merits and class certification discovery, including through:

a.      28 discrete requests for discovery and numerous oral meet-and-confer sessions, and scores of e-mails, with counsel for Defendants over the scope and substance of those requests and

b.      Receipt of approximately 72,397 documents (699,924 pages) produced by Defendants from 63 of its custodians and central repositories, consisting of, *inter alia*, written guidance to call center employees for responding to borrower inquiries about topics relevant to the Litigation, including loan repayment plans, consolidation, PSLF, forbearance, deferment, and default; communications with Plaintiffs, including audio recordings of calls, and letters sent by Defendants to Plaintiffs; records of contact with Plaintiffs via telephone, e-mail, and through Defendants' website; and other documents given to Plaintiffs including loan statements, notices of interest accrual during forbearances, student loan interest statements for tax purposes, deferment and forbearance applications, and income-driven repayment certification forms.

13.     In addition, Plaintiffs retained three subject matter experts to assist them in reviewing and synthesizing the substantial volume of information furnished by Defendants, in support of Plaintiffs' efforts to certify a class of New York borrowers under Rules 23(b)(2) and 23(b)(3).

14.     Simultaneously, Defendants sought extensive discovery from Plaintiffs, serving on Plaintiffs Gaede, Garcia, Hyland, and Taylor over 30 discrete requests for production each, which

involved dozens of hours of collection, review, and phone calls with counsel. Although not complete at the time of settlement negotiations, Plaintiffs collected 6,106 documents during that process.

15.    To the extent that the Parties were not able to resolve their disagreements about the scope of discovery, they sought relief of the Court through motion practice. For example, on May 30, 2019, Plaintiffs filed a letter motion to compel Defendants to produce records including 2,388 call recordings reviewed by U.S. Department of Education's Federal Student Aid Office in connection with its 2017 audit of Defendants, and an interactive, hyperlinked database used by Defendants' call center representatives, which Plaintiffs sought in order to reconstruct how Defendants' call center representatives used the call flow procedures. Dkt. 45 (denied without prejudice pending the Decision per Dkt. 47). And on October 11, 2019, Plaintiffs asked this Court to resolve the Parties' impasse regarding custodial searches and terms and to order Defendants to produce transcripts of depositions of Defendants' employees taken in another federal action, names of call center representatives who spoke to the Plaintiffs, and documents related to unnamed New York class members. Dkts. 72, 77. The Court instructed the Parties to negotiate further, after which Defendants provided a number of deposition transcripts for three individuals noticed for deposition in this Litigation.

16.    Through that process, Plaintiffs established a robust record to assist them in their briefing on the contemplated motion for class certification and in guiding the settlement process.

17.    Altogether, counsel for Plaintiffs have committed thousands of hours from dozens of attorneys during the course of the Litigation.

## SETTLEMENT NEGOTIATIONS

18.    The Parties began settlement negotiations shortly after the July 26 Conference. Those negotiations have been ongoing since that time.

19.    Initially, the Parties were extremely far apart.  To help bridge the gap between their initial positions, the Parties agreed to mediation before Magistrate Judge Barbara Moses, pursuant to which the Parties filed written statements explaining their positions and participated in a November 5, 2019 mediation conference attended by all ten Plaintiffs.  Although the Parties were initially unable to reach agreement on the contours of a proposed settlement, they continued discussions, including through multiple telephonic hearings before Judge Moses, and engaged in substantial further negotiations over matters including the scope of the release, the amount of fees and costs that would be awarded in a potential settlement, and the amount of a potential *cy pres* contribution.

20.    On January 22, 2020, after months of discovery and significant expert analysis, as well as substantial arm's-length settlement discussions and negotiations, the Parties informed the Court that they had signed a memorandum of understanding ("MOU") memorializing the material terms of a settlement that would resolve the Litigation in its entirety.  *See* Dkt. 92.

21.    Thereafter, the Parties executed a Settlement Agreement and Release (the "Settlement Agreement"), dated April 24, 2020, a true and correct copy of which is attached herein as **Exhibit 1**.

22.    The Settlement Agreement itself incorporates several additional exhibits for the Court's review:

    a.    **Exhibit 1-A**, which is a true and correct copy of the proposed Preliminary Approval Order;

    b.    **Exhibit 1-B**, which is a true and correct copy of the proposed Short-Form Notice to Settlement Class Members of the Settlement Agreement and their right to object;

    c.    **Exhibit 1-C**, which is a true and correct copy of the proposed Long-Form Notice to Settlement Class Members of the Settlement Agreement and their right to object;

    d.        **Exhibit 1-D**, which is a true and correct copy of the proposed certification of compliance that Defendants will complete on an annual basis; and

    e.        **Exhibit 1-E**, which is a true and correct copy of the Term Sheet for Cy Pres Recipient and PSLF Project Proposal.

23.    The substance of the Settlement Agreement reflects the Parties' careful consideration of the benefits of settlement and the risks of proceeding to trial. It provides meaningful business practice enhancements by ensuring, at bottom, that Navient will ask questions to identify borrowers who might benefit from PSLF and distribute comprehensive and accurate information about qualifying for PSLF, and also includes a *cy pres* contribution to fund counseling and education of student loan borrowers in public service—directly addressing the alleged harm suffered by the Settlement Class. The settlement will allow the Parties to avoid complex, time-consuming, and costly further proceedings, mitigating the risks identified by this Court facing Plaintiffs in maintaining a class action through trial.

The undersigned declares under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
          April 24, 2020

/s/              *Yelena Konanova*
                    Yelena Konanova