```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   KATHRYN HYLAND, et al.,
 4                Plaintiffs,
 5           v.                         18 CV 9031 (DLC)
 6   NAVIENT CORPORATION, et al.,
 7                Defendants.
 8   ------------------------------x
                                       New York, N.Y.
 9                                      June 10, 2020
                                       10:00 a.m.
10
     Before:
11
                     HON. DENISE L. COTE,
12
                                        District Judge
13
                           APPEARANCES
14
     SELENDY & GAY PLLC
15        Attorneys for Plaintiffs
     BY:  YELENA KONANOVA
16        FAITH E. GAY
17   COVINGTON & BURLING LLP (NYC)
          Attorneys for Defendants
18   BY:  ASHLEY MARGARET SIMONSEN
          ANDREW ARTHUR RUFFINO
19
20
21
22
23
24
25
```

1              THE COURT:  Good morning.  I'm going to try to change

2       the view here.  I can see you a bit more clearly now.  I have

3       many devices functioning so that I can see you on Skype and

4       also look at some documents here, but I would ask for your

5       patience.

6              Before I take appearances, I want everyone to know

7       that this is a public proceeding.  We've provided notice of how

8       the public and the press can join us today.  Therefore, you

9       should be aware that everything we say is going to be on the

10      record.

11             I believe we have a court reporter.  I note from my

12      law clerk that we do have a reporter.

13             I want to remind everyone that the recording or

14      broadcasting of these proceedings is against the rules of the

15      Southern District of New York and there would be sanctions

16      imposed should you do that.

17             I want to make sure I take appearances for the record.

18      So I'm going to start with plaintiffs' counsel.

19             MS. GAY:  Good morning, your Honor.  It's Faith Gay

20      for plaintiffs along with Yelena Konanova who will handle

21      today's arguments.

22             MS. KONANOVA:  Good morning, your Honor.

23             THE COURT:  Good morning.

24             For the defendants?

25             MS. SIMONSEN:  Good morning, your Honor.  Ashley

1   Simonsen and Andrew Ruffino of Covington & Burling for the

2   defendants.

3           THE COURT:  Ms. Simonsen, will you be handling the

4   proceeding today for the defendants?

5           MS. SIMONSEN:  I will, your Honor.

6           THE COURT:  Thank you so much.

7           This is a preliminary approval hearing for a

8   settlement of a class action in this litigation.  I wanted to

9   ask everyone to please identify themselves by name before they

10  speak if there is any lack of clarity as to who is speaking.

11          I will give everyone an opportunity to speak before we

12  end this conference.  So if I've overlooked anything, you'll

13  have an opportunity to bring it to my attention.

14          I want to begin by apologizing for my delay in turning

15  to this application for preliminary approval.  As you can

16  imagine, we have new systems in place, given the COVID-19

17  world.  So I apologize that my systems did not catch this as

18  early as I should have or would like to think I normally do.

19          I don't believe ultimately I'm going to have any

20  problem giving a preliminary approval to this settlement, but I

21  have a number of questions to ask that go to the context of the

22  settlement and some of the statements in the long-form notice.

23  There are issues I need to resolve and satisfy, but I'm looking

24  forward to hearing counsel's reactions to those.

25          First of all, as counsel knows, this was an action

1    principally brought for damages but also for injunctive relief

2    no doubt, and it was being pursued on behalf of any clients of

3    Navient.

4         But after a motion to dismiss was decided, the case

5    was substantially narrowed to what would be a class of

6    residents of New York and the pursuit of a single claim, a

7    claim for a violation of New York's general business law.  So

8    the settlement has come after that ruling and in that context.

9         The Court had expressed skepticism that a damages

10   claim could be pursued in this action on behalf of a class.  I

11   don't believe I ever expressed skepticism, or intended to

12   certainly, that there could be individual claims for damages.

13        I have no idea one way or another what the merits are

14   of the individual conversations between a class member and the

15   defendant and what that proof could ultimately be that could be

16   developed in the discovery period on behalf of individual

17   claimant's attempts to seek damages or get any other relief.

18        So one of the first things that I want to ask and give

19   the parties an opportunity to address is the scope of this

20   settlement which reflects a settlement on behalf of a

21   nationwide class.

22        And for a long period of time, running back to 2007, a

23   general business law claim I believe generally has a three-year

24   statute of limitations.  Other claims often have a five-year

25   statute of limitations.  But I'm unaware of any claim that

1    would take us as far back as 2007 for a statute of limitations

2    period.  So why don't we start there.

3            Who wishes to address that?

4            MS. KONANOVA:  Your Honor, this is Yelena Konanova for

5    the plaintiffs.  I'm happy to kick it off.  I'd like to begin

6    by noting, if I may, that I believe we have four of our class

7    representatives joining us today -- Anthony Church, Jessica

8    Saint-Paul, Liz Kaplan, and Katie Hyland.

9            So, your Honor, to answer your question, we reached

10   this settlement precisely because of the Court's guidance on

11   the difficulties of certifying a class based on proof of

12   uniform misrepresentations.

13           Plaintiffs brought this case, as you know, because

14   they alleged that Navient made misrepresentations to borrowers

15   about eligibility for public service loan forgiveness.  The

16   settlement that we have reached provides relief on this exact

17   issue.

18           It provides forward-looking relief to the class

19   without the risk of class certification or trial, importantly,

20   your Honor, to the point you just made, without surrendering

21   class members' right to individual damages.

22           Navient is implementing nationwide meaningful practice

23   enhancements to its business practices.  The nationwide nature

24   of this relief will go to the benefit of everyone whose loans

25   are serviced by Navient and who is considering qualifying for

1    public service loan forgiveness.

2            Navient is also giving a substantial amount of cash to

3    a nonprofit as part of the *cy pres* award that will educate and

4    counsel public servants concerning eligibility for public

5    service loan forgiveness.  Also this relief will be available

6    nationwide to any individuals that may have questions about

7    this issue.

8            So in crafting this relief and the releases, we were

9    particularly mindful of the Court's guidance in the

10   difficulties of certifying a class based on proof of the

11   uniform misrepresentations, as well as the Court's narrowing of

12   our claims on the motion to dismiss.

13           Again, that is why the class releases only the

14   class-wide damages mechanism but retains their valuable

15   individual damages claims that the Court just referenced.

16           Your Honor, this settlement is quite well-informed

17   because it came after more than a year of contentious

18   litigation between the parties.  It came with the assistance of

19   Judge Moses' repeated conferences, both in person and

20   telephonic, in front of her.

21           And it comes at exactly the right time allowing the

22   class to receive this relief now, this forward-looking relief

23   now, without waiting for this litigation to conclude favorably.

24           Because this relief is forward looking and benefits

25   everyone in the nation, the parties agreed it would be

1    appropriate to have a class that covers everyone in the nation.

2    That starts way back in 2007 when the PSLF legislation was

3    first put on the books.

4            THE COURT:  So no one could bring a claim going back

5    as far as 2007 though.

6            MS. KONANOVA:  That's correct, your Honor.  The

7    plaintiffs' individual damages claims, which they have retained

8    as a result of the settlement, will be controlled by the

9    relevant statutes of limitation in their particular

10   jurisdiction and based on the claims that they choose to bring.

11   That is entirely left to the control of the acting class

12   members and their attorneys.

13           THE COURT:  So, again, I understand the legislation

14   came into effect in 2007, but let us say it came into effect in

15   1920.

16           So, again, why do we have a period running back to

17   2007?

18           MS. KONANOVA:  Your Honor, I think primarily it is

19   because the relief here is forward looking.  Anyone who

20   believes they became eligible or were on track to become

21   eligible for PSLF going back to 2007, is going to be able to,

22   if their loans are serviced by Navient, to call Navient and to

23   receive correct information about eligibility for PSLF going

24   forward.

25           And they will also be able to contact the *cy pres*

1  recipient for counseling and education.  So everyone who

2  potentially qualified for public service loan forgiveness will

3  receive the benefit of this nonmonetary relief.

4         It will not have an effect on the individual absent

5  class members' ability to bring their individual damages claims

6  because those claims are retained by the class members and not

7  released here.

8         THE COURT:  So one of the statements that we'll look

9  at in a moment in a long-form notice is that there will be

10  benefits to class members.  And it's stated as if it's a

11  benefit that will be received by each person who receives

12  notice of the class and is believed to be a class member.

13         But I'm not sure that's an accurate statement.

14  Certainly I think it's a fair statement that there are benefits

15  to be expected that will accrue to at least some of the class

16  members.

17         But unlike in a damages settlement in which everyone

18  who, for instance, purchased stock during the period of time

19  and is eligible to receive a monetary award, it's not clear

20  that every member of the class here is going to benefit from

21  the injunctive relief that the class has achieved.

22         Do you want to address that, Ms. Konanova.

23         MS. KONANOVA:  I'm happy to, your Honor.

24         The class definition covers everyone who has loans

25  that are serviced, had or have loans serviced by Navient,

1    starting in 2007 through the effective date and who were

2    employed in public service and then spoke to a Navient service

3    representative about subjects relating to PSLF.

4            Those are the folks we believe that will have

5    questions about eligibility for PSLF or how their personal

6    financial circumstances may be affected by the PSLF

7    legislation.

8            So those are the folks that are going to call in to

9    Navient and receive the benefit of the nonmonetary relief here,

10   of the meaningful practice enhancements that Navient has agreed

11   to put into place to ensure that when those folks call Navient,

12   their potential eligibility for public service loan forgiveness

13   is identified and they are proactively offered information

14   about how to qualify for PSLF.

15           These are the same folks that are also going to be

16   able to call the new organization formed as a result of the *cy*

17   *pres* award and receive even more additional education and

18   counseling on PSLF.

19           So we believe that relief is tied directly to the

20   class and the allegations that plaintiff made in the complaint,

21   which is that when borrowers called Navient, as we alleged,

22   they did not receive correct information about PSLF.

23           THE COURT:  We'll look at this again when we look at

24   the particular language in the notice that I want to focus on,

25   but thank you.

1      By the way, I should say welcome to the class

2  representatives.  I'm glad they were able to join this

3  proceeding today.

4      One sort of housekeeping matter.  I want to reduce the

5  burden on class members who seek to object or wish to object to

6  this settlement and its terms.  So I'd ask you to choose one

7  address to which they'll send their objections and make

8  arrangements that that objection then can be properly shared

9  with everyone who should get it.

10      MS. KONANOVA:  Your Honor, perhaps that can be the

11  settlement administrator who could then be responsible for

12  forwarding the objections to the rest of the parties.

13      THE COURT:  Great.  So I want to note one issue here.

14  This is a (b)(2) settlement.  As we know, that portion of

15  Rule 23 customarily applies to claims that seek injunctive or

16  declaratory judgment relief.

17      Here, part of the relief that will be given to class

18  members, should this settlement have final approval, is that no

19  class member may bring not just an action for similar

20  injunctive relief but a class action for damages, which is not

21  typically or not really a (b)(2) remedy.

22      A class action for damages would be a (b)(3) remedy

23  and have its own provisions allowing opt-out from a settlement.

24  These are complex issues because of course this is a

25  settlement.  This is not a certification of a class for

1   litigation.

2          In the context of this case, including the litigation

3   we've had to date and my understanding of the issues, I wanted

4   to put on the record that I've thought about whether or not a

5   settlement of a (b)(2) class where there will be no opt-out

6   provision is appropriate when part of the relief gives up a

7   kind of claim for damages.

8          Having noted that, I resolved that issue to my

9   satisfaction because I think that in the context, the class

10  members aren't giving up really a viable claim for relief, that

11  is, a class action claim for damages.

12         But before I finally decide that, Ms. Konanova, please

13  enlighten me.

14         What other litigation is going on around the country

15  against Navient that might include claims for class action

16  damages?

17         MS. KONANOVA:  Of course, your Honor.  On your

18  original point, my response is going to be exactly what you

19  said, that the opt-out provisions of (b)(3) are really met here

20  because the class members retained their individual right to

21  pursue damages.

22         So that right that ordinarily would be protected by an

23  opt-out is already baked into the settlement.  And the cases

24  that we cited in our motion at pages 8 and 9 -- the *Berry* case,

25  the *Fresca* case and the *NCAA* case in particular -- are all

1    examples of (b)(2) settlements with similar retention of

2    individual damages but releases of an aggregate mechanism for

3    damages.

4           And then to answer your question, your Honor, as to

5    the other potentially related litigations against Navient, we

6    were aware of one particular action that was alleging similar

7    claims based on PSLF, and that's the *Daniel* action down in the

8    Middle District of Florida.

9           That action has been voluntarily dismissed with

10   prejudice after certification of a class was denied and then

11   after the individual summary judgments in favor of plaintiffs

12   were denied.  So that is the only one that is arguably exactly

13   on point here because it arises out of the same factual

14   predicate that plaintiffs have alleged here.

15          There are two additional actions -- one in the Middle

16   District of Pennsylvania, the *Demyanenko-Todd* one; and one in

17   the Eastern District of New York, the *Travis* one -- that allege

18   that Navient is impermissibly steering borrowers into

19   forbearance.  The *Demyanenko-Todd* action is stayed pending a

20   related appeal to the Third Circuit on a preemption issue, and

21   the *Travis* action is in discovery I believe.

22          Again, those cases will pursue a different focus of

23   Navient.  It's not specific to public servants, but it concerns

24   allegations of steering powers into forbearance.

25          THE COURT:  Let me ask you, Ms. Simonsen:  Is it

1    Navient's view that this settlement, should it be approved, is

2    going to cover members of I'll call them the two forbearance

3    actions?

4              Ms. Simonsen?

5              MS. SIMONSEN:  Your Honor, those two actions, as

6    Ms. Konanova observed, are focused on issues that are different

7    from those at issue here.  Now, it's possible that there could

8    be members of those classes, those putative classes, that did

9    call in to Navient with questions about their eligibility for

10   public service loan forgiveness.

11             And if that is the case, then they would be covered by

12   this settlement.  Identifying those borrowers at this point in

13   time -- that itself would require somewhat of an individualized

14   inquiry.  So only to that extent would I say are they covered

15   by this settlement.

16             THE COURT:  Thank you.

17             Yes.  I could imagine a single borrower having

18   membership in two different classes that are addressing

19   different issues.  And having this answer, I'm willing now to

20   move to the language in the long-form notice.  Thank you,

21   counsel, for answering my questions so far.

22             I think this is going to affect you, mainly,

23   Ms. Konanova.  If we could open up the long-form notice.

24             MS. KONANOVA:  Yes, your Honor.

25             THE COURT:  I'm at page 2, the box that reads:  "Your

1    legal rights and options in the proposed settlement."

2              MS. KONANOVA:  Yes.

3              THE COURT:  And the third small box addresses what

4    happens if the class member does nothing.

5              MS. KONANOVA:  Yes.

6              THE COURT:  It begins with:  "You do not have to do

7    anything to benefit from the proposed settlement."  I think we

8    should strike that sentence.  It's unclear whether any

9    individual class member will personally benefit.

10             It's very likely that members of the class will

11   benefit, but whether an individual class member who receives

12   this notice has any particular concern or interest in pursuing

13   any of the issues covered by this lawsuit is completely

14   unknown.  And I don't think that sentence is necessary to give

15   the class member the information they need.

16             Now, the next sentence that begins:  "If the

17   settlement is finally approved," I would like to insert a

18   phrase.  Let me read the entire sentence:  "If the settlement

19   is finally approved, you will not be able to sue the defendants

20   for nonmonetary, i.e., injunctive relief or for monetary

21   relief, on a class or aggregate basis."

22             So inserting the phrase "for monetary relief."

23             MS. KONANOVA:  Understood.

24             THE COURT:  If we go to page 4, the Section 1 that has

25   the heading "Why am I receiving this Notice."

1          MS. KONANOVA:  Yes.

2          THE COURT:  The second paragraph begins with the

3    phrase:  "The purpose of this notice."  About two thirds down

4    in that paragraph is a sentence that begins:  "If the proposed

5    settlement is finally approved."

6          MS. KONANOVA:  Yes.

7          THE COURT:  I would like it to continue:  "And if you

8    are a class member, it is expected that at least some members

9    of the class will benefit."  I think we can strike the phrase

10   "and if you are a class member."  So it would just read:  "If

11   the proposed settlement is finally approved, it is expected

12   that at least some members of the class will benefit from the

13   relief provided by the proposed settlement."

14         MS. KONANOVA:  Understood.

15         THE COURT:  Let's go to paragraph 2 on that page.  It

16   ends with the sentence:  "Navient denies that it did anything

17   wrong."

18         MS. KONANOVA:  Yes.

19         THE COURT:  I'd like the following information

20   inserted, but I'm happy to have you wordsmith it, but I think

21   it goes in this section:  "The plaintiffs filed this lawsuit on

22   October 3, 2018.  On July 8, 2019, the Court dismissed all of

23   the plaintiffs' claims except one.  The surviving claim is

24   available to residents of New York state and is an alleged

25   violation of a New York law that prohibits deceptive business

1    practices in the state of New York."

2          Again, I'm happy for counsel to work on the precise

3    formulation.  I think it's important and helpful to the class,

4    and I'm trying to create a notice that anyone with a high

5    school education could read and understand and determine

6    whether or not they have an objection that they'd like the

7    Court to hear.

8          And I think one of the relevant factors is

9    understanding the likelihood of receiving damages for the

10   class, the likelihood of success on the broad claims that were

11   first brought.

12          MS. KONANOVA:  Understood.

13          THE COURT:  Paragraph 3, "Why is this a Class Action."

14   Again, I'm not wedded to any particular language, but I'd like

15   the last sentence to include the following thought:  "When the

16   parties reached this proposed settlement, the Court had

17   expressed skepticism about whether the claims for damages in

18   this case could be litigated as a class action but had not yet

19   decided that issue."

20          Going to page 5, there is material right above Section

21   4.  There's a discussion in the first three lines on page 5 of

22   this being a 23(b)(2) settlement.  In the third sentence on

23   that page, I propose the following, that we insert:

24   "Rule 23(b)(2) generally applies to class actions seeking

25   injunctive relief (and not damages) to benefit class members."

1    I think it's helpful to inform class members what

2  23(b)(2) concerns.  I'd be surprised if many people understood

3  what that reference was.

4        MS. KONANOVA:  Understood.

5        THE COURT:  There are a few minor editing changes that

6  I'll let my law clerk convey to counsel.

7        Now turning to page 6, there are a series of bullet

8  points that describe the substance of the settlement.  I'm

9  going to suggest that we revise bullet point 2 as follows:

10  "Update forms that are sent to borrowers where they consent to

11  loan forbearance such that the forms include a reminder that

12  there may be loan forgiveness options available and to direct

13  borrowers to the federal student aid website and FedLoan

14  servicing to learn more about PSLF."

15        And the third bullet point:  "Design new electronic

16  forms that can be sent via email to borrowers who express

17  interest in PSLF."

18        MS. KONANOVA:  Okay.

19        THE COURT:  I think then you can strike the remaining

20  bullet point about written communications with borrowers,

21  including template forms, etc.  So the next bullet point that

22  would appear would be "Update its Website," etc.

23        MS. KONANOVA:  Okay.

24        THE COURT:  If we go to the bottom of page 7,

25  obviously someone can bring a lawsuit as a pro-se litigant and

1    does not need to hire an attorney.  So in the last paragraph

2    that begins:  "However, you will still have the right to file

3    an individual lawsuit," the next sentence should be revised to

4    read:  "You may retain your own attorney."  Strike the word

5    "should."

6              MS. KONANOVA:  Yes.

7              THE COURT:  On page 9, you'll revise that to include

8    just one address.

9              MS. KONANOVA:  Yes.

10             THE COURT:  If we go to page 10, the section that

11   describes the final approval hearing, I do not think we should

12   assume that we will be back in the courthouse.  It will be a

13   conference conducted I expect through videoconference or by

14   telephone.

15             And that affects the description in the second

16   paragraph.  I think that paragraph can also indicate that the

17   Court will enter an order describing the means through which

18   you may listen to the conference.

19             MS. KONANOVA:  Got it.

20             THE COURT:  That same substantive change applies to

21   the last paragraph in Section 15.  So there's a sentence:  "You

22   should check the website for updates to the hearing date."

23   Insert:  "The means by which you may listen to the conference,"

24   etc.

25             MS. KONANOVA:  Okay.

1          THE COURT:  Section 16, you should strike the second

2     and third sentences that begin:  "However, you are welcome" and

3     "you may also pay your own lawyer to attend" since there won't

4     be any need for travel in connection with the hearing.

5          I want to make sure to discuss the issue about

6     payments to the named plaintiffs as well before we end this

7     conference.

8          Is there anything about the long-form notice,

9     Ms. Simonsen or Ms. Konanova, that we should discuss before we

10    move to the next topic?

11         MS. SIMONSEN:  This is Ms. Simonsen.  I don't think

12    so, your Honor.  And we appreciate your thoughtful edits to

13    that notice.  Thank you.

14         MS. KONANOVA:  Your Honor, no further questions about

15    the long-form notice.  Thank you for that.

16         There was one point that we had discussed with Navient

17    this morning that is related to notice that I might raise right

18    now.

19         And that is, in preparing for this dissemination of

20    notice, we caught an ambiguity in the settlement provision,

21    VI.A.2, concerning how Navient will search for borrowers to

22    whom to send notice.  The provision provides that Navient will

23    search for borrowers whose correspondence histories reference

24    PSLF-related terms through the effective date.

25         We are realizing that the effective date will

1    necessarily occur after the notice date.  So we were hoping

2    that we could amend that to instead say:  "Through the

3    preliminary approval date."  So Navient will conduct those

4    searches on the correspondence histories through the

5    preliminary approval date.

6             THE COURT:  That makes sense.  That's fine with me.

7             MS. SIMONSEN:  Thank you, your Honor.

8             THE COURT:  Let's talk about the turnaround time for

9    the draft of the notice.  Obviously I want counsel to look at

10   the short-form notice as well in light of changes to the

11   long-form notice and see if any changes need to be made in

12   order to make them conform with one another.

13            How long, Ms. Konanova, would you like?

14            MS. KONANOVA:  Your Honor, I think we can return very

15   quickly all of the edits that were adjusted.  I think it made

16   sense.  I think we can do it just within a day or two.

17            THE COURT:  Okay.  So why don't we say that by Friday

18   I should expect a turnaround of documents.  So my current

19   expectation is that I would be giving preliminary approval on

20   Monday, if all goes well.  Okay?

21            MS. KONANOVA:  Understood, your Honor.  We can

22   certainly do that.

23            We can file them by letter?

24            THE COURT:  Yes.  On ECF.  Yes.  That would be just

25   fine.

1          Let me talk a little bit about the payments for the

2    individual plaintiffs.  The record before me doesn't give much

3    detail about the burden of this litigation on the individual

4    plaintiffs.

5          It describes in paragraph 14 of your declaration,

6    Ms. Konanova, that they spent dozens of hours -- I don't know

7    if that's collectively or individual -- and produced just over

8    6,000 documents during the course of this litigation.

9          So I'm going to allow a supplemental submission to be

10   made.  But let me just explain the context in which I'm going

11   to be looking at that supplemental submission.

12         Named plaintiffs obviously have a very obvious

13   responsibility to absent class members.  They stand in the

14   shoes of absent class members.  And if they oppose a

15   settlement, it essentially can't go forward.  If they approve a

16   settlement, that is something that should be given weight by

17   the Court but only to the extent that they really do stand in

18   the shoes of the absent class members.  And here they don't.

19         It's proposed that each of them get a substantial sum

20   of money.  No absent class member is getting any money from

21   this settlement.  So there is a conflict that these named

22   plaintiffs have with the class.  They're going to benefit

23   monetarily in a way that no class member does, at least as of

24   the time this settlement is approved.

25         Other class members are going to have to litigate

1    separately and succeed or not in those individual actions.  So

2    I think that the named plaintiffs should be compensated for the

3    work associated with representing the class, which is very

4    serious work and important work.

5        And the kinds of things that I think deserve

6    reimbursement are a loss of any pay if someone had to take off

7    time from work and it wasn't reimbursed; if there were travel

8    expenses associated with meetings with counsel or participation

9    in the litigation; if there was participation in a deposition,

10   which I don't believe there was here, perhaps compensation for

11   the hours to prepare and participate in that.

12       I could imagine a burden of collecting documents, if

13   there are a number of hours, but at a reasonable rate.  It

14   would have to be a significant burden of time, not an hour or

15   two.  But if it took a week of activity to collect documents --

16   and it doesn't sound like it did here -- but I could imagine

17   that being fairly compensable.

18       Now, it's possible also that each of these named

19   plaintiffs had a viable claim for damages against the defendant

20   and, if they brought their own individual actions, they felt

21   they had a strong claim to bring against Navient for

22   reimbursement and damages in one shape or another.  I don't

23   have any facts that would support that.

24       So I'm not going to make a final decision.  I don't

25   need to.  This is just a preliminary approval stage.  But based

1   on the submission now before me, I will deny any payment to the

2   named plaintiffs.  And I wanted to give plaintiffs' counsel an

3   opportunity to supplement that submission when it comes time

4   for the final approval.

5        Ms. Konanova, did you have questions you wanted to put

6   to me about that?

7        MS. KONANOVA:  Well, your Honor, I would just like to

8   add that I think our plan always was to put in a motion for

9   fees and incentive awards in which we would make the record

10  that your Honor is describing.

11       We didn't put that into the preliminary approval

12  motion because, as your Honor said, we didn't believe this was

13  the time to make a final decision on that.  But we certainly

14  are glad to supplement the record.

15       I can tell you a little bit now about the amount of

16  time that these folks have spent, over two years effectively

17  helping us construct this case.  This case, which really

18  concerns their personal financial history, is very different

19  from a case in which a named plaintiff might talk about their

20  experience buying a shampoo bottle or something.

21       So this was a very time-intensive effort that they've

22  engaged with us over the last years, and we're thankful.  And

23  we're happy to put that in a more fulsome record before you.

24       Would you like us to do that within a certain period

25  of time or at any point before the final approval hearing?

1        THE COURT:  No.  When you make your application for

2   final approval, that's fine.  I just wanted to make sure that

3   you're aware of the lens through which I'd be reading any

4   application.

5        MS. KONANOVA:  I appreciate that, your Honor.  We do

6   have case law.  I think we cited it briefly in our opening

7   papers.  But we can certainly go into further detail of recent

8   cases approving awards of the exact same amount, $15,000, based

9   on very similar efforts put forward by the class

10  representatives.

11       We do believe we have a good foundation both in the

12  facts and the law to support these awards, and we look forward

13  to making that record for you.

14       THE COURT:  Okay.  Thank you.

15       Ms. Konanova, is there anything else that we need to

16  do from your point of view at today's conference?

17       MS. KONANOVA:  Not unless you have any other

18  questions, your Honor.  We should be all set on our end.

19       THE COURT:  Okay.  Ms. Simonsen, anything else that

20  you think we should do?

21       MS. SIMONSEN:  Nothing further from me, your Honor.

22  Thank you very much.

23       THE COURT:  Okay.  Thank you all, counsel.  Stay safe.

24  Be well.

25