**Selendy & Gay**

<u>**Via ECF**</u>                                                                          July 20, 2020

Hon. Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street, Room 1910
New York, New York 10007

**Re:**     *Hyland, et al. v. Navient Corp., et al.*, No. 1:18-cv-09031

Dear Judge Cote:

Pursuant to Your Honor's July 14, 2020 Order (Dkt. 109), we write respectfully on behalf of Plaintiffs to address the impact of the Second Circuit's decision in *Berni v. Barilla S.p.A.*, No. 19-1921-cv, 2020 WL 3815523 (2d Cir. July 8, 2020), on the class definition[1] and the Court's June 19 Preliminary Approval Order conditionally certifying the class under Rule 23(b)(2) (Dkt. 108).

*Berni* has no impact on either.  In *Berni*, the Second Circuit vacated final approval of a Rule 23(b)(2) settlement in a suit alleging deceptive pasta box packaging.  The court concluded future harm to class members was unlikely and thus "past purchasers of a product … are not eligible for class certification under Rule 23(b)(2)."  2020 WL 3815523, at *7.  These "past purchasers," the court said, were unlikely to purchase the product again after becoming aware of the deception because they do not have a "perpetual relationship" with the seller.  *Id.* at *5.  And, "even if they [did] purchase it again, there [was] no reason to believe that all, or even most, of the class members [would] incur a harm anew," because all future purchases would be made "with exactly the level of information that [class members] claim[ed] they were owed from the beginning."  *Id.* at *6.  The injunctive relief thus would "not materially improve their position as knowledgeable consumers."  *Id.*

*Berni*'s reasoning has no application here.  Borrowers allege harm from misrepresentations regarding complex and individualized financial issues—not a simple, repetitive deception easily understood upon purchase and visual inspection.  And the relief here provides much-needed counseling on those complex financial issues—quite unlike a minimum "fill-line" on pasta boxes and a disclaimer that pasta is sold by weight and not by volume.  *Id.* at *2.  In particular:

*First*, borrowers have a "perpetual relationship," 2020 WL 3815523 at *5, with their loan servicer during the life of their loans.  Borrowers do not choose their servicers and generally remain with their assigned servicer.  *See* Federal Student Aid, *Who's My Student Loan Servicer?*, https://studentaid.gov/manage-loans/repayment/servicers.  Thus, unlike past purchasers who can simply choose not to "purchase [the] product again," 2020 WL 3815523 at *5, borrowers who seek PSLF with loans serviced by Navient cannot choose to leave Navient.  PSLF-eligible borrowers in particular could be transferred to FedLoan Servicing only upon approval of an Employment

---

[1] The "Settlement Class" is defined as "all individuals who from October 1, 2007 to the Effective Date (i) have or had FFEL or Direct Loans serviced by Navient; (ii) are or were employed full-time by a qualifying public service employer or employers for purposes of PSLF; and (iii) spoke to a Navient customer service representative about subjects relating to eligibility for PSLF."  Dkt. 98-1 ¶ 43.

Certification Form, which means they have qualifying loans, work for a qualifying employer, and have made some qualifying payments, *see* FedLoan Servicing, *Public Service Loan Forgiveness*, https://myfedloan.org/borrowers/special-programs/pslf—the very attributes as to which the class alleges Navient has provided misleading information, *see, e.g.*, Am. Compl., Dkt. 32, ¶ 17. Class members here lack the autonomy of *Berni*'s class members to avoid future injuries.

*Second*, a borrower's PSLF eligibility, which must be maintained over the course of 120 payments, is not a simple piece of "information," 2020 WL 3815523 at *6, that can be learned. Injured class members *continue* to require counseling as to PSLF because loan forgiveness depends on maintaining, over 120 payments, an eligible employer, loan, and repayment plan. *See, e.g.*, Am. Compl., ¶¶ 70, 97. Borrowers must consider servicer advice concerning the impacts of deferment, forbearance, and other forgiveness programs, as well as ever-evolving legislative changes. For example, a borrower who previously received incorrect information concerning the eligible type of loan might realize after the fact that only Direct Loans qualify. But that borrower still needs servicer guidance as to the impact of new legislation expanding repayment plans (like TEPSLF) or allowing payment deferrals during the COVID-19 pandemic.

The need for correct servicer information is thus also "perpetual" during the life of the loan. Absent the business practice enhancements and *cy pres* relief provided by the settlement, there is little reason to believe class members could ever have "exactly the level of information that they claim they were owed from the beginning." 2020 WL 3815523, at *6.

*Third*, all class members here "stand to benefit" from the relief, even though they may "benefit differently." *Id.* at *5 n.28.[2] Even those no longer serviced by Navient still benefit from the *cy pres* organization providing education and counseling services to student loan borrowers in public service, regardless of their servicer. *See* Am. Compl., ¶¶ 70, 97. This type of *cy pres* award "enhances the settlement's deterrent effect by funding … institutions that will work to prevent similar [harm] from occurring in the future[,] … accords with the purpose of the Rule 23(b)(2) class structure," and "belong[s] to the class *as a whole*." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 328 (3d Cir. 2019) (internal quotation marks omitted).[3]

---

[2] Class members may benefit to varying degrees. *See, e.g.*, *Amara v. CIGNA Corp.*, 775 F.3d 510, 522 (2d Cir. 2014) (Rule 23(b)(2) does not require decertification where certain class members, who might not benefit from injunction's reformation of retirement plan, received "some benefit in the form of new notice" of changes to the plan); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97–98 (2d Cir. 2015) (Rule 23(b)(2) certification was appropriate and the "proposed injunctive relief swe[pt] broadly enough to benefit each class member," because while certain class members had already received service of process in debt collection actions, they would benefit "by the notification proposed by the injunction as well," and while "named plaintiffs have had their default judgments vacated, they might each still be subject to a further action by these same defendants"); *id.* at 97 (observing that *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) "does not require that the relief to each member of the class be identical, only that it be beneficial").

[3] All class members also receive class notice, informing them of the alleged harm to the class and their ability to pursue individual damages claims—which class members here retain, unlike in *Berni*. *See* No. 1:16-cv-04196 (E.D.N.Y.), Dkt. 60-1 § 1.23; *see also Weingarten v. DeVos*, 2020 WL 3412730, at *13 (D.D.C. June 22, 2020) (borrowers denied forgiveness and alleging they were misled by their servicer may proceed with procedural due process claims against the U.S. Department of Education and Secretary DeVos).

Respectfully submitted,

*/s/ Lena Konanova*

Lena Konanova
cc (via ECF): Defendants' counsel