IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>    Defendants. | No. 18-cv-9031-DLC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT**

Date:  August 28, 2020

Mark Richard
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
Telephone: (305) 412-8322
E-mail: mrichard@phillipsrichard.com
(*pro hac vice*)

Faith Gay
Maria Ginzburg
Yelena Konanova
Margaret Siller
David A. Coon
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
E-mail:  fgay@selendygay.com
        mginzburg@selendygay.com
        lkonanova@selendygay.com
        msiller@selendygay.com
        dcoon@selendygay.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    Proposed Settlement.............................................................................................2

        1.    Business Practice Enhancements ............................................................2

        2.    *Cy Pres* Award....................................................................................4

        3.    Release ...................................................................................................5

        4.    Service Awards And Attorneys' Fees......................................................6

    B.    Preliminary Approval Proceedings .....................................................................6

    C.    Letters Regarding *Berni v. Barilla S.p.A.* ........................................................7

    D.    Notice to Class Members.....................................................................................7

DISCUSSION...............................................................................................................................8

I.    The Settlement Structure Satisfies The Requirements Of Rule 23(e)(2) And Is
Consistent With Past Approved Settlements ..................................................................8

    A.    The Settlement Is Presumptively Fair, Adequate, And Reasonable Because
It Was Negotiated At Arm's Length With The Benefit Of Mediation By
Magistrate Judge Moses.....................................................................................10

    B.    The *Grinnell* Factors Support Settlement Of This Action ....................................11

II.    Certification Of The Rule 23(b)(2) Class Is Appropriate .................................................20

    A.    The Rule 23(a) Requirements Are Met.....................................................................21

    B.    The Rule 23(b)(2) Requirements Are Met.................................................................24

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014)...................................................................... 25

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020)...................................................................... 7

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) .................................................................... 9

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)............................................................................. 14, 15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................. 11, 20

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)....................................................................... 21

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)....................................................................... 11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)..................................................................... 23

*Fresco v. Auto Data Direct, Inc.*,
  2007 WL 2330895 (S.D. Fla. May 14, 2007) .............................................. 9, 10

*Fresco v. Auto. Directions, Inc.*,
  2009 WL 9054828 (S.D. Fla. Jan. 20, 2009) .............................................. 9

*General Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)................................................................................ 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ............................................ 22

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ............................................ 22

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................. 12, 13, 14

ii

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992)...................................................................... 23

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ................................................ 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. 11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2018) .................................................................. 11

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) ................................................................... 10

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
   332 F.R.D. 202 (N.D. Ill. 2019)................................................................... 10

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)) ....................................................................... 8

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
   934 F.3d 316 (3d Cir. 2019)................................................................ 16, 20, 25

*Ingles v. Toro*,
   438 F. Supp. 2d 203 (S.D.N.Y. 2006)........................................................... 16

*Jermyn v. Best Buy Stores, L.P.*,
   2012 WL 2505644 (S.D.N.Y. June 27, 2012) .......................................... 15, 16

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) .................................................................. 24

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)) ........................................................................ 8

*Marisol A. ex rel. Forbes v. Giuliani*,
   185 F.R.D. 152 (S.D.N.Y. 1999) ........................................................ 14, 16, 24

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)....................................................................... 19

*MZ Wallace Inc. v. Fuller*,
   2018 WL 4007645 (S.D.N.Y. Aug. 22, 2018)................................................ 15

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017).......................................................................... 15

*Orellana v. Macy's Retail Holdings, Inc.*,
  2018 WL 3368716 (S.D.N.Y. July 10, 2018) ................................................................. 19

*Peoples v. Annucci*,
  180 F. Supp. 3d 294 (S.D.N.Y. 2016) ............................................................................ 20

*Plummer v. Chem. Bank*,
  668 F.2d 654 (2d Cir. 1982) ........................................................................................... 14

*Port Authority Police Benevolent Ass'n v. Port Authority*,
  698 F.2d 150 (2d Cir. 1983) ........................................................................................... 22

*Rapoport-Hecht v. Seventh Generation, Inc.*,
  2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ................................................................. 22

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ........................................................................................... 23

*Shepard v. Rhea*,
  2014 WL 5801415 (S.D.N.Y. Nov. 7, 2014) ................................................................. 19

*Spann v. AOL Time Warner Inc.*,
  2005 WL 1330937 (S.D.N.Y. June 7, 2005) ................................................................. 24

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ............................................................................................. 25

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ............................................................................. 22, 23

*Vincent v. Money Store*,
  304 F.R.D. 438 (S.D.N.Y. 2015) ................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................................ 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 8, 10, 11

*Weiner v. Snapple Beverage Corp.*,
  2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ................................................................. 19

*Weingarten v. DeVos*,
  2020 WL 3412730 (D.D.C. June 22, 2020) ................................................................... 25

## **Rules**

Fed. R. Civ. P. 23(b)(2) ............................................................................................. *passim*

**Other Authorities**

Dep't of Educ. Office of Fed. Student Aid, Servicer Portfolio by Repayment
  Plan, https://studentaid.gov/data-center/student/portfolio ................................................ 21

Dep't of Educ., Student Loans Overview: Fiscal Year 2020 Budget Proposal .............. 21

Manual for Complex Litigation § 30.42 (3d ed. 1995) ................................................................. 11

New York General Business Law § 349 ........................................................................... 15, 19, 22

**PRELIMINARY STATEMENT**

The Court granted preliminary approval of the parties' settlement on June 19, 2020, ruling that the settlement is fair, reasonable, and adequate and conditionally certifying the Settlement Class, subject to final approval. Dkt. 108 ¶¶ 4-10. Over the past two months, a non-profit organization called Public Service Promise has been actively preparing to provide education and counseling services to student loan borrowers in public service upon funding of the proposed $1.75 million *cy pres* award. Those efforts, in combination with the meaningful practice enhancements agreed to by Defendants Navient Corporation and Navient Solutions, LLC (collectively, "Navient" or "Defendants"), will directly address the harm suffered by the class. The objections of a few dozen class members do not undermine the conclusion that the settlement is fair, reasonable, and adequate. For example, many objectors' concerns are addressed by class members' retention of the right to bring individual damages claims, which is particularly significant here, where individual litigation could involve substantial monetary claims. For the reasons that justified preliminary settlement approval, and for the additional reasons herein, Plaintiffs Kathryn Hyland, Melissa Garcia, Elizabeth Taylor, Jessica Saint-Paul, Rebecca Spitler-Lawson, Michelle Means, Elizabeth Kaplan, Jennifer Guth, Megan Nocerino, and Anthony Church (collectively, "Plaintiffs")[1] respectfully request that the Court (1) grant final approval of the Settlement Agreement attached as Exhibit 4 to the Declaration of Yelena Konanova ("Settlement Agreement"); and (2) certify the settlement class under Rule 23(b)(2).

---

[1] Pursuant to the Court's order of October 16, 2019 (Dkt. 78), Plaintiff Eldon R. Gaede withdrew from this action. References in this brief to "Plaintiffs" do not include Mr. Gaede.

## BACKGROUND[2]

### A.    Proposed Settlement

Following a Scheduling Conference with the Court on July 26, 2019, the parties began settlement negotiations.  To help bridge a significant gap between their initial positions, the parties agreed to mediation before Magistrate Judge Barbara Moses.  The first phase of the mediation included written statements and a mediation conference attended by all ten Plaintiffs.  With additional telephonic conferences before Judge Moses, the parties engaged in substantial further negotiations, including over the scope of the release and the amount of a potential *cy pres* award.  On January 17, 2020, the parties executed a Memorandum of Understanding memorializing the key settlement terms.  On April 24, 2020, the parties executed the Settlement Agreement, agreeing Plaintiffs will seek certification of a mandatory, nationwide Rule 23(b)(2) Settlement Class and Navient will provide the relief summarized below (described in Settlement Agreement Section V).

### 1.    Business Practice Enhancements

The Settlement Agreement provides for meaningful enhancements to Navient's business practices, including by setting forth actions that Navient customer service representatives must take to determine borrowers' Public Service Loan Forgiveness ("PSLF") eligibility, information that Navient representatives must provide borrowers, and training that Navient must provide its representatives.

Call Center Representatives Must Explore Borrowers' PSLF Eligibility.  Navient will require customer service representatives to listen for specific keywords or phrases that indicate potential borrower eligibility for forgiveness programs and ask leading questions regarding borrower

---

[2] A detailed summary of Plaintiffs' factual allegations and the pre-settlement procedural history is contained in Plaintiffs' Memorandum of Law in Support of Preliminary Approval of Settlement. Dkt. 97, at 2-4.

employment by a government or not-for-profit organization, which could indicate that the borrower is eligible for PSLF.  Interested borrowers who may be eligible for PSLF will receive additional information regarding forgiveness options, direction to the Federal Student Aid website and/or to call FedLoan Servicing, and/or an informative email referenced in section V.B.2 of the Settlement Agreement.  Call center representatives will also be required to discuss loan forgiveness, including PSLF, with borrowers prior to offering forbearance, and to review and determine eligibility for loan forgiveness, including PSLF, during calls in which borrowers express an interest in repayment options or indicate they are having difficulty repaying their loans.

Updated Communications With Borrowers.  Navient will create and update template forms sent to borrowers who request additional information about PSLF, express interest in PSLF, or consent to forbearance to provide another reminder that loan forgiveness options, including PSLF, may be available, and to direct them to the Federal Student Aid website and FedLoan Servicing to learn more about PSLF.  Navient will also maintain direct access to the National Student Loan Data System, which is the central database of the Department of Education ("ED") for federal student aid, through featured links on Navient's website.  Navient will ensure that customer service representatives ask borrowers potentially eligible for PSLF leading questions regarding forbearance and repayment options and/or provide additional information about loan forgiveness, including PSLF.

Training and Monitoring of Call Center Representatives.  Navient will provide training to customer service representatives on the above-described practice enhancements and will conduct mandatory training on PSLF for customer service representatives.  Navient will also conduct regular monitoring of a sample of calls by customer service representatives to ensure compliance with Navient policies and procedures, including the policies and procedures set forth in the Settlement

Agreement.

Compliance.  Within ten days following Navient's implementation of the Business Practice Enhancements, or the Effective Date of the Settlement Agreement, whichever is later, Navient will provide Class Counsel with documentation on a confidential basis sufficient to show such implementation.  Navient will maintain the Business Practice Enhancements for a minimum of three years from the Effective Date of the Settlement Agreement and will certify compliance with the Business Practice Enhancements on an annual basis for three years.  *See* Exhibit 7 to the Declaration of Yelena Konanova.

Navient will additionally hold one stakeholder meeting with Plaintiffs within 30 days after the Effective Date of the Settlement Agreement, which will include a representative from Navient with decision-making authority as to the Business Practice Enhancements, to gather Plaintiffs' feedback on PSLF issues.  Navient will notify Class Counsel of any updates to the Business Practice Enhancements within 60 days therefrom.

### 2.    *Cy Pres* Award

The parties have agreed that Navient will fund a $1.75 million *cy pres* award to a newly formed organization, Public Service Promise, in accordance with the parties' Term Sheet for Cy Pres Recipient and PSLF Project Proposal, attached as Exhibit 8 to the Declaration of Yelena Konanova, to launch the PSLF Project Proposal described therein and detailed further below (at 17-19).  Public Service Promise will devote the *cy pres* funds to providing education and student loan counseling to borrowers employed in public service.

Effective August 17, 2020, Public Service Promise has been incorporated in accordance with the applicable provisions of the District of Columbia Business Organizations Code.  Its Board of Directors is comprised of Joseph A. Smith, Jr., Rebecca Fertig Cohen, and LaRue Robinson, who bring to Public Service Promise a wealth of experience in law, public interest organizations,

student borrower protection, and the monitoring of consent judgments involving loan servicers.[3]

On August 27, 2020, the Board of Directors, by unanimous consent in writing in accordance with

District of Columbia Code § 29-406.21, consented to the election of Mr. Smith as President, Ms.

Fertig Cohen as Secretary, and Mr. Robinson as Treasurer of Public Service Promise.  Also on

August 27, 2020, the Board of Directors approved the organization's initial bylaws.  The organi-

zation is in the process of seeking recognition as a tax-exempt organization under section 501(c)(3)

of the Internal Revenue Code.

### 3.    Release

Plaintiffs, as Class Representatives, have agreed to release on behalf of the "Settlement

Class"[4] all claims for injunctive relief and all claims for damages brought in a class action or any

aggregate action in which five or more separate individuals propose to prosecute their claims in

the same legal proceeding, that arise out of the identical factual predicate of the Complaint or the

Amended Complaint (the "Covered Conduct").[5]  Members of the Settlement Class will not release,

but instead will expressly retain, the right to file individual lawsuits for damages.  The Settlement

---

[3] None of the members of the Public Service Promise Board of Directors is employed by, or is on the Board of Directors of, the National Student Legal Defense Network ("Student Defense").  Mr. Robinson serves as a member of the Student Defense Advisory Board, an advisory body without decision-making authority.

[4] The Settlement Class includes all individuals who, at any point between October 1, 2007 and the Effective Date of the Settlement Agreement: (i) have or had Federal Family Education Loans ("FFEL") or Direct Loans serviced by Navient; (ii) are or were employed full-time by a qualifying public service employer or employers for purposes of PSLF; and (iii) spoke to a Navient customer service representative about subjects relating to eligibility for PSLF.

[5] The classwide release of class and aggregate mechanisms for damages claims expressly excludes litigation proceedings in which an external authority or court requires particular actions to be prosecuted together including, but not limited to: (i) multi-district litigation as determined by the Judicial Panel on Multidistrict Litigation; (ii) actions that the court determines should be coordinated or consolidated for efficiency; (iii) actions that individuals mark as potentially related and are deemed related by the court; or (iv) actions that are required to be brought together based on the Federal Rules of Civil Procedure or the local rules of the local, state, or federal court.

Agreement also confirms that the release will not have any preclusive or *res judicata* effect on actions or investigations by any governmental agency, including for restitution benefitting Plaintiffs or members of the Settlement Class. The Class Representatives have agreed to release all individual damages and injunctive relief claims.

### 4. Service Awards And Attorneys' Fees

Subject to Court approval (and as addressed in separate motions), Navient has agreed to pay a $15,000 service award to each Class Representative, and not to oppose a $500,000 fee award to Class Counsel.

### B. Preliminary Approval Proceedings

The Court held a preliminary approval hearing on June 10, 2020, and, on June 19, 2020, granted preliminary approval of the settlement. Dkt. 108. The Court ruled that "[t]he Settlement Agreement, including the releases contained therein," is "fair, reasonable, and adequate under Federal Rules of Civil Procedure 23(b)(2) and 23(e)," subject to "final Court approval following the Final Approval Hearing." *Id.* ¶ 1. Additionally, the Court conditionally certified the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(e) (subject to final Court approval following the Final Approval Hearing), appointed Plaintiffs as Class Representatives of the Settlement Class, appointed Selendy & Gay PLLC and Phillips, Richard & Rind, P.A. as Class Counsel, and approved (as modified) the Short-Form Notice and Long-Form Notice to class members. *Id.* ¶¶ 4-6, 11.

At the preliminary approval hearing, the Court also directed Plaintiffs to file a supplemental submission in support of the service awards to Class Representatives that provides further detail regarding the work undertaken by the Class Representatives in connection with representing the class. June 10, 2020 Prelim. Approval Hrg. Corr. Tr. at 21:1-23:4.

### C.    Letters Regarding *Berni v. Barilla S.p.A.*

On July 14, 2020, the Court ordered that the parties submit letters addressing the impact of the Second Circuit's decision in *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020), on the proper class definition in this action and on the Court's preliminary approval order. Dkt. 109. Plaintiffs and Defendants submitted letters on July 20, 2020, explaining why *Berni* has no impact on either the class definition or the preliminary approval order. Dkts. 110, 111. On July 24, 2020, the Court entered an order stating that upon review of the parties' letters, "the June 19 [Preliminary Approval] Order remains unaltered." Dkt. 113, at 2.

### D.    Notice to Class Members

After preliminary settlement approval was granted, Rust Consulting, Inc., a third-party class action settlement administrator (the "Settlement Administrator"), employed numerous methods for circulating notice of the settlement to Settlement Class members. The Settlement Administrator sent direct email and/or postcard communications to individuals identified by Navient who have or had FFEL or Direct Loans currently serviced by Navient or that Navient has serviced at any time since October 1, 2007 and (a) whose correspondence histories in Navient's servicing systems contain at least one reference to PSLF or variations of public service in entries dating back six years from the filing of this lawsuit, or (b) whose loans were transferred for servicing to Fed-Loan Servicing. On July 10, 2020, notice was emailed to 474,832 potential class members. Declaration of Jessica Jenkins Regarding Notice by Email, Mail, and Publication ("Settlement Admin. Decl.") ¶ 5. On August 3, 2020, postcard notices were mailed to 12,646 potential class members who did not receive notice via email. *Id.* ¶ 7.

In language approved by this Court, these communications notified recipients that they are potential members of the Settlement Class (and the definition of the Settlement Class), a settlement has been reached, their rights may be affected, and they are permitted to object to the settlement.

7

The notice also referred them to a class settlement website and toll-free telephone number for complete information.  Notice was also published on Navient's website, and on August 3, 2020 in three national newspapers (the New York Times, the Wall Street Journal, and USA Today).  *Id.* ¶ 11.

The class settlement website, maintained by the Settlement Administrator, has posted important settlement documents including the Settlement Agreement and includes a description of the Business Practice Enhancements, frequently asked questions, and procedural information regarding the status of the Court-approval process.  As of August 27, 2020, the class settlement website had been visited by 53,851 unique visitors.  *Id.* ¶ 13.

The Settlement Administrator has also maintained a toll-free telephone number to provide Settlement Class members with access to live responders and to recorded information that includes answers to frequently asked questions and directs them to the class settlement website.  As of August 27, 2020, the Settlement Administrator had received 4,160 calls.  *Id.* ¶ 12.

## DISCUSSION

The Second Circuit has recognized the "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).  Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, "[a] court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"  *Id.* (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

### I.   The Settlement Structure Satisfies The Requirements Of Rule 23(e)(2) And Is Consistent With Past Approved Settlements

The Court previously granted preliminary approval to this settlement, ruling that "[t]he Settlement Agreement, including the releases contained therein," is "fair, reasonable, and adequate

8

under Federal Rules of Civil Procedure 23(b)(2) and 23(e)." Dkt. 108 ¶ 1. For the same reasons that justified preliminary settlement approval, and for other reasons, including the overwhelmingly positive reaction of the Settlement Class, the Court should grant final approval of the settlement.

Courts have previously approved as fair, reasonable, and adequate a settlement structure identical to what is proposed here, in which Rule 23(b)(2) class members release all injunctive claims and aggregate damages claims but maintain individual damages claims, and the defendant agrees to provide non-monetary relief. For example, in *Berry v. Schulman*, the Fourth Circuit affirmed the final approval of a settlement in which Rule 23(b)(2) class members released claims for injunctive relief, statutory damages, and punitive damages but "retain[ed] the right to seek actual damages individually," in exchange for "purely injunctive relief—a fundamental change in the product suite that [defendant] offers . . . that will result in a significant shift from the currently accepted industry practices." 807 F.3d 600, 607 (4th Cir. 2015) (internal quotation marks omitted). Finding that the settlement offered "the benefit to the (b)(2) Class of substantial injunctive relief without the risk of litigation"—and observing that "[t]here was no realistic prospect that [defendant] could or would provide meaningful monetary relief to a class of 200 million people"— the court affirmed the ruling of the district court that the "settlement [was] fair, reasonable, and adequate under Rule 23(e)." *Id.* at 615 (internal quotation marks and brackets omitted).

Similarly, in *Fresco v. Auto Data Direct, Inc.*, the district court approved a settlement where "the Settling Defendants . . . agreed to implement an injunctive relief program" complying with federal statutory obligations, instituting internal assessments and written compliance proce-dures, to the "benefit [of] all settlement class members." 2007 WL 2330895, at *5 (S.D. Fla. May 14, 2007); *see also Fresco v. Auto. Directions, Inc.*, 2009 WL 9054828, at *10 (S.D. Fla. Jan. 20, 2009) (granting final settlement approval), *amended in part*, 2009 WL 10666915 (S.D. Fla. Apr.

9

22, 2009).  In exchange, the Rule 23(b)(2) class released "claims for equitable relief, statutory liquidated damages, and punitive damages," while preserving "individual claims for actual damages, subject to a waiver of the class-action procedural device." *Fresco*, 2007 WL 2330895, at *5. The court emphasized the proposed "substantial injunctive relief," and observed that the parties' discovery and contentious motion practice meant that "the parties and the Court are well placed to assess the strength of this case and the comparative benefits of the proposed settlement," holding that the proposed settlement was "fair, reasonable, and adequate." *Id.* at *6.

Here, in addition to non-monetary relief, Navient has also agreed to fund a substantial *cy pres* award.  In that respect, the proposed settlement is comparable to that in *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, in which a Rule 23(b)(2) settlement class released the ability to assert class-wide claims but retained the right to pursue individual claims, 314 F.R.D. 580, 604-05 (N.D. Ill. 2016), in exchange for the NCAA's agreement to implement changes to its concussion-management and return-to-play policies, and to fund a medical monitoring program to track and treat the long-term effects or neurodegenerative conditions related to concussions, *id.* at 586-87.  Observing that there was "very little likelihood that a Rule 23(b)(3) [class] . . . could be certified on a nationwide . . . basis," *id.* at 604, the district court approved the settlement, *id.* at 608; *see also In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 207 (N.D. Ill. 2019) (granting final approval), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019).  The same result should follow here.

> **A.    The Settlement Is Presumptively Fair, Adequate, And Reasonable Because It Was Negotiated At Arm's Length With The Benefit Of Mediation By Magistrate Judge Moses**

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116.  "A presumption

of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotation marks omitted) (quoting Manual for Complex Litigation § 30.42 (3d ed. 1995)). "[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018). Here, the Settlement Agreement was reached after months of arm's-length negotiation between the parties, through their experienced counsel, after meaningful discovery (*see supra* at 4). Moreover, the Settlement Agreement was reached with the benefit of the involvement of Judge Moses in a formal mediation and several telephonic conferences. The Settlement Agreement is therefore presumptively fair, adequate, and reasonable.

### B.    The *Grinnell* Factors Support Settlement Of This Action

"In this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores*, 396 F.3d at 117 (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52-54 (2d Cir. 2000)). Those factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; the risks of establishing (4) liability and (5) damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund given (8) the best possible recovery and (9) all the attendant risks of litigation. *Id.* (citing *Grinnell*, 495 F.2d at 463). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the

particular circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (Lynch, J.) (internal quotation marks omitted).

### 1.        Litigating Plaintiffs' Claims Would Be Complex, Expensive, And Lengthy

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78. Absent settlement, proceeding to trial in this action would require complex, time-consuming, and extremely costly further proceedings. The parties would need additional discovery, necessitating further negotiations over outstanding requests (*e.g.*, additional custodial searches, a subject of Plaintiffs' October 11, 2019 motion to compel); Plaintiffs' production of documents; and depositions of numerous individuals, including Navient call center representatives who spoke with class members regarding PSLF, supervisors, and other managers involved in creating and implementing policies for advising borrowers regarding PSLF, and a corporate representative. Plaintiffs additionally would need to continue working with experts on complex analyses of various issues, including the standard of care in the loan servicing industry, methods of proving alleged uniform misrepresentations through econometrics and voice data analysis, and calculation of damages. The parties would also need to brief and argue Plaintiffs' motion for class certification and motions for summary judgment, conduct a fact-intensive trial that would likely require the testimony of Plaintiffs, Navient employees, and expert witnesses, and litigate an inevitable appeal.

### 2.        The Reaction Of The Class

Each of the Class Representatives has expressed support for the settlement by signing the Settlement Agreement. And the reaction of the Settlement Class as a whole has been overwhelm-

ingly positive, as demonstrated by the fact that after notice was sent to nearly half a million poten-

tial class members, only thirty-seven objections to the settlement have been filed with the Court

or submitted to the Settlement Administrator, *see* Settlement Admin. Decl. ¶ 15, as of the date of

this motion.[6]

Though all timely objections will be addressed in more detail prior to the Final Approval

Hearing, the few objections received so far do not undermine the conclusion that the settlement is

fair, adequate, and reasonable.  The vast majority of objectors assert that the settlement should

include direct monetary relief to class members.  But the settlement expressly preserves Settlement

Class members' ability to obtain monetary relief, as members of the Settlement Class do not re-

lease the right to file individual lawsuits for damages.  While the Court has "expressed skepticism

that a damages claim could be pursued in this action on behalf of a class," it has never "expressed

skepticism . . . that there could be individual claims for damages." June 10, 2020 Prelim. Approval

Hrg. Corr. Tr. at 4:9-12.[7]  In accordance with the Rule 23(b)(2) class structure, the settlement

provides a benefit to all Settlement Class members in the form of business practice enhancements

and Public Service Promise's provision of education and counseling services to student loan bor-

rowers in public service.

The reaction of the Settlement Class thus confirms that the settlement is fair, adequate, and

reasonable.

---

[6] The Objection deadline is September 11, 2020.  *See* Dkt. 108 ¶ 16.  Objections submitted to the Settlement Administrator but not filed with the Court will be attached as exhibits to Plaintiffs' submission in response to objections, to be filed by September 25, 2020.  *Id.* ¶ 17.

[7] Other objections request certain individualized relief (for example, that Navient treat the objector's past non-qualifying payments as qualifying payments for PSLF or forgive their loans entirely).  But such individualized relief is not available in a Rule 23(b)(2) class action, and it is unclear it would be available against Navient in any event.

### 3.    The Settlement Was Reached After A Detailed Factual Investigation

"To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make … an appraisal' of the Settlement." *Id.* (quoting *Plummer*, 668 F.2d at 660) (ellipses in original). "Additionally, the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement, but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (internal quotation marks and brackets and ellipses omitted).

The parties have engaged in a more-than-sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement.  In total, Navient produced approximately 700,000 pages of documents, allowing Plaintiffs to conduct a comprehensive factual investigation and to form a detailed view as to the most effective practice enhancements to assist borrowers, which are reflected in the Business Practice Enhancements provided for by the Settlement Agreement.  Moreover, the repeated discovery disputes between the parties[8] and Navient's aggressively litigated motion to dismiss demonstrate that the proceedings have been adversarial.

### 4.    Plaintiffs Would Face Risks In Establishing Liability At Trial

In order to evaluate this factor, the court "does 'not need to decide the merits of the case or resolve unsettled legal questions.'"  *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164

---

[8] The parties had multiple discovery disputes, several requiring the Court's intervention. *See* Dkt. 45 (May 30, 2019 motion to compel Navient to produce call recordings and an interactive, hyperlinked database used by Navient call center employees); Dkt. 77 (Oct. 11, 2019 motion to compel Navient to produce transcripts of depositions of Navient employees, names of call agents who spoke to Plaintiffs, and documents related to unnamed New York class members, and asking the Court to resolve the parties' impasse regarding custodial searches).

14

(S.D.N.Y. 1999) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)) (brackets omitted), *aff'd sub nom. Joel A.*, 218 F.3d 132.  Instead, it need only "weigh the likelihood of success by the plaintiff class against the relief offered by the Settlement Agreements."  *Id.* (citing *Carson*, 450 U.S. at 88 n.14).  If the Court denies approval of the settlement, Plaintiffs' sole remaining claim is under New York General Business Law ("GBL") § 349.  *See* Dkt. 53, at 2.  "Section 349 prohibits 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.'"  *MZ Wallace Inc. v. Fuller*, 2018 WL 4007645, at *4 (S.D.N.Y. Aug. 22, 2018) (Cote, J.) (quoting GBL § 349) (brackets omitted).  To prevail on a claim for a GBL § 349 violation, a plaintiff must prove that a defendant has engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Id.* (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017)).

Navient continues to deny Plaintiffs' allegations of wrongful conduct and damages, Settlement Agreement at 5, and were this matter to proceed to trial, Navient would vigorously defend itself on the merits.  For example, Navient would likely argue individual Plaintiffs cannot prove their GBL § 349 injury was caused by Navient's allegedly deceptive acts and practices and would challenge Plaintiffs' ability to prove class-wide injury and damages, which is often extremely challenging even with detailed expert analyses.  A trial would require detailed fact-finding on issues such as Navient's communications with borrowers.  Thus, there is "inherent risk in litigating these claims through trial," which is "particularly acute here both because of the fact-intensive nature of these claims, and because . . . a jury's reaction to the somewhat unusual structure of a class trial [is] unpredictable."  *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *6 (S.D.N.Y. June 27, 2012).

**5.     Plaintiffs Would Face Risks In Obtaining Comparable Remedies After Trial**

Where plaintiffs seek "declaratory and equitable relief, rather than damages, the Court still considers the risks of establishing the sought-after 'remedy' in examining whether [a] Settlement Agreement[] [is] fair, reasonable, and adequate." *Marisol A.*, 185 F.R.D. at 164; *see also Ingles v. Toro*, 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006). Because the Settlement Agreement expressly preserves the right of Settlement Class Members to file individual lawsuits for damages, the *cy pres* award is not a damages award. As the Third Circuit has explained, "a *cy pres*-only (b)(2) settlement that satisfies Rule 23's certification and fairness requirements . . . 'belong[s]' to the class *as a whole*, and not to individual class members as monetary compensation." *In re: Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Google*"), 934 F.3d 316, 328 (3d Cir. 2019).

In their operative Complaint, Plaintiffs sought broad equitable relief, including "enjoining Navient from continuing improperly to incentivize Navient's employees to steer Plaintiffs and members of the Classes into [non-qualifying plans], rather than income-driven repayment plans that qualify under PSLF," and "enjoining Navient from continuing to misrepresent to Plaintiffs and members of the Classes that they are not eligible for PSLF, providing incorrect information to Plaintiffs and members of the Classes regarding PSLF, and affirmatively restricting Plaintiffs and members of the Classes' ability to enroll in PSLF." Dkt. 32 ("Compl."), at 128. By providing for practice enhancements devised with the benefit of Plaintiffs' experiences with Navient and Navient's internal knowledge, the Settlement Agreement substantially accomplishes the goals of the equitable relief sought without the "inherent risk" of seeking such relief at trial. *See Jermyn*, 2012 WL 2505644, at *6.

For example, Plaintiffs alleged that many PSLF-eligible borrowers were inappropriately steered into non-qualifying repayment plans instead of given the option of pursuing PSLF. *E.g.,*

16

Compl. ¶¶ 324-41, 366-85.  The Business Practice Enhancements in the Settlement Agreement directly address this allegation.  Navient will ensure that customer service representatives assess borrowers' potential eligibility for loan forgiveness, including PSLF, during calls in which borrowers express an interest in repayment options or indicate they are having difficulty repaying their loans, and discuss loan forgiveness with borrowers prior to offering forbearance.  The Business Practice Enhancements will also help ensure that borrowers potentially eligible for PSLF receive adequate information on their options by requiring representatives to ask leading questions regarding forbearance, repayment options, and employment by a government or not-for-profit organization, providing additional information about loan forgiveness during webchat conversations, and providing borrowers with additional information regarding forgiveness options.

Plaintiffs additionally alleged that Navient incorrectly informed borrowers that they were "on track" for PSLF, incorrectly informed other borrowers that they were ineligible for PSLF, and incorrectly advised borrowers not to submit necessary paperwork for PSLF.  *E.g.*, Compl. ¶¶ 343-65, 386-95.  The Business Practice Enhancements will help ensure that Navient's employees deliver correct information to borrowers regarding eligibility for PSLF and avoid restricting borrowers' ability to enroll in PSLF by conducting mandatory training on PSLF, regularly monitoring calls with borrowers to ensure adherence to policies and procedures, designing forms that can be sent to borrowers who request additional information on or express interest in PSLF, and providing borrowers with direct links from Navient's website to ED's central database for federal student aid.  The Business Practice Enhancements will thus provide material benefits to the Settlement Class in their continuing relationships with Navient, and to many future borrowers.

Settlement Class members will receive a further substantial benefit via the *cy pres* award to Public Service Promise for the purposes of providing education and student loan counseling to

17

borrowers employed in public service.  As described in Exhibit 8 to the Declaration of Yelena Konanova, Public Service Promise will launch the "PSLF Project," which will be the first comprehensive national project to use public education, direct services, and advocacy to assist student loan borrowers in obtaining relief and bringing meaningful changes to the PSLF program.  Public Service Promise will use the funds to build a robust public education program across college campuses to provide instruction and information for students who are planning to go into public service and are interested in PSLF.  Its attorneys and staff members will conduct in-person presentations and convene in-person and online trainings for career services offices across the country interested in conducting sessions for their students and alumni.  In addition, Public Service Promise plans to conduct trainings and webinars for partner organizations, including public employee unions, state and federal government agencies and local school districts.  The webinars, which will be posted on YouTube and other widely trafficked sites, will provide additional instruction on enrollment in eligible repayment plans and information on qualifying employers.  Public Service Promise also plans to make the webinars and other PSLF resources publicly available on its website so that they are easily accessible for a broader audience.

Public Service Promise further plans to develop digital toolkits to assist student borrowers seeking PSLF discharges and will have a staff member dedicated to communicating with student loan borrowers on email and social media.  It plans to train law students across the country to serve as PSLF Project "ambassadors," to conduct trainings and answer questions from borrowers about PSLF, and to organize and expand a nationwide network of attorneys to assist borrowers through guidance on applications or assistance in challenging denials.

In total, Public Service Promise expects that PSLF Project activities will reach as many as 11,250 borrowers annually.  Given the significant benefits that class members will receive from

18

the tailored Business Practice Enhancements and *cy pres* award, the "possibility of achieving [through an adversarial process] additional relief over and above that afforded by the negotiated relief does not outweigh the benefits of the Settlement." *Shepard v. Rhea*, 2014 WL 5801415, at *10 (S.D.N.Y. Nov. 7, 2014).

### 6.    Plaintiffs Would Face Risks In Maintaining The Class Action Through Trial

To obtain class certification on their GBL § 349 claim, Plaintiffs would be required to present "a suitable methodology for establishing the critical elements of causation and injury on a class-wide basis," showing they "could prove at trial using common evidence that putative class members" suffered an injury as a result of Navient's allegedly deceptive acts and practices. *See Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010).  Parties seeking to certify GBL § 349 claims "face significant challenges at the class certification stage" if the alleged "oral (mis)representations . . . vary significantly among the plaintiffs," because such variation "poses a problem for plaintiffs in establishing predominance." *Orellana v. Macy's Retail Holdings, Inc.*, 2018 WL 3368716, at *20–21 (S.D.N.Y. July 10, 2018); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Where there are material variations in the nature of the misrepresentations made to each member of the proposed class . . . class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, [and] the nature of the varying material misrepresentations . . . ."); *Vincent v. Money Store*, 304 F.R.D. 438, 444-45 (S.D.N.Y. 2015) ("Because evaluating the fraud claim would require looking to what was sent to each individual borrower, the plaintiffs have not shown predominance . . . ."), *aff'd sub nom. Garrido v. Money Store*, 649 F. App'x 103 (2d Cir. 2016).

The Court has indicated that Plaintiffs face substantial risks in obtaining class certification. *E.g.*, June 10, 2020 Prelim. Approval Hrg. Corr. Tr. at 11:8-11 (at preliminary approval stage,

Court "resolved . . . to [its] satisfaction" that Rule 23(b)(2) settlement releasing aggregate damages claims is "appropriate" because "the class members aren't giving up really a viable claim for relief, that is, a class action claim for damages"); Oct. 17, 2019 Conf. Tr., Dkt. 81, at 33:18-34:8 (Court suggested that "there is an underlying problem here with respect to the plaintiffs' theory" and expressed skepticism that "a sample of conversations" between Navient and borrowers "is going to have the . . . ability to make the broader point" that Navient's misrepresentations were uniform); July 26, 2019 Conf. Tr., Dkt. 63, at 17:18-18:9 (Court believes "there is an enormous hurdle to certifying this class" because it "just can't imagine there would be any uniform[] oral representation[s]"). Navient would vigorously contest class certification outside of the settlement context. Accordingly, absent a settlement, Plaintiffs would face significant risks in maintaining a class action through trial.

### 7.     The Remaining *Grinnell* Factors Do Not Apply In This Case

Because the Settlement Agreement expressly preserves the right of members of the Settlement Class to file individual lawsuits for damages, the *cy pres* award is not a damages award. *See Google*, 934 F.3d at 328 (*cy pres* award that was not "intended to compensate class members monetarily" but rather to "enhance[] the settlement's deterrent effect by funding . . . institutions that will work to prevent similar [harm] from occurring in the future" satisfied "the purpose of the Rule 23(b)(2) class structure"). Thus, "[t]he remainder of the *Grinnell* factors do not apply in this case as they address monetary damages." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016). For the foregoing reasons, the *Grinnell* factors weigh strongly in favor of settlement, and the settlement is therefore fair, adequate, and reasonable in satisfaction of Fed. R. Civ. P. 23(e)(2).

## II.     Certification Of The Rule 23(b)(2) Class Is Appropriate

On July 19, 2020, the Court conditionally certified the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(e). Dkt. 108 ¶ 4. For the same reasons that justified

conditional certification, the Court should now grant certification of the Settlement Class, which satisfies the requirements of Rules 23(a) and 23(b)(2).

### A.    The Rule 23(a) Requirements Are Met

Rule 23(a) provides that one or more members of a class may sue as representative parties on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

#### 1.    Numerosity

"[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy this requirement, estimating that there are up to 324,900 potential claimants, based on Navient's current federal loan portfolio and ED's estimate that 19% of income-drive repayment plan participants will be PSLF-eligible.[9]

#### 2.    Commonality

The commonality requirement tests "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). It "does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193,

---

[9] *See* DEP'T OF EDUC., STUDENT LOANS OVERVIEW: FISCAL YEAR 2020 BUDGET PROPOSAL, Q-10 (2020) (ED estimates that 19% of income-driven repayment plan participants would qualify for PSLF); DEP'T OF EDUC. OFFICE OF FED. STUDENT AID, SERVICER PORTFOLIO BY REPAYMENT PLAN, https://studentaid.gov/data-center/student/portfolio (as of December 31, 2019, Navient serviced 1.71 million borrowers on income-driven repayment plans, including Income Contingent, Income Sensitive, Income Based, Pay As You Earn, and Revised Pay As You Earn plans).

198 (S.D.N.Y. 1992) (citing *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153–54 (2d Cir. 1983)). "Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Id.*

Plaintiffs' nationwide unjust enrichment claim satisfies the commonality requirement of Rule 23(a) for the nationwide Settlement Class.[10] "[N]umerous courts have certified nationwide classes based on a common claim of unjust enrichment," reflecting the fact that "although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences, and regardless of which state's law applies, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched." *Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017) (internal quotation marks and brackets omitted). The "two fundamental elements of an unjust enrichment claim" are "that the defendant received a benefit from the plaintiff," and that "it would be inequitable for the defendant to retain that benefit without compensating the plaintiff." *Id.* (internal quotation marks omitted). Common issues of fact or law on Plaintiffs' unjust enrichment claim include (1) whether the class members have conferred a benefit upon Navient including, but not limited to, Navient's loan servicing fees, *see* Compl. ¶ 453, and (2) whether it would be inequitable for Navient to retain

---

[10] For the purposes of the commonality requirement, Plaintiffs do not rely on their GBL § 349 claim, which may be unavailable to non-New York Settlement Class members. That the Court previously granted Navient's motion to dismiss the unjust enrichment claim poses no barrier to certifying a settlement class based on that claim. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) (certifying a settlement class and approving the settlement of claims that were previously dismissed, *see* 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008), *adopted in part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012)); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *48 (N.D. Cal. Jan. 8, 2013) ("[C]ase law has long recognized the ability to settle claims that had been previously dismissed on the merits . . . ."), *adopted*, 2014 WL 12879520 (N.D. Cal. June 27, 2014).

the benefit of any fees it may not otherwise have received but for Navient's alleged misrepresen-

tations, *see* Compl. ¶ 456.

3.    Typicality

Typicality is met when "each class member's claim arises from the same course of events,

and each class member makes similar legal arguments to prove the defendant's liability," *In re*

*Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); the representatives' claims

need not be identical to those of the class members, *Trief*, 144 F.R.D. at 200.  "When it is alleged

that the same unlawful conduct was directed at or affected both the named plaintiff and the class

sought to be represented, the typicality requirement is usually met irrespective of minor variations

in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d

Cir. 1993).  The named Plaintiffs variously allege that Navient incorrectly advised them that they

were "on track" for PSLF; incorrectly advised them not to submit required paperwork for PSLF;

steered them into non-qualifying repayment plans; incorrectly stated that they were ineligible for

PSLF; and otherwise provided them misleading and inaccurate information regarding PSLF.

Compl. ¶ 35.  This alleged unlawful conduct arises from the same course of events as the unlawful

conduct that allegedly affected the Settlement Class as a whole.  *See* Compl. ¶ 17.

4.    Adequacy

"Adequacy is twofold: the proposed class representative must have an interest in vigor-

ously pursuing the claims of the class, and must have no interests antagonistic to the interests of

other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  "A con-

flict or potential conflict alone will not, however, necessarily defeat class certification—the con-

flict must be 'fundamental.'" *Id.*  Plaintiffs have no claims that are antagonistic to those of the

members of the class; instead, as discussed above, Plaintiffs' claims arise from common issues of

law and fact that affect all class members, and are based on alleged unlawful conduct typical of the conduct allegedly affecting class members as a whole. While Plaintiffs will receive service awards should the Court approve them, such service awards do nothing to undermine Plaintiffs' adequacy as Class Representatives. *Spann v. AOL Time Warner Inc.*, 2005 WL 1330937, at *10 (S.D.N.Y. June 7, 2005) (granting a $10,000 service award to each named plaintiff, who "fairly and adequately represented and will fairly and adequately represent the interests of the Class"). On the contrary, the Class Representatives agreed to release their claims for individual damages so that they could put the interests of the Settlement Class first and obtain the best possible settlement. For the foregoing reasons, Plaintiffs and the Settlement Class satisfy the requirements of Fed. R. Civ. P. 23(a).

Additional facts supporting the appropriateness of the service awards are set forth in the contemporaneously filed Application for Service Awards to Class Representatives.

### B.    The Rule 23(b)(2) Requirements Are Met

"Class certification is appropriate where the defendant has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate." *Marisol A.*, 126 F.3d at 378 (citing Fed. R. Civ. P. 23(b)(2)). Plaintiffs, as discussed above, have alleged that Navient made misrepresentations regarding eligibility and the requirements for PSLF that are generally applicable to the class. Accordingly, the Business Practice Enhancements provided for in the Settlement Agreement are an appropriate manner of remedying Navient's alleged wrongdoing. *See, e.g.*, *Jermyn*, 256 F.R.D. at 434 (finding that a proposed class "meets the requirements of Rule 23(b)(2)" where "there is overwhelming positive value to the injunctive relief that the class seeks" because "[s]uch an injunction would prevent [the defendant] from continuing to perpetrate its alleged deceptive . . . [p]olicy on all New York consumers in violation of New York law").

Moreover, all class members here stand to benefit from the relief provided for in the Settlement Agreement, even though they may benefit differently.[11]  Even those no longer serviced by Navient still benefit from Public Service Promise's provision of education and counseling services to student loan borrowers in public service, regardless of their servicer.  *See* Compl. ¶¶ 70, 97. This type of *cy pres* award belongs to the class as a whole, and is appropriate relief in a Rule 23(b)(2) settlement, because Public Service Promise's activities will work to prevent similar harm from occurring in the future and thus will enhance the settlement's deterrent effect.  *See Google*, 934 F.3d at 328.[12]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement Agreement and certify the settlement class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

---

[11] Class members may benefit to varying degrees.  *See, e.g.*, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97–98 (2d Cir. 2015) (Rule 23(b)(2) certification was appropriate and the "proposed injunctive relief swe[pt] broadly enough to benefit each class member," because while certain class members had already received service of process in debt collection actions, they would benefit "by the notification proposed by the injunction as well," and while "named plaintiffs have had their default judgments vacated, they might each still be subject to a further action by these same defendants"); *id.* at 97 (observing that *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), "does not require that the relief to each member of the class be identical, only that it be beneficial"); *Amara v. CIGNA Corp.*, 775 F.3d 510, 522 (2d Cir. 2014) (Rule 23(b)(2) does not require decertification where certain class members, who might not benefit from injunction's reformation of retirement plan, received "some benefit in the form of new notice" of changes to the plan).

[12] All class members also receive class notice, informing them of the alleged harm to the class and their ability to pursue individual damages claims—which class members here retain.  *See also Weingarten v. DeVos*, 2020 WL 3412730, at *13 (D.D.C. June 22, 2020) (borrowers denied forgiveness and alleging they were misled by their servicer may proceed with procedural due process claims against the U.S. Department of Education and U.S. Education Secretary Elisabeth DeVos).

Dated: New York, NY
August 28, 2020

Respectfully submitted,

SELENDY & GAY PLLC

By:    */s/ Faith Gay*
Faith Gay
Maria Ginzburg
Yelena Konanova
Margaret Siller
David A. Coon
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
E-mail:  fgay@selendygay.com
    mginzburg@selendygay.com
    lkonanova@selendygay.com
    msiller@selendygay.com
    dcoon@selendygay.com

Mark Richard
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
Telephone: (305) 412-8322
E-mail: mrichard@phillipsrichard.com
(admitted *pro hac vice*)

*Attorneys for Plaintiffs*

26