**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>Defendants. | No. 18-cv-9031-DLC-BLM |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED APPLICATION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Date:  August 28, 2020

Mark Richard
PHILLIPS, RICHARD & RIND, P.A.
9360 SW 72 Street, Suite 283
Miami, FL 33173
Tel: 305-412-8322
E-mail: mrichard@phillipsrichard.com
(*pro hac vice*)

Faith Gay
Maria Ginzburg
Yelena Konanova
Margaret Siller
Ronald J. Krock
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
E-mail: fgay@selendygay.com
mginzburg@selendygay.com
lkonanova@selendygay.com
msiller@selendygay.com
rkrock@selendygay.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT FACTUAL BACKGROUND.................................................................................2

     A.     Work Performed By Lead Counsel.........................................................................2

     B.     Approval Of Settlement And Notice To The Class .................................................5

ARGUMENT .................................................................................................................................6

Class Counsel's Fees Request Should Be Approved Because It Is Fair And Reasonable
Given The Significant Non-Monetary Relief Obtained For The Class .............................6

     A.     The Fees Request Is Fair, Reasonable, And In Line With Other Awards As
             Calculated Under The Lodestar Method................................................................8

     B.     The Fees Request Easily Meets The Criteria For Reasonableness
             Established By *Goldberger*..................................................................................10

          1.     Significant Time And Resources Were Dedicated To Litigating
                  This Action..................................................................................................10

          2.     This Action Has Presented Especially Difficult Challenges.....................12

          3.     There Was Significant Risk Of Dismissal Or An Inability To
                  Certify A Class............................................................................................14

          4.     Notwithstanding The Evidentiary And Legal Challenges To
                  Certifying A Class, Class Counsel Reached A Settlement That
                  Addresses Core Alleged Deficiencies That Led To The Class's
                  Injuries ......................................................................................................16

          5.     The Fees Request Is Reasonable In Relation To The Significant
                  Non-Monetary Relief Obtained For The Class...........................................17

           6.     This Settlement Significantly Advances Public Policy By Shoring
                  Up The Public Student Loan Forgiveness Program And
                  Incentivizing Work By Future Class Action Counsel................................17

CONCLUSION..............................................................................................................................19

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Blum v. Stenson*,
465 U.S. 886 (1984)............................................................................................ 8

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) ............................................................................ 14

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................... 16

*Clarke v. Frank*,
960 F.2d 1146 (2d Cir. 1992)............................................................................. 9

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)......................................... 8, 12, 16, 17, 18

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................. 2, 6, 7, 9, 14

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................................. 8

*In re Budeprion XL Mktg. & Sales Litig.*,
2012 WL 2527021 (E.D. Pa. July 2, 2012)....................................................... 6

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
55 F.3d 768 (3d Cir. 1995)................................................................................ 6

*In re Nat'l College Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
332 F.R.D. 202 (N.D. Ill. Aug. 12, 2019).......................................................... 6

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)............................................................................ 15

*Jermyn v. Best Buy Stores, L.P.*,
2012 WL 2505644 (S.D.N.Y. June 27, 2012) ............................................. 7, 10

*Kemp-DeLisser v. Saint Francis Hosp. and Med. Ctr.*,
2016 WL 6542707 (D. Conn. Nov. 3, 2016) ..................................................... 7

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
2018 WL 5621872 (N.D. Fla. Sept. 20, 2018)................................................. 14

*Lilly v. Jamba Juice Co.*,
  2015 WL 2062858 (N.D. Cal. May 4, 2015) ................................................... 6

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ........................................................................ 8

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ........................................................................ 7

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................ 7

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2019 WL 343472 (N.D. Cal. Jan. 28, 2019) .................................................. 9

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................... 10, 17

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
  2017 WL 6501919 (S.D. Ill. Dec. 19, 2017) ................................................ 14

*Pennsylvania v. Navient Corp.*,
  354 F. Supp. 3d 529 (M.D. Pa. 2018) .......................................................... 14

*Peoples v. Annucci*,
  180 F. Supp. 3d 294 (S.D.N.Y. 2016) ........................................................... 6

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017) ........................................................................ 8

*Rodriquez v. It's Just Lunch Int'l*,
  2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) ................................................ 18

*Selby v. Principal Mut. Life. Ins. Co.*,
  2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003) .............................................. 6

*Sidley Holding Corp. v. Ruderman*,
  2009 WL 6047187 (S.D.N.Y. Dec. 30, 2009) (R. & R.), *adopted by* 2010 WL
  963416 (Mar. 15, 2010) ............................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................... 6

## **Rules**

Fed. R. Civ. P. 23(h) ........................................................................................ 1

Fed. R. Civ. P. 54(d)(2) .................................................................................... 1

Selendy & Gay, PLLC ("S&G" or "Lead Counsel") and Philipps, Richard & Rind, P.A. ("PR&R" and, collectively with S&G, "Class Counsel") respectfully make this motion for approval of their application for reasonable attorneys' fees and the reimbursement of expenses pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2) (the "Application").

## PRELIMINARY STATEMENT[1]

On April 24, 2020, after nearly two years of hard-fought litigation, the parties in this case reached a Settlement Agreement under which Navient agreed to make meaningful enhancements to its business policies and practices, and to pay $2.4 million, including a $1.75 million contribution to a *cy pres* organization for student loan education and counseling. Dkt. 98-1 at 8–12 (Settlement Agreement Part V). This Court preliminarily approved the Settlement Agreement on June 19, 2020, Dkt. 108 at 4–5 (Preliminary Approval Order ¶¶ 11–14)—a significant accomplishment for Settlement Class Members who will receive clear and comprehensive instructions from their loan servicer and access to third-party resources to help them realize the federal government's promise of the PSLF Program.

Reaching this result required thousands of hours of time from Class Counsel's dozens of attorneys and staff, and a significant, up-front payment of legal fees by the American Federation of Teachers ("AFT"), Class Counsel's non-profit partner who sponsored this litigation on behalf of the entire Class and the Class Representatives (who are AFT members). In recognition of those efforts, Navient has agreed as part of the Settlement Agreement to pay reasonable attorneys' fees in the amount of $500,000, inclusive of any costs or other expenses, subject to this Court's final approval. *See* Dkt. 98-1 at 16 (Settlement Agreement Part VIII.3).

---

[1] Unless otherwise specified, defined terms have the meaning ascribed to them in the Settlement Agreement. Dkt. 98-1.

As discussed herein, the fees request is fair and reasonable, because it (A) represents a significant discount to the rates applicable to this litigation, and (B) satisfies the criteria for fee awards adopted by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). S&G has included with this Application additional materials in support of the fees request, including its rate sheet and detailed time records. Decl. of Yelena Konanova ("Konanova Decl.") Exs. 9–10. PR&R has not and does not intend to file an independent request for fees. Accordingly, S&G respectfully requests final approval of the Application for reasonable fees in the amount of $500,000 to partially reimburse AFT for funding this litigation.

## RELEVANT FACTUAL BACKGROUND

### A.   Work Performed By Lead Counsel

As of August 21, 2020, Lead Counsel has billed a total of 11,683.7 hours prosecuting and settling this litigation, comprised of 10,668 hours of attorney time and 1,015.7 hours of paralegal and administrative time. *Id.* ¶ 24. Lead Counsel's fees for this litigation were equal to $5,915,865.60, reflecting a roughly 20% reduction to regular rates. *Id.* ¶ 26; *see also id.* Exs. 9–10.[2] These hours reflect work on a full range of complex legal issues, including substantial pre-complaint investigation, drafting of the initial and amended complaints, briefing of the motion to dismiss, and post-complaint fact discovery, among others. *Id.* ¶ 25.

Prior to filing the initial complaint, Lead Counsel interviewed over 200 prospective class members and identified the nine initial Class Representatives. *Id.* ¶¶ 4–5. Thereafter, Lead

---

[2] AFT's involvement with this litigation has been a matter of public record. *See, e.g.*, Annie Nova, *Teachers union members bring lawsuit against Navient*, CNBC (Oct. 3, 2018), https://www.cnbc.com/2018/10/03/members-of-the-american-federation-of-teachers.html; Stacy Cowley, *Navient Agrees to Settle Teachers' Loan Forgiveness Lawsuit*, N.Y. TIMES (May 5, 2020), https://www.nytimes.com/2020/05/05/business/student-loan-forgiveness-navient.html.

Counsel continued to engage with additional prospective class members, including more than 350 individuals who contacted Lead Counsel about participating in the litigation, and Lead Counsel identified two additional Class Representatives. *Id.* ¶¶ 4, 6. Separately, Lead Counsel conducted extensive research about Navient's business practices and various theories of liability in support of Plaintiffs' complaint allegations. *Id.* ¶ 3. From that diligence, Lead Counsel prepared initial and amended complaints, each exceeding 100 pages and asserting fifteen causes of action, including seven causes of action on behalf of a nationwide class and eight causes of action on behalf of separate state classes for New York, California, Florida, and Maryland borrowers. *Id.* ¶¶ 5–6.

Thereafter, Lead Counsel briefed an opposition to Navient's motion to dismiss in which Navient asserted twenty independent theories for dismissal, including that Plaintiffs' claims were preempted by federal law. *Id.* ¶ 6. The Court ultimately rejected Navient's preemption defense and permitted Plaintiffs to pursue a claim on behalf of a putative New York class for violation of New York's consumer protection laws under N.Y. General Business Law § 349. *See id.* ¶ 7.

Leading up to the decision on the motion to dismiss, Lead Counsel also retained three testifying experts, and various consulting experts, to support its class certification and merits cases. *Id.* ¶ 11. In particular, Lead Counsel sought expert support on: (i) the student loan industry, including policies, procedures, and practices that lead to Navient's uniform misrepresentations; (ii) profit drivers that motivate such actions; and (iii) the resulting damages to Settlement Class Members. *Id.*

Simultaneously, the parties engaged in significant, prolonged, and contentious discovery. The parties spent considerable time negotiating elaborate confidentiality and e-discovery protocols, engaging in numerous telephonic meet-and-confers, and briefing two motions to compel discovery. *Id.* ¶ 9. As a result of those efforts, Lead Counsel received and reviewed 72,397

documents—or 699,924 pages (inclusive of more than 10,000 Excel files, which are counted as a single page regardless of length)—that were produced by Navient from 63 separate custodians. *Id.* ¶ 9(b).  Lead Counsel also collected and reviewed an additional 6,106 documents from the Class Representatives, the production of which was cut short by settlement discussions.  *Id.* ¶ 10. From that extensive discovery, Lead Counsel's attorneys prepared detailed fact memoranda, summarizing the core insights learned.  *Id.* ¶ 9(c).

Following a July 26, 2019 conference with this Court, counsel for the parties—nationally recognized for their expertise in class action litigation—engaged in protracted, arm's-length negotiation over the details of the eventual Settlement Agreement.  *Id.* ¶¶ 17–19, 40–43.  To help bridge the gap, the parties agreed to mediation before Magistrate Judge Barbara Moses, which included written statements, a one-day mediation conference attended by all ten Plaintiffs, and multiple telephonic conferences to discuss the parties' progress.  *Id.* ¶ 17.[3]  In preparing for the possibility those negotiations might fail, Lead Counsel simultaneously briefed a motion for class certification and drafted three expert reports in support of the same (which motion and reports it ultimately did not file because the parties settled).  *Id.* ¶ 11.

Thereafter, Lead Counsel briefed its unopposed motion for preliminary approval of the Settlement Agreement and appeared at a preliminary approval hearing.  *Id.* ¶ 20.  Finally, Lead Counsel briefed a motion for final approval of the Settlement Agreement ("Final Approval Motion"), filed contemporaneously herewith.

---

[3] The eleventh Plaintiff, Eldon R. Gaede, withdrew from the case as so ordered by the Court on October 16, 2019.  Dkt. 78.

## B.      Approval Of Settlement And Notice To The Class

This Court preliminarily approved the Settlement Agreement on June 19, 2020, pursuant to which it appointed Class Counsel, and instructed the Settlement Administrator to notify the Settlement Class of the proposed settlement and fees request.  *Id.* ¶ 20(b)–(d).

The Settlement Administrator furnished notice on the Settlement Class on or before August 3, 2020 and posted notice to the settlement website accordingly.  That notice, approved by the Court, provided in relevant part that:

> Class counsel will ask the Court to approve attorneys' fees and expenses of up to $500,000 for the time and effort they have spent on this case.  Class counsel will also request that $15,000 be paid to each of the class representatives, who helped the lawyers on behalf of the whole Class.  Defendants will pay the approved amount of attorneys' fees and expenses, and no class member will owe or pay anything for the attorneys' fees and expenses of class counsel.

*Id.* ¶ 21(e).

Of the approximately 476,548 Settlement Class Members who received mail or e-mail notice, Decl. of Jessica Jenkins ¶¶ 5, 7, 10, only three appear to raise any issue with the fees request, on the basis that the settlement does not provide direct monetary relief for the Settlement Class.  As per this Court's instructions, Class Counsel will separately respond to those and any other timely objections on or before September 25, 2020, including by highlighting the preservation of Settlement Class Members' claims for individual damages.  Dkt. 108 at 5–6 (Preliminary Approval Order ¶¶ 16–17).

This Application followed.

## ARGUMENT

**Class Counsel's Fees Request Should Be Approved Because It Is Fair And Reasonable Given The Significant Non-Monetary Relief Obtained For The Class**

The Second Circuit has endorsed two methods for calculating fair and reasonable attorneys' fees:  (i) the "percentage" method, which allows recovery of a reasonable percentage of a "common fund" created by a settlement; and (ii) the "lodestar" method, which multiplies the hours reasonably expended by a reasonable hourly fee in view of the geographical area, the nature of the services provided, and the experience of the lawyer.  *Goldberger*, 209 F.3d 43 at 47, 50, 56.

Although "[t]he trend in this Circuit is toward the percentage method," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005), federal courts use the lodestar method in class action settlements involving non-monetary relief alone—relief as to which the monetary value, though substantial, is necessarily more difficult to ascertain, *see Selby v. Principal Mut. Life. Ins. Co.*, 2003 WL 22772330, at *2, 5 & n.16 (S.D.N.Y. Nov. 21, 2003) (approving fees "represent[ing] a 58.22% discount from the current lodestar value of counsel's time" in Rule 23(b)(2) settlement); *see also In re Nat'l College Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 221 (N.D. Ill. Aug. 12, 2019) (applying lodestar method to Rule 23(b)(2) settlement); *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015) (same and noting that "in injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof"); *In re Budeprion XL Mktg. & Sales Litig.*, 2012 WL 2527021, at *20 (E.D. Pa. July 2, 2012) (same and noting that "in cases such as this one, in which the settlement's terms evade precise evaluation, the lodestar method is preferred"); *cf. Peoples v. Annucci*, 180 F. Supp. 3d 294, 303 (S.D.N.Y. 2016) (approving "one-time payment … in full satisfaction of the fees and costs incurred by plaintiffs' counsel" in Rule 23(b)(2) settlement without explicitly resorting to lodestar method).

Regardless of the method applied, a court must also determine whether such award is fair and reasonable under the Second Circuit's familiar standard, which considers: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation …; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50; *see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010).

Where, as here, "the parties agree to a fee that is to be paid separately by the Defendants rather than one that come[s] from, and therefore reduces, the Settlement Fund available to the class, 'the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.'" *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016) (quoting *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012)).

Notably, that AFT made a significant investment in this litigation does not undermine the fees request.  Non-profit organizations like AFT are entitled to be reimbursed for reasonable attorneys' fees and costs incurred while obtaining a valuable settlement for a class. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667–71 (S.D.N.Y. 2015) (authorizing award of fees and costs to reimburse non-profit association that sponsored class action antitrust litigation on behalf of local television stations).

As discussed herein, Lead Counsel's fees request is fair and reasonable under the lodestar method and satisfies the *Goldberger* requirements.  Lead Counsel respectfully requests that the Court approve the Application.

7

A.      **The Fees Request Is Fair, Reasonable, And In Line With Other Awards As Calculated Under The Lodestar Method**

To calculate an attorney's lodestar, courts multiply the time an attorney spent on a task by their current hourly rates. *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (recognizing that this approach "account[s] for the delay in payment inherent in class actions and for inflation"). Here, Lead Counsel's lawyers and staff together devoted 11,683.7 hours over the course of more than two years for a total of $5,915,865.60 in billable time, reflecting a roughly 20% reduction to regular rates, as shown by Lead Counsel's accompanying declaration and time sheets. Konanova Decl. ¶¶ 24, 26–28; *id.* Exs. 10–11.[4] Notwithstanding, Lead Counsel requests a significantly smaller fee award of $500,000.

In judging the reasonableness of that figure, courts look to three factors. Each is met here.

***First***, with respect to hourly rates, courts adhere to the "forum rule," under which they "generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115–16 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In the recently decided *Guevoura* case, Chief Judge McMahon approved an award of fees in a Rule 23(b)(3) action where counsel and staff devoted 2,955.55 hours for a

---

[4] The submitted time sheets have been revised for clarity and to omit material that is subject to attorney-client privilege or attorney work product. Courts in this Circuit "do not consider the minimal redactions in plaintiff's attorneys' task descriptions to merit a decrease in fees." *Sidley Holding Corp. v. Ruderman*, 2009 WL 6047187, at *24 (S.D.N.Y. Dec. 30, 2009) (R. & R.) (noting that while "vague entr[ies]" are not sufficient, "the majority at least state the general subject matter of time spent" and that, "[t]o the extent that any of the entries fail to meet this standard, they are accounted for by plaintiff's overall ten-percent reduction in fees sought…."), *adopted by* 2010 WL 963416 (Mar. 15, 2010).

total of $2,272,905.25 billable time—a range of $900 to $995 for "directors" (*i.e.*, partners), $600 to $675 for associates, and $350 for paraprofessionals, for a combined blended rate of approximately $769 an hour.  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019).  Other courts have approved fees in a similar range.  Here, by contrast, Lead Counsel billed at a discounted range of $788 to $1,232 for partners, $320 to $704 for associates and staff attorneys, and $160 to $400 for paraprofessionals, for a combined blended rate of $506 an hour (including staff and paralegal time) and $530 an hour (restricting to counsel only).  *See* Konanova Decl. Ex. 11.  Those rates are well below the blended rate in *Guevoura* and within the range of fees billed by comparable firms.[5]

**Second**, as to hours billed, a court "looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).  Lead Counsel has included detailed, contemporaneous billing records with the Application, notwithstanding that courts do not so require where, as here, Plaintiffs enter a Rule 23(b)(2) settlement and the fees request represents a significant discount to Lead Counsel's lodestar.  *See, e.g.*, *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *6 (N.D. Cal. Jan. 28, 2019) (noting that "[a]lthough the Court generally requires more detailed billing records to support a lodestar application, any concern on this front is alleviated by counsel's agreement to accept a very significant lodestar discount").  As discussed further herein, the issues presented in this case were

---

[5] Lead Counsel's peer firms in New York have been known to charge significantly higher rates for comparable expertise.  *See* Samantha Stokes, *Will Billing Rates for Elite Firms Rise More in 2020?*, THE AM. LAWYER, (July 30, 2020), https://www.law.com/americanlawyer/2020/07/30/will-billing-rates-for-elite-firms-rise-more-in-2020/ (Weil Gotshal & Manges LLP charges $1,100 to $1,695 for partners, $595 to $1,050 for associates, and $250 to $435 for paraprofessionals; Kirkland & Ellis LLP charges $1,075 to $1,845 for partners, $610 to $1,165 for associates, and $245 to $460 for paraprofessionals).

extraordinarily complex and required significant time from over 60 professionals, including partners, associates, staff attorneys, and other legal and professional staff, assigned to distinct workstreams.  Konanova Decl. ¶ 26; Ex. 10.  Accordingly, the 11,683.7 hours Lead Counsel spent prosecuting this action were reasonable.

*Third*, although courts have discretion to apply a multiplier to increase or decrease one's lodestar, the reasonableness of a fees request is reinforced where, as here, the percentage fee would represent a negative multiplier of the lodestar.  *Jermyn*, 2012 WL 2505644, at *10 (approving fees in Rule 23(b)(2) class action where the "lodestar multiplier is negative, and this is further indication of the reasonableness of the negotiated fee").  Even without separately accounting for the substantial expenses and costs incurred as necessary incidents to this litigation, the fees request here already represents a small fraction of Lead Counsel's rates in this action—a discount of 91.55% or "negative multiplier" of nearly 11.83.  That is *significantly* below the range of multipliers routinely awarded by courts in the Southern District.  *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623–24 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times" in this Circuit.).  As such, the fees request is reasonable and should be approved.

**B.      The Fees Request Easily Meets The Criteria For Reasonableness Established By *Goldberger***

In addition to satisfying the test for reasonableness under the lodestar method, the proposed Fees Award is supported by each of the Second Circuit's *Goldberger* criteria.

**1.      Significant Time And Resources Were Dedicated To Litigating This Action**

This litigation was extremely hard-fought.  Lead Counsel spent a significant portion of time interviewing more than 200 prospective class members to identify the initial set of nine Class Representatives.   Konanova Decl. ¶¶ 4–5.  Lead Counsel has since fielded more than 350

additional inquiries from individuals interested in participating in the litigation.  *Id.* ¶ 4.  Based on those interviews, and after undertaking significant additional research, Lead Counsel:  (i) identified two additional Class Representatives; (ii) drafted initial and amended complaints, each over 100 pages, asserting fifteen causes of action—seven on behalf of a nationwide class and eight on behalf of separate state classes for New York, California, Florida, and Maryland borrowers; and (iii) briefed a motion to dismiss.  *Id.* ¶¶ 5–6.  As part of those efforts, Lead Counsel devoted considerable resources to developing novel legal theories of liability.  *Id.* ¶ 3.  Lead Counsel also retained and worked closely with a series of experts in developing arguments critical to eventual certification of the Settlement Class.  *Id.* ¶ 11.  In addition, the parties engaged in significant, prolonged, and contentious discovery that required negotiation of elaborate confidentiality and e-discovery protocols, numerous telephonic meet-and-confers, and two motions to compel.  *Id.* ¶¶ 9, 12–13.  Altogether, Lead Counsel reviewed a combined 72,397 documents—or nearly 700,000 pages—from Navient, and collected and reviewed a total of 6,106 documents from Plaintiffs.  *Id.* ¶ 9(b)–(c).  Most recently, the parties have been engaged in a protracted, arm's-length negotiation over the details of the Settlement Agreement, including multiple in-person and telephonic mediation sessions, while simultaneously preparing a class certification motion and supporting expert reports, as well as motions for preliminary and final approval of the settlement.  *Id.* ¶¶ 17–18, 20.

Notwithstanding this work, and as explained in Part A, *supra*, the fees request amounts to a fraction of the fees billed in this matter—approximately 8.45% of Lead Counsel's total billed time, representing a discount of 91.55% or "negative multiplier" of nearly 11.83.  *Id.* ¶ 28.  That is well below other cases in the Southern District where fees have been approved.  *See, e.g.,*

*Fleisher*, 2015 WL 10847814, at *18 (approving $13.5 million award of attorneys' fees with *a positive multiplier of 4.87* in N.Y. Gen. Bus. Law § 349 class action).

### 2.    This Action Has Presented Especially Difficult Challenges

Plaintiffs were successful in prosecuting and settling this action, despite facing numerous challenges as described at length in the accompanying Final Approval Motion, including in particular:  (i) obtaining the requisite discovery to support their case; and (ii) establishing reliance and damages on a class-wide basis.

***First***, discovery in this matter was complicated and contested.  Plaintiffs propounded 28 discrete requests for production and engaged in an extensive back-and-forth with opposing counsel over the scope and substance of those requests.  Konanova Decl. ¶ 9(a).  In particular, during the pendency of the motion to dismiss, Plaintiffs moved to compel:  (i) 2,388 call recordings reviewed by the U.S. Department of Education's Federal Student Aid Office in connection with its 2017 audit of Defendants; and (ii) an interactive, hyperlinked database used by Defendants' call center representatives in their telephone calls with PSLF-eligible borrowers, which Plaintiffs required to track how those representatives used the standardized call flow procedures in their day-to-day work to convey the alleged common misrepresentations to borrowers seeking advice on qualifying for loan forgiveness under the PSLF.  *Id.* ¶ 12.  This Court denied the motion without prejudice during the pendency of the motion to dismiss.  *Id.*

Plaintiffs resumed discovery efforts following the motion to dismiss decision, and again were forced to file a motion to compel seeking:  (i) deposition transcripts of Navient employees from a relevant action (to gain efficiencies in not retreading the same ground in depositions here); (ii) additional documents pursuant to narrow custodial searches and terms; and (iii) a sampling of call recordings related to other unnamed New York class members.  *Id.* ¶ 13.  Although the Court reserved judgment on whether to order production of a random sampling of call recordings or

deposition transcripts, expressing concern about whether that would be a "productive" exercise, it nevertheless instructed the parties to negotiate further. *Id.* (quoting Oct. 17, 2019 Tr. 34:07–13). After significant additional back-and-forth with Navient's counsel, Plaintiffs obtained three deposition transcripts. *Id.* ¶ 14. At the time settlement talks began, the parties were still negotiating the scope of an additional, narrow production of documents responsive to proposed search terms and call recordings for a sampling of New York borrowers. *Id.* ¶ 15. Given the limited discovery produced as of that date, it was extremely likely that the parties would continue a contentious battle over access to additional documents absent settlement. *Id.*

*Second*, certifying a damages class is notoriously difficult under Second Circuit law in light of the highly individualized nature of a customer's interactions with call center representatives. *Id.* ¶ 31. In recognition of that difficulty, and at great expense, Plaintiffs retained three separate testifying experts and various consulting experts to help establish the uniformity of Navient's misrepresentations to the Settlement Class through evidence of: (i) structural deficiencies in Navient's training policies, procedures, and practices for call center representatives; (ii) profit drivers that motivate those deficiencies; and (iii) damages to Settlement Class Members that result. *Id.* ¶¶ 11, 31. Those efforts were complicated by Navient's patchwork discovery to date, which revealed that a significant number of call recordings from the 2011 period and earlier—including some of those containing the alleged misrepresentations—were no longer available. *Id.* The Court recognized these challenges and from an early stage in the litigation expressed skepticism about Plaintiffs' chances of certifying a class. *Id.*; *see also* Part B.3, *infra*.

Absent settlement, it was a virtual certainty that Plaintiffs would face additional difficulties in certifying a class action and proving their merits case.

### 3.    There Was Significant Risk Of Dismissal Or An Inability To Certify A Class

The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable fee award]." *Goldberger*, 209 F.3d at 54.  Class Counsel faced significant risk their claims would be dismissed.  *First*, at the time Plaintiffs brought their claims in October 2018, at least one federal appellate court, and a number of out-of-circuit district courts across the country had dismissed such claims on the basis of preemption.  *See, e.g.*, *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017), *vacated and remanded*, 928 F.3d 639 (7th Cir. 2019); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 2018 WL 5621872 (N.D. Fla. Sept. 20, 2018), *vacated and remanded*, 955 F.3d 908 (11th Cir. 2020); *see also* Konanova Decl. ¶ 33.  Supporting authorities were comparatively lacking at that time, with one of the earliest supporting authorities coming down nearly two months after Plaintiffs had already filed their initial complaint.  *See, e.g.*, *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529 (M.D. Pa. 2018), *aff'd* 967 F.3d 273 (3d Cir. 2020).  Even now, the Second Circuit has yet to resolve this question.

*Second*, Plaintiffs faced a separate risk of dismissal for failure to state a claim.  Konanova Decl. ¶ 34.  Without access to discovery at the commencement of the litigation, Lead Counsel was wholly dependent on Class Representatives' own records to plead the requisite misrepresentations. *Id.*  Understandably, the level of completeness of those records varied considerably among the Class Representatives, who—unlike Navient—are lay people that lack the kinds of retention systems their loan servicer uses to track correspondence.  That information asymmetry created a significant risk, which was underscored when the Court allowed only Plaintiffs' New York General Business Law § 349 claim to go forward.  *Id.*

14

**Third**, Plaintiffs faced a similarly high risk that their motion for class certification would be denied. In particular, Lead Counsel's efforts to establish uniform misrepresentations to the Settlement Class were impeded by Navient's incomplete productions of discovery, which excluded a large number of the relevant call recordings containing alleged misrepresentations. *Id.* ¶ 15. This Court repeatedly acknowledged the risks associated with class certification, observing in a July 26, 2019 scheduling conference following the motion to dismiss decision that it was "hard to predict that there is going to be a class certified" in this case, citing numerous concerns of proof:

> I just can't imagine there would be any uniformed oral representation. Because anyone who picks up a phone to call Navient has a question and a question comes out of their individual circumstances and needs. Many of the people who call couldn't be a part of our class. They are not public servants. Then we get down to those who are public servants with their own financial circumstances, their own employment circumstances. So there could be a new uniform script. There is going to have to be such an individualized inquiry and of course the question they have about, gee, what can I do about repaying my loans given who I am working for and my financial needs at the moment will depend also on who is on the other line and how knowledgeable they are and how well they understand the question and how quickly they get to the right material, etc., etc. Assuming good faith and all that on the part of individual human beings, and knowing that the plaintiffs' theory is that there is this incentive to have short calls and fast calls and push people into a program that leaves Navient as the servicer, etc., etc., assuming all of that to be true, it still comes down to a very individual conversation.

*Id.* ¶ 36 (quoting July 26, 2019 Conference Tr. 18:08–19:06).

The Court requested that the parties submit their best three cases—for and against certification—shortly after that conference. Konanova Decl. ¶ 37. Both parties did so, and Plaintiffs furnished cases in which classes were certified on the basis of similarly alleged "fraudulent scheme[s]" effectuated through common "training" and other "pre-approved materials." *Id.* (quoting *e.g.*, *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 292, 303, 311, 319 (3d Cir. 1998)). The Court subsequently permitted discovery but continued to express

15

concerns about class certification. *Id.* ¶¶ 38–39 (citing Oct. 17, 2019 Conference Tr. 33:18–23 and June 10, 2020 Conference Tr. 11:09–11). Notwithstanding those risks, Class Counsel was able to successfully negotiate a settlement that addresses the core alleged deficiencies Plaintiffs sought to address in bringing the litigation while preserving individual damages claims for Settlement Class Members.

### 4. Notwithstanding The Evidentiary And Legal Challenges To Certifying A Class, Class Counsel Reached A Settlement That Addresses Core Alleged Deficiencies That Led To The Class's Injuries

The quality of the representation is evidenced, at least in part, by the very factors that led this Court to appoint Lead Counsel and its co-counsel, PR&R, as Class Counsel under Rule 23(g). Class Counsel's partners have significant expertise in prosecuting public interest cases and complex litigation, and a hard-earned reputation for vigorous advocacy. Konanova Decl. ¶¶ 40–42. Class Counsel leveraged both to obtain an outcome in this case that addresses the core alleged deficiencies in Navient's procedures to advise Settlement Class Members (as well as future borrowers) how to qualify for PSLF forgiveness.

In addition, "[t]he work that Class Counsel has performed in litigating and settling this case, and the substantial resources they have committed to prosecuting the case, demonstrates their commitment to the Class and to representing the Class's interests." *Fleisher*, 2015 WL 10847814, at *22. As described in Part B.1, *supra*, Lead Counsel, for its part, expended a significant amount of time and resources to litigating this action.

Likewise, "[t]he quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *17 (S.D.N.Y. May 9, 2014). Navient's counsel, Covington & Burling LLP, is widely recognized as one of the country's leading defense firms. Its lawyers are leaders in their fields and have substantial experience litigating class action lawsuits of this nature. *See* Konanova Decl. ¶ 43. Here,

as in *Fleisher*, Navient was "represented by skilled and highly regarded counsel from [a] prestigious firm[] with well-deserved reputations for vigorous advocacy in the defense of complex civil cases." *Fleisher*, 2015 WL 10847814, at *22.

### 5.   The Fees Request Is Reasonable In Relation To The Significant Non-Monetary Relief Obtained For The Class

Courts in the Second Circuit "regularly award lodestar multipliers from 2 to 6 times." *Morris*, 859 F. Supp. 2d at 623–24.  As explained in Part A, *supra*, the proposed fees request here falls significantly below that range of reasonableness—reflecting a discount of 91.55% or "negative multiplier" of nearly 11.83 from the rates charged in this matter.  This substantially discounted fees request is reasonable in consideration of the $1.75 million in *cy pres* funding and the meaningful business practice enhancements achieved by the settlement, whose value—though difficult to ascertain precisely—is significant.  *See* Konanova Decl. ¶ 22.

### 6.   This Settlement Significantly Advances Public Policy By Shoring Up The Public Student Loan Forgiveness Program And Incentivizing Work By Future Class Action Counsel

Public policy strongly favors the award of attorneys' fees here.  Congress enacted the PSLF Program to encourage students aspiring to careers in public service to do so without succumbing to a lifetime of debt.  *See* Am. Compl. ¶¶ 251–53.  For too many, that has proven impossible.  *See id.* ¶¶ 18–20. The settlement improves the quality of information provided to Settlement Class Members about their repayment options, thereby lowering the barriers to achieving the federal government's promise of loan forgiveness in the future, while preserving individual rights to seek money damages.

As the court in *Fleisher* explained, "[p]ublic policy considerations strongly favor incentivizing skilled private attorneys to undertake this type of litigation, especially since the action is on behalf of small claimants who lack the financial incentive to obtain a recovery on their own

behalf." *Fleisher*, 2015 WL 10847814, at *22; *see also Rodriquez v. It's Just Lunch Int'l*, 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) (approving settlement in N.Y. Gen. Bus. Law § 349 class action would encourage private attorneys to "take the risks required to represent those who would not otherwise be protected from socially undesirable activities, including fraud").  Here, too, Settlement Class Members, as public servants, forgo potentially more lucrative career paths in the private sector and, accordingly, are among the most financially vulnerable federal student loan borrowers.  In the typical case, most could not afford to bring litigation on their own or any other's behalf.  Encouraging private attorneys to undertake these types of cases is paramount to advancing claims like these.

## <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request this Court grant the Application.

Dated:   New York, NY                          Respectfully submitted,
         August 28, 2020
                                               SELENDY & GAY, PLLC

                                  By:   /s/            *Faith Gay*
                                        _____
                                        Faith Gay
                                        Maria Ginzburg
                                        Yelena Konanova
                                        Margaret Siller
                                        Ronald J. Krock
                                        SELENDY & GAY, PLLC
                                        1290 Avenue of the Americas
                                        New York, NY 10104
                                        Tel: 212-390-9000
                                        E-mail: fgay@selendygay.com
                                        mginzburg@selendygay.com
                                        lkonanova@selendygay.com
                                        msiller@selendygay.com
                                        rkrock@selendygay.com

                                        Mark Richard
                                        PHILLIPS, RICHARD & RIND, P.A.
                                        9360 SW 72 Street, Suite 283
                                        Miami, FL 33173
                                        Tel: 305-412-8322
                                        E-mail: mrichard@phillipsrichard.com
                                        (admitted *pro hac vice*)

                                        *Attorneys for Plaintiffs*