**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>          Defendants. | No. 18-cv-9031-DLC-BLM |

**DECLARATION OF YELENA KONANOVA IN SUPPORT OF**
**(1) PLAINTIFFS' UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF SETTLEMENT;**
**(2) UNOPPOSED APPLICATION FOR AWARD OF REASONABLE ATTORNEYS'**
**FEES AND REIMBURSEMENT OF EXPENSES; AND**
**(3) UNOPPOSED APPLICATION FOR**
**SERVICE AWARDS FOR CLASS REPRESENTATIVES**

YELENA KONANOVA, an attorney duly admitted to practice law before this Court, declares as follows:

1.      I am a member of the law firm of Selendy & Gay, PLLC ("S&G" or "Lead Counsel"), who along with co-counsel, Mark Richard at Phillips, Richard & Rind, P.A. ("PR&R," and collectively with S&G, "Class Counsel"), are counsel for Plaintiffs Kathryn Hyland, Melissa Garcia, Elizabeth Taylor, Jessica Saint-Paul, Rebecca Spitler-Lawson, Michelle Means, Elizabeth Kaplan, Jennifer Guth, Megan Nocerino, and Anthony Church (collectively, "Plaintiffs" or "Class

Representatives") and Class Counsel for the Settlement Class[1] in the class action proceeding captioned above. *See* Dkt. 108 (Preliminary Approval Order). I make this Declaration based on my own personal knowledge, pursuant to 28 U.S.C. § 1746, and in support of three of Plaintiffs' motions filed contemporaneously herewith:

a. Motion for Final Approval of the Proposed Class Action and Certification of the Settlement Class, pursuant to Rules 23(b)(2) and 23(e) of the Federal Rules of Civil Procedure ("Final Approval Motion");

b. Application for the Award of Reasonable Attorneys' Fees and Expenses to Class Counsel, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure ("Application for Fees"); and

c. Application for Service Awards to the Class Representatives, consistent with Rule 23 of the Federal Rules of Civil Procedure ("Application for Service Awards" and, collectively with the Final Approval Motion and Application for Fees, the "Motions").

2. Draft orders for each of the Motions are attached herein as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively.

## **RELEVANT PROCEDURAL HISTORY**

3. Class Counsel personally investigated and identified all the potential claims in this litigation from its inception; handled extensive outreach to and from potential Settlement Class Members as described in ¶ 4, *infra*; researched and verified all the factual and legal bases for proceeding with those claims; and prepared all filings in connection with the same.

4. Prior to the filing of the litigation, Class Counsel spoke to over 200 potential Settlement Class Members individually. Since the filing of the litigation, over 350 potential Settlement Class Members have contacted Class Counsel regarding the pending litigation.

---

[1] All terms not defined herein have the meaning ascribed to them in the Settlement Agreement.

5.      Following this extensive investigation by Class Counsel, nine Plaintiffs commenced this litigation on October 3, 2018, filing a 117-page complaint alleging that, *inter alia*, Defendants Navient Solutions, LLC and Navient Corporation (collectively, "Defendants") misrepresented critical information to borrowers about their eligibility for loan forgiveness under the Public Service Loan Forgiveness Program ("PSLF"), enacted by Congress in 2007 as part of the College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401, 121 Stat. 784, 800 (2007) (codified at 20 U.S.C. § 1087e(m)), in violation of fifteen separate causes of actions—seven on behalf of a national class and eight on behalf of state classes for New York, California, Florida, and Maryland borrowers.  Dkt. 1.  Defendants sought to dismiss that initial complaint on November 30, 2018.  Dkts. 22–23.

6.      Thereafter, on January 16, 2019, eleven Plaintiffs[2] filed a 132-page amended class action complaint adding new allegations against Defendants.  Dkt. 32.  On February 15, 2019, Defendants filed a new motion to dismiss that complaint in its entirety (the "Motion to Dismiss"), alleging twenty distinct theories for dismissal.  Dkts. 39–40.

7.      Following substantial briefing by the parties, this Court granted in part and denied in part the Motion to Dismiss in a July 8, 2019 memorandum opinion and order (the "Decision"), which preserved Plaintiffs' claim for violation of New York General Business Law § 349.  Dkt. 53.

8.      Thereafter, the Court convened a status conference on July 26, 2019 (the "July 26 Conference") to discuss scheduling matters.  *See* Dkt. 57.  At that conference, the Court raised the possibility that the parties begin settlement negotiations.  S&G indicated it would consult with Class Representatives about their desire to do so and informed the Court on August 9, 2019, that

---

[2] One of those Plaintiffs—Eldon R. Gaede—withdrew from the litigation on October 16, 2019, citing certain health issues.  Dkt. 78.  His individual claim against Defendants was voluntarily dismissed without prejudice to the broader Settlement Class.  *Id.*

3

the Class Representatives would be willing to engage in simultaneous mediation and discovery. Dkt. 65.

## DISCOVERY & CLASS CERTIFICATION

9. During the pendency of the Motion to Dismiss briefing and thereafter, Plaintiffs continued their thorough investigation into the facts and law at issue in this litigation, negotiated elaborate confidentiality and e-discovery protocols (Dkts. 38, 42), and began merits and class certification discovery, including through:

   a. 28 discrete requests for discovery and numerous oral meet-and-confer sessions, and scores of e-mails, with counsel for Defendants over the scope and substance of those requests;

   b. Receipt of approximately 72,397 documents or 699,924 pages (including more than 10,000 Excel files) produced by Defendants from 63 of its custodians and central repositories, consisting of, *inter alia*, written guidance to call center employees for responding to borrower inquiries about topics relevant to the litigation, including loan repayment plans, consolidation, PSLF, forbearance, deferment, and default; communications with Plaintiffs, including audio recordings of calls, and letters sent by Defendants to Plaintiffs; records of contact with Plaintiffs via telephone, e-mail, and through Defendants' website; and other documents given to Plaintiffs including loan statements, notices of interest accrual during forbearances, student loan interest statements for tax purposes, deferment and forbearance applications, and income-driven repayment certification forms; and

   c. Preparation of detailed fact memoranda distilling the results of S&G's review of the discovery produced.

10. Simultaneously, Defendants sought extensive discovery from Plaintiffs, serving each of Plaintiffs Gaede, Garcia, Hyland, and Taylor with over 30 discrete requests for production. Responding to these requests required dozens of hours spent by Plaintiffs collecting and reviewing documents, as well as speaking with Class Counsel. Although cut short by settlement negotiations, Plaintiffs ultimately collected and reviewed 6,106 documents as part of that process.

11. In addition, Plaintiffs retained three subject matter experts to assist them in reviewing and synthesizing the substantial volume of information furnished by Defendants, in support of

Plaintiffs' efforts to certify a class of New York borrowers under Rules 23(b)(2) and 23(b)(3), as well as to provide insights on: (i) structural deficiencies in Navient's training policies, procedures, and practices for call center representatives; (ii) profit drivers that motivate those deficiencies; and (iii) the damages to Settlement Class Members that result. Plaintiffs also prepared (but ultimately did not file) a motion for class certification and drafted expert reports in support of the same.

12. To the extent that the parties were not able to resolve their disagreements about the scope of discovery, they sought relief from the Court through motion practice. For example, on May 30, 2019, Plaintiffs filed a letter motion to compel Defendants to produce: (i) 2,388 call recordings reviewed by U.S. Department of Education's Federal Student Aid Office in connection with its 2017 audit of Defendants; and (ii) an interactive, hyperlinked database used by Defendants' call center representatives, which Plaintiffs sought in order to reconstruct how Defendants' call center representatives used the call flow procedures. The Court denied that motion to compel without prejudice to Plaintiffs' ability to renew it following a decision on the Motion to Dismiss. Dkts. 45, 47.

13. And on October 11, 2019, Plaintiffs filed a second letter motion to compel, asking this Court to resolve the parties' impasse regarding production of: (i) deposition transcripts of Navient's employees from the *CFPB v. Navient*, No. 17-cv-00101-RDM (M.D. Pa.), action, which dealt with similar allegations that Navient steered borrowers eligible for income-driven repayment plans into forbearance and misrepresented the suitability of certain repayment options; (ii) additional documents pursuant to narrow custodial searches and terms; and (iii) a sampling of call recordings related to other unnamed New York class members. Dkts. 72, 77. Although the Court reserved judgment on whether to order production of deposition transcripts, or the production of a

sampling of call recordings, expressing concern about whether that would be a "productive" exercise, Oct. 17, 2019 Tr. 34:07–13, it nevertheless instructed the parties to negotiate further.

14.     After significant additional back-and-forth with Navient's counsel, Plaintiffs obtained three Navient employee deposition transcripts.

15.     At the time settlement talks began, the parties were still negotiating the scope of an additional, narrow production of documents responsive to proposed search terms and call recordings for a sampling of New York borrowers.  Given the limited discovery produced and the status of negotiations as of that date, it was extremely likely that the parties would continue a contentious battle over access to additional documents absent settlement.

16.     The Class Representatives alleged substantial individual harm as a result of Navient's misrepresentations and, at the time of settlement, were well on their way to supporting those claims through discovery produced by Navient, which included recordings of some of the calls they had with Navient representatives.

**SETTLEMENT NEGOTIATIONS**

17.     The parties began settlement negotiations shortly after the July 26 Conference.  To help bridge the gap between the parties' initial positions, the parties agreed to mediation before Magistrate Judge Barbara Moses, pursuant to which the parties filed written statements explaining their positions and participated in a November 5, 2019 mediation conference attended by all ten Plaintiffs.  Although the parties were initially unable to reach agreement on the contours of a proposed settlement, they continued discussions, including through multiple telephonic hearings before Judge Moses, and engaged in substantial further negotiations over a variety of matters including the scope of the release and the amount of a potential *cy pres* contribution.

18.     On January 17, 2020, after months of contentious, arm's-length settlement discussions and negotiations, the parties entered a memorandum of understanding ("MOU")

memorializing the material terms of a settlement that would resolve the litigation in its entirety and informed the Court thereafter.  *See* Dkt. 92.

19.    Thereafter, the parties executed a Settlement Agreement and Release (the "Settlement Agreement"), dated April 24, 2020, a true and correct copy of which is attached herein as **Exhibit 4**.

20.    Plaintiffs briefed an unopposed motion for preliminary approval of the Settlement Agreement, which this Court granted on June 19, 2020 following a telephonic conference. Dkt. 108.  Among other things, the Court:

    a.    Determined that "[t]he Settlement Agreement, including the releases contained therein," is "fair, reasonable, and adequate under Federal Rules of Civil Procedure 23(b)(2) and 23(e)," subject to "final Court approval following the Final Approval Hearing."  *Id.* ¶ 1.

    b.    Conditionally certified the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(e) (subject to final Court approval following the Final Approval Hearing).  *Id.* ¶ 4.

    c.    Appointed the named Plaintiffs as Class Representatives of the Settlement Class, and appointed S&G and PR&R as Class Counsel.  *Id.* ¶¶ 4–6.

    d.    Instructed the Settlement Administrator to notify the Settlement Class of the proposed Settlement Agreement and fees request.  *Id.* ¶¶ 11–14.

    e.    Approved notice to the Settlement Class to the effect that "Class counsel will ask the Court to approve attorneys' fees and expenses of up to $500,000 for the time and effort they have spent on this case.  Class counsel will also request that $15,000 be paid to each of the class representatives, who helped the lawyers on behalf of the whole Class.  Defendants will pay the approved amount of attorneys' fees and expenses, and no class member will owe or pay anything for the attorneys' fees and expenses of class counsel."  *Id.* at 17 (Long-Form Notice at ¶ 13).

21.     The Settlement Agreement incorporated several additional exhibits for the Court's review at the preliminary approval stage.  In lieu of those original exhibits, the following exhibits are attached for the Court's review:

a.     **Exhibit 5**, which is a placeholder copy of the Short-Form Notice to Settlement Class Members of the Settlement Agreement and their right to object, which was approved by this Court (Dkt. 108), and sent to Settlement Class Members following preliminary approval of the Settlement Agreement, and which is attached as Exhibit A-1 to the Declaration of Jessica Jenkins re: Notice by E-mail, Mail, and Publication filed contemporaneously herewith;

b.     **Exhibit 6**, which is a placeholder copy of the Long-Form Notice to Settlement Class Members of the Settlement Agreement and their right to object, which was approved by this Court (Dkt. 108), and sent to Settlement Class Members following preliminary approval of the Settlement Agreement, and which is attached as Exhibit A-2 to the Declaration of Jessica Jenkins re: Notice by E-mail, Mail, and Publication filed contemporaneously herewith;

c.     **Exhibit 7**, which is a true and correct copy of the proposed certification of compliance that Defendants will complete on an annual basis; and

d.     **Exhibit 8**, which is a true and correct copy of the Term Sheet for Cy Pres Recipient and PSLF Project Proposal.

22.     The substance of the Settlement Agreement reflects the parties' careful consideration of the benefits of settlement and the risks of proceeding to trial.  It provides meaningful business practice enhancements by ensuring, at bottom, that Navient will ask questions to identify borrowers who might benefit from PSLF and distribute comprehensive and accurate information about qualifying for PSLF, and also includes a *cy pres* contribution to fund counseling and education of student loan borrowers in public service—directly addressing the alleged harm suffered by the Settlement Class.  The settlement will allow the parties to avoid complex, time-consuming, and costly further proceedings, mitigating the risks identified by this Court facing Plaintiffs in maintaining a class action through trial.

## **TIME SPENT ON THE LITIGATION**

23.    Altogether, Class Counsel have committed thousands of hours from dozens of attorneys during the course of the litigation.

24.    As of August 21, 2020, S&G has alone expended a total of 11,683.7 hours over 26 months, comprised of 10,668 hours of attorney time and 1,015.7 hours of paralegal and administrative time, prosecuting and settling this litigation.

25.    The S&G team addressed the full range of complex legal issues presented by the litigation, including substantial pre-complaint investigation and post-complaint fact discovery, making every effort to avoid duplication of work by assigning partners, associates, and staff attorneys to distinct workstreams, allowing them to become subject matter experts that contribute longer-term value to the case.

26.    S&G's lodestar is equal to $5,915,865.60 under the firm's hourly rates for this matter, as reflected in **Exhibit 9** attached hereto.  That figure reflects a 20% discount to regular rates and *excludes* the considerable costs incurred by S&G associated with retention of experts, access to legal research databases, use of printing services, and travel.

27.    Detailed, contemporaneous time entries supporting S&G's lodestar figure are attached hereto as **Exhibit 10**.  Those entries have been revised for clarity and to omit material that is subject to attorney-client privilege or attorney work product.

28.    Despite the significant work done in this case, the proposed fees request represents only a small fraction of the total lodestar—a discount of 91.55% or "negative multiplier" of nearly 11.83.

## MAGNITUDE AND COMPLEXITIES OF THE LITIGATION

29.    This litigation required a detailed examination of complex factual and legal issues. Among these, Plaintiffs faced particular challenges in: (1) obtaining the requisite discovery to support their case; and (2) establishing misrepresentations and damages on a class-wide basis.

30.    *First*, discovery in this matter was complicated and contested. Plaintiffs engaged in an extensive back-and-forth with opposing counsel over the scope and substance of discovery and had to pursue relief from the Court on multiple disputes. *See* ¶¶ 9, 12–13, *supra*. Negotiations over discovery continued up until the moment the parties reached agreement on the principal terms of a settlement. *Id.* ¶ 15. Although those negotiations yielded some limited, additional materials from Navient, further contentious discovery fights were virtually guaranteed absent settlement. *Id.* ¶¶ 14–15.

31.    *Second*, Plaintiffs understood that, even with fulsome discovery, certifying a damages class would be extraordinarily difficult given the highly individualized nature of a customer's interactions with call center representatives. Those efforts were further complicated by the fact that a significant number of call recordings that contained alleged misrepresentations from the 2011 period and earlier were simply unavailable, because—as Navient explained during the July 26 Conference—it had not preserved them. *See* Dkt. 63, Hearing Tr. 22:23–23:07. The Court recognized these complications and, from an early stage in the litigation, expressed skepticism about Plaintiffs' chances of certifying a class. *See* ¶¶ 35–39, *infra*. In recognition of these challenges, Plaintiffs retained three separate testifying experts, and various consulting experts, ¶ 11, *supra*, at great expense to help demonstrate the uniformity of misrepresentations to the Settlement Class.

## LITIGATION RISKS

32.    Plaintiffs faced significant risks in prosecuting this litigation.

33.     At the motion to dismiss stage, Plaintiffs faced two principal risks.  *First*, the Court could have found that Plaintiffs' state law claims against Navient, a federal student loan servicer, were preempted by the federal Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.*  Even now, the Second Circuit has yet to resolve that question.  At the time Plaintiffs brought their claims, at least one federal appellate court, and a number of out-of-circuit district courts across the country dismissed such claims on the basis of preemption.  *See, e.g.*, *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010); *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017), *vacated and remanded*, 928 F.3d 639 (7th Cir. 2019); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 2018 WL 5621872 (N.D. Fla. Sept. 20, 2018), *vacated and remanded*, 955 F.3d 908 (11th Cir. 2020).  Supporting authorities were comparatively lacking at that time, with one of the earliest supporting authorities coming down nearly two months *after* Plaintiffs had already filed their initial complaint.  *See, e.g.*, *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529 (M.D. Pa. 2018).

34.     *Second*, the Court could have concluded that Plaintiffs failed to state a claim and, in fact, this Court permitted only Plaintiffs' New York General Business Law § 349 claim to go forward.  As in most consumer class actions, Plaintiffs here were at a severe informational disadvantage, needing to recall details from conversations that, in many instances, occurred nearly a decade before.  Unlike a corporation with mandatory document retention policies, many Class Representatives had little such documentation.

35.     *Third*, at the class certification stage, Plaintiffs would have faced additional risks.  Consumer class actions based on misrepresentations made in telephone calls are difficult to prove.  Plaintiffs were well aware of those challenges and retained a series of experts to help support their case on the uniformity of misrepresentations and harm suffered by the Settlement Class.  Despite

the significant time and effort Plaintiffs invested into preparing for class certification, from a very early stage, the Court expressed skepticism that a class could be certified.

36.    At the July 26 Conference following the Motion to Dismiss decision, the Court stated:

> I just can't imagine there would be any uniformed oral representation. Because anyone who picks up a phone to call Navient has a question and a question comes out of their individual circumstances and needs. Many of the people who call couldn't be a part of our class. They are not public servants. Then we get down to those who are public servants with their own financial circumstances, their own employment circumstances. So there could be a new uniform script. There is going to have to be such an individualized inquiry and of course the question they have about, gee, what can I do about repaying my loans given who I am working for and my financial needs at the moment will depend also on who is on the other line and how knowledgeable they are and how well they understand the question and how quickly they get to the right material, etc., etc. Assuming good faith and all that on the part of individual human beings, and knowing that the plaintiffs' theory is that there is this incentive to have short calls and fast calls and push people into a program that leaves Navient as the servicer, etc., etc., assuming all of that to be true, it still comes down to a very individual conversation.
>
> So here we are heading into months and months of expensive litigation when it's hard to predict that there is going to be a class certified.

Tr. 18:08–19:06.

37.    Following that conference, the Court requested that the parties on each side submit their best three cases on certification. Both parties did so. In particular, Plaintiffs furnished cases in which classes were certified on the basis of similarly alleged oral misrepresentations made in "fraudulent scheme[s]" effectuated through common "training" and other "pre-approved materials." Dkt. 59 (quoting *e.g.*, *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 292, 303, 311, 319 (3d Cir. 1998)).

38.    Thereafter, the Court continued to express concerns about class certification.  At the October 17, 2019 conference on Plaintiffs' motion to compel, the Court declined to extend the deadline for Plaintiffs' motion for class certification, noting that "I do think there is an underlying problem here with respect to the plaintiffs' theory, which I've been frank about in my prior conferences…."  Tr. 33:18–23.

39.    At the June 10, 2020 conference for preliminary approval, the Court noted that under the settlement, "the class members aren't giving up really a viable claim for relief, that is, a class action claim for damages."  Tr. 11:09–11.

### <u>QUALIFICATIONS AND EXPERIENCE OF COUNSEL</u>

40.    S&G's partners bring many decades of combined legal experience to bear on this litigation.  They have specialized expertise in class actions, public interest litigation, and complex litigation generally.

41.    S&G's partners have represented plaintiffs and defendants at every phase of the national class action process, in matters including antitrust, consumer disputes, insurance, intellectual property, privacy and data breaches, Racketeer Influenced and Corrupt Organizations Act, and securities fraud.  S&G's partners' representative engagements include:

    a.    American Federation of Teachers, a union of public service professionals, and other investors against most major money center banks (including Goldman Sachs, Merrill Lynch, Barclays, Citigroup, and others) in litigation arising from their dealings in the $13 trillion U.S. Treasuries market and alleging violations of the Sherman Act based on collusion.

    b.    The Coca-Cola Company, in defending multiple class action lawsuits, including in multi-district litigation, concerning alleged misleading advertising of its vitaminwater beverages, obtaining a favorable negotiated resolution with no damages.

    c.    AOL, a web and online service provider, defending two separate putative class action lawsuits seeking statutory damages in excess of $650 million under the Electronic Communications Privacy Act relating to a data breach that was referred to at the time as the "Exxon Valdez" of data breaches.

d.   Lincoln National Life Insurance Company, obtaining dismissal of two putative class action lawsuits claiming damages in the hundreds of millions of dollars arising from the company's use of retained asset accounts to pay death benefits.

e.   Cryptocurrency investors in eight separate, putative class action lawsuits against the promoters of various "initial coin offerings" for violation of state and federal securities laws including, *inter alia*, for the sale of unregistered securities under Sections 5(a) and 12(a)(1) of the Securities Act of 1933.

42.   S&G's partners have significant additional experience in public interest matters, including:

a.   Successfully defending New York City charter schools against suits challenging their ability to co-locate in N.Y. Department of Education school buildings and demanding they pay rent to N.Y. Department of Education, obtaining denials of preliminary injunctions in both instances.

b.   Successfully defending a consent decree governing the delivery of medical services to Medicaid-eligible children in Tennessee in the Sixth Circuit.

c.   Representing a foundation that benefits elementary schools in uncovering a Ponzi scheme run as a hedge fund, resulting in the arrest of the principal, as well as jail time and seizure of assets.

d.   Helping residential solar customers get just and reasonable payments for power they export to the grid by representing a non-profit advocating for solar customers in the renewable energy market.

e.   Representing a class of psychiatric inpatients and emergency room patients at a large metropolitan New York City hospital in constitutional litigation challenging inhumane conditions of care, and obtaining, along with the Department of Justice, a groundbreaking consent judgment entered by the Eastern District of New York.

f.   Authoring an amicus brief on behalf of constitutional scholar and former Harvard Law School Dean, Martha Minow, on the history of *Brown v. Board of Education*, whose analysis the Sixth Circuit closely tracked in recognizing the fundamental right to a minimally adequate education under the Due Process Clause of the U.S. Constitution.

g.   Partnering with Campaign Legal Center to represent a coalition of groups, including the League of Women Voters of the United States and the League of Women Voters of New York, in a lawsuit urging a federal court to change New York State's flawed absentee ballot verification requirements in time for the 2020 general election.

14

h.    Representing multiple tenants' organizations who are fighting to preserve New York City's rent stabilization laws, which a group of landlords and property owners claimed are unconstitutional and should be struck down.

43.    Likewise, Defendants' counsel, Covington & Burling LLP, is widely recognized as one of the preeminent defense firms in the country.  Its partners representing Navient bring a collected 35 years' worth of experience to this litigation and have been recognized as having "extensive experience defending class actions" like this one.  Andrew A. Ruffino Biography, Covington & Burling LLP, https://www.cov.com/en/professionals/r/andrew-ruffino; *see also* Ashley M. Simonsen Biography, Covington & Burling LLP, https://www.cov.com/en/professionals/s/ashley-simonsen ("practice focuses on defending complex class actions in state and federal court").

The undersigned declares under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
          August 28, 2020

/s/            *Yelena Konanova*
                Yelena Konanova