**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated, | No. 18-cv-9031-DLC |
| Plaintiffs, | |
| v. | |
| NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC, | |
| Defendants. | |

**DECLARATION OF MELISSA GARCIA**
**IN SUPPORT OF APPLICATION FOR SERVICE AWARDS**

**MELISSA GARCIA**, being duly sworn, declares as follows:

1.  I am one of the Class Representatives appointed in the Court's Preliminary Approval Order, Dkt. 108, as representatives of the Settlement Class in the above-captioned action.

2.  I submit this affidavit in support of Plaintiffs' motion for final approval of the settlement and a $15,000 service award to each Class Representative. The facts giving rise to my participation as Class Representative and my role in securing the settlement discussed herein support the requested service award.

**Background**

3.  I am a resident of New Jersey and a former resident of New York. I currently work as a Special Education teacher in New York.

4. I took out a total of $81,027 in student loans under the FFEL and Direct Loan programs to pay for my undergraduate and master's degrees. At the time this action was filed, I had a balance of $101,953 on my student loans.

5. I took out student loans under the Direct Loan program to pay for my master's degree beginning in 2010. That same year, Sallie Mae, now Navient, became the servicer for my undergraduate loans. In 2013, after being told by Navient that it would save me money, I consolidated my undergraduate and graduate loans. Even though Navient was aware that I wanted to pursue Public Service Loan Forgiveness ("PSLF"), Navient did not inform me that consolidating my loans would prevent the payments I had made on my Direct loans up until that point from qualifying for PSLF.

6. In 2014, I informed Navient that I had filled out the Employment Certification Form ("ECF") for PSLF. Navient instructed me not to submit that form until I had made the 120 qualifying payments for PSLF. I later learned that borrowers should submit this form annually to ensure their payments are being counted properly. Had I done so, I would have been aware that my prior payments (before consolidation) were no longer qualifying.

7. In 2016, I called Navient to inform them that I would have difficulty making the new monthly payments that had been calculated for my income-driven repayment plan. Navient advised me to enroll in a graduated repayment plan. Despite the fact that I had stated multiple times that I intended to pursue PSLF, Navient actively encouraged me to enter into the graduated repayment plan even though it was not a qualifying repayment plan for PSLF. Believing that I would still be making qualifying payments for PSLF, I switched to the graduated repayment plan based on their advice.

8. In early 2017, I called Navient several times, expressly indicating that I wanted to make sure my payments were on time for the purposes of PSLF. Despite the fact that my payments were not qualifying, Navient assured me that I was making qualifying payments for PSLF. Based on Navient's assurances, I continued making payments on the graduated repayment plan believing that I was making progress toward PSLF each month.

9. When I spoke with class counsel for the first time in 2018, I learned that Navient's assurances had been incorrect and that none of the payments I made on the graduated repayment plan had counted. I also learned that by consolidating my loans, I had lost years of payments I had made on my Direct loans that would have qualified for PSLF. I was devastated to find out that I had made so little progress towards loan forgiveness after trusting Navient to provide me with accurate information. After speaking with class counsel, I spoke with many other teachers, and nearly everyone I talked to had a story similar to my own.

### Role as Class Representative

10. I volunteered to join this action as a class representative because I knew I was just one of the thousands of public servants who had similar experiences trying to get information from Navient about how to qualify for PSLF. I wanted to make sure that as a class representative, I was able to speak up for others who had not been given correct information by Navient and were continuing to make payments, unaware that they were not making progress towards PSLF.

11. In joining this action, I wanted to help hold Navient accountable for the incorrect information it had given borrowers like me in the past that had cost us so dearly and to do whatever I could to ensure that no one else in my position would suffer the same fate in the future. The PSLF process seems to me like a cross stitch pattern, where every single step has to be completed

perfectly.  Just a few incorrect pieces of information are enough to throw a borrower completely off course and cost them precious time and money.  As a servicer, Navient should be responsible for helping borrowers put the entire picture together and pay off their loans successfully.

12. I agreed to the classwide settlement because it will help others seeking PSLF to access timely, accurate information from Navient and create an organization funded by Navient that serves as an additional resource for PSLF information.  I am hopeful that when other public servants who might be eligible for PSLF contact Navient about their loans, they are given advice tailored to their situation and are able to talk to someone who is fully informed about the process.

### Efforts

13. From the beginning of this action two years ago, I have spent a great deal of time and effort in my role as a class representative.  While participating in this action has been demanding, it was incredibly important to me that I do so fully to ensure we achieved the best result possible for the class.  In total, I conservatively estimate that I have dedicated approximately 62 hours to this case.

14. In August 2018, I spoke with class counsel for the first time about my experiences with Navient and the potential class action.  Following that call, I corresponded extensively with class counsel via email and had several follow-up conversations to provide additional information and background documents about my loan history.  I discussed the records I had kept on my loans with class counsel and spent time going through my emails, online loan history, and hard copy documents to locate information for the complaint.  I carefully reviewed and edited drafts of the complaint and amended complaint and discussed them with class counsel prior to filing.  I

4

also carefully reviewed Navient's motions to dismiss. In total, I spent approximately 23 hours on the complaint, the amended complaint, and Navient's motions to dismiss.

15. During the discovery process, I worked with class counsel to gather documents and information needed to respond to Navient's interrogatories and requests for production, including facilitating access to my email and other electronic records and drafting the responses. In total, the discovery process took approximately 10 hours.

16. In August and September 2019, during the individual settlement negotiations, I spent approximately 3 hours reviewing documents related to the settlement and discussing acceptable settlement terms with class counsel.

17. On November 5, 2019, I attended the mediation in New York before Magistrate Judge Barbara Moses. I spent approximately 13 hours planning to attend and attending the mediation, including discussions with counsel, making plans for my students and for childcare, and traveling to and from the mediation.

18. After the mediation, I had extensive conversations with class counsel about a potential class-wide settlement and what I would consider to be acceptable settlement terms. I reviewed drafts of settlement terms, the Memorandum of Understanding, and the final Settlement Agreement, and discussed them with class counsel. In total, I spent approximately 7 hours on the Memorandum of Understanding and the final Settlement Agreement.

19. Prior to the June 10, 2020 Preliminary Approval Hearing, I reviewed materials about the hearing sent by class counsel. I discussed the hearing in a teleconference with class counsel and the other Class Representatives the following day. In total, I spent approximately 2 hours reviewing materials from counsel regarding the Preliminary Approval Hearing and discussing it with class counsel and the other Class Representatives.

20. Since the preliminary approval hearing, I have spent approximately 4 hours on the settlement of this action, including reviewing a summary of the settlement approval and discussing and editing this filing.

**<u>Risks & Burdens</u>**

21. Serving as a Class Representative has allowed me to stand up for others like me, but it has been challenging for me personally.

22. The hours I had to devote to this case were extensive and interfered with other parts of my life. I knew that the timelines for reviewing documents, gathering information, and responding to questions were tight because of court deadlines, so it was stressful to make sure that I always completed everything I needed to do. I have a young child who was an infant at the start of this case, and it was frequently difficult to balance the demands of being a class representative with caring for him.

23. Attending the mediation also required me to use one of my paid days off. This was particularly difficult for me as I had used up all of my sick days as part of my maternity leave, so I was being very careful with rationing them out. I also had to prepare plans for students and arrange for someone else to pick up my son that day. I also spent approximately $40 on tolls and parking to drive to the mediation.

24. One of the hardest parts of participating in this action has been the stress and anxiety of putting my name and my story out in the public eye. I firmly believed that it was worth the cost to me for others to see how common my story is and to obtain relief for the class, but I was fearful of the personal consequences. I knew that from this point forward, anyone who looked for my name on the internet would be able to find information regarding my involvement in this action, including filings from Navient about why our claims did not have merit. I was also fearful

of being perceived as litigious and of others thinking that I was participating in this action for the "wrong" reasons, such as finding an easy way out of paying back my loans.

25. There are many things in the complaint that I had never shared with anyone outside of my family, and never would have shared if I had not participated in this action. Initially, I was embarrassed and fearful of including my story in the complaint; it felt like I was admitting that I was "duped" or had made a mistake in trusting Navient. It was also embarrassing because I knew that people everywhere would see that I had a significant amount of student debt and that it had caused financial hardship for me and my family. I was afraid that people would make judgments about my choices or assume things about me that were not true. This was particularly concerning given that I was working with my union. While I am a proud union member and proud to have the support of AFT in this action, many people make negative assumptions about union activity, so I knew this was a risk.

26. As a result of my participation in this action, I received some negative feedback from people I encountered in my daily life. From the beginning, many people assumed that I was only doing this to get my loans paid off, which was never the case – I was doing this as a class representative, not to get a particular benefit for myself. Others wanted to know why they were not included as class representatives when they, too, had problems with their loans. Being a class representative put me in a position where I had to explain that I was not receiving some special benefit or preferential treatment; I was taking risks and working hard on behalf of an entire class.

27. Even though I did not participate in any of the press surrounding this action, I know that my name is included in some of the articles.[1]  It has been stressful just knowing that someone, particularly a colleague or parent of a student, could recognize my name and make judgments about me based on my participation.

**Settlement**

28. The Settlement Agreement in this action is designed to ensure that Navient provides accurate, timely information to borrowers like me who may be eligible for PSLF.  The criteria for PSLF are complex and borrowers need guidance to navigate them.  The additional education for Navient representatives, along with the organization that Navient will be funding, will help borrowers ensure that they are truly "on track" and receiving trustworthy information about their loan repayment and forgiveness options.

29. Before participating in this action, I never would have pursued litigation against Navient because I lacked the means to do so.  I understand that by agreeing to this settlement, I am waiving my right to sue Navient for damages. It is frustrating knowing I won't get justice personally, but in the end I am hopeful that the settlement will help more people than myself and the other Class Representatives.  I am happy to give up my right to sue Navient if it benefits someone else, especially fellow teachers and public servants.

30. I joined this action as a named plaintiff because of the complete shock I felt when I learned that my payments had not counted for PSLF.  I did not want anyone else to feel that way ever

---

[1] Alexander Hermedinger, "New Lawsuit Accuses Navient of Obstructing Student Loan Forgiveness Cases," (Oct. 4, 2018), *available at* https://financialhelpers.com/new-lawsuit-accuses-navient-of-obstructing-student-loan-forgiveness-cases/; Jillian Berman, "In new lawsuit, borrowers accuse Navient of standing in the way of student-debt forgiveness," (Oct. 6, 2018), *available at* https://www.marketwatch.com/story/in-lawsuit-borrowers-accuse-navient-of-standing-in-the-way-of-student-debt-forgiveness-2018-10-03.

again.  As public servants, we work so hard every day for others, and the PSLF law was meant to help us—not cause additional hardship.  I am hopeful that the Settlement Agreement in this action will result in a smoother and more borrower-friendly process for other public servants to benefit from PSLF.

31. My fellow Class Representatives and I have spent huge amounts of time and energy on this action, and have put ourselves out in the public eye, because we wanted to make a difference for people just like us.  I believe that our efforts and sacrifices that led to this result justify the individual service awards called for by the Settlement Agreement.

Dated:    August 28, 2020

_____

Melissa Garcia