**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated, | No. 18-cv-9031-DLC |
| Plaintiffs, | |
| v. | |
| NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC, | |
| Defendants. | |

**DECLARATION OF KATHRYN HYLAND**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SERVICE AWARDS**

**KATHRYN HYLAND**, being duly sworn, declares as follows:

1. I am one of the Class Representatives appointed in the Court's Preliminary Approval Order, Dkt. 108, as representatives of the Settlement Class in the above-captioned action.

2. I submit this declaration in support of Plaintiffs' motions for final approval of the settlement and a $15,000 service award to each Class Representative. The facts giving rise to my participation as Class Representative and my role in securing the settlement discussed herein support the requested service award.

**Background**

3. I am a resident of New York and currently work as an 8th grade English Language Arts teacher.

4. I have been a teacher since 2007. Teaching means everything to me. I decided to teach in public school because I wanted to make sure that all students have the same opportunities to

be successful in life. It has always been my belief that education is the one thing that can level the playing field for our young people. I want my students to feel empowered and to feel that they have the tools they need to succeed in the real world, no matter what obstacles they have to overcome. Education is something that cannot be taken away, and the most important thing that I can do as a teacher is show my students what they are capable of. I became a teacher to inspire young people to see the power of words, knowledge, and information.

5. My brother, sister, and I were raised by a single mother who went back to school at 35 and earned her nursing degree. We had a difficult childhood before that and I have faced many challenges in life. I have taken everything I have learned through my life experiences into my classroom and I do my best to make sure that my students' social, emotional, and academic needs are met on a daily basis. My passion in life is making sure that children feel safe, valued, challenged, and capable. I live for the moments of revelation and personal growth, and I feel privileged to have taught over 1,000 individuals in my 13 years of teaching. I am now seeing my former students become teachers, lawyers, community activists, authors, and parents. I have probably learned more from my students than they have from me over the years.

6. I took out student loans totaling $62,547 under the Federal Family Education Loan ("FFEL") program to pay for my undergraduate and master's degrees. I graduated with a master's degree in 2009 and entered repayment on my student loans on a graduated repayment plan with Sallie Mae, now Navient, as my servicer. At the time this action was filed, I had $45,655 in student loans.

7. Every year for three years, beginning in 2014, I made a note in my planner to call Navient to ask about Public Service Loan Forgiveness ("PSLF") and made notes in my planner about the

calls afterwards.  I noted that Navient representatives told me I was "on track" for PSLF and that only "small little things" would disqualify me.

8.  During this time, I asked Navient where I should send Employment Certification Forms ("ECF") to show my PSLF eligibility.  A Navient representative told me to send the forms to Navient.  I faxed completed ECFs to Navient between 2014 and 2015.  I later learned that borrowers should submit the ECF to FedLoan Servicing and that Navient does not process the form.  I also learned that borrowers are encouraged to send an ECF to FedLoan Servicing as early as possible so that FedLoan Servicing can inform them whether their loans qualify and how many qualifying payments they have made.  Instead, in 2015, after I submitted a completed ECF, a Navient representative told me that I was on track for PSLF and did not need to submit an ECF until I had made all 120 payments.

9.  However, because I had FFEL loans, I was not on track for PSLF and none of my payments counted.  In order to qualify for PSLF, I actually needed to consolidate my FFEL loans into a Direct Loan, change my payment plan, and then make ten more years of payments.

10. When I learned for the first time in 2016 that none of my payments had counted and I would not be eligible for PSLF for at least another ten years, I was heartbroken.  I had made major life decisions, and postponed others, with the understanding that I would be eligible for loan relief in 2017 if I kept doing what I was doing.  I had stayed in the same job and postponed my professional goals, such as further postgraduate education, until 2017.  I had looked forward to 2017 as the year when I could finally start saving up to buy a home and paying for additional therapy services and academic enrichment for my children.  Within the space of one phone call, those long-held dreams were shattered.

11. After learning that none of my loan payments had counted towards PSLF, I requested recordings of my phone calls with Navient representatives.  Navient denied my request and told me that the recordings could only be released through a subpoena.

12. I filed complaints with the Consumer Financial Protection Bureau ("CFPB") and the Department of Education's Office of Federal Student Aid regarding the incorrect information that Navient provided to me.  The CFPB closed my complaint stating that Navient had responded with an explanation.  The Office of Federal Student Aid closed my complaint and sent me a letter from Navient saying that Navient had not found any calls where I was given incorrect information.

13. I felt incredibly powerless in the face of these denials.  I had lost years of payments that I was told, on repeated occasions, would count towards loan forgiveness, and I had no recourse.

## Role as Class Representative

14. I decided to be a class representative in this action because I was always taught to do what is right, and I strive to be an example for my own children and for my students.  Despite the hardships I knew would be involved, I felt deeply that I had to use my experiences to fight for others and to show my fellow teachers that someone was willing to stand up for them.

15. I joined this action to seek relief for myself and others like me and to ensure that what I experienced would not happen to others in the future.

## Efforts

16. When I joined this action two years ago, I realized early on that it was an all-or-nothing effort. At times, this required me to make significant sacrifices, but I knew that in order for us to succeed, I needed to spend as many hours as was required of me.  In total, I conservatively estimate that I have dedicated approximately 170 hours to this case.

17. I first became involved in this action in September 2018. I spoke to class counsel at length about the history of my interactions with Navient, and worked with class counsel to ensure that my story was reflected completely in the complaint. I also kept detailed, meticulous records of my student loans and my conversations with Sallie Mae and Navient. I spent a great deal of time reviewing those records, identifying the records that would be relevant for this action, and sending them to counsel. I also spent several hours seeking records of my conversations with Navient from my phone company. I reviewed the draft complaint carefully and discussed it with counsel before signing off on the filing. When it came time to file the amended complaint, I reviewed drafts and discussed them with counsel. In total, I estimate that I spent approximately 40 hours on the complaint and the amended complaint.

18. When Navient filed its motions to dismiss, I spoke extensively with class counsel about what those motions would mean for the case. I also reviewed the draft memorandum opposing the motion to dismiss and discussed it with counsel. In total, I estimate that I spent approximately 15 hours on opposing Navient's motions to dismiss.

19. During the discovery process, I was required to respond to Navient's interrogatories and requests for production. Locating the information requested, discussing it with counsel, and drafting and revising my interrogatory responses required a total of approximately 10-20 hours.

20. In April 2019, I appeared on a podcast called Against the Rules with Michael Lewis to discuss my experiences with Navient and my struggles to get PSLF. After hearing my story, the podcast's listeners asked the show's host to set up a fundraiser to pay off my student loans. On June 11, 2019, the host created a GoFundMe campaign with a goal of $45,900, which was the amount of my outstanding student loans plus fundraising fees. On August 4, 2019, the campaign reached its goal and I was able to pay off the balance of my student loans. I continued

serving as a class representative despite the ongoing demands on my time and energy because I wanted to fight for others who were not as fortunate. My loans should have been forgiven by PSLF, not because I happened to tell my story on a podcast with particularly caring listeners. I also wanted to continue to seek relief for the increased loan payments I had made based on incorrect information from Navient representatives. I am grateful every day to the generous strangers who changed my life forever, but their kindness does not make up for the years of stress and financial sacrifice my family and I experienced.

21. In August and September 2019, during the individual settlement negotiations, I reviewed documents related to the initial settlement demands and discussed what I considered to be acceptable settlement terms with counsel. In total, I spent approximately 10 hours on those tasks.

22. On November 5, 2019, I attended the mediation in New York before Magistrate Judge Barbara Moses. In order to attend the mediation, I spent time preparing for my children to stay with my mother, requesting time off from work, preparing substitute teacher materials and lessons, discussing the mediation with counsel, and traveling to and attending the mediation. In total, I spent approximately 20 hours preparing for and attending the mediation. In addition, in order to miss a day of work for the mediation, I had to use one of my limited personal days. I am only allotted two or three personal days each year and must work one month to earn each one. The personal day I used for the mediation is valued at approximately $240. I also spent $25 on meals, $50 on gas, and $40 on parking.

23. During the negotiation of the classwide settlement, I had extensive discussions with class counsel regarding acceptable settlement terms and the concerns I had related to any potential settlement. I also carefully reviewed draft and final versions of the Memorandum of

Understanding, the motion for preliminary approval, and the Settlement Agreement. In total, I spent approximately 40 hours on the negotiation of the classwide settlement and the related filings.

24. On June 10, 2020, I listened to the Preliminary Approval Hearing via telephone. I discussed the hearing in a teleconference with class counsel and the other Class Representatives the following day. In total, I spent approximately 5 hours listening to the Preliminary Approval Hearing and discussing it with class counsel and the other Class Representatives.

25. Since the preliminary approval hearing, I have spent approximately 20 hours on the settlement of this action, including reviewing a summary of the settlement approval and reviewing, discussing, and editing this filing.

### Risks & Burdens

26. As a named plaintiff, I knew that my name would always be attached to this action. I felt a tremendous responsibility to be a voice for my fellow teachers and public servants and have poured time and energy into this action. While it has been an honor to serve in this role, it has come at a significant personal cost.

27. From the beginning, participating in this action has meant taking time away from my family. I have two young children, and there were many hours I would have spent with them that I instead spent speaking with counsel, reading emails, searching through my records, reviewing court filings, and participating in the mediation and the settlement hearing. I will never be able to make up for missing special events and everyday moments like homework and playtime.

28. This action also took an enormous emotional toll on my family. One of my children has special needs. The stress and anxiety in our home negatively impacted him and made it very difficult to find the proper care and resources for him during a period of crisis in his life.

29. Participating in this action has also affected me professionally. Before this action, I was planning to pursue a degree in special education or school leadership. However, I decided to postpone that goal in order to avoid my time being stretched too thin. I was concerned throughout this action that I would be passed over for professional opportunities or advancement because I was viewed as having too much on my plate. I have also worried, and likely always will, that my participation in this action could negatively impact my professional reputation or cause people to make assumptions about me. I am concerned that people might look at me as being more concerned with "fighting the good fight" than with educating my students.

30. This action has been very difficult for me personally and emotionally. I have struggled with anxiety and depression for many years, and these issues have been greatly exacerbated by the stress and worries I have experienced. I am normally a very private person, so having my name out in public along with information about my life has been incredibly difficult. What kept me going was the confidence that I was doing the right thing and that I could help make a difference for others like me.

31. I participated in several press interviews as well.[1] I felt strongly that it was important to bring attention to the action and the stories of others like me, but press appearances required time

---

[1] *E.g.*, Annie Nova, "Teachers union members bring lawsuit against Navient," CNBC (Oct. 3, 2018), *available at* https://www.cnbc.com/2018/10/03/members-of-the-american-federation-of-teachers.html; Jillian Berman, "In new lawsuit, borrowers accuse Navient of standing in the way of student-debt forgiveness," MarketWatch (Oct. 6, 2018), *available at* https://www.marketwatch.com/story/in-lawsuit-borrowers-accuse-navient-of-standing-in-the-way-of-student-debt-forgiveness-2018-10-03; Michael Gartland "Student-loan giant steered borrowers to higher-cost payments, government report says," N.Y. Daily News (Nov. 20, 2018), *available at* https://www.nydailynews.com/news/ny-metro-loans-112018-story.html; Anne Helen Petersen, "Here's Why So Many Americans Feel Cheated By Their Student Loans," BuzzFeed News (Feb. 9, 2019), *available at* https://www.buzzfeednews.com/article/annehelenpetersen/student-debt-college-public-service-loanforgiveness?utm_source=Sailthru&utm_medium=email&utm_campaign=BuzzFeed%20News%20-%20February%2011%2C%202019&utm_term=News%20confirmed%20list.

and energy, both of which were in short supply for me. I spent a significant amount of time preparing for interviews before they took place. Recording a podcast episode, in particular, was incredibly time-consuming as it involved extensive preparation and visits from producers for recording. The time I spent on creating public awareness, which is not included in the time I detailed above, was also time I could not spend with my family.

32. Because of my participation in the press about this case, I also received a handful of nasty, derogatory comments from strangers on the Internet. It was frustrating and hurtful, and it made me question why I had gotten involved in the action in the first place. It also made me incredibly anxious to know that people had access to information about me as that made me concerned for my safety and the safety of my children.

## Settlement

33. I understand that as a result of the settlement, Navient will be required to change its practices and employee training relating to PSLF, and will be required to donate $1.75 million to a new organization that will provide guidance for people seeking PSLF.

34. When I decided to become a Class Representative in this action, I wanted to ensure that no public servant would ever again find out about the criteria for PSLF the way I did—by learning that they spent years making non-qualifying payments based on inaccurate information. For that reason, it is especially important to me that the new organization created pursuant to the Settlement Agreement, along with the improvements in Navient's PSLF practices, will help ensure that borrowers receive accurate information about PSLF the first time they ask for it.

35. It is also important to me that the Settlement Agreement contains provisions requiring Navient to train its representatives to proactively ask questions regarding PSLF. I am hopeful that these enhancements will help other borrowers learn about the requirements for PSLF as early as possible so that they can make informed decisions and make every payment count.

36. Before participating in this action, I strongly considered retaining counsel to pursue a legal remedy against Navient, but I did not have the funds to do so. I understand that by agreeing to this settlement, I am waiving my right to sue Navient for damages arising from the conduct alleged in the complaint.

37. I joined this action because despite doing everything "right"—talking to my servicer, taking extensive notes, and doing everything my servicer told me to do—I was unable to get correct information about PSLF and lost thousands of dollars in qualifying payments as a result. I knew there were countless others who had been in that position, or might be soon, and I wanted to be a voice for them. As a result of this settlement, I am hopeful that those public servants will be able to get timely, accurate advice about their student loans that would have so greatly benefited me.

### Conclusion

38. My fellow Class Representatives and I have gone above and beyond in order to represent our fellow class members and to make things better for future public servants.

39. I believe that our efforts, the sacrifices we made, and the risks we took justify the individual plaintiff awards provided for by the Settlement Agreement.

Dated:    August 28, 2020

Kathryn Hyland