**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>    Defendants. | No. 18-cv-9031-DLC |

## DECLARATION OF ELIZABETH KAPLAN
## IN SUPPORT OF APPLICATION FOR SERVICE AWARDS

**ELIZABETH KAPLAN**, being duly sworn, declares as follows:

1. I am one of the Class Representatives appointed in the Court's Preliminary Approval Order, Dkt. 108, as representatives of the Settlement Class in the above-captioned action.

2. I submit this declaration in support of Plaintiffs' motion for final approval of the settlement and a $15,000 service award to each Class Representative. The facts giving rise to my participation as Class Representative and my role in securing the settlement discussed herein support the requested service award.

### Background

3. I am a resident of Maryland and currently work as a third-grade teacher.

4. I took out a total of $34,500 in student loans under the Direct Loan program to pay for my undergraduate degree. I graduated with a bachelor's degree in 2012 and entered repayment on

my student loans the same year with Sallie Mae, now Navient, as my servicer.  At the time this action was filed, I had $25,255 in outstanding student loans.  When I first entered repayment, I was employed by a nonprofit organization and was making payments on an income-driven repayment plan.  I met all the requirements for Public Service Loan Forgiveness ("PSLF").

5.  I have been employed in public service since in 2012.  After college, I worked at a nonprofit in Baltimore called the Ulman Cancer Fund for one year.  I had biked across America to raise money for this nonprofit in college and wanted to continue this meaningful work full-time.  Many members of my family have been diagnosed with cancer, and my work with the Ulman Cancer Fund allowed me to help raise money for cancer prevention.  I was in charge of recruiting college students for the same fundraiser bike ride that I participated in.  I then worked in fundraising at a university for nearly two years before deciding that I wanted to pursue a career that would bring me more fulfillment and joy in my everyday work.  I come from a family of teachers and knew that a career change would help me to gain more fulfillment and interest in my work.  I didn't want my job to be something that tied me to a desk for 8 hours every day— I wanted to make a difference and feel excited about going to work every day.  It was never about the money for me. I found so much joy and fulfillment in being a teacher that I knew I had found my calling.

6.  In 2015, I began a full-time master's degree program in Education, during which time my loans were in deferment.  A Navient representative falsely informed me that I would need to make 120 consecutive, on-time loan payments to qualify for PSLF.  Because of this representation, I believed that my deferment disqualified me from PSLF.

7.  As a result, when I left my master's degree program and began teaching full time in 2016, I did not enroll in an income-driven repayment plan.  Instead, believing I had no hope of loan

forgiveness, I struggled to make higher payments on the standard repayment plan which required that I pay off my full loan balance in ten years.

8. Virtually every time I spoke to a Navient representative, I was given different information about loan forgiveness.  It was clear to me that Navient representatives had not been given adequate training regarding PSLF and were not able to give me accurate information.

9. It was only through extensive research on my own that I was able to obtain accurate information about PSLF.  When I spoke with class counsel, they confirmed what I had already found out independently.

### Role as Class Representative

10. I volunteered to join this action as a named plaintiff because I wanted Navient to be held accountable for its misrepresentations to me and other borrowers and to change its practices so that other public servants can receive the loan forgiveness they deserve.

11. I feel that my experience is representative of the greater population of teachers and of public service workers in general.  By sharing my story, I hoped to bring attention to our struggles.  I wanted to empower other public servants to take the steps I would have taken to qualify for PSLF had I been given accurate information by Navient.

### Efforts

12. Since joining as a named plaintiff nearly two years ago, I conservatively estimate that I have spent 56 hours on this action.

13. I first became involved in this action in September 2018 when I spoke with class counsel about my experiences with Navient.  During that call and many follow-up calls and emails, I provided class counsel with a detailed history of my student loans and my interactions with Navient.  At the request of class counsel, I gathered loan documents, my notes from speaking with Navient,

and other records.  I carefully reviewed the Complaint and the Amended Complaint and provided edits in writing and over the phone.  I also carefully reviewed Navient's motions to dismiss the action and Plaintiffs' filings in response and discussed them with class counsel.  In total, I spent approximately 28 hours on the complaint, the amended complaint, and Navient's motions to dismiss.

14. When the Court granted Navient's motion to dismiss and dismissed the claims of the Maryland class, I started to fear that this action would not result in the far-reaching changes that I had hoped for when I volunteered to be a named plaintiff.  Even though my claims were dismissed, I decided to continue in the action and participate in the settlement discussions because I wanted to continue seeking changes to Navient's practices and pursuing relief for myself and other class members.

15. In August and September 2019, during the individual settlement negotiations, I spent approximately 2 hours reviewing documents related to the settlement and discussing acceptable settlement terms with class counsel.

16. On November 5, 2019, I attended the mediation in New York before Magistrate Judge Barbara Moses.  I prepared for the mediation by discussing plans for the mediation with counsel and traveled from Maryland to attend.  After the mediation, I discussed the proposed terms of the settlement with counsel.  I spent approximately 20 hours traveling to and from New York to attend the mediation and discussing it with counsel.

17. Following the mediation, I carefully reviewed drafts of the Memorandum of Understanding and the final Settlement Agreement.  In total, I spent approximately an hour on the Memorandum of Understanding and the final Settlement Agreement.

18. On June 10, 2020, I listened to the Preliminary Approval Hearing via telephone.  I discussed

the hearing in a teleconference with class counsel and the other Class Representatives the following day.  In total, I spent approximately 3 hours listening to the Preliminary Approval Hearing and discussing it with class counsel and the other Class Representatives.

19. Since the Preliminary Approval Hearing, I have spent approximately 2 hours on the settlement of this action, including reviewing a summary of the settlement approval and discussing and editing this filing.

### Risks & Burdens

20. In addition to the hours I have spent on this case, my participation has also come with significant costs, both financial and otherwise.

21. I used my only paid personal day for the academic year in order to attend the November 5, 2019 mediation.  As a result of using that day for the mediation, I had to use my limited sick leave for additional days off during that academic year.  This affected my pension, as the monthly allowance I will receive at retirement is impacted favorably by the number of sick days I have remaining.  The value of that personal day is approximately $400.  I also spent $40 on meals and other incidentals for travel.

22. Attending the mediation was physically and emotionally draining.  I left my home in Maryland at 5:00 a.m. to travel to New York for the mediation and did not return home until 10:00 p.m. that night.  It was also very difficult meeting with the other plaintiffs, discussing our struggles, and listening to Navient's arguments about what they should be required to do in order to settle the action.

23. My participation in this action has taken a significant mental toll.  At first, I was very optimistic about the potential for this action to bring widespread change for public servants like me.  At many points in the process, I experienced a great deal of frustration and uncertainty about what,

if anything, the action would be able to accomplish. When the claims of the class of Maryland public servants I sought to represent were dismissed, I felt very defeated. I decided to join the other Class Representatives in mediation as I felt it provided the best opportunity for me to continue seeking relief for myself and other members of the Class as well as to have an impact on Navient's practices going forward.

24. The public nature of my participation in this action has also been a source of tremendous stress. At the beginning of the action, I was very uncertain about what it would mean for my name to be publicly associated with the lawsuit. My parents were particularly concerned for my well-being and privacy.

25. In the course of this action, I have disclosed a great deal of information that I otherwise would have kept very private. Anyone reading the complaint will know that I had to take out student loans for college, that my salary was low enough at one point that I was making $0 payments on an income-driven repayment plan, and that I have been making full payments on the stand-ard repayment plan for the past few years, among other facts. I would never have discussed any aspect of my personal finances or my student loans in a public setting if not for this case.

26. Even though I knew that my role as a class representative and the information in the complaint would be public, it was still a shock to see the filed complaint available publicly online for the first time. From this point forward, whenever anyone searches for my name on the internet, they will learn that I was involved in a class action about my student loans. My students' parents, future employers, and others may judge me based on my participation in the action or on what they read in the complaint.

27. I did not participate in any press interviews in this action but learning about what some of the other Class Representatives experienced after their media appearances was very stressful and

upsetting for me.

28. While most of the press attention paid to this action seemed positive, the comments from the public often ranged from negative to downright vicious.  These comments strengthened my decision not to participate in any press regarding this action and to continue to keep my name out of the public eye as much as possible beyond what is publicly filed.

## Settlement

29. The Settlement Agreement requires Navient to improve its practices around PSLF, including providing accurate information to borrowers about PSLF, proactively asking questions to probe into borrowers' eligibility for PSLF, and ensuring that its employees are knowledgeable about PSLF.  It also requires Navient to provide funding to a new organization dedicated to helping public servants benefit from PSLF.

30. I agreed to participate in the settlement because I am hopeful that it will give other borrowers in the class the chance to receive truthful, timely advice from Navient about PSLF.  If I had been able to speak with a trained Navient representative about PSLF early on, I could have made informed decisions about loan repayment to ensure that all of my payments counted towards forgiveness.  The Settlement Agreement will help borrowers make informed decisions early in the repayment process so that they can fully benefit from PSLF and avoid delays.

31. I am also hopeful that the new organization provided for by the Settlement Agreement will be a valuable resource for other public servants.  PSLF offers the chance for substantial financial relief to public servants who may be struggling financially, and the consequences of losing eligibility or making non-qualifying payments can be enormous.  I hope that this organization allows them to ensure they are qualified so that they can spend more time working in the public interest and less time worried about their student loans.

32. Before participating in this action, I never would have pursued litigation against Navient because I lacked the means to do so.  I understand that by agreeing to this settlement, I am waiving my right to sue Navient for damages and to appeal the Court's dismissal of my claims.

33. I joined this action as a named plaintiff because I wanted to participate in creating long-lasting change to benefit student loan borrowers.  Navient's role as a servicer should have meant that at a bare minimum, it would train its employees appropriately to provide truthful information to borrowers.  This Settlement Agreement requires Navient to live up to that standard and is a step in the right direction for borrowers' benefit.

### Conclusion

34. My fellow Class Representatives and I are ordinary individuals who decided that the potential benefit to public servants around the country was worth the personal costs of coming forward.

35. I believe that our sacrifices and continued efforts over the course of this action justify the individual service awards proposed by the Settlement Agreement.

Dated: August 28, 2020

Elizabeth Kaplan