**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated, | No. 18-cv-9031-DLC |
| Plaintiffs, | |
| v. | |
| NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC, | |
| Defendants. | |

**DECLARATION OF MEGAN NOCERINO**
**IN SUPPORT OF APPLICATION FOR SERVICE AWARDS**

**MEGAN NOCERINO**, being duly sworn, declares as follows:

1.  I am one of the Class Representatives appointed in the Court's Preliminary Approval Order, Dkt. 108, as a representative of the Settlement Class in the above-captioned action.

2.  I submit this declaration in support of Plaintiffs' motion for final approval of the settlement and for a $15,000 service award to each Class Representative.  The facts giving rise to my participation as Class Representative and my role in securing the settlement discussed herein support the requested service award.

**Background**

3.  I am a full-time middle school literacy teacher residing in Florida.  I am passionate about my job and truly enjoy working with my students every day.

4. Many students arrive in my classroom having slipped through the cracks year after year without ever learning to read.  Some students have been held back many times and are still in middle school while their peers are going to prom.  For many of my students, school is associated with failure and fear.  I try to create a positive environment of mutual respect that allows my students to thrive despite these negative experiences.

5. My students call me "Dr. No" but they know they are much more likely to hear "yes" from me.  It is my goal to build them up and show them what they are capable of accomplishing.  My students' intelligence and creativity shines through in everything they do, and it is my goal for them to see that intelligence and creativity in themselves.

6. I took out federal student loans under the Family Federal Education Loan ("FFEL") and Direct Loan programs to obtain my master's and doctorate degrees.  I consolidated my federal student loans into Direct Consolidation Loans in 2013. In total, I took out $145,943 in loans.  Navient is my servicer.

7. In the course of repaying these student loans, I have experienced significant financial hardships that impacted my ability to make my loan payments.

8. When I experienced these financial difficulties, I wanted to continue repaying my student loans, but I was unable to afford the payments on the plan in which I was enrolled.  I called Navient to ask about other repayment options.  Navient was my servicer, so I believed it was Navient's role to help me pay back my student loans.

9. Every time I called Navient to ask about alternative repayment options, Navient told me that my best option was to enter into forbearance.  I believed that Navient was acting in my best interest, so I did what they suggested and entered into multiple forbearances.  Navient never told me that alternative repayment programs were available to me.

2

10. When I called Navient, I also asked about loan forgiveness programs. Navient told me that none were available to me. Navient never told me that as a public servant, I could pursue Public Service Loan Forgiveness ("PSLF").

11. Had Navient given me accurate information when I asked about repayment plans and loan forgiveness, I would have switched my repayment plan to a PSLF-qualifying Income-Driven Repayment plan that would have lowered my payments, and I would have started making PSLF-qualifying payments. If Navient had given me this information the first time I called to ask about my options, I would be seven years into my ten years of qualifying payments for PSLF.

12. Instead, the interest on my loans accrued during forbearances continued to capitalize. My loan balance at the time this action was filed was $268,292—nearly double what it was when I started repayment.

13. When I later found out I could have qualified for PSLF, I felt hopeless. I had lost seven years that I could have spent qualifying for loan forgiveness and accumulated an unthinkable amount of additional debt in the process because of Navient's misrepresentations. I was staring down a future of ten more years of payments.

14. My student debt has been, and continues to be, a crushing burden for me. I have a child with serious health issues, and the prospect of ten more years of repayment fills me with fear. My student loan payments drastically limit the amount of money I am able to save for retirement or for my children's education. With ten more years of payments, I will be done just as my oldest child starts looking at colleges.

15. One of the hardest things about the entire situation was the loss of trust I felt in Navient and other institutions. Navient was still my servicer, but I felt that I could not trust anything I

3

heard from them.  This feeling spread throughout my life:  I cannot trust any customer service representative on the phone anymore.

16. Part of my calling as an educator is to support my fellow teachers.  I am an open book—if my experiences or knowledge can help a member of my community, I will share anything I can.  In this case, I knew that if Navient was not providing accurate information about student loans, at least I could help others by giving them that information.  I realized that if nothing else, I could turn my experience into something positive for others.

### Role as Class Representative

17. Since learning that I should have been given repayment plan options and information about PSLF, I have done everything in my power to spread the word to my fellow teachers.  I have told them to be tenacious and to stay on the phone with their servicer for as long as required in order to get the information they need.  I have told them to ask about all options and to make sure they have the right kinds of loans and repayment plans.  I tell my fellow teachers to give my phone number out to anyone who needs more information: I will talk to anyone, at any time, to make sure that no one else experiences what I did.

18. It was in this spirit of service that I decided to be a class representative in this case.  My goal was to ensure that other public servants get the information they need about PSLF and never experience the feeling of hopelessness that I felt.

19. The Settlement Agreement in this action will help public servants like me who call Navient seeking help repaying their loans and qualifying for loan forgiveness.  In particular, the requirement that Navient listen for certain keywords that indicate potential PSLF eligibility is very important.  If the Navient representatives I spoke with had been listening for these

keywords, they would have realized that I was a public servant and would have been required to give me information about PSLF.

20. The organization created by the Settlement Agreement will also help borrowers like me who need an additional resource for PSLF, and will give me another resource to share with other public servants.

### Efforts

21. As a class representative, I have expended considerable effort directly participating in this action—in total, approximately 108 hours—that I believe aided in its prosecution and settlement.

22. From September 2018, when I became involved in the action, until the amended complaint was filed on January 16, 2019, I spent roughly 12 hours communicating with counsel, describing my story, and reviewing and commenting on the complaint.  I spent another 15 hours collecting all of my loan documents and reviewing them to ensure I was giving counsel accurate information.

23. When Navient filed its motions to dismiss, I reviewed them and discussed them with class counsel.  I spent approximately 4 hours discussing the motions to dismiss.

24. I spent approximately 7 hours reviewing and discussing the Court's opinion on Navient's motion to dismiss, and an additional 10 hours discussing the possibility of a settlement following that opinion.

25. I spent approximately 48 hours preparing for, traveling to, and attending the mediation in New York.  I also spent approximately $500 on childcare and incidental expenses during the trip.  I also missed two days of work for which I was required to take two vacation days, which have a total value of $400, and I spent 6 hours preparing for my absence and working

with a substitute teacher.  Because of the specialized nature of the instruction I provide, my absence presents substantial difficulties for my students.

26. After the mediation, I have spent approximately 8 hours reviewing potential settlement terms, discussing them with counsel, and working on this Declaration.

**Risks & Burdens**

27. This litigation, and the time that I spent contributing to it, has affected my work, my home, and every facet of my day-to-day life.

28. The time investment at the start of the case was substantial.  I missed many evenings of quality time with my sons while on the phone with class counsel or looking through my records for documents they requested.  I spent many late nights after my sons went to bed reading drafts of the complaint and amended complaint, emailing with class counsel, or looking for documents.

29. I participated in several press interviews in connection with this case and also spoke during a press conference held by AFT the day this action was filed.[1]  My media experiences themselves were positive, but I received some negative feedback and comments online from people who accused me of being involved solely to get money for myself.

30. Putting myself in a public role had very real consequences for me and my family.  In the months following the complaint filing and the press interviews, I received several anonymous phone calls about my role in the case.  I was terrified and slept with my children

---

[1] 'They Didn't Have My Back': Teachers Sue Student-Loan Servicer Navient, Sarah Schwartz, Education Week, October 12, 2018 (https://www.edweek.org/ew/articles/2018/10/12/they-didnt-have-my-back-teachers-sue.html); Teachers Sue Navient On Behalf of America's Public Service Workers, Erin Arvelund, The Philadelphia Inquirer, Oct. 3, 2018 (https://www.inquirer.com/philly/business/american-federation-teachers-randi-weingarten-seth-frotman-betsy-devos-doe-navient-student-loan-forgiveness-20181003.html).

in bed with me for weeks.  I decided to continue in the case, but I did not participate in any press after that.

31. My role as a class representative was a constant reminder of the pain and hopelessness I felt as a result of my experiences with Navient.  I chose to focus on the positive impact of the litigation on others rather than the difficulties that I faced, but participating in the litigation did add to my stress level substantially.

## Settlement

32. It was difficult for me to decide whether to accept the settlement terms.  I knew that the settlement would benefit the entire class, and though I would have liked to have held Navient financially accountable to the class as well, I understand there are significant legal hurdles.  I understand that by agreeing to the settlement, I will not be able to sue Navient for damages or appeal the dismissal of my claims.

33. I ultimately decided to accept the settlement terms because I felt that exercising my right to appeal and pursuing further litigation would be risky and would not be the best choice for my family.  I am also optimistic that the settlement terms will provide other public servants with the resources that could have saved me so much time, money, and heartache.

34. The requirements for enhanced call flow procedures under the Settlement Agreement will help borrowers like me who would have otherwise fallen through the cracks.

35. I am proud of my involvement in this lawsuit, particularly in the face of great personal challenges.  I pride myself on putting 100% effort in anything I do, and this case was no different.

36.  My dedication to this action, and the sacrifices I made in order to achieve a beneficial settlement for the class, justify the $15,000 service awards agreed to by the parties.

7

**PAGE INTENTIONALY LEFT BLANK**

Dated: August 28, 2020

Megan Nocerino

9