**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC, <br><br> Defendants. | No. 18-cv-9031-DLC |

**DECLARATION OF ELIZABETH TAYLOR**
**IN SUPPORT OF APPLICATION FOR SERVICE AWARDS**

**ELIZABETH TAYLOR**, being duly sworn, declares as follows:

1. I am one of the Class Representatives appointed in the Court's Preliminary Approval Order, Dkt. 108, as a representative of the Settlement Class in the above-captioned action.

2. I submit this declaration in support of Plaintiffs' motion for final approval of the settlement and for a $15,000 service award to each Class Representative. The facts giving rise to my participation as Class Representative and my role in securing the settlement discussed herein support the requested service award.

**Background**

3. I am a resident of New York and currently work as a full-time Program Research Specialist for the New York State Department of Education. I have worked full-time for various departments of the State of New York since March 2009.

4. I took out student loans under the Federal Family Education Loans ("FFEL") program for my undergraduate and graduate programs. In total, I took out approximately $48,395.00 in loans.

5. After my loans were transferred to Navient in 2011, I began to inquire about the requirements for Public Service Loan Forgiveness ("PSLF"). In my first conversation with Navient, the representative told me that I did not need to submit any paperwork for ten years until I had made all my payments. I was further informed that making the ten years of qualifying payments would depend on working for a qualifying employer. Navient did not inform me of any other requirements, including whether my type of loans qualified for PSLF.

6. It turned out that I was not on track for PSLF because I needed to consolidate my FFEL loans into Direct Loans and enroll in a qualifying plan.

7. If I had been correctly informed that I should submit this paperwork immediately, I would have quickly learned that my loans did not qualify for PSLF. Instead, Navient continued to provide me with incorrect information in multiple conversations spanning several years. Through these conversations, I got the impression that my servicer was intentionally and systematically blocking eligible public servants from PSLF.

### Role as Class Representative

8. I learned about a possible legal action against Navient regarding PSLF from a Public Employees Federation union meeting in January 2019. At the time, I believed that I was making qualifying payments toward PSLF. I was interested in learning more about the legal action because I had felt like Navient repeatedly and consistently left me with no options to repay my student loans.

9. I joined this lawsuit as a class representative because I had long been subjected to what I believe to be Navient's dishonest business practices. Navient provided me with conflicting and

incorrect information for seven years after representing to me that I was on track for PSLF. I hoped to be a part of ending these business practices.

10. My personal experiences with Navient motivated me to advocate for settlement provisions that would protect borrowers like me, government workers who have dedicated their lives to public service. After having many conversations where Navient provided me with false information or omitted key information about the eligibility criteria for PSLF, it became clear to me that Navient's practices needed to drastically change. Based on this experience, I asked that as part of the updates to its practices required by the settlement, Navient provide call center employees with accurate information about a borrower's eligibility for PSLF or other forgiveness programs, including keywords or phrases that would signal potential eligibility for PSLF.

11. I have spent a substantial amount of time and effort participating in this case and its resolution over the last year and a half and have incurred many other personal costs as well.

### Efforts

12. To participate as a Class Representative, I have had to divert time and energy away from my job and other responsibilities to make myself available for discussions and to timely assemble relevant documents. In total, I conservatively estimate that I have dedicated approximately 58 hours to this case.

13. I work full-time for the New York State Department of Education. Though I do not have much spare time, I invested what available time I had in this action because I believe that Navient's practices must change.

14. I first became involved in this action in January 2019 when I spoke with class counsel about my experiences with Navient. During that call and many follow-up calls and emails, I provided class counsel with a detailed history of my student loans and my interactions with Navient.

3

15.  I made myself available to counsel to support the drafting of the amended complaint.  As a part of that process, I met with counsel to discuss my experiences and, more specifically, to prepare my allegations against Navient.  I also supported my allegations by collecting documents related to my loans.  After the amended complaint had been drafted, I carefully reviewed and edited the allegations as they pertained to me.  In total, I spent about 7 hours on work associated with the amended complaint.

16. I also thoroughly reviewed Navient's motion to dismiss the action and the Plaintiffs' filings in response and discussed both with class counsel.  To this end, I read and edited Plaintiffs' memorandum opposing the motion to dismiss, produced additional relevant documents, and discussed my thoughts with counsel.  In total, I spent approximately 6 hours on tasks related to the motion to dismiss.

17. As a New York Plaintiff, I participated in discovery in addition to gathering my loan documents and reviewing counsel's filings and responses.  Over the course of the discovery period, I responded to interrogatories and Requests for Production from Navient.  To accurately respond, I needed to collect documents and draft responses.  I estimate that I spent between 10 and 15 hours responding to discovery requests from Navient.

18. Starting in late August 2019, during the individual settlement negotiations, I spent between 3 and 5 hours reviewing documents related to the settlement and discussing acceptable settlement terms with class counsel.  During these discussions, it was important to me that the agreed-upon practice enhancements would protect borrowers like me.

19. On November 5, 2019, I attended the mediation in New York City.  The travel and the time spent at the mediation impacted me in several ways.  First, I prepared for the mediation with counsel and traveled by car and train from my home in Westerlo, New York to New York City

to attend.  I incurred about $126.00 in costs associated with my train fare and my gas mileage to drive more than 160 miles round-trip to and from the train station.  Second, I had to miss two days of work (or 15 hours of vacation) to attend mediation.  At that time, these days were valued at $415.00, though as I continue to work the value of these hours continues to increase.  Lastly, the mediation was scheduled the same day as my job's annual conference.  To attend the mediation, my co-workers had to take on my share of work.  This was a burden I didn't want to put on them and I worried that it might negatively impact my work environment.  Lastly, to get my supervisor's permission to miss the conference, I had to divulge parts of my personal life I would have preferred not to share.  In total, I estimate I spent about 18 hours preparing for and attending the mediation.

20. After the mediation, I was involved in several tasks related to the parties' initial agreement in January 2020 and the Settlement Agreement that was submitted to the Court.

21. During that time, I communicated with class counsel via phone and email about Navient's settlement demands and the settlement terms I felt were acceptable.  I also joined a call with the other plaintiffs to discuss settlement terms.

22.  In preparation for filing, I also carefully reviewed drafts of the Memorandum of Understanding and the Settlement Agreement and discussed them with class counsel.  I completed all these tasks carefully, keeping in mind my belief that Navient's practices must change to protect borrowers like me.  In total, I spent just over 5 hours on the Memorandum of Understanding and the Settlement Agreement.

23. I also was involved in preparing for the preliminary approval hearing.  Since that time, I have spent approximately 8 hours on the settlement of this action, including reviewing a summary of the settlement approval and discussing this filing.

24. In addition to the costs and expenses associated with traveling for the mediation as described above, I also incurred other costs associated with this action.  I agreed to this settlement because it accords with my motivation to be involved in the first place—Navient will be held accountable and must change their business practices.  This settlement is a major victory for public servants, like me, who have pursued the public interest as their livelihood.

### Risks & Burdens

25. In addition to the time I have spent on this case, I have incurred other personal hardships.

26. I experienced extreme emotional stress related to the seven years of Navient's deception and confusion.  I continue to experience immense stress related to my financial situation and coping with the reality that I was misled for several years, amounting to tens of thousands of dollars in loan payments that could have counted towards PSLF.

27. My stress extended to my professional life.  Even after I decided to join this action as a class representative, I constantly worried about what impact it would have on my work environment. I was very concerned that my involvement would negatively impact my coworkers, my ability to do my job, and thus my reputation at work.  As I discussed above, I had to divert effort and time away from my work and responsibilities in a way that impacted my coworkers.  I work in a very small and short-staffed office within the New York State Education Department.  Any time I had to miss a day of work or leave work early due to the lawsuit, the impact was readily apparent to my coworkers who had to cover some of my workload.

28. To attend the mediation, I put my own health at risk.  At the time, I was experiencing health issues that were exacerbated by travel.  I, along with my family, friends, and my supervisor, worried about the impact that the travel would have on my health.

29.  My experience with media requests further compounded the stress associated with this action

and with my debt.  I was contacted by the media at my workplace.  The reporter was insistent and invasive and did not heed my requests to discuss at another time.  I eventually ended the call, though only after repeatedly refusing to provide more information.

30. By being involved with this lawsuit, I have disclosed highly personal information I would have otherwise kept private.  I disclosed both private health information to my supervisor at work to explain my recurring absences, which were only in part due to this lawsuit, and I also disclosed highly personal financial information.

31. *First*, to persuade my supervisor that I was not using the lawsuit as an excuse to miss work, I had to share personal health information.  *Second*, though necessary to the lawsuit, the details of my struggles with student debt—both the amount and the difficulty I have had repaying it— are pieces of information I would never have shared with anyone.  While I had reviewed the amended complaint and knew it would be public, it was still a shock to see that information so easily accessible.

## Settlement

32. As a result of this settlement, Navient must change its procedures so that borrowers like me will receive accurate information about loan repayment and forgiveness options.  This aspect of the settlement was crucial to me, particularly as someone that spent seven years making payments with the belief that I would be reaching debt forgiveness shortly.  I am proud that this settlement provides a clearer and more honest path forward for public servants to pursue the forgiveness they are owed.

33. This settlement, however, does not come without its cost to the individuals.  Because I agreed to settle on a class-wide basis, I have agreed to give up all my individual claims against Navient in this action.  I also sacrifice the opportunity to raise monetary claims against Navient in the

future, unlike the remainder of the class.

34. It is very upsetting to me that I will never fully recover the amount of money lost to Navient due to their misleading business practices. After over seven years of being misinformed about my PSLF eligibility, I still have over eight years of payments left before I can apply for PSLF. I still may never benefit from PSLF, because of Navient's deception, even though I have worked for the State of New York the entire time I was making loan payments to Navient. I made my decision to settle willingly but the loss of my individual claims are still significant.

35. The Settlement Agreement holds Navient accountable and requires them to develop better business practices that will benefit the members of the Class. I agreed to participate in the settlement because it will provide accurate information, and hopefully hope and relief, to public servants like me. It is now Navient's job to give us accurate and complete information about our student loans.

36. Every day, I go to work and serve my community. I am proud that my involvement in this lawsuit will go towards mandating changes in Navient's practices. Ultimately, that is why I agreed to be a class representative—because I believed it was time to end practices that trap borrowers like me in insurmountable student debt.

37. I believe that my efforts in support of that goal, as well as the efforts of my fellow class representatives, justify the $15,000 service awards agreed to by the parties in the Settlement Agreement.

Dated:    August 28, 2020

_____
Elizabeth Taylor