David Murad, PhD
2786 Clermont St.
Streetsboro, OH 44241
617-291-3261

July 20, 2020

Hon. Denise L. Cote
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Settlement Administrator
c/o Rust Consulting, Inc. – 6972
P.O. Box 44
Minneapolis, MN  55440-0044

Re: *Hyland, et al. v. Navient Corp., et al.*, Case No. 18 Civ. 9031

To Hon. Denise L. Cote, the U.S. Southern District Court of New York, and the Settlement
Administrator:

I am writing to **object** to the proposed settlement in Hyland, et al v. Navient Corp., et al. The current
settlement does not penalize Navient for their deceitful actions nor does it compensate the victims of
that deceit. This is not justice.

As a short background regarding my communication with Navient. I had taken out federally-backed
loans through various providers on my way to an MA and PhD in the 2000s and early 2010s. Around
the time I graduated and was teaching for an eligible public institution, I contacted my loan
providers, including Sallie Mae / Navient (more than once), about the Public Service Loan
Forgiveness Program (PSLF). I asked if my loans were eligible, if they would be forgiven in 10
years, and Sallie Mae / Navient told me they were and would be. Again, I was given explicit, verbal
confirmation that I needed to do nothing with the loans but wait 10 years when they would be
forgiven. Later, I submitted PSLF forms, but I never heard anything from Sallie Mae / Navient. In
time, after further calling and pressing on the matter, I finally discovered that the loans were not
eligible as they were; they had to be first consolidated over to a different provider and the 10-yr clock
begins upon consolidation (not when public service begins). Whereas I had put the rest of my loans
into such consolidation years before, I did not include the Navient ones because of their original
assertions that nothing else was needed on my end. Ultimately, Navient's lying, misleading, or wrong
assertions may cost me as much as $17,000.[1]

---

[1] I also sympathize with claims that Sallie Mae / Navient often steered borrowers toward forbearance, which then
capitalized interest. In a few instances, I may have put my loans into forbearance as my job status and pay were
insecure (teaching part-time, without any security for pay or contract), but these were always done without the
appropriate information upfront that loans would be capitalized afterward. I agree that rather than forbearance,
lenders should have been honest about all possible options, including a lower payment given current income (all
loans have been eligible for IBR at the least). In some cases, I still may have needed to take the forbearance. But
who can make the best decision without all the appropriate information?

At the time I discovered Navient's error, I was not sure if the problem was that of a few isolated representatives misleading me. However, in the past several years, as hundreds of thousands, even millions of people, have come forward with stories of Navient wrongdoing and misleading, it has become ever more apparent that this is a company-wide issue, one that was purposefully orchestrated to keep loans with Navient. Thus, while I appreciate the efforts of the plaintiffs and their legal team, and I respect their receiving some compensation (though it hardly makes up for the injustices), I cannot agree to this settlement for a variety of reasons.

Beyond Navient's bald denial of any wrongdoing (which egregiously flies in the face of reality— would so many unaffiliated people have similar issues with a company otherwise?) are questionable court conclusions in the settlement. One is that Navient is not responsible because as a "general rule… a lender does not owe tort duties to a borrower…" and it was not established that Navient had a "fiduciary duty to act or give advice for the benefit of its borrowers."[2] First, it is a gross injustice to think that companies servicing federal loans (ie, contracted by the government, in service to the public good) have no fiduciary duties to public borrowers. Without such obligations, how can the government honestly maintain and claim it is working in the interest of public welfare? But this conclusion also contradicts the court's own acknowledgement that "Both the Department and Navient advertise to borrowers that Navient can assist borrowers with navigating the student loan repayment process… [and] that loan servicers 'are responsible for… advising borrowers on resources and benefits to better manage their federal student loan obligations,'" among other obligations.[3]

Civil or criminal suits have grounds when one party deceives, lies to, cheats, frauds, or misleads another. In this, the crucial point is not about the nature of advice but the nature of fraud: When I called Navient regarding PSLF, I was not seeking financial counseling, as if asking for advice on whether or not to put the loans into PSLF; I would make that decision myself based on the honest representation and status of my loans. Instead, Navient misled me about this status, withholding crucial information at one turn, lying at another. The reasons for this dishonesty, as discussed below, should clearly point to the financial gains Navient would receive by keeping my loans serviced by them, for longer lengths of time. They lied to me about something I had a legal right to in order to make more money. How is that not fraud?

While I cannot fully comment on what the legal team established or not, I find other court conclusions lacking, as well. The court is not convinced of the "evidence" of Navient deceptions, for "In most cases, the FAC simply identifies the approximate year in which these conversations took place. In other cases, it gives no date range at all, and simply alleges that the named plaintiff 'repeatedly' contacted Navient."[4] I understand that procuring some evidence, such as phone recordings, is a challenge, for the people who would most plausibly have access is the fraudulent party Navient. While the court acknowledges this challenge, it shoos it away, blaming borrowers for not keeping better records themselves. Beyond just the absurdity of such a quick dismissal are several problems: First, is the court thus suggesting that fraud can only be demonstrated when a victim, him/herself, has recorded proof (ie, no other evidence can point to fraud)? And is the precedent now thus, that the public is obligated to record all calls when contacting the federal government or its contractors? If that's the case, we might all need to further question the integrity of our governmental network, including this court's allegiances.

---

[2] https://casetext.com/case/hyland-v-navient-corp, pp. 29-31.
[3] https://casetext.com/case/hyland-v-navient-corp, p. 7.
[4] https://casetext.com/case/hyland-v-navient-corp, p. 33.

Leaving also aside the silly notion that a fraudulent party is going to readily provide such self-incriminating evidence, a judge and jury still have a *preponderance of evidence* at their disposal, should they acknowledge cases like the plaintiffs', mine, and millions of others. It would be suspicious enough that a borrower who has PSLF-eligible loans would willingly decide to maintain them in the far more expensive service of Navient, but consider also the borrowers who moved all loans over to PSLF *except those held by Navient*. When this happens once, perhaps that's not enough evidence of fraud. But when these scenarios happen hundreds of thousands of times, that's a pattern—and falls under the decision that it is *more than likely than not* that such individuals were misled. Again, hundreds of thousands of unaffiliated people eyewitnesses to and victims of a crime, all telling similar stories, should constitute a preponderance of evidence.

Indeed, my story is just one of many: the lawyers in this case estimate roughly 325k, but the numbers of those cheated could be in the millions.[5] If even conservative amounts of $10-20k lost by 325k people is factored into this equation, the effect is billions of dollars lost to borrowers. In this, the settlement reads like a backwards slap to misled borrowers, not a penalty to Navient. The settlement requires Navient, a Fortune 500 company, to pay mere pennies. The settlement amount of $2.4 million represents roughly .04% of Navient's recent annual revenues ($5.6 billion)—and .6% of recent annual profits ($395 million),[6] a laughably meaningless write-off for the company. In effect, the settlement *only encourages further deceit*. Navient can profit hundreds of millions of dollars for cheating people out of hundreds of millions, only to pay $2.4 million later. In an even darker twist, victims will still have to be serviced by Navient, ie victims will contribute to the perpetrator's reaping of millions more (in contract fees) into the distant future. The court's settlement is thus winking at companies like Navient: You can and should continue with this kind of fraudulent business every year. It's profitable.

Essentially, the settlement asks Navient to pay for services it already should have been providing. Instead of Navient having to properly train employees about honestly representing loan services and statuses from the outset (costing Navient perhaps millions upfront), Navient was able to forgo that crucial step for many years, make hundreds of millions each year, and then later initiate that step as a "settlement." Do we see how this is such a win-win for the company? And meanwhile, what do the millions of cheated borrowers get? Literally, nothing.

No, I do not accept this unjust settlement; and I do reserve my right to sue this company in the future.

David Murad, PhD
Co-Chair and Professor, English Dept.
Lakeland Community College

CC: The Consumer Financial Protection Bureau; *The New York Times*; *The Washington Post*; Adam S. Minsky, Esq.

---

[5] https://www.nytimes.com/2017/01/18/business/dealbook/student-loans-navient-lawsuit.html
[6] https://fortune.com/fortune500/2019/navient/.