Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Phone: (917) 327-2392
Email:  anna.stjohn@hlli.org

*Attorney for Objector William Yeatman*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHRYN HYLAND, MELISSA GARCIA, ELIZABETH TAYLOR, JESSICA SAINT-PAUL, REBECCA SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER GUTH, MEGAN NOCERINO, and ANTHONY CHURCH, individually and on behalf of all others similar situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION and NAVIENT SOLUTIONS, LLC,<br><br>Defendants. | Case No. 18-cv-9031-DLC<br><br>**CLASS ACTION** |

**OBJECTION OF WILLIAM YEATMAN**
**TO THE PROPOSED CLASS ACTION SETTLEMENT**
**AND ATTORNEYS' FEE REQUEST**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES........................................................................................................ ii

INTRODUCTION .........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.      Objector is a member of the Settlement Class....................................................................2

II.     A court owes a fiduciary duty to unnamed class members. ...............................................3

III.    The settlement should be rejected because it improperly favors a third party chosen by
        conflicted representatives over class members through its *cy pres* provision. ..............................4

        A.      The settlement deploys the worst form of *cy pres* relief which has been rejected by
                courts nationwide for its failure to compensate the class..................................................5

        B.      The settlement resorts to *cy pres* prematurely because it is feasible to distribute funds
                to the class. .......................................................................................................................7

        C.      The Court must scrutinize potential conflicts of interest and pre-existing
                relationships among class representatives, class counsel, Student Defense, and AFT
                as they relate to the *cy pres* recipient................................................................................10

        D.      Especially with no right to opt out, *cy pres* constitutes compelled speech in violation
                of the First Amendment. .................................................................................................12

IV.     Class certification is impermissible under Rule 23(b)(2). ...............................................14

        A.      Rule 23(b)(2) certification is improper for the retrospectively defined class...............15

        B.      Rule 23(b)(2) certification is improper because class members have an adequate
                remedy of monetary relief. ...............................................................................................17

        C.      A class action waiver of monetary claims cannot be included as part of a mandatory
                (b)(2) class release. .........................................................................................................19

V.      Class certification is separately impermissible due to inadequate representation of the class in
        violation of Rule 23(a)(4) and (g)(4). ............................................................................21

VI.     Even if the class is certifiable, the settlement is unfair under Rule 23(e).......................23

VII.    AFT is not entitled to recover attorneys' fees from the settlement..................................24

**CONCLUSION**.......................................................................................................................**25**

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ackerman v. Coca-Cola Co.*,
  2013 WL 7044866, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013)...............19

*Allison v Citgo Petro. Corp.*,
  151 F.3d 402 (5th Cir. 1998) ............................................................................................19

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................................21

*Amidon v. Student Ass'n of SUNY*,
  508 F.3d 94 (2d Cir. 2007).................................................................................................13

*AFT v. DeVos*,
  No. 5:20-cv-455 (N.D. Cal.) ..............................................................................................11

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 216 (2d Cir. 1987)...................................................................................4, 24, 25

*Aliano v. CVS Pharm., Inc.*,
  2018 WL 3625336, 2018 U.S. Dist. LEXIS 85986 (E.D.N.Y. May 21, 2018) ................21

*In re Asbestos Sch. Litig.*,
  46 F.3d 1284 (3d Cir. 1994)................................................................................................13

*In re BankAmerica Corp. Secs. Litig.*,
  775 F.3d 1060 (8th Cir. 2015) .....................................................................................5, 10

*Berni v. Barilla S.P.A*,
  964 F.3d 141 (2d Cir. 2020)...............................................................3, 8, 15, 16, 17, 18

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ........................................................................................8, 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .............................................................................................24

*Broussard v. Meineke Discount Muffler Shops*,
  155 F.3d 331 (4th Cir. 1998) .............................................................................................21

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)..........................................................................................16

*Buckley v. Valeo*,
424 U.S. 1 (1976).........................................................................................................13

*Cahill v. PSC*,
556 N.E.2d 133 (N.Y. 1990)........................................................................................13

*Charrons v. Pinnacle Group N.Y. LLC*,
269 F.R.D. 221 (S.D.N.Y. 2010) .................................................................................16

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).........................................................................................23

*Crawford v. Equifax Payment Servs.*,
201 F.3d 877 (7th Cir. 2000) ...................................................................8, 12, 16, 17, 18, 20

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) .......................................................................................10

*In re Dry Max Pampers*,
724 F.3d 713 (6th Cir. 2013) ..........................................................................3, 4, 8, 23, 25

*Dugan v. Lloyds TSB Bank, PLC*,
2013 WL 1703375, 2013 U.S. Dist. LEXIS 56617 (N.D. Cal. Apr. 19, 2013)................22

*Famular v. Whirlpool Corp.*,
2019 WL 1254882, 2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 18, 2019)................19

*Felix v. Northstar Location Servs.*,
290 F.R.D. 397 (W.D.N.Y. 2013)................................................................................16

*Fraley v. Facebook*,
2012 WL 5838198, 2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012) ...........6, 9

*Fraley v. Facebook*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) .........................................................................9

*Frank v. Gaos*,
139 S. Ct. 1041 (2019).................................................................................................5, 22

*Fresco v. Auto Data Direct, Inc.*,
  03-civ-61063, 2007 U.S. Dist. LEXIS 37863, at *8 (S.D. Fla. May 14, 2007)................17

*Gallego v. Northland Group*,
  814 F.3d 123 (2d Cir. 2016)......................................................................................22, 23

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000).................................................................................................3

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
  934 F.3d 316 (3d Cir. 2019).........................................................................................8, 10

*Graff v. United Collection Bureau, Inc.*,
  132 F. Supp. 3d 470 (E.D.N.Y. 2016) ..............................................................................6

*Grant v. Bethlehem Steel Corp.*,
  823 F.2d 20 (2d Cir. 1987).................................................................................................3

*Harris v. Quinn*,
  573 U.S. 616 (2014)..........................................................................................................14

*Hecht v. United Collection Bureau*,
  691 F.3d 218 (2d Cir. 2012)..........................................................................8, 15, 18, 20

*In re Holocaust Victim Assets Litig.*,
  424 F.3d 132 (2d Cir. 2005)...............................................................................................7

*Jackson v. Phillips*,
  96 Mass. 539 (1867) ...........................................................................................................4

*Janes v. Triborough Bridge & Tunnel Auth.*,
  2011 WL 10885430, 2011 U.S. Dist. LEXIS 115831 (S.D.N.Y. Oct. 4, 2011)...............19

*Janus v. AFSCME, Council 31*,
  138 S. Ct. 2448 (2018)................................................................................................13, 14

*Johnson v. Nextel Comms. Inc.*,
  780 F.3d 128 (2d Cir. 2015)..............................................................................................15

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
  634 F.3d 883 (7th Cir. 2011) ............................................................................................18

*Keller v. State Bar of Cal.*,
    496 U.S. 1 (1990)........................................................................................13

*Klier v. Elf Atochem N. Am., Inc.*,
    658 F.3d 468 (5th Cir. 2011) ..............................................................5, 7, 13

*Koby v. ARS Nat'l Servs., Inc.*,
    846 F.3d 1071 (9th Cir. 2017) ..............................................................6

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
    955 F.3d 908 (11th Cir. 2020) ..............................................................11

*Lobatz v. U.S. W. Cellular of Cal.*,
    222 F.3d 1142 (9th Cir. 2000) ..............................................................21

*Ma v. Harmless Harvest*,
    2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018) ....................................4

*Marek v. Lane*,
    571 U.S. 1003 (2013)............................................................................4

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007).........................................................1, 5, 7

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015).................................................25

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
    716 F. Supp. 1504 (S.D.N.Y. 1989)..................................................19

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ..............................................................6

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) ........................................................4, 10

*In re NCAA Student-Athlete Concussion Injury Litigation*,
    314 F.R.D. 580 (N.D. Ill. 2016)..........................................................8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)............................................................................20

*Park v. Thomson Corp.*,
    No. 05 Civ. 2931, 2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008) .....................9

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016).............................................................................4, 16, 21, 23

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ............................................................................................5

*Pennsylvania v. Navient Corp.*,
    No. 19-2116, 2020 U.S. App. LEXIS 23531 (3d Cir. July 27, 2020)...............................11

*Petereit v. S.B. Thomas, Inc.*,
    63 F.3d 1169 (2d Cir. 1995)...........................................................................................18

*Phillips Petroleum v. Shutts*,
    472 U.S. 797 (1985)........................................................................................................20

*Piambino v. Bailey*,
    757 F.2d 1112 (11th Cir. 1985) .......................................................................................6

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982).......................................................................................3, 23

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013) .......................................................................................10

*Richardson v. L'Oreal USA*,
    991 F. Supp. 2d 181 (D.D.C. 2013)...............................................................................20

*SEC v. Bear, Stearns, & Co. Inc.*,
    626 F. Supp. 2d 402 (S.D.N.Y. 2009)............................................................................10

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................................................6, 21

*In re Subway Footlong Sandwich Mkt'g & Sales Practices Litig.*,
    869 F.3d 551 (7th Cir. 2017) .........................................................................................23

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)....................................................................................................6

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001).........................................................................................................13

*Valley Drug Co. v. Geneva Pharms.*,
    350 F.3d 1181 (11th Cir. 2003) .....................................................................................21

*Wackenhut Corp. v. SEIU*,
    593 F. Supp. 2d 1289 (S.D. Fla. Dec. 4, 2008) ..............................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).....................................................1, 14, 15, 16, 17, 18, 19, 20, 21

*Weingarten v. DeVos*,
    No. 1:19-cv-02056 (D.D.C.) ..........................................................................................11

*Wooley v. Maynard*,
    430 U.S. 705 (1977).......................................................................................................13

*Xiao Ling Chen v. Xpresspa at Terminal 4 JFK, LLC*,
    2019 WL 5792315, 2019 U.S. Dist. LEXIS 195988 (E.D.N.Y. Aug. 20, 2019)................7

*Zepeda v. Paypal*,
    2014 U.S. Dist. LEXIS 24388 (N.D. Cal. Feb. 24, 2014) ..............................................6, 9

*Zepeda v. Paypal*,
    2017 WL 1113293, 2017 U.S. Dist. LEXIS 43672 (N.D. Cal. Mar. 24, 2017)..................9

*Zimmerman v. Zwicker & Assocs.*,
    2011 WL 65912, 2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011).............................9

Rules and Statutes

U.S. Const. art. III ...............................................................................................................6

U.S. Const. amend. I ...............................................................................................12, 13, 14

U.S. Const. amend. VII .......................................................................................................20

U.S. Const. amend. XIV .......................................................................................................9

Fed. R. Civ. P. 23 ....................................................................................4, 6, 9, 14, 15, 20, 21

Fed. R. Civ. P. 23(a) ...................................................................................................21

Fed. R. Civ. P. 23(a)(4) ..........................................................................................21, 24

Fed. R. Civ. P. 23(b)(2)........................................1, 7, 8, 14, 15, 16, 17, 18, 19, 20, 21

Fed. R. Civ. P. 23(b)(3)..............................................................................2, 18, 19, 20

Fed. R. Civ. P. 23(e) ...........................................................................................2, 21, 23

Fed. R. Civ. P. 23(e)(2) ...........................................................................................23, 24

Fed. R. Civ. P. 23(e)(3) ...............................................................................................25

Fed. R. Civ. P. 23(e)(5) .................................................................................................2

Fed. R. Civ. P. 23(g) ....................................................................................................21

Model R. of Prof. Conduct 5.4(a)(4).............................................................................24

N.Y. CLS Jud. § 491 .....................................................................................................24

N.Y. GBL § 349.......................................................................................................18, 19

N.Y.S. R. Prof. Conduct 5.4(a) .....................................................................................24

Other Authorities

American Law Institute,
      Principles of the Law of Aggregate Litigation § 3.07(a) ....................................5, 7, 10, 13

Liptak, Adam,
      Doling Out Other People's Money,
      N.Y. Times (Nov. 26, 2007) .................................................................................10

Manual for Complex Litigation § 21.724 ......................................................................24

Redish, Martin H., Julian, Peter & Zyontz, Samantha,
      Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and
      Empirical Analysis,
      62 Fla. L. Rev. 617 (2010) ....................................................................................5

Tidmarsh, Jay,
   *Cy Pres and the Optimal Class Action*,
   82 Geo. Wash. L. Rev. 767 (2014) .......................................................................................6

**INTRODUCTION**

Plaintiffs ask this Court to approve a settlement that provides zero direct relief to the class. The settlement's "relief" comes in two forms. First, the settlement pays $1.75 million in *cy pres* relief to fund an entirely new third-party organization. *Cy pres* is, on its own, a suspect form of relief and therefore only appropriate when distributing the funds remaining in a settlement fund is infeasible. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007). Here, the *cy pres* was preferred *ex ante*, and the parties do not claim infeasibility.

At least two individuals who have business relationships with the American Federation of Teachers ("AFT")—a union group that is unusually involved in a case in which it is not a named party—will be involved in the new Public Service Promise ("PSP"). AFT's involvement raises red flags aplenty: It recruited named plaintiffs; funded the case; publicized the case; and now seeks a $500,000 fee even though it has not itself claimed an hour of legal work on the case. All of the class representatives are AFT members. Class counsel and the two PSP individuals have an ongoing client relationship with AFT. And, the settlement class is composed of student borrowers, while AFT has long been criticized for favoring teachers at the expense of students. The new PSP will perform work AFT already undertakes, in addition to lobbying and advocacy work, suggesting a complimentary mission that will expand the work of AFT or at least free up resources. Even without these conflicts of interest, the settlement should be rejected for improperly favoring *cy pres* over the class. *See* Section III.

Second, the settlement requires Navient to change its *future* business practices with respect to its communications and training regarding the Public Service Loan Forgiveness ("PSLF") program for three years. These changes will not benefit class members such as objector William Yeatman who have had their loans transferred to other servicers, left the public service sector, or paid off their loans. Certification under Rule 23(b)(2) is appropriate "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Plaintiffs initially sought

monetary damages and (b)(3) certification for the classwide unjust enrichment claim. Now the settlement waives claims for monetary damages brought as a class action, without affording class members any monetary relief. Injunctive relief does not befit the class and is inappropriate for these claims. Certification should be denied. *See* Section IV.

Certification is also improper for another reason. The terms—which provide no compensation and near valueless relief to the class while releasing class members' right to file a class action for money damages—evidence inadequate representation by the class representatives and class counsel, who recover large incentive fees and a hefty but partial reimbursement for AFT. The many entanglements among those charged with representing the class, AFT, and the *cy pres* recipient further compound adequacy problems. *See* Section V.

Separately, the allocation of all concrete settlement benefit to class counsel and the class representatives (over $650,000), combined with Navient's agreement not to challenge class counsel's fee request and the reversion of any amount below the request to the third-party *cy pres* recipient make the settlement unfair under Rule 23(e). *See* Section VI.

Finally, class counsel's fee request would constitute improper fee sharing with AFT and should be rejected in its entirety. Even if such fee splitting were allowed, AFT has not submitted evidence of any legal work on the class's behalf, and the benefit to the class is too small to support the half-million fee request. *See* Section VII.

## ARGUMENT

### I.    Objector is a member of the Settlement Class.

Objector William Merriwether Yeatman had FFEL or Direct Loans serviced by Navient during the class period, has been employed full-time by a qualifying public service employer for purposes of PSLF during that time, and spoke to a Navient customer service representative about the PSLF program and his eligibility. Decl. of William Yeatman ("Yeatman Decl.") ¶ 3. Yeatman therefore is a member of the class with standing to object to the settlement. Fed. R. Civ. P. 23(e)(5). Yeatman's business address is 1000 Massachusetts Ave. NW, Washington, DC

20001. His telephone number is (202) 216-1433. Yeatman Decl. ¶ 2.

Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF"), through attorney Anna St. John, represents Yeatman *pro bono*. St. John gives notice of her intent to appear at the fairness hearing, where she wishes to discuss matters raised in this Objection. CCAF represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See, e.g. Berni v. Barilla S.P.A*, 964 F.3d 141 (2d Cir. 2020) (sustaining CCAF's objection to improper settlement certification). CCAF's track record—and preemptive response to the most common false *ad hominem* attacks made against it by attorneys defending unfair settlements and fee requests—can be found in the Declaration of Theodore H. Frank. To avoid doubts about his motives, Yeatman is willing to stipulate to an injunction prohibiting him from accepting compensation in exchange for the settlement of this objection. Yeatman Decl. ¶ 6. Yeatman brings this objection through CCAF in good faith to protect the interests of the class, and his objection applies to the class. *Id.* ¶¶ 6, 9. He adopts any arguments filed or submitted to the Court regarding the settlement and fee request that are not inconsistent with this objection.

## II.   A court owes a fiduciary duty to unnamed class members.

A "district court ha[s] a fiduciary responsibility to the silent class members," *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987), and must act "with a jealous regard" for the rights and interests of such absent class members, *Goldberger v. Integrated Res.*, 209 F.3d 43, 53 (2d Cir. 2000) (cleaned up). The fiduciary role is necessary because unlike in bilateral settlements, "there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *In re Dry Max Pampers*, 724 F.3d 713, 715 (6th Cir. 2013). The representatives assume a fiduciary obligation to the class, and the Court, through its oversight responsibility, assumes a derivative fiduciary obligation to the class. *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982).

"The concern is not necessarily in isolating instances of major abuse, but rather is for

those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987) (internal quotation omitted). The Court's oversight role thus does not end at making sure that the parties engaged in arm's length settlement negotiations. "[T]he adversarial process—or … 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717. Due to the defendant's indifference as to the allocation of settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 718 (internal quotation omitted). That a mediator helped to ensure collusion-free arms-length negotiations, Dkt. 97 at 10, is thus not sufficient to ensure settlement fairness. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 235 (2d Cir. 2016). The proponents bear the burden to demonstrate the settlement is fair, reasonable, and adequate under Rule 23. *Ma v. Harmless Harvest*, 2018 WL 1702740, at *4 (E.D.N.Y. Mar. 31, 2018). And because the settlement was reached before certification, an even heightened standard of scrutiny applies. *E.g. Payment Card*, 827 F.3d at 235-36.

## III.   The settlement should be rejected because it improperly favors a third party chosen by conflicted representatives over class members through its *cy pres* provision.

The legal construct of *cy pres* has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *Nachshin v. AOL*, 663 F.3d 1034, 1038 (9th Cir. 2011). A classic example of *cy pres* is found in a 19th-century case where a court repurposed a trust that had been created to abolish slavery in the United States to instead provide charity to poor African-Americans. *Jackson v. Phillips*, 96 Mass. 539 (1867). Imported to the class action context, it has become an increasingly popular way to distribute settlement funds to non-class third parties—a practice that raises "fundamental concerns." *Marek v. Lane*, 571 U.S. 1003, 1006 (2013) (Roberts, C.J., respecting the denial of certiorari).

"Cy Pres means 'as near as possible,' and courts have utilized Cy Pres distributions

4

where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds." *Masters*, 473 F.3d at 436 (cleaned up). The Second Circuit recognizes *cy pres* should be limited to these circumstances. *Id.* (rejecting *cy pres* and endorsing then-draft American Law Institute, Principles of the Law of Aggregate Litigation on *cy pres*). *Cy pres* is "not a form of relief to the absent class members and should not be treated as such." *Frank v. Gaos*, 139 S. Ct. 1041, 1047 (2019) (Thomas, J., dissenting). Consistent with this non-compensatory nature, *cy pres* is not requested as relief in class complaints. Dkt. 32 at 128.

**A.    The settlement deploys the worst form of *cy pres* relief which has been rejected by courts nationwide for its failure to compensate the class.**

Courts recognize that, as a non-compensatory use of class funds, *cy pres* should not be selected by the parties as an *ex ante* remedy, but rather serve as an inferior avenue of last resort if it is not feasible to distribute funds to the class. *See, e.g.*, *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015) (many courts have "criticized and severely restricted" *cy pres*); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014) ("A *cy pres* award is supposed to be limited to money that can't feasibly be awarded to … the class members."); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("[The *cy pres*] option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly.").

*Ex ante cy pres* is defined to include awards "designated as part of a settlement agreement … where…the entire award was given to at least one charity with no attempt to compensate the absent class members." Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 657 n.171 (2010). *Ex ante cy pres* relief such as that proposed by the parties is especially troublesome—as compared to *ex post cy pres*, which makes third-party awards only after class members fail to cash checks that are distributed.

"This form of cy pres stands on the weakest ground because cy pres is no longer a last-resort solution for a problem of claims administration. The concern for compensating victims is ignored (at least unless the indirect benefits of the *cy pres* award flow primarily to the victims)."

Jay Tidmarsh, *Cy Pres and the Optimal Class Action*, 82 Geo. Wash. L. Rev. 767, 770-71 (2014). Courts have repeatedly rejected this sort of settlement. *See, e.g.*, *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017) (rejecting all-*cy pres* settlement); *Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) (same); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 485-86 (E.D.N.Y. 2016) (same); *Zepeda v. Paypal*, 2014 U.S. Dist. LEXIS 24388, at *21 (N.D. Cal. Feb. 24, 2014) (same); *Fraley v. Facebook*, 2012 WL 5838198, 2012 U.S. Dist. LEXIS 116526, at *4-*7 (N.D. Cal. Aug. 17, 2012) (same); *Zimmerman v. Zwicker & Assocs.*, 2011 WL 65912, 2011 U.S. Dist. LEXIS 2161 (D.N.J. Jan. 10, 2011) (same).

The settlement directs the full $1.75 million to a new organization without making any effort to compensate class members. Public Service Promise purportedly will provide education and student loan counseling to borrowers employed in the public sector, but that mission provides no restitution or other appropriate relief for class members, including for the unjust enrichment claims on which the settlement is based, to class members no longer eligible for PSLF, or for those who already understand the program terms. (Dkt. 98-1 at 11-12 & Ex. E).

By proposing an *ex ante cy pres* settlement, the settling parties have lost sight of the underpinnings of Article III. Rule 23 is not a substantive bounty-hunting provision that allows class counsel to treat the class as a free-floating entity existing only to permit counsel to operate as a private attorney general. Rule 23 is a procedural joinder device that aggregates real individuals with real claims into a class if certain prerequisites are satisfied. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). "Lead Counsel continues to have responsibilities to each individual member of the class even when negotiating." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985) (cleaned up). Counsel's duty to their client works hand in glove with the proper role of the judiciary—"providing relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring) (cleaned up). *Cy pres* is not consistent with this principle because it provides no redress to the parties in interest—class members. *See Graff*, 132 F. Supp. 3d at 485-86 (rejecting settlement because "*cy pres* payment

represent[ed] no measurable benefit to class members").

**B.     The settlement resorts to *cy pres* prematurely because it is feasible to distribute funds to the class.**

The Second Circuit has recognized the "last-resort rule" of *cy pres* to limit its application: "'Courts have utilized Cy Pres distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds.'" *Masters*, 473 F.3d at 436 (internal quotation omitted); *see also In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 141 n. 10 (2d Cir. 2005) ("In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds." (cleaned up)). On the other hand, "[i]f individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members." American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07(a); *see also Masters*, 473 F.3d at 436 (endorsing ALI principle).

The last-resort rule follows from the precept that because the settlement proceeds were "generated by the value of the class members' claims, [they] belong solely to the class members." *Klier*, 658 F.3d at 474. Accordingly, any *cy pres* distribution should occur only when it is no longer feasible to distribute funds to the class to ensure class members recover the fullest possible recovery. *See Xiao Ling Chen v. Xpresspa at Terminal 4 JFK, LLC*, 2019 WL 5792315, 2019 U.S. Dist. LEXIS 195988, at *56-*57 (E.D.N.Y. Aug. 20, 2019) ("it would be premature to approve the *cy pres* designee until after there has been a second distribution to the Class….").

Plaintiffs are wrong that their proposed settlement structure with *cy pres* is acceptable because the settlement is subject to (b)(2) certification such that monetary relief is not appropriate and class members are waiving "only" their claims for monetary damages brought as a class action. Dkt. 97 at 9; Dkt. 98-1 at 4. Monetary restitution is the appropriate relief for the unjust enrichment arising from Navient's capture of the class's loan servicing fees that form the basis for the requested certification as well as other claims. *See* Dkt. 120 at 22. Because class members are waiving all class-based monetary claims, then monetary relief is the appropriate

relief. *See Pampers*, 724 F.3d at 721 (vacating (b)(2) settlement that waived only class-based damages because class counsel appropriated the only "concrete and indisputable" cash benefit); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000) (same). As the parties well know, the settlement effectively releases all monetary claims because individual damages for the settled claims are unlikely to be large enough to support an individual case against Navient. *See* Dkt. 97 at 20; Dkt. 32 at 114; Section IV.

Plaintiffs cite out-of-circuit *Berry v. Schulman*, but *Berry* fundamentally conflicts with in-circuit precedent by allowing the provision of injunctive relief in the settlement to dictate the propriety of a (b)(2) certification, without regard to the class's claims. *Contrast* 807 F.3d 600, 609-10 (4th Cir. 2015) *with Berni*, 964 F.3d 141 *and Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 & n.1 (2d Cir. 2012). *Berry* also involved different facts—in particular, the finding that "[t]here was no realistic prospect that [defendant] could or would provide meaningful monetary relief to a class of 200 million people" and all class members necessarily had an ongoing relationship with the defendant because their personal information was housed within its databases. 807 F.3d at 615. *See also* Section IV.[1] Plaintiffs also cite *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, but the Third Circuit rejected the *cy pres* settlement certified under (b)(2) due to the release of claims for monetary damages and its designation of *cy pres* recipients with pre-existing relationships with class counsel and the defendant. 934 F.3d 316 (3d Cir. 2019).

The issue is thus whether the available $1.75 million settlement fund can feasibly be distributed to self-identifying class members through a claims process. Plaintiffs never suggest that distribution is infeasible. *See, e.g.*, Dkt. 120 at 16. The class contains "up to 324,900" class members.  Dkt. 120 at 21. As such, distribution is entirely feasible, and plaintiffs have forfeited

---

[1] In *In re NCAA Student-Athlete Concussion Injury Litigation*, also cited by plaintiffs, the court ordered further direct relief to the class before allowing any remainder for *cy pres* and required a research fund donation provided in the settlement to be made over and above any amounts defendant already planned to give. 314 F.R.D. 580, 607-08 (N.D. Ill. 2016).

any claim to the contrary. *See* Frank Decl. ¶¶ 13-14.

When courts have focused on the need for a class-action settlement to compensate class members rather than support third parties as *cy pres*, settlements have found ways to distribute money directly to the class. In *Park v. Thomson Corp.*, the parties initially proposed a settlement that would have paid more to *cy pres* than as direct class compensation. No. 05 Civ. 2931, 2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008). The parties revised the settlement to "distribute[] the entirety of the Fund to Class Members," with only residual sums distributed to a *cy pres* fund after the court expressed "concerns that the ethereal, albeit well intentioned, *cy pres* component of the Initial Settlement would overwhelm the purpose for the lawsuit—payment to the class." *Id.* at *4,*11-*12. A similar revision could be made here.

Other claims processes have achieved direct payment to class members even where counsel has claimed such payments infeasible. For example, *Fraley* involved a recovery of $10 million and a class of Facebook users that numbered over one hundred million. The parties initially proposed a *cy pres*-only settlement, alleging that class distributions "[were] simply not practicable in this case, given the size of the class." 2012 U.S. Dist. LEXIS 116526, at *6. The district judge refused to accept the proposal because "[m]erely pointing to the infeasibility of dividing up the agreed-to $10 million recovery … is insufficient … to justify resort to purely *cy pres* payments." *Id.* at *5. After the court denied approval, the agreement was then restructured as a claims-made settlement disbursing cash directly to class members. 966 F. Supp. 2d 939 (N.D. Cal. 2013). *Zepeda*, also cited above, followed a similar trajectory. *Compare Zepeda*, 2014 U.S. Dist. LEXIS 24388 (rejecting all-*cy pres* proposal), *with Zepeda*, 2017 WL 1113293, 2017 U.S. Dist. LEXIS 43672 (N.D. Cal. Mar. 24, 2017) (approving revised settlement providing real monetary relief to class members).

The nature of representational litigation under Rule 23 and the Due Process Clause of the U.S. Constitution necessitates prioritizing class relief even though it will always be more efficient to distribute settlement proceeds to a hand-picked charity; the settling parties can eliminate the bulk of administrative overhead costs that way. But maximizing efficiency cannot

be sufficient justification for a *cy pres*-heavy settlement. *BankAmerica*, 775 F.3d at 1065 ("flatly reject[ing]" the idea that *cy pres* recipients could ever be more "worthy" than class members).

**C.    The Court must scrutinize potential conflicts of interest and pre-existing relationships among class representatives, class counsel, Student Defense, and AFT as they relate to the *cy pres* recipient.**

Even worse, the *cy pres* recipient raises a host of conflict of interest concerns that independently require rejection of the settlement. "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) (internal quotation omitted). "Cy pres distributions present a particular danger" that "incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of negotiations." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012); *see also Nachshin*, 663 F.3d at 1039 (criticizing *cy pres* where "the selection process may answer to the whims and self interests of the parties [or] their counsel"); *Google Cookie*, 934 F.3d at 327 (vacating settlement approval where class counsel sat on the board of one *cy pres* recipient and defendant already donated to another, noting the "misalignment of interests" where a settlement's only monetary distributions are to class representatives, counsel, and *cy pres*).

Accordingly, a "cy pres remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection … was made on the merits." *ALI Principles* § 3.07 cmt. b; *accord Google Cookie*, 934 F.3d at 331 (adopting § 3.07 cmt. b standard). Without close analysis of such affiliations, "the cy pres doctrine … poses many nascent dangers to the fairness of the distribution process." *Nachshin*, 663 F.3d at 1038 (citing authorities). If a *cy pres* recipient is related to or otherwise benefits class counsel, counsel would be double-compensated: by indirectly benefitting from the *cy pres* distribution and recovering fees based upon the size of the *cy pres*. *SEC v. Bear, Stearns, & Co. Inc.*, 626 F. Supp. 2d 402, 415 (S.D.N.Y. 2009) (rejecting *cy pres*); Adam Liptak, *Doling Out Other People's Money*, N.Y. Times (Nov. 26, 2007).

The appearances of conflict here are unmistakable and polycentric. The settlement provides for the formation of a new organization in which individuals involved in its operations have overlapping relationships with class counsel and AFT—the union to which class representatives belong, which located the class representatives, which funded the litigation, and which is a current client of class counsel in other cases.

Every named plaintiff in this case is a member of AFT, which is defined as a "releasing class representative party" and which supported the litigation since before it was filed. *See* Dkt. 98-1 at 4; St. John Decl. Ex. 2 at 3. Class counsel and officers of Student Defense who will be involved in PSP have represented and continue to represent AFT in other cases. Daniel Zibel and Aaron Ament—the Student Defense officers who will have dedicate an unspecified amount of time to the new organization (Dkt. 98-6 at 4-5)—are counsel for AFT in *AFT v. DeVos*, No. 5:20-cv-455 (N.D. Cal.) and serve as co-counsel with class counsel for AFT in *Weingarten v. DeVos*, No. 1:19-cv-02056 (D.D.C.). At least one of them has had at least one other co-counsel relationship with class counsel. *See Wackenhut Corp. v. SEIU*, 593 F. Supp. 2d 1289 (S.D. Fla. Dec. 4, 2008). Both class counsel firms likewise represent AFT in other cases and thus have a financial incentive to remain in good favor with the group. *See, e.g.*, *Weingarten*, No. 1:19-cv-02056; *Pennsylvania v. Navient Corp.*, No. 19-2116, 2020 U.S. App. LEXIS 23531 (3d Cir. July 27, 2020); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020) (Selendy & Gay as counsel to *amicus* AFT in case litigated by Student Defense).

Further, AFT pre-paid legal fees to class counsel for the litigation and will be reimbursed only $500,000. *See* Dkt. 122 at 2; St. John Decl. Ex. 2 at 3. There's no such thing as a free lunch. AFT is gaining some benefit from this settlement; why else would it spend millions on the case? There are several possible reasons: This case supports and provides publicity for AFT's *Weingarten* litigation, as AFT claims that Navient "serviced borrowers eligible for PSLF on DeVos' behalf" as it goes after what it calls the "gross mismanagement and out-and-out sabotage

of the [PSLF] program by DeVos." St. John Decl. Ex. 3.[2] PSP appears poised to take over some of the PSLF-related work that AFT already does, freeing up its resources for other endeavors.[3] And, AFT has an ideological interest in the formation of a new organization to support its causes through advocacy and public policy work. While AFT gains all of these potential benefits from its investment in the case, the class "gain[s] nothing, yet lose[s] the right to the benefits of aggregation in a class." *Crawford*, 201 F.3d at 882.

As is its right, AFT focuses on benefiting its own members and their families—not on improving the lives of students more broadly. Indeed, AFT has long and fiercely been criticized for prioritizing teachers over students by, for example, defending policies that make it very difficult to remove ineffective teachers, opposing parental choice in schools, and supporting teacher strikes that disrupt student learning. *See* St. John Decl. Exs. 4-5.[4] Yet, there are indications that this group improperly influenced the result for a class of *student* borrowers.

Finally, the proposed recipient potentially violates the settlement itself: Section V.C.2 states, "In no event shall Plaintiffs propose a Cy Pres Recipient in which any of the Parties or their counsel or family members have a financial, commercial, or other pecuniary interest."

D. **Especially with no right to opt out, *cy pres* constitutes compelled speech in violation of the First Amendment.**

The *cy pres* settlement also violates the First Amendment rights of class members to refrain from supporting or associating with a third party's agenda and activities. It does so by having this Court order that funds belonging to the class members be paid to form an organization that will take policy positions and advance a legislative agenda without the class

---

[2] *Available at* https://www.aft.org/press-release/major-lawsuit-launched-against-betsy-devos-over-national-student-debt.

[3] For example, plaintiffs assert that Public Service Promise will provide an educational website as a PSLF resource. AFT already runs such a site. *See* http://www.forgivemystudentdebt.org/.

[4] *See, e.g.*, https://www.nytimes.com/2018/02/23/us/west-virginia-teachers-strike.html; https://www.influencewatch.org/labor-union/american-federation-of-teachers/.

members' consent or even an option for them to withhold their monetary support.

The forced speech comes about through that principle that "settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class embers." *Klier*, 658 F.3d at 474 (citing *ALI Principles* § 3.07 cmt. (b)). Though each class member's share of the fund is "small in amount, because it is spread across the entire [class]," the monetary support to the third parties is "direct." *Cahill v. PSC*, 556 N.E.2d 133, 136 (N.Y. 1990).

A third-party donation is an expression of support, association, and endorsement of the third party's agenda and activities. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1 (1976); *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1294 (3d Cir. 1994) (Alito, J.) ("Joining organizations that participate in public debate, [and] making contributions to them … are activities that enjoy substantial First Amendment protection."). Just as making a charitable contribution is First Amendment-protected expressive and associational activity, individuals concomitantly have a right to refrain from making such a donation—a right to not be compelled to engage in expressive and associational activity. *See, e.g.*, *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2464 (2018) ("Because the compelled subsidization of speech seriously impinges on First Amendment rights, it cannot be casually allowed."); *Amidon v. Student Ass'n of SUNY*, 508 F.3d 94, 99 (2d Cir. 2007) (recognizing Thomas Jefferson's view that "to compel a man to furnish contributions of money for the propagations of opinions which he disbelieves is sinful and tyrannical" (cleaned up)).

With this Court's order of approval giving effect to the settlement, the settlement forces absent class members to pay their damages to PSP. Dkt. 98-1 at 11. The settlement puts "First Amendment values … at serious risk" because, by approving the settlement, the court is compelling "a discrete group of citizens[] to pay special subsidies for speech" without their consent. *See United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001); *see also Keller v. State Bar of Cal.*, 496 U.S. 1 (1990) (attorney bar dues cannot be used for political or ideological purposes); *Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (recognizing right of individual to reject state measure that forces him "as part of his daily life … to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable"). Class members cannot

give the "clear[] and affirmative[] consent" required before money is taken from them to subsidize speech. *See Janus*, 138 S. Ct. at 2486 (silence is not consent and a waiver of First Amendment rights "cannot be presumed"). As a result, the settlement violates the principle that "except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." *Harris v. Quinn*, 573 U.S. 616, 656 (2014).

Perhaps worst of all, the association and speech the settlement forces class members to support is directly political. The term sheet states that PSP will engage in political advocacy by "advocat[ing] for administrative, regulatory, and legislative improvements to the PSLF program" and vaguely references "meaningful changes" and "reforms" it hopes to enact. Dkt. 98-6 at 2. The class includes individuals who, like Yeatman, may not wish to support additional, undefined government administration, regulations, subsidies, and spending—particularly when PSP is apparently endorsed by an organization whose views appear sharply ideological.[5] AFT also takes controversial positions on hot-button political issues that many class members disagree with and raise concerns about the neutrality of the advocacy work undertaken by a group founded by a lawsuit AFT funded and for which it apparently hand-picked class representatives and counsel. *See, e.g.*, St. John Decl. Exs. 7-9 (AFT resolutions "support[ing] a Green New Deal," "oppos[ing] privatization of public services," and supporting abortion access).

"In simple terms, the First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the interests of the person who does not want to pay." *Janus*, 138 S. Ct. at 2467.

## IV.    Class certification is impermissible under Rule 23(b)(2).

District courts must conduct a "rigorous analysis" to ensure compliance with the Rule 23 certification prerequisites. *Wal-Mart*, 564 U.S. at 351. Certification under (b)(2) is proper only

---

[5] For example, AFT gave 97-99% of its political donations to Democrats in every election cycle since 1990. *See* St. John Decl. Ex. 6, *available at* https://www.opensecrets.org/orgs/totals?id=D000000083.

when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Heightened attention is necessary for the (b)(2) certification the parties request because class members are not permitted to opt out. *See* Dkt. 98-1 at 7, § IV.2. As the party seeking class certification, plaintiffs "bear[] the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

Certification of the proposed settlement under Rule 23(b)(2) is improper because (1) not all class members will benefit from the proposed injunctive relief; and (2) the claims allege economic harm on behalf of the individual class members such that the class has an adequate remedy at law, yet the settlement provides only injunctive relief and waives class members' right to pursue any money damages in a class action. In short, (b)(2) certification is improper because the class members here are "victims of a completed harm" who "would be entitled to damages," but not every member has standing to seek injunctive relief. *Hecht*, 691 F.3d at 223-24.

A.      **Rule 23(b)(2) certification is improper for the retrospectively defined class.**

The Second Circuit recently expounded upon the rule that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. *Berni* recently held that "a class may *not* be certified under Rule 23(b)(2) if *any* class member's injury is not remediable by the injunctive or declaratory relief sought." 964 F.3d at 146 (emphasis in original). "Injunctive relief is only proper when a plaintiff, lacking an adequate remedy at law, is likely to suffer from injury at the hands of the defendant if the court does not act in equity." *Id.* (cleaned up). Because the class of former purchasers of Barilla pasta did not all stand to benefit from injunctive relief relating to disclaimer language on pasta packages, (b)(2) certification could not be maintained. *Id.*

Just as in *Berni*, the Court here "must determine if th[e] relief is proper for each and every member" of the class. 964 F.3d at 146. It is not. The settlement's injunctive relief relates

exclusively to business practices and communications relating to PSLF as applied to borrowers whose loans are serviced by Navient. Meanwhile, the settlement defines the class as all individuals from October 2007 to the present who had FFEL or Direct Loans serviced by Navient, who are employed by a public service employer eligible for PSLF, and who spoke to a Navient customer service representative about PSLF eligibility. Dkt. 98-1 at 5. Yet class members such as objector Yeatman have had their loans transferred to other servicers, left the public service sector, and/or paid off their balance entirely in the 13-year class period. Yeatman Decl. ¶ 3. These class members will not interact with Navient regarding PSLF in the future and will realize no benefit from Navient's plans to improve communications and call center representatives' training. *See* Dkt. 98-1 at 8-10. Where a portion of the class no longer has the relationship with the defendant that led to the alleged claims, (b)(2) certification is improper. *See Wal-Mart*, 564 U.S. at 365. As such, class members also lack the cohesiveness required for a certified (b)(2) class. They have no common interest in the proposed injunctive relief. All of the relief benefits borrowers whose loans will be serviced by Navient in the *future*, yet the class comprises borrowers whose loans were serviced by Navient in the past.

    *Berni* did not break new legal ground, but rather followed the consensus among courts that (b)(2) certification is improper when there is a mismatch between prospective injunctive relief and a retrospectively defined class.[6] *See, e.g.*, *Wal-Mart*, 564 U.S. at 365; *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010); *Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 406 (W.D.N.Y. 2013) (denying class certification where members had received telephonic messages in the past); *Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010); *Crawford*, 201 F.3d at 882. In fact, plaintiffs recognized the inapplicability of injunctive relief to a retrospectively defined class in their complaint. They defined a proposed nationwide injunctive class as, *inter alia*, those who "intend to contact Navient in the future regarding their eligibility

---

[6] Although *Wal-Mart* involved a litigation class certification rather than a settlement certification, *Berni* confirms that "that does not make its precedent any less applicable to this case." *Payment Card*, 827 F.3d at 241-42 (Leval, J., concurring).

for PSLF." Dkt. 32 at 102. But that class did not allege the unjust enrichment claims that underpin the settlement; it was the broader nationwide class that brought that claim and sought monetary restitution and on whose behalf the settlement was reached. *Id.* at 114; Dkt. 98-1 at 5.

The parties' attempt to distinguish *Berni* letters submitted to this Court is not based in fact. First, while plaintiffs assert that borrowers have a "perpetual relationship" with Navient, the reality is that many borrowers—like Yeatman—in the course of the 13-year class period, have had their loans transferred to other servicers or paid off their loans, thus ending their relationship with Navient, or they have left the public service sector such that they have no interest in PLSF or how Navient communicates about the program. While plaintiffs do not provide the number of class members who fall into these categories, Yeatman's experience and the very nature of borrowing and modern career paths show that the relationship between class members and Navient, and the PSLF program, is not as permanent as the parties suggest. *See* Dkt. 111 at 1-2; *see also* Dkt. 110 at 2. The parties themselves do not argue that such class members will benefit from the injunctive relief; they claim only (incorrectly) that they will benefit from the *cy pres* relief. Dkt. 111 at 2; Dkt. 110 at 2. This concession is fatal to (b)(2) certification under *Berni* and *Wal-Mart*. Finally, the parties' reference to the more complex PSLF program terms compared to the fill line in *Berni* cannot overcome the lack of benefit to a large swath of the class that will never interact with the PSP. Moreover, "[g]iven the litigation risk, [the defendant] is not apt to employ [the unlawful communications] again no matter what the settlement provides." *Crawford*, 201 F.3d at 882.[7]

## B. Rule 23(b)(2) certification is improper because class members have an adequate remedy of monetary relief.

Rule 23(b)(2) certification is also improper because the class alleges economic harm, and

---

[7] Out-of-circuit *Fresco v. Auto Data Direct, Inc.* cited by plaintiffs, cannot overcome the contrary authority in this circuit and others. Just as in *Berry*, all class members necessarily had an ongoing relationship with the defendant in *Fresco* because they claimed misuse of their personal information, and the court found the released damages claims were merely "incidental to the injunctive relief." 03-civ-61063, 2007 U.S. Dist. LEXIS 37863, at *8 (S.D. Fla. May 14, 2007).

those claims accrue on an individual basis. Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," as they are here. *Wal-Mart*, 564 U.S. at 360-61; *id.* at 362 ("[I]t [is] clear that individualized monetary claims belong in Rule 23(b)(3)."); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011) ((b)(2) certification "necessarily improper" for such claims); *see also Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1185 (2d Cir. 1995) ("Of course injunctive relief where an adequate remedy at law exists is inappropriate.").

Plaintiffs seek certification based on the unjust enrichment claims they alleged on behalf of a nationwide (non-injunctive relief) class in their complaint. Dkt. 97 at 20; Dkt. 120 at 21-22; *see* Dkt. 32 at 114. In a (b)(2) certification analysis, it is appropriate for a Court to analyze the complaint and remedy sought by the class. *Crawford*, 201 F.3d at 881. That analysis shows the monetary relief claim is far from incidental; rather, money damages are the predominant form of relief for the unjust enrichment claim due to Navient obtaining greater fees as a result of providing incorrect information to class members. Even if injunctive relief were available for unjust enrichment, "an injunction is generally unavailable where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Hecht*, 691 F.3d at 223-224 (cleaned up).

Plaintiffs alleged a monetary-based benefit conferred on Navient: "loan servicing fees," and claimed "it would be unequitable for Navient to retain the benefit of the loan servicing fees that borrowers would otherwise not have paid to Navient had Navient provided truthful and accurate information to borrowers regarding their student loans." Dkt. 32 ¶¶ 453, 456. And, in fact, plaintiffs sought monetary relief and (b)(3) certification. Dkt. 32 at 127-128. Plaintiff's complaint defined a nationwide class and a nationwide injunctive relief class, and it was only the nationwide class that alleged an unjust enrichment claim to prevent Navient from retaining the loan servicing fees they paid. Dkt. 32 at 102, 114. This is as it should be. "Such a past harm is of the kind that is commonly redressable at law through the award of damages." *Berni*, 964 F.3d at 147 (regarding allegations of common law unjust enrichment and GBL § 349(a)); *see also, e.g.*,

*Famular v. Whirlpool Corp.*, 2019 WL 1254882, 2019 U.S. Dist. LEXIS 44907, at \*24-\*25 (S.D.N.Y. Mar. 18, 2019) ((b)(3) certification of GBL § 349 and unjust enrichment claims for damages). "In general, remedies based on claims of unjust enrichment … are certainly quantifiable and subject to money damages, and would thus support a legal remedy." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1522 n.31 (S.D.N.Y. 1989). The additional fees for servicing class members loans by which Navient unjustly enriched itself are quantifiable and support money damages and are unsuited for injunctive relief. While plaintiffs may try to characterize restitution as a form of equitable relief rather than money damages, "[t]he Rule does not speak of 'equitable' remedies generally but injunctions and declaratory judgments." *Wal-Mart*, 564 U.S. at 365.

Because a monetary remedy is appropriate for the alleged unjust enrichment claims being settled, "[i]n light of *Wal-Mart*, Plaintiffs' damages claims cannot be certified under (b)(2)." *Janes v. Triborough Bridge & Tunnel Auth.*, 2011 WL 10885430, 2011 U.S. Dist. LEXIS 115831 (S.D.N.Y. Oct. 4, 2011). The amount of restitution—or money damages—due to each class member "will necessarily vary" based on the length and extent of each class member's borrowing relationship with Navient. *Id.* at \*16-\*17. *See also Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, 2013 U.S. Dist. LEXIS 184232, at \*69 n.28 (E.D.N.Y. July 17, 2013) (amount of restitution due "require[s] individualized assessments of damages"). Recovery of any incidental damages in a (b)(2) certification must "be more in the nature of a group remedy," while the measure of damages here is "dependent in … significant way[s] on the intangible, subjective differences of each class member's circumstances." *Allison v Citgo Petro. Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (cited by *Wal-Mart*, 564 U.S. at 365-66).

### C. A class action waiver of monetary claims cannot be included as part of a mandatory (b)(2) class release.

Compounding these problems, the settlement releases class members' right to bring any claims for monetary damages as a class action, despite achieving no monetary relief for the class. In a (b)(2) settlement, the release should confine itself to future claims for injunctive relief,

without encroaching on class members' right to bring claims for monetary relief in the future. *See Wal-Mart*, 564 U.S. at 362. Here, however, class counsel sought (b)(3) certification in their complaint, but then abandoned that effort and any monetary recovery for the class, while nevertheless agreeing to deny class members the right to recover money damages in a class action or other form of aggregate litigation. Dkt. 98-1 at 4, 16-17. Neither Rule 23(b)(2) nor the constitutional rule of *Phillips Petroleum v. Shutts* permit the waiver of a class member's ability to use the class action device to bring monetary claims when there is no right to opt out. Instead, absent class members have a due process right to opt out of class actions seeking monetary damages that are not merely incidental to any injunctive relief sought. *See Shutts*, 472 U.S. 797, 811-812 (1985); *see also Hecht*, 691 F.3d at 224 (rejecting (b)(2) settlement because class members with damages claims "had a due process right under *Shutts* to notice and the opportunity to opt out").

In *Crawford*, the court recognized the Seventh Amendment and due process rights that underlie the notice and opt-out provisions of Rule 23 for damages classes under (b)(3)—a core reason that (b)(2) class actions are permissible only where plaintiffs seek an "indivisible injunction" that will benefit the entire class. 201 F.3d at 881-82 (disapproving a near-identical waiver because class members "gain nothing, yet lose the right to the benefit of aggregation in a class"). This settlement is just as "substantively troubling." *Id.*

The settling parties have implemented what amounts to a limited carve-out scheme for certain claims when brought in an individual capacity. This scheme does not comport with the unabridged *Shutts* right of exclusion. *Cf. Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847 n.23 (1999) (limited opt-out mechanism doesn't satisfy *Shutts*). Instead, "absent class members will be precluded from bringing a class action for damages in the future, … without being given the chance to opt out." *Richardson v. L'Oreal USA*, 991 F. Supp. 2d 181, 199 (D.D.C. 2013) (refusing to certify (b)(2) settlement class notwithstanding the preservation of individual damages claims). The reason a defendant would settle for a release of class-wide damages claims but not individual damages claims is simple: the defendant's risk from individual actions is far

smaller, and the time and expense of such litigation in comparison to the likely recovery deters class members from bringing such suits.

A plaintiff whose lawsuit meets the requirements of Rule 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove*, 559 U.S. at 398. In attempting to end run *Wal-Mart*, the settling parties would deprive class members of that "categorical rule" with respect to monetary claims. That, a (b)(2) settlement may not do.

## V.   Class certification is separately impermissible due to inadequate representation of the class in violation of Rule 23(a)(4) and (g)(4).

Rule 23(a)(4) requires the parties to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." *See also* Fed. R. Civ. P. 23(g). Together, Rule 23(a)(4) and 23(g) demand that representatives manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). "The requirements of Rule 23(a) are applied with added solicitude in the settlement-only class context" because of the "heightened risk of conflating the fairness requirements of Rule 23(e) with the independent requirement of rigorous adherence to those provisions of the Rule designed to protect absentees." *Payment Card*, 827 F.3d at 235 (cleaned up); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

"Th[e] 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *Amchem*, 521 U.S. at 625. Class counsel must maximize class recovery; they cannot "agree[] to accept excessive fees and costs to the detriment of class plaintiffs." *Lobatz v. U.S. W. Cellular of Cal.*, 222 F.3d 1142, 1147 (9th Cir. 2000).

The preexisting conflicts of interest discussed above with respect to the *cy pres* recipient, AFT, the named plaintiffs, and class counsel are alone disqualifying. *See, e.g. In re Southwest Voucher Litig.*, 799 F.3d 701, 715 (7th Cir. 2015) (named plaintiff conflicted where there exists a close "professional and financial relationship" with class counsel); *Aliano v. CVS Pharm., Inc.*,

2018 WL 3625336, 2018 U.S. Dist. LEXIS 85986 (E.D.N.Y. May 21, 2018) (similar); *Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 1703375, 2013 U.S. Dist. LEXIS 56617, at *10 (N.D. Cal. Apr. 19, 2013) (nonparty's business dealings with class representatives and counsel "create a risk" they "will be motivated to take positions that favor [nonparty] to the detriment of other absent class members"). The settlement terms further reveal the possibility that the conflicts actually infected the class representation, resulting in subordinated class interests.

- The settlement funds a conflicted *cy pres* recipient when those funds instead could feasibly be distributed to class members.

- The only relief provided by the settlement is of no benefit to the many class members who are no longer working in the public interest sector, whose loans have been transferred to a different servicer, or who have paid off their loans.

- The settlement releases class members' right to bring monetary damages as a class action without providing any monetary compensation.

- AFT spent an untold amount funding the case, brought by the same attorneys representing it in multiple other cases, with representatives who are all members of AFT and who agreed to settlement terms creating a new organization to which other attorneys who represent AFT as co-counsel with class counsel will contribute.

Even without these indicia of conflict, the settlement terms alone evidence inadequate representation. The settlement pays to reimburse AFT $500,000, class representatives $15,000 each, and a third-party $1.75 million, while paying the class $0. And AFT's prepayment of class counsel's fees unmoors their fees from the class relief, raising concerns about the alignment of interests. Combined, these terms indicate inadequate representation. *E.g.*, *Gallego v. Northland Group*, 814 F.3d 123, 129 (2d Cir. 2016). The lack of any benefit for the class renders the settlement unfair and unreasonable. *Frank*, 139 S. Ct. at 1047 (Thomas, J., dissenting). Worse still, "the fact that class counsel and the named plaintiffs were willing to settle the class claims without obtaining any relief for the class—while securing significant benefits for themselves— strongly suggests that the interests of the class were not adequately represented." *Id.*

In the light of the meagerness of the class relief, the class representatives' large payment for themselves and class counsel's recovery of fees demonstrates they have not adequately

represented the class. *See Pampers*, 724 F.3d at 722. "A class settlement that results in fees for class counsel but yields no meaningful relief for the class is no better than a racket." *In re Subway Footlong Sandwich Mkt'g & Sales Practices Litig.*, 869 F.3d 551, 556 (7th Cir. 2017) (internal quotation omitted). In *Gallego*, 814 F.3d at 129, the Second Circuit noted that absentee class members' interests would not be best served by a settlement that released their claims for less than 17 cents. If a settlement that purports to release class claims for pennies displays inadequate representation, then so does this settlement, where the benefit to class members is $0.

## VI.     Even if the class is certifiable, the settlement is unfair under Rule 23(e).

Certification arguments can bleed into the corollary Rule 23(e)(2) question of whether a settlement is "fair, reasonable, and adequate." For example, if final injunctive relief is not appropriate respecting the class as a whole, a settlement that offers only injunctive relief will be *per se* inadequate. Similarly, when the terms of a settlement manifest inadequate representation, it follows that the settlement is often itself unfair. *See, e.g.*, *Payment Card*, 827 F.3d at 236.

There remain independent reasons that this Court should reject the settlement under Rule 23(e) even if it accepts that class certification itself is viable and that the *cy pres* terms are fair, reasonable, and adequate: The combination of opaque attorneys' fees, hefty incentive awards, and lack of monetary relief signals an unfair, lawyer-driven settlement. While AFT has spent an undisclosed sum on the case, we don't know whether AFT would have accepted less than $500,000 such that the overage could have supplemented the class's relief.

Plaintiffs rely on the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), to support settlement fairness, Dkt. 120 at 11, but satisfaction of the factors alone is not sufficient for approval. Second Circuit precedent requires courts to examine whether the class's "interests are somewhat encroached upon by the attorneys' interests." *Agent Orange*, 818 F.2d at 224; *e.g.*, *Plummer*, 668 F.2d at 660 (affirming settlement rejection where "preferential treatment" afforded named plaintiffs). Consistent with these principles, the Ninth Circuit's warning signs of a settlement that inequitably allocates proceeds between the class and class

representatives and counsel are relevant: (1) disproportionate fee allocation; (2) clear sailing; and (3) fee reversion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

These signs demonstrate the unfairness of the settlement. The class representatives negotiated a $15,000 payment for themselves while agreeing to $0 for the class. Class counsel appears to have recovered substantial fees from their "nonprofit partner" under an opaque fee arrangement. At the same time, they negotiated clear sailing for their requested fee "reimbursement," such that Navient will not object to the $500,000 request. Dkt. 98-1 at 15. And, if the Court were to reduce either such payment, the class will not recover the difference but instead the *cy pres* payment will simply increase. *See* Dkt. 98-1 at 12. These terms must be considered under Rule 23(e)(2)(c)(ii)-(iv) specifically and reveal the settlement's unfairness.

## VII.   AFT is not entitled to recover attorneys' fees from the settlement.

The attorneys' fee request should be rejected in its entirety because it violates the ethical rule against fee-splitting with non-attorneys. N.Y.S. R. Prof. Conduct 5.4(a). While some states permit fee-sharing for a non-profit that retained attorneys, *see* Model R. of Prof. Conduct 5.4(a)(4), New York has not adopted any such exception. Indeed, New York criminalizes the sharing of fees with a non-attorney in exchange for referring a client to the attorney. *See* N.Y. CLS Jud. § 491. To the extent the funding arrangement between class counsel and AFT is permissible, class counsel has the burden of submitting sufficient information to justify the award, and had a duty to disclose its funding and fee-splitting arrangement with AFT at the time it was made. *See Agent Orange*, 818 F.3d at 226; Manual for Complex Litigation § 21.724 at 338. Even if undisclosed fee-splitting arrangements were permissible, the fee request fails because plaintiffs have not submitted any evidence that AFT accrued a single hour of legal work on the case, thus violating the principle that "the distribution of fees must bear some relationship to the services rendered." *Agent Orange*, 818 F.3d at 223.

Class counsel cites a single case in support of their argument that AFT is entitled to be reimbursed in part for its outlay of fees and costs via the Court's award of attorneys' fees. Dkt.

122 at 7. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667-71 (S.D.N.Y. 2015), however, is inapposite. There, Weil Gotshal submitted a lodestar calculation with its fee request that showed a 25% reduction in hourly rates, reflecting its actual billings to the nonprofit client. There was no suggestion that an outside group pre-paid its fees and that Weil was transferring its fee award to partially reimburse that group. *Id.* at 670. This case would be comparable only if class counsel followed the traditional contingency path of fronting the litigation costs *for their client* and deferring any fees until a settlement was reached. Plaintiffs cite no authority for their apparent fee-splitting with AFT. And their claim that AFT's involvement "has been a matter of public record," Dkt. 122 at 2 n.2, does not suggest or demonstrate that such financial arrangement was disclosed to the Court as required by Rule 23(e)(3), L.R. 23.1, and *Agent Orange*.

In any event, even under a lodestar calculation, a fee award must be reasonable relative to the class benefit. *See* Section III. The settlement proponents have the burden of proving the quantum of benefit, and the relevant measure is the value to class members. *Pampers*, 724 F.3d at 719-20. The value to the class of the *cy pres* relief is $0. Plaintiffs provide no evidence of the value of the injunctive relief to the class members, though it too is of little value and certainly does not reach the nearly $1.4 million necessary to justify a $500,000 fee award.

## CONCLUSION

For the foregoing reasons, the Court reject the proposed settlement and fee award.

Dated: September 11, 2020

/s/ *Anna St. John*
Anna St. John
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K St. NW, Suite 300
Washington, DC 20006
Phone: (917) 327-2392
Email: anna.stjohn@hlli.org

*Attorney for Objector William Yeatman*

I, William Yeatman, am the objector. I sign this written objection drafted by my attorneys as required by the Class Notice ¶ 14.

_____
William Yeatman

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection and associated declarations and exhibits via the CM/ECF system for the Southern District of New York, thus sending the Objection and declarations and exhibits to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Additionally, she caused to be served via prepaid, first-class U.S. Mail a copy of this Notice of Intention to Appear upon the following:

Settlement Administrator
c/o Rust Consulting, Inc. – 6972
P.O. Box 44
Minneapolis, MN 55440-0044

Dated: September 11, 2020

/s/ *Anna St. John*
Anna St. John