UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| KATHRYN HYLAND, MELISSA GARCIA, | : | Civil Action No. 18-cv-9031-DLC |
| ELIZABETH TAYLOR, JESSICA SAINT- | : | |
| PAUL, REBECCA SPITLER-LAWSON, | : | MEMORANDUM OF LAW SUPPORTING |
| MICHELLE MEANS, ELIZABETH | : | OBJECTION OF CLASS MEMBER |
| KAPLAN, JENNIFER GUTH, MEGAN | : | RICHARD E. CARSON III |
| NOCERINO, and ANTHONY CHURCH, | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| NAVIENT CORPORATION and NAVIENT | : | |
| SOLUTIONS, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | x | |

1

**Table of Contents**

I.     Introduction ...................................................................................................................1

II.    Argument......................................................................................................................6

        A.      The Settlement Agreement's Prospective Injunctive Relief and Proposed
                Cy Pres Remedy Fail to Meaningfully Benefit the Settlement Class.....................6

                1.      A Class Cannot be Certified Under Rule 23(b)(2) Because Few
                        Settlement Class Members Stand to Benefit from the Proposed
                        Injunctive Relief ............................................................................................6

                2.      The Settlement Agreement's Prospective Injunctive Relief and
                        Proposed Cy Pres Remedy Cannot be Approved Because they are
                        Neither Intended Nor Likely to Benefit the Settlement Class .....................7

                3.      Cy Pres Provisions that Fail to Benefit the Class Cannot be
                        Approved ......................................................................................................10

        B.      Approval of the Settlement Agreement Would Harm the Settlement Class
                by Denying Settlement Class Members the Ability to Seek Redress from
                Navient and Would Subject them to this Court's Order Dismissing Most
                of the Named Plaintiff's Claims ...............................................................................12

        C.      Large Incentive Awards for Named Plaintiffs from a Common Fund
                Settlement that Offers No Similar Monetary Relief to Class Members are
                Red Flags Signaling both the Settlement's Inadequacy and Inadequacy of
                Representation ..........................................................................................................17

                1.      Large Incentive Awards for Named Plaintiffs from a Common
                        Fund Settlement that Offers No Similar Monetary Relief to Class
                        Members are Red Flags Signaling both the Settlement's
                        Inadequacy and Inadequacy of Representation .........................................17

                2.      Controlling Precedent Holds that Service Awards are Unauthorized
                        by Law and Contrary to Supreme Court Precedent....................................20

        D.      The American Federation of Teachers' Funding of this Litigation Raises
                Red Flags Concerning Class Counsel's Resulting Conflict of Interests that
                Should Preclude Class Certification and Settlement Approval..............................22

        E.      Class Notice is Deficient ..........................................................................................24

III.   CONCLUSION ...........................................................................................................25

# Table of Authorities

**Cases**

*Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.,*
393 F.2d 441 (2d Cir. 1968)..................................................................................................16

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
421 U.S. 240 (1975)..............................................................................................................21

*Arthur v. Nyquist,*
547 F.2d 7 (2d Cir. 1976)......................................................................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
547 F.3d 109 (2d Cir. 2008)..................................................................................................16

*In re Baby Products Antitrust Litig.,*
708 F.3d 163 (3d Cir. 2013)..................................................................................................11

*Bailey v. Great Lakes Canning, Inc.,*
908 F.2d 38 (6th Cir. 1990)...................................................................................................18

*In re BankAmerica Corp. Sec. Litig.,*
775 F.3d 1060 (8th Cir. 2015)...............................................................................................11

*Berni v. Barilla, S.p.A.,*
964 F.3d 141 (2d Cir. 2020)...........................................................................................4, 6-7

*Berry v. Schulman,*
807 F.3d 600 (4th Cir. 2015)............................................................................................12-13

*Bosse v. Oklahoma,*
137 S.Ct. 1 (2016).................................................................................................................21

*Calvo v. City of New York,*
No. 14-cv-7246, 2017 WL 4231431 (S.D.N.Y. September 21, 2017)....................................7

*Camreta v. Greene,*
563 U.S. 692 (2011)..............................................................................................................16

*Central R.R. & Banking Co. v. Pettus,*
113 U.S. 116 (1885).........................................................................................................5, 20

*Day v. Persels & Assocs.,*
LLC, 729 F.3d 1309 (11th Cir. 2013)...................................................................................13

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013)..................................................................................18, 20

*Flemming v. Barnwell Nursing,*
56 App.Div.3d 162, 865 N.Y.S.2d 706, (2008), *aff'd*
15 N.Y.3d 375, 912 N.Y.S.2d 504, 938 N.E.2d 937 (2010)........................................21

*Gortat v. Capala Bros., Inc.,*
949 F.Supp.2d 374 (E.D.N.Y. 2013)......................................................................5, 20

*Hadix v. Johnson,*
322 F.3d 895 (6th Cir. 2003).........................................................................................18

*Holmes v. Continental Can Co.,*
706 F.2d 1144 (11th Cir. 1983)......................................................................................17

*Hutto v. Davis,*
454 U.S. 370 (1982)........................................................................................................21

*Kaplan v. Rand,*
192 F.3d 60 (2d Cir. 1999).............................................................................................21

*Katz v. Donna Karan Co., L.L.C.,*
872 F.3d 114 (2d Cir. 2017)..............................................................................................7

*Kincade v. General Tire & Rubber Co.,*
635 F.2d 501 (5th Cir. 1981)......................................................................................5, 18

*Klier v. Elf Atochem North America, Inc.,*
658 F.3d 468 (5th Cir. 2011)..........................................................................................11

*Koby v. ARS Nat'l Services,*
846 F.3d 1071 (9th Cir. 1999)..................................................................................12, 16

*Machesney v. Lar-Bev of Howell, Inc.,*
No. 10-10085, 2017 WL 2437207 (E.D. Mich. June 6, 2017)......................................19

*Masholie v Salvator,*
182 Misc. 523, 46 N.Y.S.2d 596 (N.Y. Sup. Ct. 1944),
*mod. on other grounds,* 269 App.Div. 846, 55 N.Y.S.2d 395 (1945)..........................22

*Masters v. Wilhelmina Model Agency, Inc.,*
473 F.3d 423 (2d Cir. 2007)...........................................................................................10
*Melito v. Experian Mktg. Sols., Inc.,*
923 F.3d 85 (2d Cir. 2019).............................................................................................20

*Pearson v. NBTY, Inc.,*
772 F.3d 778 (7th Cir. 2014)..................................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
827 F.3d 223 (2d Cir. 2016)..................................................................................15

*Peterson v. U-Haul Co.,*
409 F.2d 1174 (8th Cir.), *modified,* 421 F.2d 837 (8th Cir. 1969)......................15

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985)........................................................................................15, 24

*Plummer v. Chem. Bank,*
688 F.2d 654 (2d Cir. 1982)..................................................................................17

*Plummer v. Chem. Bank,*
91 F.R.D. 434 (S.D.N.Y. 1981), *aff'd,* 668 F.2d 654 (2d Cir. 1982).....................17

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
490 U.S. 477 (1989)..............................................................................................21

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
944 F.3d 1035 (9th Cir. 2019)..........................................................................18-19

*Shane Group, Inc. v. Blue Cross Blue Shield,*
825 F.3d 299 (6th Cir. 2016)............................................................................18-19

*Smith v. Bayer Corp.,*
564 U.S. 299 (2011)..............................................................................................15

*In re Tamoxifen Citrate Antitrust Litig.,*
466 F.3d 187 (2d Cir. 2006)..................................................................................16

*Trustees v. Greenough.*
105 U.S. 527 (1882).........................................................................................5, 20

*United States v. Hatter,*
532 U.S. 557 (2001)..............................................................................................21

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011)..........................................................................6, 14, 15, 24

*Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.,*
76 F.R.D. 173 (S.D.N.Y.1977)..............................................................................17

*Zucker v. Occidental Petroleum Corp.,*
    192 F.3d 1323 (9th Cir. 1999)......................................................................23

**Statutes**

New York General Business Law §349................................................................15

**Federal Rules of Civil Procedure**

    23(a)(4)..........................................................................................................2, 23

    23(b)(2).....................................................................................................6, 15, 23

    23(b)(3)............................................................................................................15

    23(c)(2)(b).......................................................................................................23

    23(e)..................................................................................................................6

    23(e)(2).................................................................................................2, 10, 12, 19

    23(e)(2)(A)........................................................................................................2

    23(e)(2)(D).....................................................................................................4, 19

    23(e)(5)(A)........................................................................................................24

    23(g)...................................................................................................................23

    23(h)...................................................................................................................23

**Secondary Authorities**

American Bar Assocation,
    Model Rules of Professional Conduct (1983)...............................................23

American Law Institute,
    *Draft of the Principles of the Law of Aggregate Litigation*...........................10

Bryan A. Garner, et al.,
    *The Law of Judicial Precedent* 28-33 (2016)................................................21

6 J. Moore,
    *Federal Practice* (2d ed. 1974).....................................................................21

2 Herbert B. Newberg  & Alba Conte,
    *Newberg on Class Actions* (4th ed. 2002)....................................................10

5 William B. Rubenstein,
    *Newberg on Class Actions* (5th ed. Dec. 2019)............................................20

## I. Introduction

This case was filed on behalf of a class of persons whose student loans were serviced by Navient (and its predecessor Sallie Mae) while they were employed by "qualifying" (i.e. governmental or tax-exempt) employers, and who had telephone conversations with Navient concerning their repayment options. Navient profited by misleading Settlement Class members and preventing them from qualifying for the Public Service Loan Forgiveness ("PSLF") program. As a direct result of Navient's misconduct and deceptive advice, many Settlement Class members missed out on many years' credit for loan repayments toward the 120 repayments needed for loan forgiveness under the federal public service loan forgiveness ("PSLF") program. Some, such as Settlement Class member and objector Richard E. Carson III, face crushing liabilities in the hundreds of thousands of dollars—debt for which they could and would have taken steps to earn forgiveness, but for Navient's deception.

Instigated and financed by the American Federation of Teachers ("AFT"), this case was filed in October 2018 with the stated objective of seeking financial redress for teachers, government employees, and employees of nonprofit organizations, who were misled and victimized by Navient, which profited by its own wrongdoing. Although launched with ostensibly noble goals, the litigation has settled less than two years later on terms that recover nothing of substance for the Settlement Class and that, far from enabling Settlement Class members to hold Navient accountable, not only bar Navient's victims from obtaining injunctive relief themselves, but also prohibit their pursuit of monetary damages in any class or aggregate actions. As a practical matter this means that Settlement Class members who lack the means to finance their own individual litigation are effectively barred from seeking monetary damages. They are left out in the cold with no meaningful remedy at all.

The Settlement Agreement essentially allows Navient to get away with its wrongdoing, while ensuring that Navient's victims cannot pursue meaningful redress. If the Settlement Agreement is

approved, and the Settlement Class certified, class members will be worse off than if this action had never been filed. Such a settlement cannot be approved as "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2). Neither can the Court reasonably find that the Named Plaintiffs have "fairly and adequately protect[ed] the interests of the class," as Rule 23(a)(4) requires before a class may be certified, or that "the class representatives and class counsel have adequately represented the class," as Rule 23(e)(2)(A) requires before a settlement may be approved.

The Named Plaintiffs and Navient for some reason have agreed to a common-fund settlement that quite simply fails to benefit the class. Navient is to pay $2.4 million into what the Settlement Agreement describes as "a common fund." The Settlement Agreement specifies:

> "Settlement Fund" means the $2,400,000 total sum, excluding costs payable to the Settlement Administrator and costs associated with the Notice Plan, that Navient will pay in connection with this Agreement, deposited into a common fund for payment of (i) a distribution to the Cy Pres Recipient; (ii) the Incentive Awards; and (iii) the Fee Award.

DE98-1:5¶45 (Settlement Agreement).[1]

This is a common-fund settlement, no doubt. But it is a common fund with a twist, for Settlement Class members like Carson get nothing, while the ten Named Plaintiffs will receive $15,000 each, for a total of $150,000, and their attorneys—or rather, AFT—will get $500,000 in common-fund attorneys' fees, with the remaining $1.75 million of the Settlement Class's common fund going to a new nonprofit organization whose operation will benefit few, if any, Settlement Class members. The $500,000 in requested common-fund attorneys' fees will be used "to partially reimburse AFT for funding this litigation." DE122:2 (Fee Memorandum).

---

[1] Record citations in this memorandum are given as "DE" for "Docket Entry," followed by the PACER ECF docket entry number, with references to page numbers and/or paragraph within the document following a colon.

Although ten individual Named Plaintiffs expect to receive $15,000 apiece from this common-fund settlement, and a new nonprofit organization fostered by Plaintiffs' Counsel and the AFT—which financed the litigation—will get $1.75 million, the sad truth is that the common fund fails to benefit the Settlement Class. Absent Class Members like Carson get absolutely nothing from this common-fund settlement.

Named Plaintiffs try to patch this over by contending that although they procured a monetary common-fund settlement primarily benefitting themselves, AFT, and their new cy pres organization, a class may be certified (for purposes of settlement only) because the Settlement Agreement also provides some injunctive relief—by requiring Navient to adopt Enhanced Business Practices that supposedly will benefit a few Settlement Class members whose loans still are being serviced by Navient. That, however, is impermissible, for several reasons.

For one thing, many Settlement Class members' loans—perhaps most—no longer are serviced by Navient. Many Settlement Class members, like Carson himself, eventually realized that they were misled by Navient, and that they needed to consolidate their FFEL loans and move to a different loan servicer, in order to take advantage of PSLF. Carson and many thousands like him will accordingly have no further occasion to speak with Navient's customer-service personnel. In addition, some Settlement Class members, including Named Plaintiff Kathryn Hyland, have by now managed to pay their loans off in their entirety.[2] They too will have no further dealings with Navient, and will receive no benefit from the Enhanced Business Practices mandated by the Settlement Agreement's prospective injunctive relief. In their recently filed declarations, only two of the ten

---

[2] DE130:5¶20 (Hyland Decl.) ("On August 4, 2019, ... I was able to pay off the balance of my student loans.").

Named Plaintiffs claim their loans still are being serviced by Navient.[3] Thus, Navient's Enhanced Business Practices won't help most of the Named Plaintiffs, let alone most of the Settlement Class.

Prospective injunctive relief like this is barred by the Second Circuit's holding in *Berni v. Barilla, S.p.A.,* 964 F.3d 141, 149 (2d Cir. 2020), that "injunctive relief is not proper ... because not every member of the class stands to benefit." Even if it were somehow permitted by *Berni,* moreover, the relief is sorely inadequate—because it does nothing at all to benefit the many class members like Carson, who have been grievously injured and yet have no further dealings with Navient. Carson and others like him cannot justly be bound by such a settlement.

Neither does AFT's creation of a new cy pres organization to educate new borrowers on college campuses significantly help members of the Settlement Class, who have already been misled and grievously injured by Navient's misconduct. A cy pres distribution is warranted only if direct cash distributions to class members are not feasible, and only if the cy pres award will in fact benefit the Settlement Class. But cash payments to the Settlement Class most assuredly are feasible. And the proposed cy pres organization will not serve the interests of many Settlement Class members. The proposed settlement is fatally defective.

The special "service awards" of $15,000 apiece to the Named Plaintiffs are particularly offensive. With these special payments to be made only the Named Plaintiffs, their proposal clearly is not one that "treats class members equitably relative to each other." Fed.R.Civ.P. 23(e)(2)(D). Awards like this are prohibited by the fundamental rule that "by choosing to bring their action as a class action, the named plaintiffs 'disclaim[] any right to a preferred position in the settlement.'"

---

[3] Named Plaintiff Anthony Church from Florida asserts that "I am trapped with them as my servicer until I can meet the PSLF requirements," DE127:6¶27 (Church Decl.), and Named Plaintiff Jennifer Guth from Maryland attests that "I took out $140,000 in loans, which were, and to this day still are, serviced by Navient." DE129:2¶4 (Guth Decl.). The remaining eight Named Plaintiffs to do not claim that their loans are being serviced by Navient.

*Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 506 n.5 (5th Cir. 1981) (citation omitted). These so-called "service awards" give the Named Plaintiffs a strong incentive to abandon the interests of the class they are supposed to represent. Which is exactly what they've done. What's more, the payments are illegal: The Supreme Court's decisions establishing the common-fund doctrine—allowing a representative plaintiff whose efforts produce a common fund benefitting others to be reimbursed from the fund for reasonable litigation expenses and attorneys' fees—also clearly hold that any award compensating a named plaintiff for his or her personal service as a class representative is "illegally made." *Trustees v. Greenough.* 105 U.S. 527, 537-38 (1882); *accord Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885); *see Gortat v. Capala Brothers, Inc.,* 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013) (following *Greenough*).

What's most puzzling is **why** the Named Plaintiffs and Class Counsel would agree to such a deficient settlement. We know the Named Plaintiffs expect to get $15,000 apiece, of course. But Class Counsel ask for attorneys' fees of only $500,000, which they say is but a fraction of the $5,915,865.60 in billable time they put into the case. *See* DE122:8 (Fee Mem.) (citing DE125:9¶¶24, 26-68; Konanova Decl. ¶¶24, 26-28); *see also* DE125-9 (attorney billing rates); DE125-10 (attorney time entries). But it turns out they are not getting even that under the Settlement Agreement. Rather, they ask for "fees in the amount of $500,000 to partially reimburse AFT for funding this litigation." DE122:2. Clearly, it is AFT that financed the litigation. Quite likely it is AFT, having tired of paying millions of dollars in attorneys' fees, that decided to throw in the towel and settle on terms that fail to benefit the Settlement Class. Yet the Class Notice program failed to disclose that Class Counsel looked to AFT to pay its fees. That is a serious undisclosed conflict of interest, that precludes approval of the Settlement Agreement.

When all is said and done, the Settlement Agreement allows Navient to get away with its wrongdoing, while ensuring that Navient's victims cannot pursue meaningful redress. If the Settlement Agreement is approved, and a class certified, Settlement Class members will be worse off than if this action had never been filed. Such a settlement cannot be approved as "fair, reasonable, and adequate" under Rule 23(e).

## II. Argument

### A. The Settlement Agreement's Prospective Injunctive Relief and Proposed Cy Pres Remedy Fail to Meaningfully Benefit the Settlement Class

#### 1. A Class Cannot be Certified Under Rule 23(b)(2) Because Few Settlement Class Members Stand to Benefit from the Proposed Injunctive Relief

In *Berni v. Barilla, S.p.A.,* 964 F.3d 141, 143 (2d Cir. 2020), the Second Circuit held that a district court "err[ed] in certifying ... a Rule 23(b)(2) class because not all class members stand to benefit from injunctive relief, the kind of relief the proposed settlement primarily provides." The same is true here. Many class members, Objector Carson included, no longer have loans that are serviced by Navient, and so will not benefit from the touted improvements to Navient's business practices.

*Berni* notes that "the Supreme Court has counseled that 'Rule 23(b)(2) applies ***only*** when a single injunction or declaratory judgment would provide relief to each member of the class.'" *Berni,* 964 F.3d at 146 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360 (2011) (*Berni*'s emphasis). "Put another way, a class may not be certified under Rule 23(b)(2) if any class member's injury is not remediable by the injunctive or declaratory relief sought." *Berni,* 964 F.3d at 146. Here, injunctive relief governing Navient's servicing of student loans provides no benefit to Settlement Class members, such as Carson, whose loans no longer are serviced by Navient.

*Berni* holds that before certifying a class seeking such injunctive relief, a district court "must determine if that relief is proper for each and every member" of the proposed Settlement Class. *Berni,* 964 F.3d at 946. "Only if the injunctive relief is proper on such an individualized basis is the group as a whole then eligible for class certification under Rule 23(b)(2)." *Berni,* 964 F.3d at 146. Although "different class members can benefit differently from an injunction," *Bernie* holds that "no matter what, they must stand to benefit (it cannot be the case that some members receive no benefit while others receive some)." *Id.* at 147 n.28. Here, as in *Berni,* "injunctive relief is not proper ... because not every member of the class stands to benefit." *Id.* at 149.

To adequately represent the Settlement Class, moreover, requires that the Named Plaintiffs themselves possess Article III standing which must, at the class-certification stage, be demonstrated by a preponderance of the evidence.[4] Only two of the Named Plaintiffs claim they still have loans that are being serviced by Navient.[5]

This Court cannot, consistent with *Berni,* approve the Settlement Agreement.

> **2.      The Settlement Agreement's Prospective Injunctive Relief and Proposed Cy Pres Remedy Cannot be Approved Because they are Neither Intended Nor Likely to Benefit the Settlement Class**

The Settlement Agreement cannot be approved because the prospective injunctive relief and cy pres remedy in this case are not intended to benefit current Settlement Class members, and will not do so. The Named Plaintiffs themselves acknowledge these provisions are designed instead to

---

[4] *See Katz v. Donna Karan Co., L.L.C.,* 872 F.3d 114, 120 (2d Cir. 2017) ("the plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists"); *Calvo v. City of New York,* No. 14-cv-7246, 2017 WL 4231431, at *2-*3 (S.D.N.Y. September 21, 2017) ("at class certification, Plaintiffs must prove standing by a preponderance of the evidence.").

[5] *See supra* at 4 n.3. We know for a certainty that Kathryn Hyland lacks Article III standing to seek prospective injunctive relief even for herself, as her loans apparently were entirely paid off in 2019. DE124:3 (Service Awards Mem.); DE130:5¶20 (Hyland Decl.) ("On August 4, 2019, ... I was able to pay off the balance of my student loans.").

benefit students who may take out educational loans in the future. Named Plaintiff Saint-Paul, for example, tells us:

> I also agreed to settle on a class-wide basis rather than individually. I was willing to do so because I know that this settlement would help the little girl or high school graduate in STEM (Science, Technology, Engineering, and Mathematics) or Education who has a dream of dedicating her life to service. She will know that even though she may not have generational wealth to fund her education, she can rest assured that we fought for her and thousands of those in public service. For as long as PSLF is available, she does not have to choose a higher paying job just to pursue an education. She will have equal access to a quality education and can focus on her mission to serve.

DE134:7¶25 (Saint-Paul Service Award Decl.).

Named Plaintiff Saint-Paul confirms, moreover, that the cy pres relief is not designed to help current members of the Settlement Class, but rather is designed to help other individuals in the future: "I am proud that as a result of this settlement, ***a nonprofit will be created for future borrowers*** that are interested in pursuing PSLF." DE134:12¶46 (Saint-Paul Service Award Decl.) (emphasis added). "I hope that when the time comes for my students to choose a loan repayment plan, that they will be able to do so with an accurate understanding of how it will impact their future." DE134:14¶53 (Saint-Paul Decl.).

The cy pres award might "help build an infrastructure for future borrowers," as Saint-Paul describes it. DE134:12¶46. But it will do nothing to help the vast majority of the Settlement Class, who only lose rights if the Settlement Agreement is approved. Acknowledging that current Settlement Class members like herself will not benefit Saint-Paul insists: "Ultimately, it is not about me, but about ensuring that others will not continue to suffer under crushing debt that was promised to be forgiven." DE134:13¶49 (Saint-Paul Decl.).

The Settlement Agreement's cy pres provisions will not operate to benefit all class members—or even most of them. Named Plaintiffs assure us that "Public Service Promise will use

the funds to build a robust public education program across college campuses to provide instruction and information for students who are planning to go into public service and are interested in PSLF." DE120:18 (Final Approval Mem.). Such a program is too late for Settlement Class members who, like Carson, no longer are college students taking on debt, but who find themselves many years after graduation saddled with crushing debt because of Navient's past misconduct.

Named Plaintiffs' moving papers say the new cy pres organization's "attorneys and staff members will conduct in-person presentations and convene in-person and online trainings for career services offices across the country interested in conducting sessions for their students and alumni." DE120:18. "It plans to train law students across the country to serve as PSLF Project 'ambassadors,' to conduct trainings and answer questions from borrowers about PSLF, and to organize and expand a nationwide network of attorneys to assist borrowers through guidance on applications or assistance in challenging denials." DE120:18. But an inspection of the Settlement Agreement and Cy Pres Term Sheet shows that all these attorneys will be fundamentally hobbled, for they are barred from providing the help that Settlement Class members really need—assistance in litigation to vindicate their rights. What Settlement Class members like Carson most need is flatly forbidden: "The Parties agree that no portion of the cy pres award may be used by the Cy Pres Recipient to fund litigation." DE98-1:11§C.3 (Settlement Agreement). And if the Court determines the cy pres payment should go to some other organization, the Settlement Agreement mandates that none be considered "that has filed litigation or an enforcement action directly adverse to Navient within the past five (5) years." DE98-1:11§C.2 (Settlement Agreement); *see also* DE125-8:1¶¶2&5.4) (Term Sheet: cy pres organization's "activities will exclude litigation" and it "will not refer borrowers to Student Defense for purposes related to litigation").

Named Plaintiffs say: "In total, Public Service Promise expects that PSLF Project activities will reach as many as 11,250 borrowers annually." DE120:18. But the Settlement Class consists of over 300,000 people! And with Public Service Promise's focus on new borrowers on college campuses and in law schools, precious few of the 11,250 will be members of the Settlement Class. One thing is doubtless: the vast majority of the Settlement Class receives no benefit at all from the cy pres award.

Thus it is clear that neither the Settlement Agreement's provisions for prospective relief, nor its creation of a new cy pres organization, will materially benefit any significant portion of the Settlement Class.

### 3. Cy Pres Provisions that Fail to Benefit the Class Cannot be Approved

A cy pres distribution is simply inappropriate when Settlement Class members, who are readily identifiable and to whom funds could be distributed, receive nothing.

In *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007), the Second Circuit held that a district court must ensure that class members "have been compensated for their actual losses," before making a cy pres distribution. "'[C]ourts have utilized Cy Pres distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds.'" *Id.* (quoting 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §10:17 (4th ed. 2002)). None of those circumstances is present here. The Settlement Class is readily identifiable, encompassing only three or four hundred thousand persons. This is by no means a case "'in which direct distribution to individual class members is not economically feasible, or where funds remain after class members are given a full opportunity to make a claim.'" *Id.* at 436 (quoting ALI, *Draft of the Principles of the Law of Aggregate Litigation* §3.08, entitled "Cy Pres Settlements").

The Seventh Circuit similarly found "no validity to the $1.13 million cy pres award" to a nonprofit institute in *Pearson v. NBTY, Inc.,* 772 F.3d 778, 784 (7th Cir. 2014), because "[a] cy pres award is supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members."

The Fifth Circuit in *Klier v. Elf Atochem North America, Inc.,* 658 F.3d 468 (5th Cir. 2011), rejected a cy pres award of unclaimed funds from a class-action settlement, holding that if it is "logistically feasible and economically viable to make ... pro rata distributions to class members, the district court should do so." *Id.* at 475. A cy pres award would be permitted "only if it is not possible to put those funds to their very best use: benefitting the class members directly." *Id.*

In *In re BankAmerica Corp. Sec. Litig.,* 775 F.3d 1060 (8th Cir. 2015), the Eighth Circuit reversed a district court for ordering a cy pres distribution of $2.5 million. *Id.* at 1062, 1065. Noting "the substantial history of district courts ignoring and resisting circuit court cy pres concerns and rulings in class action cases," the Eighth Circuit ordered funds pegged for cy pres be distributed to class members. *Id.* at 1064. "'[A] cy pres distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members." *Id.* at 1064 & 1066 (quoting *Klier,* 658 F.3d at 475).

In *In re Baby Products Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013), the Third Circuit vacated approval of a class-action settlement that, due to a low claims rate, would have distributed most of the settlement fund to cy pres recipients. "Cy pres distributions," the Third Circuit held, "are inferior to direct distributions to the class because they only imperfectly serve the purpose of the underlying causes of action—to compensate class members." *Id.* at 169. "Barring sufficient justification, cy pres awards should generally represent a small percentage of total settlement funds." *Id.* at 174.

The $1.75 million cy pres distribution cannot be approved in this case.

**B.** **Approval of the Settlement Agreement Would Harm the Settlement Class by Denying Settlement Class Members the Ability to Seek Redress from Navient and Would Subject them to this Court's Order Dismissing Most of the Named Plaintiff's Claims**

Although the Settlement Agreement provides Settlement Class members with virtually nothing, it greatly impairs their ability ever to hold Navient accountable. This it does by prohibiting aggregate litigation for monetary relief, which as a practical matter is the only way Settlement Class members can hope to obtain redress. Approval of the Settlement Agreement, with certification of a class and entry of final judgment will, moreover, cause this Court's dismissal Order (which currently binds only the individual Named Plaintiffs) to merge into the final judgment and become binding on all Settlement Class members. These are harms that should not be inflicted on the Settlement Class.

This case is on all fours with *Koby v. ARS Nat'l Services,* 846 F.3d 1071 (9th Cir. 1999), where class members were to "g[i]ve up their right to assert damages claims against the defendant ***in any other class action***." *Id.* at 1073 (emphasis added). Here, as in *Koby,* "named plaintiffs [have] provided no evidence to suggest that many, if any, members of the proposed class would derive a benefit from obtaining the injunctive relief afforded by the settlement." *Id.* at 1080. Such a settlement cannot be found to be "fair, reasonable, and adequate" under Rule 23(e)(2). *See id.* at 1079-81.

Ignoring *Koby,* Named Plaintiffs say this case is "identical" to *Berry v. Schulman,* 807 F.3d 600, 607 (4th Cir. 2015). But in *Berry,* the court found that the injunctive relief provided a real benefit to the class, and "[t]here was no realistic prospect that [the defendant] could or would provide monetary relief to a class of 200 million people." *Id.* at 615. Here the class is far smaller. Monetary relief can be distributed to a class of three or four hundred thousand. And Navient is eminently capable of paying a large judgment. Judicially noticeable stock-market data shows that

Navient currently has a market capitalization of $1.67 billion, a price-earnings ratio of 5.61, and is paying its shareholders a dividend yield of over 7.4%. *See* Exhibit A hereto (09/10/2020 screencap of Google Finance stock market data for Navient). *Cf. Day v. Persels & Assocs., LLC,* 729 F.3d 1309, 1327 (11th Cir. 2013) (reversing settlement approval on account of an "erroneous finding that the defendants would be unable to satisfy a substantial judgment"). It is, moreover, by doubtful that *Berry* was correctly decided. It is not a controlling precedent for this Court in any event.

Although it formally preserves Settlement Class members' right to file lawsuits for monetary damages, the Settlement Agreement in substance denies the Settlement Class of the ability to pursue such relief by flatly barring aggregate actions. Plaintiffs' Counsel's own fee motion concedes that this action "'is on behalf of small claimants who lack the financial incentive to obtain a recovery on their own behalf'" because they cannot afford to pursue individual actions of their own. DE122:17-18 (Attorneys' Fee Motion) (citation omitted). The Named Plaintiffs' declarations, submitted to support final approval and service awards, tend to confirm that individual actions are beyond the financial means of most Settlement Class members. Named Plaintiff Hyland attests that "[b]efore participating in this action, I strongly considered retaining counsel to pursue a legal remedy against Navient, but did not have the funds to do so." DE130:10¶36 (Hyland Decl.). Named Plaintiff Kaplan similarly attests that "[b]efore participating in this action, I never would have pursued litigation against Navient because I lacked the means to do so." DE313:8¶32 (Kaplan Decl.). Named Plaintiff Means joins them: "Before I participated in this action, I had thought about bringing an action against Navient because I knew that their actions were completely wrong and likely illegal. But I did not pursue a legal action on my own because I do not have the resources to do so." DE132:10¶45 (Means Decl.). Named Plaintiff Spitler-Lawson similarly attests: "Before I participated in this action, I had thought about bringing an action against Navient. However, I knew that it was not a realistic

option because I did not have the resources to do so." DE135:10¶38 (Spitler-Lawson Decl.). In this respect, at least, the Named Plaintiffs are typical of the Settlement Class, whose members similarly lack the means to pursue individual lawsuits.

Further confirmation that individual lawsuits are not economically feasible is provided by application for common-fund attorneys' fees filed by one of the Named Plaintiffs' two law firms, Selendy & Gay, PLLC ("S&G"). S&G's fee memorandum tells us that "Lead Counsel's fees for this litigation were equal to $5,915,865.60, reflecting a roughly 20% reduction to regular rates." DE122:2 (Fee Mem.). "Lead Counsel's lawyers and staff together devoted 11,683.7 hours over the course of more than two years for a total of $5,915,865.60 in billable time, reflecting a roughly 20% reduction to regular rates, as shown by Lead Counsel's accompanying declaration and time sheets." DE122:8 (Fee Mem.) (citing DE125:9¶¶24, 26-68; Konanova Decl. ¶¶24, 26-28) *see* DE125-9 (attorney billing rates); DE125-10 (attorney time entries). These already-discounted billable fees come to roughly six million dollars despite the fact that the case did not proceed far enough for even a single Named Plaintiff to be deposed.[6] And that's not counting the billable time of the other firm prosecuting this case.[7]

Thus, the Settlement Agreement's bar of aggregate or class litigation for monetary damages amounts, in reality, to a release of individual class members monetary-damages claims. That is its practical effect.

---

[6] Named Plaintiffs' declarations supporting $15,000 service awards for each of them describe their own work supporting the litigation, but not one of them says anything about preparing for or sitting for a deposition. *See* DE127 (Church Decl.); DE128 (Garcia Decl.); DE129 (Guth Decl.); DE130 (Hyland Decl.); DE131 (Kaplan Decl.); DE132 (Means Decl.); DE133 (Nocerino Decl.); DE134 (Saint-Paul Decl.); De135 (Spitler-Lawson Decl.); DE136 (Taylor Decl.).

[7] The other firm, Philipps, Richard & Rind, P.A. ("PR&R"), "does not intend to file" its own request for fees. DE122:2 (Fee Mem.).

In *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 364 (2011), the Supreme Court held that claims for monetary relief cannot be certified under Rule 23(b)(2) because of the possibility that "individual class members' compensatory-damages claims would be precluded by litigation they had no power to hold themselves apart from." *Id.* at 364. "If a class may not even be certified because of the risk that adjudication of its rights might violate the due process rights of its members by forcibly depriving them of claims, then necessarily an adjudication of a class's rights that in fact forcibly deprives the members of their claims is also unacceptable." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 827 F.3d 223, 241–42 (2d Cir. 2016).

The fact that individual actions for monetary damages are not economically viable means that the Settlement Agreement effectively bars such actions, making it subject to Rule 23(b)(3), under which class members are entitled to direct notice and an opportunity to opt out. *See* Fed.R.Civ.P. 23(b)(3); *Wal-Mart,* 564 U.S. at 362-63; *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). A Rule 23(b)(2) class cannot be certified because the Settlement Agreement in its real effect operates to bar Settlement Class members' monetary damages claims.

The Settlement Agreement harms Settlement Class members in a further way, should any in fact choose to purse claims for monetary damages in individual actions. As things currently stand, absent Settlement Class members are not bound by this Court's July 8, 2019, Order dismissing most claims—indeed, all of them but those arising under New York's General Business Law §349. DE53. Without certification of a Settlement Class, this Court's dismissal order can have no prejudicial effect on the rights of absent class members: "Neither a proposed, nor a rejected, class action may bind nonparties." *Smith v. Bayer Corp.,* 564 U.S. 299, 315 (2011). Neither could this Court's dismissal Order have much stare decisis effect. "Federal court decisions in diversity cases have no precedential value as state law and only determine the issues between the parties." *Peterson v. U-*

*Haul Co.,* 409 F.2d 1174, 1177 (8th Cir.), *modified,* 421 F.2d 837 (8th Cir. 1969). And, of course, district court decisions "are not precedential in the technical sense," for they "create no rule of law binding on other courts." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 547 F.3d 109, 112 (2d Cir. 2008). "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene,* 563 U.S. 692, 709 n.7 (2011).

If the Settlement Agreement is approved and the Settlement Class is certified, however, this Court's dismissal Order will merge into the final judgment, thereby binding all Settlement Class members and barring their litigation of any of the claims that this Court dismissed. *See Arthur v. Nyquist,* 547 F.2d 7, 9 (2d Cir. 1976) ("an interlocutory order from which no appeal has been taken merges into the final decree"); *Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.,* 393 F.2d 441, 444 (2d Cir. 1968) ("all interlocutory orders and decrees are merged into the final order of the district court"). The Settlement Agreement does not ask this Court to vacate its dismissal Order in order to avoid this result—perhaps because "a '[s]ettlement [a]greement which [is] contingent on the vacatur of [a prior] district court judgment' is 'held to be invalid in nearly all circumstances.'" *ATSI Commc'ns,* 547 F.3d at 112 (quoting *In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 194 (2d Cir. 2006)).

Approval of the Settlement Agreement will harm class members by denying them the ability to pursue aggregate actions and by saddling them with the burden of this Court's July 8, 2019, dismissal Order. A settlement that harms them thus, without providing any meaningful benefits, cannot be approved as fair, reasonable, and adequate. *See Koby,* 846 F.3d at 1079-81.

**C. Large Incentive Awards for Named Plaintiffs from a Common Fund Settlement that Offers No Similar Monetary Relief to Class Members are Red Flags Signaling both the Settlement's Inadequacy and Inadequacy of Representation**

Carson objects to the payment of $15,000 apiece as "service awards" to reward the ten Named Plaintiffs for sacrificing the interests of other class members who receive no monetary relief under the Settlement. Such awards are not authorized by any statute or rule. They create perverse incentives, inducing representative plaintiffs to compromise the other class members' interest. And they are barred by Supreme Court precedent.

**1. Large Incentive Awards for Named Plaintiffs from a Common Fund Settlement that Offers No Similar Monetary Relief to Class Members are Red Flags Signaling both the Settlement's Inadequacy and Inadequacy of Representation**

"Where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class." *Plummer v. Chem. Bank,* 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982). "While there may be circumstances in which additional benefits to the named plaintiffs may be justified, such disparities must be regarded as prima facie evidence that the settlement is unfair to the class ... and a heavy burden falls on those who seek approval of such a settlement." *Id.* at 442 (S.D.N.Y. 1981); *accord, e.g., Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir. 1983); *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.,* 76 F.R.D. 173, 180-81 (S.D.N.Y.1977).

The named plaintiffs in *Plummer* argued that they were entitled to receive cash awards because they had initiated complaints with the EEOC, and then filed the class action. The Second Circuit held "objections to plaintiffs' preferential treatment are not satisfactorily answered with the argument that plaintiffs were the ones who filed charges with the Equal Employment Opportunity Commission and thereafter became the named party plaintiffs." *Plummer v. Chem. Bank,* 688 F.2d

654, 660 (2d Cir. 1982). "There is nothing in the record to show that plaintiffs were discriminated against in any greater or different manner than were other class members." *Id.* at 660. Here, of course, there is nothing to show that the Named Plaintiffs suffered more at Navient's hands than did hundreds of thousands of other Settlement Class members.

Named Plaintiffs' service awards run afoul of longstanding precedent holding that "by choosing to bring their action as a class action, the named plaintiffs 'disclaim[] any right to a preferred position in the settlement.'" *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 506 n.5 (5th Cir. 1981) (citation omitted); *accord Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). Large incentive awards "raise serious red flags that the defendants may have tacitly bargained for the named plaintiffs' support for the settlement by offering them significant additional cash awards." *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1057 (9th Cir. 2019) (vacating settlement where two named plaintiffs were to receive incentive awards of $20,000 apiece).

The Sixth Circuit has oft "expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003)); *accord Shane Group, Inc. v. Blue Cross Blue Shield,* 825 F.3d 299, 311 (6th Cir. 2016). The Sixth Circuit thus holds that where, as here, applicants for such an award fail to "provide the district court with specific documentation—in the manner of attorney time sheets—of the time actually spent on the case by each recipient of an award," the district court "has no basis for knowing whether the awards are in fact 'a *disincentive* for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]'" *Shane Group,* 825 F.3d at 311 (quoting *Dry Max,* 724 F.3d at 722) (court's emphasis). Here, detailed time records are absent,

with the Named Plaintiffs offering only after-the-fact guesses about how many hours they spent on the case.[8]

The $15,000 service awards accordingly raise concern about both adequacy of representation, and the adequacy of the settlement, thereby precluding class certification and settlement approval. *See Shane Group,* 825 F.3d at 310-311; *Machesney v. Lar-Bev of Howell, Inc.,* No. 10-10085, 2017 WL 2437207, at *12 (E.D. Mich. June 6, 2017) (named plaintiff's request for incentive award of $15,000 where ordinary class members would receive only $500 apiece from settlement proceeds "makes the Court question whether Machesney is an adequate class representative and should continue on as the named plaintiff in this class action").

It is no answer to say that the $15,000 service awards are paid in consideration for releasing the Named Plaintiffs' own personal claims for individual monetary damages. Cutting such a side deal to benefit themselves invalidates the settlement. *See Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1056-58 & n.19 (9th Cir. 2019) (vacating class-action settlement proposing to pay two named plaintiffs $20,000 apiece "for what is essentially a side settlement between themselves and the defendants").

---

[8] DE127:4¶16 (Church Decl.) (388 hours); DE128:4¶13 (Garcia Decl.) (62 hours); DE129:4¶14 (Guth Decl.) ("between 130 and 170 hours"); DE130:4¶16 (Hyland Decl.) ("approximately 170 hours"); DE131:3¶12 (Kaplan Decl.). (56 hours); DE132:4¶13 (Means Decl.) ("approximately 58 hours"); DE133:5¶21 (Nocerino Decl.) ("approximately 108 hours"); DE134:5¶18 (Saint-Paul Decl.) ("approximately 153"); DE135:5¶16 (Spitler-Lawson Decl.) ("approximately 105 hours"); DE136:3¶12 (Taylor Decl.) ("approximately 58 hours"). A $15,000 service award comes to $267 an hour for the 56 hours that Named Plaintiff Kaplan spent on the case, $258 an hour for the 58 hours apiece that Named Plaintiffs Means and Taylor say each devoted to the litigation, and $241 an hour for the 62 hours that Named Plaintiff Garcia claims. Named Plaintiff Church, on the other hand, claims to have put 388 hours into the case, DE127:4¶16 (Church Decl.), which comes to only $38.66 an hour. Named Plaintiffs offer no explanation for why the service awards are untethered from the hours of service each Named Plaintiff claims to have provided. The payments apparently are being made for some other reason.

A Settlement Agreement paying $15,000 apiece to ten Named Plaintiffs and nothing to the rest of the Settlement Class does not comport with Rule 23(e)(2)(D)'s requirement that "the proposal treats class members equitably relative to each other. Neither can it be approved under Rule 23(e)(2) as "fair, reasonable, and adequate." *See Roes 1-2,* 944 F.3d at 1056-58 & n.19.

**2. Controlling Precedent Holds that Service Awards are Unauthorized by Law and Contrary to Supreme Court Precedent**

The $15,000 service awards are objectionable for the further reason that they are unauthorized by law and are, in fact, flatly prohibited by controlling precedent.

Although Named Plaintiffs cite numerous nonprecedential district court opinions awarding "service awards" or "incentive awards" for service as class representatives, such awards are not authorized by statute, or rule, or by any controlling precedent. Under the heading "§17:4. **Legal basis for incentive awards**," the leading treatise on class actions states:

> It might be most apt to leave this section of the Treatise blank as Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards. The judiciary has created these awards out of whole cloth. In doing so ... few courts have paused to consider the legal authority for incentive awards. The Sixth Circuit's observation that "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design" therefore accurately describes the judiciary's attention to the legal basis for making incentive awards.

5 William B. Rubenstein, *Newberg on Class Actions* §17:4 (5th ed. Dec. 2019) (quoting *In re Dry Max Pampers Litig.,* 724 F.3d 713, 722 (6th Cir. 2013)).

Not only are they unauthorized by law, "service Awards" are flatly illegal in common-fund cases such as this. The Supreme Court specifically held that such payments are "illegally made" under the common-fund doctrine that it established in *Trustees v. Greenough.* 105 U.S. 527, 537-38 (1882). A representative plaintiff's "claim to be compensated, out of the fund or property recovered, for his personal services and private expenses was rejected as unsupported by reason or authority." *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885); *accord, e.g., Crutcher v. Logan,*

102 F.2d 612, 613 (5th Cir. 1939) ("[t]here can be no compensation for personal services" under the common-fund doctrine of *Greenough*); *Gortat v. Capala Brothers, Inc.,* 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013)(following *Greenough*). Unless *Greenough* can be meaningfully distinguished, *cf. Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 96 (2d Cir. 2019), its holding necessarily controls.

But *Greenough*'s holding is clear. A class representative cannot claim reimbursement from a common-fund settlement for his or her own service on behalf of the class. And lower courts are not at liberty to disregard a directly controlling Supreme Court decision such as *Greenough.* Even if the high-court precedent "appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989); *accord, e.g., Bosse v. Oklahoma,* 137 S.Ct. 1, 2 (2016); *United States v. Hatter,* 532 U.S. 557, 567 (2001); *see generally* Bryan A. Garner, et al., *The Law of Judicial Precedent* 28-33 (2016). "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis,* 454 U.S. 370, 375 (1982).

And if, as it happens, state law should control because this is a diversity action asserting only state-law claims,[9] "New York law does not authorize incentive awards for named plaintiffs in class actions." *Flemming v. Barnwell Nursing,* 56 App.Div.3d 162, 166, 865 N.Y.S.2d 706, 709(2008), *aff'd* 15 N.Y.3d 375, 912 N.Y.S.2d 504, 938 N.E.2d 937 (2010). In adhering to this rule, *Flemming* invokes the

---

[9] *Cf. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 n.31 (1975) ("'[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'") (quoting 6 J. Moore, *Federal Practice* 54.77(2), pp. 1712-13 (2d ed. 1974)); *Kaplan v. Rand,* 192 F.3d 60, 70 (2d Cir. 1999) (attorneys' fees governed by state law when diversity case settles).

policy arguments against incentive awards. Class representatives may be tempted to accept suboptimal settlements at the expense of the remaining class members in exchange for special awards in addition to their share of the recovery, thus undermining their effectiveness as fiduciaries of the class .... Some individuals may commence spurious class actions with the expectation of settlements leading to compensation in the form of incentive awards.

Id. (citation omitted); *see also Masholie v Salvator,* 182 Misc. 523, 525- 526, 46 N.Y.S.2d 596, 599 (N.Y. Sup. Ct. 1944) (following *Greenough*), *mod. on other grounds,* 269 App.Div. 846, 55 N.Y.S.2d 395 (1945).

The $15,000 incentive awards are unauthorized by any statute or rule, and are illegal under decisions of the United States Supreme Court and the courts of New York.

**D.      The American Federation of Teachers' Funding of this Litigation Raises Red Flags Concerning Class Counsel's Resulting Conflict of Interests that Should Preclude Class Certification and Settlement Approval**

The fact that the litigation was funded by AFT, which paid Class Counsel's attorneys' fees as the litigation progressed, raises further problems that preclude class certification and settlement approval.

For one thing, Class Notice failed to reveal Class Counsel's dependency on AFT. Athough the Memorandum Supporting Preliminary Approval said that "S&G partners' representative engagements include: •American Federation of Teachers, a public servants union," it failed to disclose the union's role in funding this litigation. DE97:23 (Preliminary Approval Motion). The Memorandum for Final Approval of the settlement says nothing at all about the AFT's involvement. *See* DE120.

Only Class Counsel's application for common-fund attorneys' fees reveals that they received "up-front payment of legal fees by the American Federation of Teachers ('AFT'), Class Counsel's non-profit partner who sponsored this litigation on behalf of the entire Class and the Class Representatives (who are AFT members)." DE122:1 (Fee Application). They say "Lead Counsel's

fees for this litigation were equal to $5,915,865.60, reflecting a roughly 20% reduction to regular rates," DE122:2, adding in a footnote that "AFT's involvement with this litigation has been a matter of public record." DE122:2n.2. "Accordingly, S&G respectfully requests final approval of the Application for reasonable fees in the amount of $500,000 to partially reimburse AFT for funding this litigation." DE122:2. "Notably, that AFT made a significant investment in this litigation does not undermine the fees request," they add. DE122:7.

Generally speaking, he who pays the piper calls the tune. Yet it is the Settlement Class, and not the AFT, to whom Class Counsel owe a solemn fiduciary duty. They cannot abandon this litigation on account of the fact that AFT has lost interest in paying for it. "Class Counsel must fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g).

The Ninth Circuit has observed that rules of professional conduct mandate "a 'lawyer shall not accept compensation for representing a client from one other than the client unless: ... the client consents ...; [and] there is no interference with the lawyer's independence of judgment.' As the official comment says, '[w]here the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.'" *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1327 (9th Cir. 1999) (quoting ABA, Model Rules of Professional Conduct Rule 1.8(f) & cmt. (4) (1983)). The Settlement Class has not consented. Named Plaintiffs and Class Counsel failed even to inform the Settlement Class of AFT's funding, and likely control, of this litigation, let alone to seek the Settlement Class's consent.

It almost goes without saying that he who pays the piper calls the tune. If [f]ee awards are a powerful influence on the way attorneys initiate, develop, and conclude class actions," as the Advisory Committee Note to the 2003 Amendment to Rule 23(h) observes, then so is the fact that a class action has been entirely funded by a third party—here AFT.

**E. Class Notice is Deficient**

Notice to the Settlement Class is deficient in several respects.

Because certification under Rule 23(b)(2) is clearly inappropriate, and as the Settlement Agreement bars Settlement Class members from pursuing aggregate actions for monetary relief, any certification of a class should be under Rule 23(b)(3) and subject to Rule 23(c)(2)(B)'s requirement that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Settlement Class members must be given an opportunity to opt out of the Settlement Agreement. *See Wal-Mart,* 564 U.S. at 362-63; *Shutts,* 472 U.S. at 812.

The Settlement Class is defined in terms of individuals whose student loans were serviced by Navient since October 1, 2007. Yet no organization with the name Navient even existed until 2014. The Class Notices fail to advise Settlement Class members that the name "Navient" is being used to cover Navient's predecessor, Sallie Mae. The Class Notice thus fails to advise Settlement Class members that they are releasing claims based on conduct of Navient's predecessor Sallie Mae.

Although the Long Form Class Notice identifies detailed information that it requires to be included in any objection, it fails to specify that the "objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class," as required by Federal Rule of Civil Procedure 23(e)(5)(A). *See* DE126-1:6 (Long Form Notice).

The Class Notice suggests that under the Proposed Settlement, Settlement Class Members will be free to file their own action for monetary relief. It says that "if you believe you suffered monetary damages as a result of Defendants' conduct you may bring a lawsuit at your own expense to pursue that claim on an individual basis." DE126-2:1 (Long Form Notice). The Long Form Notice says that "you will still have the right to file an individual lawsuit against Navient for actual money damages that you claim resulted from similar conduct." DE126-2:5§10 (Long Form Notice). But the

Class Notices fail to disclose that with class certification and with entry of final judgment, this Court's July 8, 2019, Order dismissing most claims, DE53, will bind them, limiting their ability to litigate individual claims. *See supra* at 15-16.

Finally, and perhaps most importantly, the Class Notice program fails to disclose to members of the Settlement Class that this litigation was entirely funded, and likely controlled, by the AFT. It also fails to seek their consent. *See supra* at 22-23.

## III. CONCLUSION

For all the foregoing reasons, the motions for class certification and final settlement approval, for service awards, and for attorneys' fees, should be denied.

DATED: September 11, 2020

Eric Alan Isaacson (pro hac vice)

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
Telephone: (858) 263-9581

Attorney for Class Member and Objector  ..
Richard E. Carson III