ka22HylH

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   KATHRYN HYLAND, et al.,

4                    Plaintiffs,              New York, N.Y.

5            v.                               18 Civ. 9031 (DLC)

6   NAVIENT CORPORATION, et al.,

7                    Defendants.

8   ------------------------------x          Teleconference

9                                            Fairness Hearing

10
                                             October 2, 2020
11                                           3:10 p.m.

12  Before:

13                      HON. DENISE L. COTE,

14                                           District Judge

15

16                         APPEARANCES

17

18  SELENDY & GAY, PLLC
         Attorneys for Plaintiffs
19  BY:  FAITH E. GAY
         YELENA KONANOVA
20

21  PHILLIPS RICHARD & RIND, P.A.
         Attorneys for Plaintiffs
22  BY:  MARK RICHARD

23

    COVINGTON & BURLING LLP
24       Attorneys for Defendants
    BY:  ANDREW A. RUFFINO
25       ASHLEY M. SIMONSEN


                SOUTHERN DISTRICT REPORTERS, P.C.

                      (212) 805-0300

ka22HylH

APPEARANCES
(continued)


LAW OFFICE OF ERIC ALAN ISAACSON
        Attorneys for Objector Carson
BY:  ERIC ALAN ISAACSON


HAMILTON LINCOLN LAW INSTITUTE
        Attorneys for Objector Yeatman
BY:  ANNA ST. JOHN


JESSICA AMOROSO
        Pro Se Objector


NEDRA BARNES-LARRIEUX
        Pro Se Objector


DR. JANE HANSON
        Pro Se Objector


MICHAEL LOMBARDO
        Pro Se Objector


GREGORY CLAUSS
        Pro Se Objector

ka22HylH

|  |  |
|---|---|
| 1 | THE COURT:  Good afternoon, counsel.  This is Judge |
| 2 | Cote. |
| 3 | Do we have a court reporter? |
| 4 | THE COURT REPORTER:  Good afternoon, Judge.  Kristen |
| 5 | Carannante. |
| 6 | THE COURT:  Thank you very much. |
| 7 | I will briefly take appearances for the plaintiff. |
| 8 | MS. KONANOVA:  Good afternoon, your Honor.  This is |
| 9 | Yelena Konanova of Selendy & Gay for the plaintiffs.  I'm here |
| 10 | with Faith Gay of Selendy & Gay, and our co-counsel, Mark |
| 11 | Richard, is also on the line. |
| 12 | THE COURT:  Thank you. |
| 13 | And for the defendants. |
| 14 | MS. SIMONSEN:  Good afternoon, your Honor.  Ashley |
| 15 | Simonsen, of Covington & Burling, for the defendants Navient |
| 16 | Corporation and Navient Solutions, and also on the line with me |
| 17 | today is my colleague Andrew Ruffino, also of Covington & |
| 18 | Burling. |
| 19 | THE COURT:  Thank you. |
| 20 | And counsel for the objector Richard Carson. |
| 21 | MR. ISAACSON:  Good afternoon, your Honor. |
| 22 | May it please the Court: |
| 23 | I'm Eric Alan Isaacson, representing  Richard E. |
| 24 | Carson III, a class member and objector. |
| 25 | THE COURT:  And counsel for objector William Yeatman. |

ka22HylH

1            MS. ST. JOHN:  Good afternoon, your Honor.  This is

2    Anna St. John, with the Hamilton Lincoln Law Institute on

3    behalf of objector William Yeatman.

4            THE COURT:  Thank you.

5            And I believe we have five other objectors.

6            Ms. Amoroso, are you on the line?

7            MS. AMOROSO:  Yes.  Good afternoon, your Honor.  This

8    is Jessica Amoroso.

9            THE COURT:  Thank you.

10           And is it Ms. Nedra Barnes-Larrieux?

11   Ms. Barnes-Larrieux, are you on the line?

12           MS. BARNES-LARRIEUX:  Good afternoon.

13   Ms. Barnes-Larrieux is on the line.  My apologies.  I was

14   muted.

15           THE COURT:  Thank you.

16           Jane Hanson, are you on the line?

17           DR. HANSON:  Yes.  Good afternoon, Judge.  I am here.

18           THE COURT:  Thank you.

19           Michael Lombardo, are you on the line?

20           MR. LOMBARDO:  I am here, your Honor.  Good afternoon.

21   Thank you.

22           THE COURT:  And finally Gregory Clauss, are you on the

23   line.

24           MR. CLAUSS:  Good afternoon, your Honor.  This is

25   Gregory Clauss.

ka22HylH

| 1 | THE COURT:  Good. |
| 2 | So normally, counsel, we would all be meeting in my -- |

1        THE COURT:  Good.

2        So normally, counsel, we would all be meeting in my --

3   counsel and objectors, we would all be meeting in my courtroom

4   for this fairness hearing, but as everyone is well aware, we

5   are in the middle of a pandemic, and therefore we are

6   conducting this fairness hearing through a telephone conference

7   call with each other.

8        I have given public notice of this fairness hearing,

9   and therefore members of the press or the public or other

10  objectors to whom I have not given permission to speak may also

11  and I hope are listening in.

12       Let me welcome everyone and begin with a brief

13  introduction of what's going to happen at this fairness

14  hearing.

15       On April 24 of this year, the parties in this

16  litigation entered into a settlement agreement.  In that

17  settlement agreement, the defendants, who I will refer to as

18  "Navient," agreed to pay $2,400,000.  All of it is destined for

19  a *cy-près* fund, if it is not reduced by the Court to pay either

20  incentive awards or make an award of attorney's fees.  That

21  *cy-près* fund has now been identified by the plaintiffs as the

22  Public Service Promise organization.

23       The parties, in their settlement agreement, agreed

24  that a *cy-près* award of $1,750,000 was appropriate and that

25  incentive awards of $15,000 a piece for each class

ka22HylH

representative were appropriate, and Navient agreed not to

object to an application of reasonable attorney's fees in the

amount of half a million dollars.  In that settlement

agreement, Navient also agreed to enact what are described as

enhancements to its business practices.

        The parties agreed that the settlement would be final

despite any order reducing or relating to the application in

connection with attorney's fees or incentive awards.

Therefore, it is understood that Navient will be paying

$2,400,000 in total -- no more, no less.  Navient also agreed

to pay the cost of providing notice to the class and for

administration of the settlement.

        All class members have reserved or retained their

right to sue Navient for damages due to them as individual

plaintiffs should they bring such lawsuits.  The class

representatives, though, have waived the right to sue Navient

in the future, and it is understood that this settlement will

bar any further class action litigation arising out of the same

allegation or related allegation.

        Let me make a few initial observations about this

settlement:

        As I mentioned, this action was brought as a class

action.  There was a motion to dismiss brought against the

litigation as described in the complaint, that is, against the

claims described in the complaint, and only one claim survived

ka22HylH

1     that motion to dismiss litigation.  It was a New York State law

2     claim.  And as the parties' papers recognize, or at least the

3     plaintiffs' papers recognize, this case, in the court's view,

4     was unlikely to succeed as a class action if litigation

5     proceeded further.  Any misrepresentations that may have been

6     made by Navient or any omissions, failures to speak, would have

7     arisen in response to questions asked by borrowers, and that

8     analysis, both questions and the responses, were all dependent

9     on the circumstances described by the borrowers and as those

10    circumstances were understood by Navient.  That presented an

11    enormous hurdle to finding that there were common questions of

12    fact that would bind the class and for finding that individual

13    fact issues and questions would not overwhelm this litigation

14    if pursued as a class action.

15         During the course of this litigation, the United

16    States Court of Appeals for the Second Circuit issued a

17    decision in a lawsuit called *Berni*.  That decision was issued

18    on July 8 of this year, and I asked both the plaintiffs and

19    defense counsel to respond in letters about the implications of

20    *Berni* for approval of their settlement agreement, and they did

21    so in letters of July 20, and the plaintiffs' letter of July

22    20, I think, captures the challenges of pursuing this

23    litigation as a class action.  The plaintiffs' counsel

24    explained that borrowers allege harm from misrepresentations

25    regarding complex and individualized financial issues, not a

SOUTHERN DISTRICT REPORTERS, P.C.

ka22HylH

1   simple, repetitive deception easily understood upon purchase

2   and visual inspection of a product.  Therefore, what appeared

3   to be true early in this case was that this litigation was

4   unlikely to be certified as a class action, and unless it were

5   certified as a class action to recover damages, there can be no

6   recovery of damages for the class upon successful pursuit of

7   the litigation.

8          The settlement here and my role today does not require

9   me to find whatsoever that Navient's past business practices

10  were inadequate in any way.  That is not my role today, and I

11  am not equipped, based on what I know as of now, to make a

12  finding in that regard.

13         But that being said, I want to congratulate the

14  parties on their settlement.  I think they are to be praised

15  for this creative resolution of these issues.  Public service

16  employees deserve our nation's thanks at all times.  During

17  this pandemic I think we are particularly aware of the great

18  debt our nation owes them, and to the extent that settlement

19  will benefit public service employees, it is all to the good.

20  And to the extent that this settlement benefits Navient by

21  causing it to improve its practices and training, that is all

22  to the good as well.  Any corporate citizen in this country

23  should want to hold itself to the highest ethical standards and

24  a settlement that insists and encourages that is to be valued.

25         So what we are going to do now is hear from the

ka22HylH

objectors to this settlement.  Notice was given after I

approved the notice process and the wording of the notice, so

the objectors have been given a description of this litigation

and an opportunity to make their objections in writing and by

speaking.  In order to make an additional objection orally,

they were required to comply with the requirements set out in

the notice; and, while 21 class members requested to be heard

orally at this hearing, only seven have complied with the

requirements set out in the notice.

        So I issued an order this week, on September 30,

listing those seven individuals and the time that they would be

permitted to speak.  I have listed them in alphabetical order

of the objectors' names, except for one objector.  Mr. Clauss

only sought one minute, and I thank Mr. Clauss for his

willingness to be concise in comments.  Since the others are

being held to five minutes, I let Mr. Clauss be the last to

speak so he would have the benefit of anything that was said

before.

        After we have heard from the objectors, I will hear

from plaintiffs' counsel and I will hear from defendants'

counsel, and then I will give you my ruling first on the

settlement generally, then on the request for incentive awards,

and finally on the request for an attorney's fee award.

        In connection with that last request, I want to put

everyone on notice of the following:  I have a concern as to

ka22HylH

1    whether this Court and the class were given adequate notice of

2    the attorney's fees request being made and presented to me

3    today.

4           And so with that initial observation, Ms. Amoroso, you

5    have five minutes to convey anything you would like to convey

6    to me regarding this settlement.

7           (Pause)

8           THE COURT:  Ms. Amoroso?

9           MS. AMOROSO:  Yes.  This is Jessica Amoroso.  Good

10   afternoon, your Honor.

11          May it please the Court:

12          Thank you for hearing our statements today.

13          I respectfully ask this Court to refrain from

14   approving the proposed public student loan forgiveness

15   settlement regarding Navient in this matter.

16          My objection lies upon three main pillars:

17          First, the vast --

18          THE COURT:  Excuse me, Ms. Amoroso?

19          MS. AMOROSO:  Yes, your Honor.

20          THE COURT:  Thank you.  We have a court reporter.  So,

21   it is important that she capture everything you say, and so

22   please, if you could, slow down.  Thank you.

23          MS. AMOROSO:  Yes, your Honor.  I apologize.

24          The three main pillars that I support my objection

25   with are the vastness of the scope of the eligible class

ka22HylH

1    members, the fact that the settlement does not provide any

2    financial compensation to all of the class members, and that

3    the proposed relief isn't sufficient to remedy the systemic

4    problems presented and exacerbated by Navient's loan servicing

5    practices at the expense of PSLF borrowers.

6          The scope of the class in this matter is far reaching

7    and affects hundreds of thousands of student loan borrowers

8    across this country.  A matter of this magnitude requires

9    thorough vetting to reach and inform class members of the

10   rights that they will forego in this settlement.

11         This includes current borrowers, those who have

12   submitted a PSLF application who have been rejected, those who

13   will enter repayment at a future time, and those who have

14   missed the opportunity to accumulate qualifying payments and

15   have lost those opportunities while serving forbearance

16   periods.

17         There is a vast application to many professions who

18   are similarly situated, share commonality, and have been

19   collectively affected by Navient's loan servicing practices in

20   the PSLF program.

21         Navient's Legal Action Facts website indicates that

22   there are more than 400,000 borrowers serviced by Navient

23   paying off their student loans every year.  In a Department of

24   Education report issued last month, there were over 3 million

25   eligible employment certification forms.  The Department of

ka22HylH

1    Education last year rejected over 100,000 PSLF applications,

2    and the Federal Student Aid Data Center indicated that 24

3    percent rejected those who were missing information on

4    forgiveness applications and 15 percent for ineligible loans.

5    These issues, if properly maintained through the loan servicing

6    business, could have been identified just by the mere fact of

7    servicing loans through the PSLF process.

8         The settlement, once entered, carries long-ranging

9    ramifications for generations of student loan borrowers who may

10   not have been notified and therefore will unknowingly forego

11   rights to pursue class actions against Navient in the future.

12        The proposed settlement also does not afford any

13   monetary relief for all class members.  At the outset, there is

14   a glaring inequity presented in the PSA regarding the financial

15   relief, but it is -- because there is $500,000 being afforded

16   to plaintiffs' attorneys and none of the class members will see

17   any financial compensation.  Additionally, this amount is more

18   than 30 times that of which each class representative has

19   sought to receive under the settlement.

20        In addressing the third main reason why I propose an

21   objection in this matter is the fact that altogether those

22   business practice proposal modifications are ultimately

23   reactive to the sum, that do not address past harms, namely,

24   those by PSLF borrowers who missed the opportunity to

25   accumulate qualifying payments, and therefore financial

ka22HylH

1   compensation would be the best remedy to rectify that harm.

2           Additionally, as an example, Navient proposes that

3   they will create forms to be sent electronically via e-mail to

4   borrowers to request additional information about PSLF.  This

5   is a systemic omission of critical tailored forms that should

6   have been available in the first place, so instituting this

7   resolution does not adequately compensate the class in this

8   matter.

9           THE COURT:  Thank you very much, Ms. Amoroso.  I

10  appreciate that.

11          MS. AMOROSO:  Thank you, your Honor.

12          THE COURT:  Yes.

13          And is it Ms. Barnes-Larrieux?

14          MS. BARNES-LARRIEUX:  Yes.  That's correct, Judge.

15          THE COURT:  You may proceed.

16          MS. BARNES-LARRIEUX:  Thank you.

17          Good afternoon, Judge.  Thank you for allowing me the

18  opportunity to speak today.

19          I am grateful to have had the opportunity to

20  successfully obtain an undergraduate and postgraduate degrees,

21  which I believe have created consistent career progression in

22  my current field.

23          I have held loans with Navient for an estimated 15

24  years or more that are all in good standing.  During that time,

25  I have inquired about the Public Service Loan Forgiveness

ka22HylH

1   process, as I have been a public servant since 2003 based on

2   the criteria outlined by the Federal Student Aid website.

3         I have contacted Navient on a number of occasions,

4   sometimes three to four times a year, to get clarity on the

5   process.  Because the information provided by Navient has not

6   been consistent as of today, I have yet to complete the Public

7   Service Loan Forgiveness application, yet I have continued to

8   make consistent payments that are all in good standing.

9   Because of the unclear guidance, it has been less than

10  motivating and very discouraging to complete this process.

11        Also, I have been informed by some Navient

12  representatives that I do qualify for Public Service Loan

13  Forgiveness.  Other Navient representatives have informed me

14  that I do not, as recent as January of this year.

15        Additionally, I have been met with less than

16  satisfactory customer service and continued unclear responses

17  regarding why I do not qualify for this process.  I have had

18  errors made on my account when applying for income-driven

19  repayment loan plans.  I have also had my husband's income

20  challenged when he transitioned from active to reserve duty

21  status in the military.

22        Again, I contacted Navient on or about July of this

23  year to request a transcript of my communications with Navient

24  from the last ten years.  At that time, I was informed I could

25  request this information and the transcript would be mailed to

ka22HylH

1   me.  However, I was not informed during that call if there were

2   any additional steps required of me as the loan holder.  I

3   never received the transcript from Navient or any

4   communications regarding why the requests could not be

5   completed.  Yet again, another misrepresentation of Navient's

6   communication with me.

7           For the aforementioned reasons, I believe Navient

8   should uphold higher standards and take accountability for

9   misrepresentation of the Public Service Loan Forgiveness

10  process communicated to me as well as other loan holders.

11          The Navient mission statement reads:  "At Navient, our

12  mission is to enhance the financial success of our customers by

13  delivering innovative solutions and insights with compassion

14  and personalized service."  Navient has not upheld this mission

15  to me or many others who have been affected or impacted by the

16  lack of clear communication with respect to Public Service Loan

17  Forgiveness.  It is important to understand that as long as I

18  have an outstanding debt with Navient or any other loan holder

19  and accumulate interest, it does not benefit me, but Navient.

20          Thank you for allowing me to speak, and I hope that

21  what I have said is taken into consideration.

22          THE COURT:  Well, it certainly will be, and thank you.

23  And, really, I have great appreciation for every objector and

24  everyone who has asked to be heard either through their written

25  submission or orally.  It is very significant.


SOUTHERN DISTRICT REPORTERS, P.C.

ka22HylH

1          Mr. Carson.

2          MR. ISAACSON:  Thank you, your Honor.

3          May it please the Court:

4          This is Eric Alan Isaacson for Richard E. Carson III.

5          Several matters I would like to focus on:

6          One is the fact that the settlement agreement bans

7    individual members of the class from proceeding with a class

8    action.  Well, actually, what the settlement agreement says is

9    to define a class action or aggregate action as "any litigation

10   proceeding in which five or more separate individuals propose

11   to prosecute their claims in the context of the same legal

12   proceeding."  So we are not talking about a settlement

13   agreement that merely bars class actions where it might be

14   difficult to certify a class on account of individual issues

15   relating to reliance.  This is barring any aggregate litigation

16   where five or more members of the class who may have very

17   similar claims try to proceed in a single action.  That is

18   prohibited.  So this does not just ban class action, it bars

19   mass actions.  And, quite frankly, that means that you wouldn't

20   be able to put together 100 or 1,000 class members in order to

21   proceed to trial with a mass action.  It's going to have to be

22   individual claims, no more than four.

23          That makes individual litigation impossible as an

24   economic matter.  It is not economically feasible.  So as a

25   practical matter, this is barring the litigation of most

ka22HylH

1    individual class members' claims.  They cannot do it.  That

2    means, as a practical matter, they should be treated as a Rule

3    23(b)(3) class, with people given an opportunity to opt out so

4    they can defend their real interest in this stuff.  The fact

5    that Navient has insisted on including such a provision is, I

6    think, a very strong indication that members of the class are

7    losing something very important when they are barred from

8    proceeding with individual actions.

9          Another point that I think bears some emphasis is the

10   fact that there is a conflict of interest with respect to AFT

11   organizing the litigation, instigating the litigation, choosing

12   the named plaintiffs who are its members, and then hiring and

13   paying class counsel.  That is a conflict of interest to which

14   class members have not consented.

15         I think that it is necessary for the Court to consider

16   and for the class to be able to see a number of things.  That

17   would include the plaintiffs' retainer agreements with class

18   counsel.  It would also include all communications between AFT

19   and class counsel and all communications between AFT and the

20   named plaintiffs.  Because AFT is not a party and because AFT

21   is not a law firm, that does not violate attorney-client

22   privilege to require production of those things.  They should

23   be made a part of the court record in this case because of the

24   inherent problems of conflict of interest.

25         Those problems are exacerbated by the fact that the

ka22HylH

named plaintiffs are getting $15,000 a piece which compromise

individual class members, the rest of the class's ability to

pursue litigation in a settlement agreement that bars five

people from getting together to litigate their claims, making

that litigation impossible.

Those incentive awards are illegal under the Supreme

Court's opinion in *Greenough*, *Trustees* v. *Greenough*, and

*Pettit*.  They are also illegal under New York law.  They are

prohibited by the principles that in Rule 23 class actions

class members are not supposed to get extra benefits that

members of the class do not get.  It's a grossly unfair

settlement arrangement and cannot be accepted.

I also have to object to the September 25 declaration

that class counsel put in asserting that, with respect to the

individual named plaintiffs, six of them, six of ten have loans

that are still serviced by Navient.  If you look at the

declarations they put in, it looks like only two of ten.  If

class counsel is going to rely on communications from class

representatives from the named plaintiffs, they need to be made

a part of the record.  By trying to rely on them, any

attorney-client privilege has been waived.  And if they do not

put those communications in, I don't think that class

counsel's hearsay declaration can be relied on, and we move to

strike it.

The same goes with respect to what the declaration

ka22HylH

says about a communication from Navient about the number of
members of the class who received notice who are participants
in FedLoans, and moved to FedLoan.  We need to see the
communication from Navient.  We need to know what the
communication from Navient was based on.  And I want to
emphasize that it does not say Navient communicated that most
members of the class still have loans serviced by Navient.  I
think that that is telling.  Most members of the class do not
have loans serviced by Navient.  That means that the injunctive
relief is prohibited by the Second Circuit in *Berni* opinion, in
*Wal-Mart v. Dukes* the Supreme Court's opinion.

          And with respect to the *cy-près* award, it is clearly
designed to help future people, future students taking out
loans, not the current class.  It is something that cannot be
approved for that reason, and the indication in the papers that
we have seen is that it is only going to serve 11,000 people a
year.  This is a class that consists of over 300,000 people,
your Honor.

          Under the circumstances, the proposed settlement
cannot be approved.

          I see my five minutes have run.  It really has not
been enough time to underscore all of the problems with this
settlement.

          THE COURT:  Thank you, Mr. Carson, but of course --
          MR. ISAACSON:  Mr. Isaacson.

ka22HylH

1           THE COURT:  I'm sorry.  Mr. Isaacson.  You made a

2   written submission as well and that certainly --

3           MR. ISAACSON:  Yes.

4           THE COURT:  -- is part of the record.  Thank you

5   very --

6           MR. ISAACSON:  Yes, your Honor.

7           THE COURT:  -- very much for your comments.

8           Ms. Hanson.

9           MR. ISAACSON:  Your Honor, I made a written

10  submission, but I did not have the benefit of the September

11  11th communication from class counsel regarding the

12  relationship with AFT.  I did not get to see the declaration

13  that was put in on the 25th.  There are a lot of things that I

14  have not had the opportunity to review before putting in the

15  written declaration -- written objection and memorandum.

16          Thank you, your Honor.

17          THE COURT:  Thank you, Mr. Isaacson.

18          Ms. Hanson.

19          DR. HANSON:  Good afternoon, and thank you, your

20  Honor.

21          May it please the Court:

22          I am Dr. Jane Hanson, and I hope to add some more

23  personal insights about the people who are harmed by dropping

24  the class action suit.  I would -- I opine that the purpose of

25  these forgiveness programs for student loans is to encourage

ka22HylH

1   students to enter fields of public service to benefit our

2   institutions communities.  We have heard that.  My own public

3   service and use of my doctorate has been highly unorthodox.

4   Instead of selecting from my tenure-track faculty offers, I

5   chose to return to my *alma mater* to be close to my home, my

6   family, my roots, and to give back to the people of my state,

7   Nebraska.

8           While consolidating my full-time position as advisor

9   and senior lecturer at UNL, which has been my primary

10  employment for the past 11 plus years, I also served as a

11  half-time director of the Family Literacy Program for our local

12  Lincoln Literacy Council.  Lincoln's public school system

13  Boasts over 76 languages because we have been a center for

14  immigrant resettlement for the past 20 years.  This translates

15  to a very great appreciation of English as a second language

16  and increasing literacy skills.

17          Early childhood teachers here, as everywhere, are

18  responsible for referrals for special ed.  Our youngest

19  immigrants, those also targeted by the nonprofit Family

20  Literacy project, were at risk of deferral when teachers had

21  little experience differentiating between ESL or language

22  delays.  I involved young teachers from the university's

23  teacher education program and novel pre-practicum teaching

24  experiences.  And as a final illustration of my unorthodoxy, of

25  being an outlier, an uber social contributor, I received the

1    prestigious President's Lifetime Volunteer Service Award in

2    2019 for more than 7,000 hours as a Mensa Education and

3    Research Foundation Trustee.

4          I am a communications specialist, having taught

5    language and social linguistics for 22 plus years, from pre-K

6    to adult learning.  I recognize good communication, and I am

7    now the victim of very poor communication.

8          Financial entities need to be experts at

9    communication.  However, Navient has been woefully remiss in

10   communication as follows:

11         1.  I consolidated my student loans upon graduation in

12   2008 and no one, not even my previous university, told me that

13   consolidating different types of loans together might

14   jeopardize forbearance of the loan or even that I could choose

15   to consolidate either with a private entity or a government

16   entity.  The purposes for different types of loans were never

17   explained, neither by Direct Loan Servicing nor the university,

18   nor were the ramifications of the choice of private over

19   governmental entity.  At some point I was informed that Navient

20   would be taking charge of my consolidated loan.  There was no

21   explanation at that time the significance, nor was there any

22   choice or recourse offered.  I signed.

23         2.  I strongly object to the proposed settlement

24   because although it addresses a piece of the corporation's

25   communication woes, as we have just seen, it discards with a

ka22HylH

1   broad brush all those who have in good faith maintained their

2   commitment and provides them with no financial relief.

3          Furthermore, I was informed in 2009, in a telephone

4   conversation, following up on my loan consolidation with the

5   agent at Navient, that my loan would be eligible for

6   forgiveness if I worked for my new employer, University of

7   Nebraska, a public entity, for at least ten years.  I made sure

8   I never missed a payment or was late, although I struggled

9   financially and with both my sons disabled, I maintained my

10  unorthodox status by never doing so.  I have never missed a

11  payment nor have I been late.

12         3.   However, in May of 2017, nine years later, when I

13  first submitted my Public Loan -- Public Service Loan

14  Forgiveness form, Navient informed me that only one of my

15  loans -- I had supplied copies of the first and of second

16  document, as well -- precluded me from qualifying for the PSLF

17  for a mere $5,000 out of a total of all of my loans.  This

18  pretext was used to bar me from forgiveness.  I have not missed

19  one payment or been late, again.

20         4.   At age 66, I have to be one of the oldest members

21  of this class action as I finished my doctorate in 2008 at the

22  age of 54.

23         THE COURT:  Excuse me.  Dr. Hanson, I am losing you.

24  Can you speak up?

25         DR. HANSON:  Yes, I can.

ka22HylH

1          THE COURT:  Thank you.

2          DR. HANSON:  At age 66, I have -- you're welcome.

3          At age 66, I have to be one of the oldest members of

4    the class action, as I finished my doctorate in 2008 at the age

5    of 54.  Navient has not informed me that there is any decrease

6    in payment available for income reduction, such as in my

7    retirement, or at any time previously, in any of my

8    communication with Navient.  Furthermore, I only learned of

9    this possibility by reading the materials related to this class

10   action suit and materials published in the press.

11         Thank you for reflecting on my words.  Those of us

12   speaking here today have been victimized by the corporate

13   actions of Navient.  There has to be a -- I'm sorry.  Is

14   that --

15         THE COURT:  Dr. Hanson, I very much appreciate your

16   words.  I think you are reacting to some ambient noise here,

17   but I --

18         DR. HANSON:  I managed to get rid of it.  It was mine.

19   I have two sentences, and then I am done.  Thank you.

20         So I say thank you for reflecting on my words, and I

21   just said those of us speaking here today have been victimized

22   by the corporate actions of Navient.  There has been harm done.

23   Their statement says that they show compassion.  Please tell

24   them to respect the students who have made a commitment to be

25   contributors and good citizens by making their payments.

ka22HylH

1            Thank you.

2            THE COURT:  Thank you, Doctor.

3            Mr. Lombardo.

4            MR. LOMBARDO:  Thank you, your Honor, and good

5       afternoon.

6            So, to start out, in 2007, I had private loans with

7       Sallie Mae.  I was employed at the time as an in-home family

8       therapist for a human social services organization here in

9       Pittsburgh, working with troubled children and their families

10      involved with Allegheny County Juvenile Family Court.  Since

11      November 2007, I have been at my current position as a juvenile

12      probation officer for Allegheny County Juvenile Probation.

13           Because of my employment, I heard bits and pieces

14      about Public Service Loan Forgiveness in 2008-2009, and in

15      either April or May 2009, I called Sallie Mae --

16           THE COURT:  Mr. Lombardo, Officer Lombardo, if you

17      could just slow down, please.

18           MR. LOMBARDO:  I will, your Honor.  Thank you.

19           So 2008-2009, I called Sallie Mae customer service, in

20      either April or May of that year, to see if I qualified for

21      Public Service Loan Forgiveness.  I wanted to find out more.  I

22      told them what I did for a living.  I was told that I was

23      eligible for this, even though I had private loans, and I was

24      never told that I had to switch to direct federal loans.  I

25      believed the customer service representative, and I kept making

ka22HylH

1    my payments.

2             Then in May 2012, because I made a few extra payments,

3    I wanted to skip a payment and go on vacation and use that

4    money for my vacation.  I called Sallie Mae to see if I could

5    do that and still be on track.  That's when I was told I was

6    not eligible for Public Service Loan Forgiveness because I had

7    private loans, which is not what I was told three years

8    earlier.  I continued making my monthly payments, but to say I

9    was angry, understatement.

10            I started taking action in 2013.  I wrote Sallie Mae,

11   told them what happened, and I merely wanted these previous

12   payments to be retroactively applied as part of the 120

13   payments, so come October 2017, I could get loan forgiveness.

14   All they did, all Sallie Mae did was write me and tell me that

15   we value you as a customer and told me to switch to Direct

16   Federal Loans.  They never addressed my concerns and totally

17   ignored me.

18            In 2014-2015, besides writing to Sallie Mae Chairman

19   Anthony Terraciano at the time, I wrote the Department of

20   Education and my three elected officials in Washington --

21   Representative Mike Doyle, Senator Toomey, and Senator Casey --

22   asking them to help me out, so come October 2017 I could get

23   forgiveness.  I never heard from the education department.  My

24   three elected officials all wrote me back and told me

25   essentially that there is nothing they could do for me.  I will

ka22HylH

highlight, in Navient's transparency report 2018, it said that

Senators Toomey and Casey received campaign contributions from

Navient.

      In 2014, I switched to Direct Federal Loans.  I

learned that the Consumer Financial Protection Bureau and my

Pennsylvania Attorney General Josh Shapiro filed lawsuits

against Navient, I believe both in 2017.  I filed complaints

with both entities, and I am awaiting the outcome of those

lawsuits.  The Navient consumer advocate told the Attorney

General's office that they have no record of me calling them in

2009, but yet they have record of me calling them in 2012 when

they told me I was not eligible.

      From October 2017 to this past June 2020, I made 43

more payments, paying a grand total of $42,777.41, until my

loan got paid off.  Now, had Navient and Sallie Mae told me the

right information from the get-go, I would not have had to pay

an additional close to $43,000 since October 2007.

      So I object because I figure if they have the money to

make political contributions and to spend money to improve the

system with Public Service Loan Forgiveness, which they should

have done in the first place, then certainly they should have

the money to refund every one of us after our 120th payment if

we should have gotten loan forgiveness but didn't, like in my

case the $42,777.41.  And so I feel as though they should first

use that money that they want to use to improve the system and

ka22HylH

```
1    refund it to us first.

2             And then for those ten plaintiffs there that they are

3    supposed to be getting $15,000, let's say one of them paid

4    $45,000 after the 120th payment when they should not have.  If

5    they are only getting 15,000 and not 45,000, they are getting

6    short-changed $30,000 and, frankly, I really don't think that's

7    fair.

8             So for those reasons, I have to object to the

9    settlement.

10            And thank you, your Honor, for giving me this

11   opportunity to finally speak about this in federal court, as I

12   have been fighting this battle for over seven years now.

13            Thank you, your Honor.

14            THE COURT:  Thank you, Mr. Lombardo.  Very

15   appreciated.

16            So the objector, Mr. Yeatman, I believe, is

17   represented by counsel, Ms. St. John.

18            MS. ST. JOHN:  Thank you, your Honor.

19            May it please the Court:

20            Anna St. John representing objector William Yeatman.

21            I plan to use my time today to address some of

22   plaintiffs' response to Mr. Yeatman's objection.

23            First, there is a mismatch here, your Honor, that

24   prevents certification under 23(b)(2).  Plaintiffs sought

25   injunctive relief on behalf of a class defined as those who
```

ka22HylH

1    intended to contact Navient in the future, and they sought

2    monetary relief on behalf of class defined retrospectively as

3    those who contacted Navient in the past.

4            Yet now the settlement takes that retrospectively

5    defined class, settles claims for which damages are

6    appropriate, gives the class only forward-looking injunctive

7    relief, and waives their right to participate in aggregate

8    litigation for their claims for money damages.

9            Now, plaintiffs argue that this Court previously held

10   that money relief was improbable, but that raises the question

11   of why the settlement releases any monetary claims at all.  If

12   the release of aggregate litigation claims is valueless, as

13   suggested, there is no reason to include it.

14           But smaller groups of class members or subclasses

15   could litigate for money damages and the class could challenge

16   the view that money damages are improbable.  Class members

17   shouldn't be giving up the right -- that right for no monetary

18   relief in the settlement.

19           I also note that plaintiffs' don't that dispute those

20   class members who are no longer working in the public interest

21   sector or who have paid off their loans receive no benefit

22   whatsoever from the injunctive relief.

23           Turning to *cy-près*, plaintiffs make the confusing

24   argument that class members would have to give up individual

25   money damages claims in order for the 1.75 million in *cy-près*

ka22HylH

1    to be distributed through a claims process.  But that makes no

2    sense.  I don't understand why class members would have to give

3    up additional rights not negotiated at this settlement.  If the

4    parties were in fact to renegotiate a settlement with a broader

5    release, then the settlement fund, of course, would be much

6    greater to match the value of the claims being released.

7             Plaintiffs also question the fairness of a claims

8    process itself, but that's a standard way that funds are

9    distributed, particularly when class member addresses are not

10   readily available.  There is nothing unusual about a claims

11   process.  It is far more fair to give those class members who

12   file a claim actual monetary relief they can use than to give

13   all class members nothing, which is what this settlement does.

14            The parties already know who is a class member.  They

15   sent out direct notice to those individuals, so it is unclear

16   why a claims process would require the kind of detailed

17   documentation of each claimant's financial circumstances and

18   the details of their oral communications as the plaintiffs

19   claim.

20            Turning to the question of attorney's fees, we raised

21   the problem of class counsel having what appears to be a

22   fee-sharing arrangement with the American Federation of

23   Teachers that was not disclosed to the Court or the class.

24            Plaintiffs don't deny that they never told the Court

25   about the funding arrangement with AFT before moving for

ka22HylH

preliminary approval or that the class was not notified.

Disclosure was required and it would have allowed better

monitoring of whether the class interests really were

represented.

        Class counsel's primary rebuttal appears to be

semantic.  They claim that the payment is reimbursement rather

than a sharing agreement.  But AFT is recovering $500,000 of

the fees they paid based on class counsel's work.  That seems

like the sharing of fees.  Class counsel is recovering some

portion and AFT is recovering some portion.

        Class counsel has been very careful in how they word

the AFT reimbursement.  They still have not told us how much of

their fees AFT actually paid.  They have only told us how much

their time is worth, how much they have billed, but I haven't

seen any definitive statement about how much of that amount AFT

actually paid.  There needs to be transparency about how much

of the fee prepayment the $500,000 represents.

        Plaintiffs are also wrong that there is no suggestion

that class counsel's professional independence was compromised

by this payment.  There is a longstanding relationship here,

and there appears to be some financial incentive to represent

AFT's interest and to recover money on their behalf.  And in

fact AFT, as the Court knows, helped to find the main

plaintiffs in this case.

        On a final note, I note that in the response

ka22HylH

 1   plaintiffs made some personal attacks against Mr. Yeatman and

 2   his counsel, including calling us "professional objectors" and

 3   questioning our motives.  We view those attacks as entirely

 4   irrelevant to the fairness of the settlement and the fee

 5   request, and I don't plan to spend any time on them today.  If

 6   the Court is interested in this issue, however, we ask that the

 7   Court give us an opportunity to respond and look to the

 8   declaration of Theodore H. Frank, filed as Docket No. 164,

 9   which preemptively addresses some of those issues.

10               Thank you very much for your time today, your Honor.

11               THE COURT:  Thank you very much, Ms. St. John.

12               And that brings us to the last objector who will be

13   heard today, Mr. Clauss.

14               Mr. Clauss, are you on the line?

15               (Pause)

16               THE COURT:  Mr. Clauss, I can't hear you.  You might

17   have to unmute yourself.

18               (Pause)

19               THE COURT:  I'm still having difficulty hearing you,

20   Mr. Clauss.

21               (Pause)

22               THE COURT:  So I am -- Mr. Clauss, is that you?

23               So I am sorry to report that I am unable to hear

24   Mr. Clauss.  Obviously if he joins us at some point during this

25   hearing before it concludes, I will be happy to hear anything

ka22HylH

1    that he has to say.

2          But at this point let me turn to Ms. Konanova to

3    respond to the objections heard today and to say anything else

4    that she believes would be appropriate to be said in connection

5    with this application.

6          Ms. Konanova.

7          MS. KONANOVA:  Thank you, your Honor.  Yelena Konanova

8    for the plaintiffs and the class.

9          I would like to extend a welcome to all of the class

10   representatives who are joining us today.

11         Your Honor, this settlement is a great deal for

12   borrowers, and it provides unique relief that has never

13   previously been available from Navient and which other class

14   actions have been unable to obtain.  Not only does the

15   settlement preserve the class members' rights to sue Navient

16   for individual damages, it materially enhances their ability to

17   secure forgiveness.

18         I would like to spend a few minutes talking about the

19   benefits of this settlement as responsive to the objections and

20   then address some of the other points raised in the objections,

21   with special attention to the notice of fees request issue that

22   your Honor has raised.

23         Your Honor, as a result of this settlement, and it

24   alone, a nonprofit called Public Service Promise has been

25   incorporated with an initial board of three very impressive

ka22HylH

directors and is prepared to launch with a singular focus of

providing service for borrowers in public service to help them

gain loan forgiveness.  This is the first of its kind nonprofit

to directly work with public service borrowers to help them

access PSLF.

Navient has also implemented business practice

enhancements which directly address the alleged harm.  These

enhancements require call center representatives to proactively

ask questions to determine who may be eligible for forgiveness

and to deliver accurate information about how to qualify.

Navient is affirmatively required to train its representatives

to comply and to monitor to ensure compliance.

Between the nonprofit and the required changes to

Navient's protocol, borrowers now have a way to get essential,

reliable individualized advice for the first time about how to

obtain their relief from their student debt burden which helps

maximize chances of forgiveness.

And as noted, the settlement preserves the right to

bring individual actions for damages, which is directly

responsive to this court's guidance that individual claims are

the most viable avenue for monetary relief, given the

challenges of proving uniformity of oral misrepresentations in

the class context.  And the affirmative provisions of this

settlement make that economic relief avenue that much more

viable.

ka22HylH

1          Your Honor, this is an unprecedented result for this

2     kind of class action.  As this Court knows, in the related PSLF

3     class action against Navient in Florida, the Court denied

4     certification precisely because varying oral misrepresentations

5     precluded a finding of commonality.  Navient then prevailed on

6     the individual claims on summary judgment, and the borrowers

7     got nothing.

8          So taking note of this ruling and this Court's

9     guidance, we fought as hard as we could to get the most value

10     of the settlement here for the class while enhancing the

11     viability of individual damages claimed.

12          Now, your Honor, in response to the objections we have

13     received and the objections that have been raised today, the

14     overwhelming majority of these objections share deeply personal

15     stories of individuals' interactions with Navient and of their

16     individual financial circumstances.  And they ask for various

17     kinds of monetary relief, such as loan forgiveness or credit

18     for prior qualifying payments.

19          Your Honor, we take to heart the seriousness of these

20     statements, the pain they describe.  It is the reason we

21     brought this case, and that is why we preserve individual

22     damages claims and provide relief that enhances the success of

23     these claims.  We fought for all the relief we could in the

24     class action context while insisting that these individual

25     claims are preserved.

ka22HylH

1          And now we always believed we had a strong case to

2     reform business practices in the class context, and here that's

3     exactly what these reforms are aimed at.  They help borrowers

4     advance their individual claims whether because they are now

5     able to receive accurate information from Navient alerting them

6     to any past inconsistencies or through the nonprofit which can

7     walk people, all people, regardless of who their servicers are,

8     whether they are still with Navient or not, it can walk them

9     through their eligibility and specific steps for obtaining

10    relief and, if necessary, to refer borrowers out for litigation

11    of the individual claims.

12          Your Honor, the two professional objections that were

13    also submitted, these objectors want to deprive the class of

14    this very significant nonmonetary relief, to throw out the

15    entire deal with no regard as to what would happen next.  They

16    have not pointed to anything warranting such a drastic result

17    which would unquestionably leave borrowers worse off, likely

18    with no relief of any kind.

19          Now, the objectors raised four specific buckets of

20    objections, which I would like to address in order here.

21          So first, your Honor, they object to the lack of

22    monetary relief for the class, which, as just discussed and as

23    the Court reiterated at the beginning of the hearing, would be

24    very challenging to achieve in this class context.  Again, that

25    is why we preserved individual damages claims and also why the

ka22HylH

1   settlement will not impact the multiple state AG and financial

2   watchdog cases pending against Navient.

3        Now, second, your Honor, they question the *cy-près*

4   relief here.  Now, for the reasons laid out, it is very

5   significant because it is the first of its kind nonprofit

6   directly serving public service borrowers in their quest for

7   forgiveness.  The nonprofit is independent both as a matter of

8   contract and by virtue of the initial board which has three

9   powerhouse individuals from the world of servicing settlements,

10  public interest, and the law.  The fact that the group cares

11  about the same thing we do, which is communicating clear

12  information to borrowers, is not a conflict.  The nonprofit

13  will provide exactly the kind of information that we know

14  borrowers need, that we heard today borrowers need.  They fill

15  a hole in the chain of information that badly needs filling,

16  and if the objectors had their way, the class would be deprived

17  of that badly needed relief.

18       Now, that leaves objections concerning the service

19  awards and the fee arrangement.

20       Your Honor, as to the service awards, recent Second

21  Circuit precedent, including *Melito*, expressly permits service

22  awards to class representatives based on the time and effort

23  expended for the class and risks and burdens shouldered for the

24  class.  *Melito* expressly rejects the notion that Supreme Court

25  precedent that -- from the nineteenth century, that precedes

ka22HylH

1    Rule 23 by decades, bars incentive awards.  They have rejected

2    this argument when it was made by Mr. Isaacson, raised there,

3    and it should similarly be rejected here.

4          Our class representatives –– six of the ten of whom,

5    by the way, still have loans with Navient, the others just have

6    been transferred away to FedLoan since the litigation began,

7    but six of ten of them still have loans with Navient –– they

8    submitted an extensive record of their work for this class in

9    their declaration, and that record focuses on two key points.

10         First, this action was based on oral

11   misrepresentations.  That means that without our class

12   representative's records and recollections, their calendars and

13   planners, we could not have written our complaint.  By

14   reconstructing what Navient said to them and when and how that

15   affected their financial choices, each of them helped us

16   understand the breadth, depth, and specifics of the problem.

17         And they helped us figure out how to address it, how

18   to tailor the relief to help the borrowers most, including by

19   making specific suggestions on the business practice

20   enhancement and emphasizing the importance of the nonprofit to

21   aid public service borrowers.  They also gave broader releases

22   than the class in order to secure the deal for the class.  So,

23   your Honor, some of the concerns raised by this Court in prior

24   cases, such as, the risks that class interests took a back seat

25   to the class representatives' interests simply do not apply

ka22HylH

1   here.  These class representatives fought to get the best deal

2   possible for the class, at considerable cost to themselves.

3          Your Honor, that cost includes the fact that they have

4   had to lay bare their finances, effectively publicly

5   acknowledging they had trouble paying their debts, which is not

6   an easy thing to do.  They helped us share the story with the

7   public, including through the press, which led to online

8   harassment directed at them, some with overtly racist

9   undertones and harassing treatment in their physical

10  workplaces.  This all the took a significant toll, mentally and

11  physically, on these folks, your Honor.  They have described it

12  in their declarations as traumatizing and degrading.  But

13  without their perseverance we would never have gotten to the

14  point of achieving this settlement.  They did it for the class,

15  and approving the awards here will spur other publicly minded

16  individuals to make some more sacrifices.

17         Now, finally, your Honor, as to the fee arrangement

18  and directly concerning the adequacy of notice regarding that

19  fee request, Rule 23(h) sets the timing for fee requests at the

20  time the Court orders so that the class members may have an

21  opportunity to object.  That's exactly what we did here.  We

22  made our fee award at the time ordered, which was August 28.

23  Class members had two weeks to object.

24         Rule 23 otherwise does not require any funding -- any

25  disclosure of any sort of funding arrangement.  There is a

ka22HylH

1    requirement of notice of fee sharing but, as I will discuss in

2    a moment, we are not sharing our fees with AFT.  We are only

3    reimbursing in part for the fees that AFT paid.

4            Now, on that question of AFT's role in this

5    litigation, AFT took on the obligation to fund this litigation,

6    which meant paying S & G's bills as they come due on a monthly

7    basis at discounted hourly rates.  This uniquely successful and

8    difficult lawsuit simply couldn't have been brought without

9    them, and AFT agreed to do this because its mission is aligned

10   with the class, supporting student borrowers and their request

11   for loan forgiveness.  And if you want public servants to

12   continue in service fields in these difficult times of course

13   that is more necessary than ever.

14           But, your Honor, let me be clear, AFT did not control

15   this litigation.  We worked hand in glove with the class

16   representative on behalf of the class as we detailed above.

17   And the 2015 *Meredith* case, which we cite in our papers, is

18   exactly on point, as in that case Judge Engelmayer approved a

19   fee award to reimburse a nonprofit who paid class counsel fees.

20   If there were any concerns that -- with that kind of

21   arrangement, your Honor, we believe Judge Engelmayer would have

22   raised it, but there is none.  Any holding, we believe, that

23   discourages such arrangements could only mean that important

24   and complex cases like this one would not be brought.

25           And, your Honor, as to the requests of further

ka22HylH

1    information about this arrangement or communications with AFT,

2    we are aware of no case in which such discovery was allowed

3    based on speculation of conflict.  Instead, courts say you need

4    to have some actual evidence of collusion, of a collusive

5    settlement, in order to allow that kind of discovery, and we do

6    not have that here.

7              So this extraordinarily modest fee award, which works

8    out to 8.45 percent of the fees here and the service awards and

9    the settlement itself should be approved.

10             I'm glad to answer any questions, your Honor.

11             THE COURT:  So, Ms. Konanova, I think in the comments

12   made by objectors today, there were two additional points that

13   you should address.

14             One is that the -- I just received a note that

15   Mr. Clauss is back on the line, so I will give him an

16   opportunity to be heard in a moment.  I'm not sure that he is

17   accessible, but I will certainly inquire again and give him an

18   opportunity to be heard if he is on the line.

19             MR. CLAUSS:  Yes, your Honor, this is Mr. Clauss.  I'm

20   here.

21             THE COURT:  Okay, good.  Well, Mr. Clauss, when

22   Ms. Konanova is done speaking, I will give you an opportunity

23   to be heard.

24             So Ms. Konanova, two points made today orally, and

25   that is that the bar to the settlement agreement that would be

ka22HylH

1    binding on the class is not just a bar against class actions,

2    but it is a bar against actions in which -- joinder actions in

3    which five or more plaintiffs are joined together.  That's one

4    issue I would like you to address.

5            And the second point is that the awards achieved

6    through the -- or I should say the improvements, including the

7    *cy-près* award, achieved through the settlement help people who

8    continue to have debts to be paid down or loans to be forgiven,

9    but it benefits prospectively and it doesn't benefit those who

10   have already finished paying off their loans and who no longer

11   have an opportunity to obtain forgiveness.

12           So if you could address those two issues,

13   Ms. Konanova.

14           MS. KONANOVA:  Thank you, your Honor.  I am glad to do

15   so.

16           On the first issue, it is correct that the release

17   prohibits class actions as well as aggregate actions, which

18   release language was defined -- designed to ensure that the

19   benefit of the bargain that Navient was entering into in the

20   settlement was actually reached.  Your Honor, we negotiated

21   very specifically to exclude from the definition of "aggregate

22   actions" any litigation proceedings in which an external

23   authority or a Court requires particular actions to be

24   prosecuted together, which includes, but is not limited to,

25   multidistrict litigation as determined by the JPML actions in

ka22HylH

which a Court determines they should be consolidated or

coordinated for efficiency, actions that individuals mark as

potentially related and are deemed related by the Court, or any

actions that are required to be brought together based on the

federal rules of civil procedure or the local rules of any

local, state, or federal court.

So, your Honor, we believe this definition both

preserves the benefit of the bargain, which is to say the

release of class and aggregate damages for Navient, but also

allows borrowers who believe that there is a reason for

particular actions to be prosecuted together, as captured by

the categories that I just discussed, to do so without a bar

under the settlement agreement.

On the second point, your Honor, with respect to how

does this settlement benefits individuals who do not have loans

any longer, your Honor, those individuals all benefited by the

formation of the nonprofit, the Public Service Promise.  That

nonprofit is open to all borrowers, regardless of who their

servicer is or even whether they have individual loans.  They

will be able to contact that nonprofit and get individualized,

reliable, accurate information about their personal situations.

And if, as a result of that conversation, it appears that that

person has an individual damages claim against Navient, Public

Service Promise will refer that individual out to an attorney

who would be able to handle such an individual claim.  So even

ka22HylH

1    those who no longer have loans, and so they only have questions

2    as to whether they have been damaged by Navient, will still be

3    able to rely on this resource of informed, independent advisors

4    who can talk to them about their individual financial

5    circumstances.

6            THE COURT:  Thank you, Ms. Konanova.

7            Mr. Clauss --

8            MR. CLAUSS:  Yes.

9            THE COURT:  -- are you able to speak with me now?

10           MR. CLAUSS:  Yes, I am.  Thank you, your Honor.  Do

11   you want me to give my objection now?

12           THE COURT:  Please.

13           MR. CLAUSS:  Okay.  I object to the proposed

14   settlement.

15           If Navient agrees to implement substantial procedures,

16   then they should be comprehensive and transparent in the

17   following ways:

18           Address the irony of past failures that financially

19   disable borrowers who've work for qualified nonprofits.  In

20   order for me to be bound by this class action's injunctive

21   relief, retroactive processing of payments would be mandatory.

22           E-mail communications should outline Navient's

23   procedures prior to approval to ensure transparency regarding

24   their specific and substantial plan for action.

25           Mitigate consolidation anxiety.  Navient should

ka22HylH

protect borrowers from adverse reconsolidation tactics.

Reconsolidation should benefit public service employees and

credit their work through past ecosystems, not bluntly refuse

to address past systemic bureaucratic failures.

        Integrate all student loans within the database into a

singular platform that accommodates public service employees.

        And, finally, negate compound interest that accrued on

principal over time while qualified applications were steered

away.

        Thank you.

        THE COURT:  Thank you very much, and thank you for

your concise but carefully thought out comments, Mr. Clauss.  I

appreciate that.

        MR. CLAUSS:  You're welcome.

        THE COURT:  Let me just say that -- yes, thank you.

        I really appreciate the engagement of the class

members in this very important moment in this litigation.

Obviously this class contains a very well-educated population

who are able to think with care about what has happened here

and what should happen in the future, and your comments have

been important for me in my evaluation of the reasonableness of

this settlement.

        So let me turn now to my task, and there are really,

as I outlined before, three separate issues:

        First, for me to judge, under the legal standards I

ka22HylH

must follow, which are set forth in a case named *Grinnell*,

whether or not the settlement should be approved as fair,

adequate, and reasonable in the circumstances as judged by the

factors set forth in the *Grinnell* case.

          And the first factor I have to look at, in judging a

settlement, is the factor that is directed to the complexity,

expense, and likely duration of this litigation.  I find, and I

don't think there is much dispute here, that this is complex

litigation.  It's been expensive to pursue to date and would be

far more expensive if it had continued to the end.  I believe

that if the litigation had continued that it would have ended

as a class action through the litigation of a class

certification motion, that the application by plaintiffs'

counsel to certify as a class this lawsuit would have been

denied.

          That would have left the claims of the New York named

plaintiffs, and I very much doubt that I would have been able

to grant a defendant's motion for summary judgment, and

therefore I think those claims would, in all likelihood, have

proceeded to trial.

          So this is a complex litigation, with massive

discovery ahead, with complex motion practice ahead, and

probably a trial for some named plaintiff.

          The second factor I must look at in evaluating the

reasonableness of a settlement is the reaction of the class to

ka22HylH

this settlement.  I must say that the reaction of the class has

been mixed.  This is a very large class, and I think there were

only 115 objections filed that were timely.  There were four

more objections, I believe, that were filed late, making a

total of 119 objections.

But that really is a large number of objections, even

though the class is so large.  Most class actions don't have

the involvement of class members the way this one has, and I

think my ability to make judgments about the reasonableness of

this settlement has been enhanced by the comments received from

the objectors, and so I thank them for those comments.

Most of the objections have raised concern about the

lack of an award of damages.  They complain that the individual

class members are not receiving any monetary compensation here,

and they complain, at least some of them, bitterly about that

based on their individual circumstances, and that is absolutely

understandable.

But, again, I don't believe, and I think really there

is no sound argument to suggest, that there could be a class

action that would result in a monetary award to individual

class members because the circumstances for each individual

member differ so dramatically; and therefore, the only

recourse, the only avenue for obtaining a monetary award for an

individual class member is to pursue your own individual action

or, as I understand it, you may be benefited by lawsuits

ka22HylH

brought by government entities.  I certainly hope, if that is
an appropriate avenue in those litigations, that that benefits
one and all.

           The third issue I must address is the stage of the
proceedings and the amount of discovery completed when
settlement was reached.  The parties had exchanged some
discovery materials, but this was at the early stage of
discovery.  Much more discovery remained to be done.

           The fourth factor is the risk of establishing
liability.  I think that it is very difficult for me to
evaluate the likelihood that the New York named plaintiffs
would have been successful at trial.  I'm just not in a
position to evaluate that.

           The fifth factor is the risk of establishing damages.
Well, as I have already mentioned, there was a grave risk that
the class would not receive any damages award because it could
not be certified as a class action and, as I have already
explained, it is unknown to me whether the New York plaintiffs
would have been able to recover anything.

           The sixth factor is the risk of maintaining the class
action through trial.  I have already said there is a grave
risk that it would not have been maintained through the trial.

           The seventh factor is the ability of the defendants to
withstand a greater judgment.  Navient is able to pay a
judgment far larger than that it has agreed to here.

ka22HylH

1      The eighth factor is the range of reasonableness of

2 the settlement fund in light of the best possible recovery, and

3 I find that this settlement is absolutely within the range of

4 reasonable settlements, given the weighing of all of the

5 factors I have just discussed.

6      And the last factor is the range of reasonableness of

7 the settlement fund to a possible recovery in light of all of

8 the attendant risks of litigation and, again, I find that this

9 settlement is within the range of reasonable settlements

10 because there is a grave risk that there would have been no

11 recovery at all, certainly none for the class, and possibly

12 none for the named New York plaintiffs.

13      This is a (b)(2), using the jargon from the Federal

14 Rule of Civil Procedure under which we are operating here, and

15 there are certain issues about when it is or isn't appropriate

16 to approve a settlement for a class action when there is no

17 opt-out provision.  I think that is adequately dealt with by

18 the fact that individual class members retain their right to

19 bring individual lawsuits.  And to the extent that there has

20 been reference to the Second Circuit decision in *Berni*, I think

21 those concerns are adequately addressed in the parties' letters

22 of July 20 that I have already referred to.

23      So let me turn to the incentive awards.

24      As the parties are well aware, since I have discussed

25 this with them on several prior occasions, I am reluctant to

ka22HylH

1    award named plaintiffs money for anything other than the

2    reimbursement of their out-of-pocket loss or lost wages.  And I

3    have set forth the reasons for that in a decision that is

4    publicly filed in the *Credit Default Swaps Litigation*, and that

5    can be found at 2016 WL 2731524 at *18.

6           There are grave risks with financial awards given to

7    named plaintiffs that it will encourage collusion.  Named

8    plaintiffs have a fiduciary duty to class members, absent class

9    members, and I believe the Court has to be on alert to protect

10   the rights of absent class members, but certainly named

11   plaintiffs must.  And you do not want that important fiduciary

12   duty to -- and counsel alluded to this -- take a back seat to

13   their personal financial interests.

14          So the question is, for me, here, has that happened?

15   Here the named plaintiffs have very limited out-of-pocket

16   losses or identified lost wages, and yet each asks to receive

17   $15,000.  They are giving up the right to sue Navient

18   individually, so this is all the money that they will receive.

19   The class, however, individual class members who are absent and

20   not named plaintiffs, are going to receive no money, and this

21   has understandably drawn objections from several members of the

22   class.

23          But I think there is a reduced concern here of

24   collusion.  As I have explained, the individualized issues

25   regarding any misrepresentations or omissions by Navient would

ka22HylH

have prevented class certification, and therefore there is no

damages that could have been awarded to absent class members.

And since those absent class members would not have received

any money, there is little risk that the class representatives

breached their duty in agreeing to this settlement.  So that's

one of my important findings as I assess this issue.

Now, it is hard, indeed it is impossible, for me to

evaluate the value of what absent class members have retained,

that is, the right to bring suit for individual damages.  And

it is also impossible for me to evaluate the value of what the

class representatives have given up in exchange for this

$15,000.  These are, in both situations, complex inquiries.

They depend on the individual's financial circumstances.  They

depend on the piecing together of conversations with Navient.

Ultimately, assessments would have to be made as to whether

Navient made misrepresentations or omitted in a way that is

wrongful to add information in response to questions or to add

information to statements that they did make.  And of course,

in addition to all of that, whether it is also difficult for me

to know, impossible for me to know whether any of that could be

proven at trial successfully.

The next thing that's important to me in evaluating

this request is the following, and I would like you,

Ms. Konanova, to listen carefully to what I am about to say, so

if I have misrepresented or misunderstood anything, I would

ka22HylH

1    like to you correct me.

2          First, it is my understanding that the class

3    representatives opened their lives to scrutiny when they

4    stepped forward, and without that commitment on their part,

5    this litigation could not have been brought.  Therefore, they

6    laid bare their financial circumstances, their career choices,

7    and their personal histories to a large extent.  Each is a

8    public service or was a public service employee who held at one

9    time or another significant debts that they needed to pay off.

10         Am I right, Ms. Konanova?

11         MS. KONANOVA:  Yes, your Honor.

12         THE COURT:  And each arguably, if properly advised,

13   would have had significant opportunity to have debts forgiven.

14         Is that right, Ms. Konanova?

15         MS. KONANOVA:  Yes, your Honor.

16         THE COURT:  And am I right also that an award of

17   $15,000 a piece here will compensate them for only a fraction

18   of the debt that they held at some point in time, if not

19   currently?

20         MS. KONANOVA:  Yes, your Honor.  The debts of the

21   named plaintiffs range from tens of thousands of dollars to

22   hundreds of thousands of dollars.

23         THE COURT:  And of course in the papers that have been

24   submitted to me there is the evidence that they have suffered

25   attack personally because they have served in their role here

ka22HylH

1    as named plaintiff and tried to achieve a benefit on behalf of

2    absent class members.  Some of them have been subjected to

3    vitriol which, sadly, is part of public discourse these days

4    but should not be part of the burden of serving as a plaintiff

5    in a class action.

6            Weighing all of those factors, it is my assessment

7    that the incentive awards for the named plaintiffs should be

8    given in the amount requested.

9            Therefore, let me turn to the last aspect of this

10   request, and that is the request for attorney's fees.

11           Let me start by giving some context as I understand

12   it.

13           Counsel for the class reduced their rates by 20

14   percent and the American Federation of Teachers has paid

15   counsel's bills, as we learned today, monthly based on those

16   reduced rates.  As plaintiffs' counsel describe in their

17   papers, they spent over 11,000 hours on this litigation, and

18   the attorney's fees have been close to $6 million –– $5,915,000

19   roughly –– and today is the day I learned that that sum had

20   been paid in its entirety.

21           I am and remain concerned about notice issues here.

22   As counsel know I typically, and certainly in this case as

23   well, take the step of a preliminary approval of a class action

24   seriously and spend time looking at the settlement agreement,

25   the papers supplied asking for preliminary approval, as well as

SOUTHERN DISTRICT REPORTERS, P.C.

ka22HylH

the notice that will go out to the class, and I make

suggestions for revision to that class notice, and I did so

here.  This was no exception.

The settlement agreement provided me with no notice

that counsel's fees were being paid on an ongoing basis or that

there would be a request to reimburse AFT for those payments.

The preliminary approval papers that counsel submitted to me

gave me no notice of those facts.  Now, AFT is mentioned in the

settlement agreement in two places, but not in connection with

the fee request here in any way that would put me on notice

that it was a request to reimburse AFT.

And because I didn't have that knowledge and counsel

did not advise me of those facts, the notices to the class also

did not alert the class to those facts.  Indeed, what they

included were statements that I think now, based on my current

understanding, are misleading.  For instance, the notice -- one

notice said that the request would be made for up to $500,000

to plaintiffs' lawyers for their attorney's fees.  Another

notice, the short-form notice, said "these attorneys will

request that a Court award fees and expenses up to $500,000."

There was no statement that the attorney's fees have been paid

on a monthly basis and that this would be a request to

reimburse the AFT for those payments.

In the papers submitted to me requesting payment of

the attorney's fees, I did not understand, even at that time,

ka22HylH

1    that AFT had fully paid the attorney's fees accumulated to date

2    and that the $500,000 would be going to AFT.  The situation was

3    described as AFT having made a significant up-front payment,

4    and the supporting documentation didn't indicate to me that AFT

5    had paid all the bills submitted by counsel.

6            So I am left with concern here about notice to the

7    Court and the class, and so I am not going to address the

8    merits of the application of the request for approval to use

9    500,000 of the settlement fund to reimburse AFT.

10           Now, that said, I want to make a couple of points:

11           The impact of this, as I understand it, will mean that

12   Public Service Promise will be even more significantly funded,

13   since that $500,000 will now be part of the *cy-près* fund for

14   Public Service Promise.

15           The second point I would like to make, my decision to

16   not award this sum to AFT is not a criticism of AFT and should

17   not be heard as such.  They spent about $6 million on this

18   litigation to help all public service employees get loan

19   forgiveness to the extent that the law permits and damages for

20   any role Navient played in interfering with that important

21   right.  In my judgment, because of AFT's work and its decision

22   and its generosity, the class has achieved a significant

23   benefit, and that significant benefit will have or may have a

24   profound impact on all public service employees.

25           By funding Public Service Promise, we have an

SOUTHERN DISTRICT REPORTERS, P.C.

ka22HylH

```
1   independent, well-qualified board overseeing the work of its

2   employees in the education and training and outreach that will

3   help public service employees be better informed and better

4   able to take advantage of all their rights.  And of course

5   Navient itself has benefited because of the work the AFT has

6   done here to improve its own practices and be a better

7   corporate citizen.  So I think that the motive behind AFT

8   acting as it has and the commitment it has shown in this

9   litigation and funding fully this litigation is nothing but

10  admirable.

11          So those are my closing comments, but I want to make

12  sure counsel have an opportunity to add anything to the record

13  they believe is important at this point.

14          Ms. Konanova?

15          MS. KONANOVA:  Your Honor, thank you for those

16  remarks.

17          The only thing I might add is our efforts in

18  submitting the papers were to comply with Rule 23 and, in

19  particular, Rule 23(h), which requires information concerning

20  the fee award to be made at the time the Court ordered, so that

21  is the rule with which we were complying in our papers.  And at

22  the same time I understand your Honor's comments about the

23  adequacy of notice, and I appreciate your remarks.

24          THE COURT:  Thank you.

25          And Ms. Simonsen, anything you want to add?
```

ka22HylH

1                    (Pause)

2                    THE COURT:  Counsel for the defendants?

3                    MR. RUFFINO:  Your Honor, this is Mr. Ruffino.  I

4     understand that Ms. Simonsen may be having problems with her

5     connection, but we have nothing to add, and we thank the Court

6     for its consideration.

7                    THE COURT:  Thank you very much.

8                    Ms. Konanova, can I ask you to submit a revised

9     judgment next week?

10                   MS. KONANOVA:  Absolutely, your Honor.  Will do.

11                   THE COURT:  And how about Wednesday next week?

12                   MS. KONANOVA:  Glad to do so.

13                   THE COURT:  Thank you so much, and thank you all who

14    have participated in this hearing either through speaking or

15    listening in.  It is greatly appreciated.  Thank you.

16                                    oOo

17

18

19

20

21

22

23

24

25