20-3765-cv (L)
Hyland v. Navient Corporation

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: March 10, 2022        Decided: September 7, 2022)

Docket Nos. 20-3765-cv, 20-3766-cv

_____

KATHRYN HYLAND, MELISSA GARCIA, JESSICA SAINT-PAUL, REBECCA
SPITLER-LAWSON, MICHELLE MEANS, ELIZABETH KAPLAN, JENNIFER
GUTH, MEGAN NOCERINO, ELIZABETH TAYLOR, AND ANTHONY
CHURCH, EACH INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

NAVIENT CORPORATION, NAVIENT SOLUTIONS LLC,

*Defendants-Appellees,*

v.

WILLIAM YEATMAN, RICHARD ESTLE CARSON, III,

*Objectors-Appellants.*[*]

_____

Before:

SACK, LOHIER, and NARDINI, *Circuit Judges.*

_____

[*] The Clerk of Court is directed to amend the caption to conform to the caption above.

In this class action, the United States District Court for the Southern District of New York (Cote, J.) certified a settlement class under Federal Rule of Civil Procedure 23(b)(2), approved a settlement agreement that included a cy pres award to establish a nonprofit that would provide student loan counseling to borrowers, and approved $15,000 in service awards for the named plaintiffs. We conclude that the District Court acted within the bounds of its discretion in making each of these decisions.  AFFIRMED.

CAITLIN J. HALLIGAN (Faith E. Gay, Yelena Konanova, David A. Coon, Max Siegel, *on the brief*), Selendy & Gay PLLC, New York, NY; Mark Richard, Phillips, Richard & Rind, P.A., Miami, FL, *for Plaintiffs-Appellees* Kathryn Hyland, Melissa Garcia, Jessica Saint-Paul, Rebecca Spitler-Lawson, Michelle Means, Elizabeth Kaplan, Jennifer Guth, Megan Nocerino, Elizabeth Taylor, and Anthony Church, each individually and on behalf of all others similarly situated.

Ashley M. Simonsen, Covington & Burling LLP, Los Angeles, CA; Andrew A. Ruffino, Covington & Burling LLP, New York, NY, *for Defendants-Appellees* Navient Corporation, Navient Solutions, LLC.

ANNA ST. JOHN, Hamilton Lincoln Law Institute, Center for Class Action Fairness, Washington, DC, *for Objector-Appellant* William Yeatman.

ERIC ALAN ISAACSON, Law Office of Eric Alan Isaacson, La Jolla, CA, *for Objector-Appellant* Richard Estle Carson, III.

LOHIER, *Circuit Judge*:

This appeal concerns a settlement that a class of public servants negotiated with the loan servicing companies Navient Corporation and Navient Solutions,

LLC (together, "Navient").  As part of the settlement, Navient agreed to deliver better and more accurate information to borrowers and to contribute a cy pres award of $2.25 million to establish a nonprofit organization that provides counseling to borrowers at all stages of the repayment process.  In exchange, the class agreed to release their claims for non-monetary relief, though they retain the right to sue Navient individually for money damages.

The United States District Court for the Southern District of New York (Cote, J.) certified a class for settlement purposes under Federal Rule of Civil Procedure 23(b)(2) and approved the settlement as "fair, reasonable, [] adequate," and "in the best interest of the Settlement Class as a whole."  Hyland v. Navient Corp., 18 Civ. 9031, 2020 WL 6554826, at *1 (S.D.N.Y. Oct. 9, 2020). Two objectors now appeal that judgment, arguing that the District Court erred in certifying the class, approving the settlement, and approving service awards of $15,000 to the named plaintiffs.  Because we conclude that the District Court did not abuse its discretion in making any of these determinations, we **AFFIRM**.

**BACKGROUND**

In 2007 the federal government created the Public Service Loan Forgiveness program ("PSLF") to help address the problem of overwhelming

student debt.  See College Cost Reduction and Access Act, Pub. L. No. 110–84, § 401, 121 Stat. 784, 800 (2007).  Under PSLF, teachers, social workers, police officers, and others working in public service may have their federal student debt forgiven after 120 qualifying payments.  To administer the program, the federal Department of Education contracts with for-profit "servicing companies," including Navient, which alone services more than $205.9 billion in federal student loans.

Navient aims to help borrowers "understand the complex array of federal loan repayment options so they can make informed choices about the plans that are aligned with their financial circumstances and goals."  App'x 35.  In October 2018, however, a group of public servants who had contacted Navient for help repaying their loans (collectively, "Plaintiffs") filed a putative class action lawsuit in the Southern District of New York, alleging that Navient had not "liv[ed] up to its obligation to help vulnerable borrowers get on the best possible repayment plan and qualify for PSLF."  App'x 36.  They claimed that Navient had "[d]eceived borrowers by [erroneously] informing them PSLF was not available to them," "[m]isled borrowers by stating they were 'on track' for PSLF when in fact their repayment plan did not qualify for PSLF," and "[a]dvised

borrowers not to submit paperwork that would verify their employment and other qualifying factors for PSLF." App'x 37. As a result, according to the Plaintiffs' amended complaint, borrowers were "denied loan forgiveness at alarming rates, with horrifying effects on the borrowers and their families and communities." App'x 37.

Plaintiffs brought a number of tort and contract claims, as well as claims under state statutes protecting against unfair and deceptive trade practices. Navient's business practices, they asserted, were largely to blame for their injuries. Plaintiffs alleged that Navient structured employee compensation "to incentivize short calls by rewarding employees for rushing borrowers off the phone, thereby preventing borrowers from receiving full and accurate information about their best repayment options." App'x 39. They also alleged that Navient's employees, looking for quick and easy solutions to present on the phone, pushed cash-strapped borrowers to enter loan forbearance, despite the availability of more flexible repayment plans and the fact that forbearance pauses PSLF-qualifying payments and can increase the total amount a borrower ultimately owes. In addition to various sub-classes based on geography, Plaintiffs proposed a nationwide class of public servants who have or had loans

5

serviced by Navient and who contacted the company regarding their eligibility for PSLF, as well as a nationwide injunctive class of borrowers who have loans actively serviced by Navient, previously contacted Navient about PSLF eligibility, and intended to contact Navient in the future regarding PSLF eligibility.

Navient moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which the District Court (Cote, J.) granted in part, dismissing all claims except "the claim brought under New York's General Business Law Section 349," App'x 160, which prohibits "deceptive acts or practices in the conduct of any business . . . or in the furnishing of any service" in the state, App'x 154. At a hearing in July 2019 Judge Cote informed the parties that she saw "an enormous hurdle to certifying this class." App'x 214. "I just can't imagine there would be any uniform[] oral representation," she explained, "[b]ecause anyone who picks up a phone to call Navient has a question . . . [that] comes out of their individual circumstances and needs." App'x 215. She reiterated this concern at a hearing a few months later, saying that "there [was] an underlying problem . . . with respect to the plaintiffs' theory, which [she had] been frank about in [her] prior conferences." App'x 253.

Spurred in part by Judge Cote's comments, the parties reached a settlement in April 2020 in which they agreed to seek certification of a mandatory nationwide settlement class pursuant to Rule 23(b)(2). Class members also agreed to release their claims for non-monetary relief, though they retained the right to "file individual lawsuits for monetary relief on a non-class basis and excluding Aggregate Actions" of five or more individuals. App'x 328. In return, Navient agreed to implement a number of business reforms, including (1) enhancing internal resources for call-center representatives by, among other things, "updat[ing] job aids to clarify that customer service representatives should discuss loan forgiveness including PSLF with borrowers prior to offering forbearance"; (2) updating written communications with borrowers by "creat[ing] forms that can be sent via email to borrowers who request additional information about PSLF"; (3) improving its website and chat communications with borrowers by "requiring customer service representatives to look for keywords or phrases that indicate borrowers' possible eligibility for forgiveness programs"; and (4) training customer service representatives to follow the new practices, and regularly monitoring their calls to ensure compliance. App'x 319–21. In what the parties and the District Court called a <u>cy pres</u> – or "next best" –

award, Navient also agreed to contribute $1.75 million (later increased to $2.25 million) to establish a nonprofit that would "provide education and student loan counseling to borrowers employed in public service," App'x 354, and "generate administrative and legislative reforms" to improve PSLF, App'x 355. A project proposal estimated that the new organization could reach a projected 7,700 to 11,250 borrowers a year. App'x 357.

In June 2020 the District Court preliminarily approved the settlement agreement and the cy pres recipient. The District Court also conditionally certified a Rule 23(b)(2) settlement class of:

> [a]ll individuals who, at any point from October 1, 2007 to the Effective Date (i) have or had Federal Family Education Loans ("FFEL") or Direct Loans serviced by Navient; (ii) are or were employed full-time by a qualifying public service employer or employers for purposes of PSLF; and (iii) spoke to a Navient customer service representative about subjects relating to eligibility for PSLF.

App'x 292. The District Court found that "Defendants [were] alleged to have acted or refused to act on grounds that appl[ied] generally to the Settlement Class," and that certification was therefore proper under Rule 23(b)(2). App'x 293.

Less than a month later, this Court decided Berni v. Barilla S.p.A., 964 F.3d 141 (2d Cir. 2020), which held that a class of past purchasers of a product (in that

8

case, Barilla pasta) could not be certified under Rule 23(b)(2) because they were "not likely to encounter future harm of the kind that makes injunctive relief appropriate." Id. at 147. In response to the District Court's request for briefing on the effect of Berni on their proposed settlement, both parties insisted that Berni was distinguishable. At a fairness hearing in October 2020 the District Court agreed with the parties that Berni did not prevent final approval of the settlement.

A number of class members at the hearing — including the appellants here, William Yeatman and Richard E. Carson, III (together, "Appellants") — objected to the settlement, arguing that the cy pres award would not benefit the class, that the settlement improperly released monetary claims, and that class counsel were compromised by a conflict of interest. The District Court rejected their objections and, citing the factors in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), abrogated on unrelated grounds by Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 49–50 (2d Cir. 2000), found the settlement to be fair, adequate, and reasonable.

The District Court also granted $15,000 incentive awards to the named plaintiffs based on "evidence that they have suffered attack[s] personally because

9

they have served in their role here . . . and tried to achieve a benefit on behalf of

absent class members." App'x 651–52. The District Court acknowledged that

incentive awards could encourage class representatives to agree among

themselves to a settlement that was not in the best interests of the class, but it

found that such collusion was unlikely in this case. App'x 649–50. Finally, the

court denied a request for $500,000 in attorney's fees after learning that the

money would be used to reimburse a labor union, the American Federation of

Teachers ("AFT"), that had been paying Plaintiffs' counsel's bills on a monthly

basis. See App'x 653–54.

On October 9, 2020, consistent with the fairness hearing and its

preliminary approval of the settlement, the District Court entered a final order

certifying the settlement class, approving the settlement agreement as "in the

best interest of the Settlement Class as a whole," approving the $15,000 service

awards, denying class counsel's application for attorney's fees, and dismissing

the case. Navient Corp., 2020 WL 6554826, at *1-3.

This appeal followed.

**DISCUSSION**

**I.**

Appellants challenge the District Court's decision to certify a Rule 23(b)(2) class, approve the settlement, and approve service awards for the named plaintiffs. We review each of these decisions for abuse of discretion. See Berni, 964 F.3d at 146 (class certification); McReynolds v. Richards-Cantave, 588 F.3d 790, 800 (2d Cir. 2009) (approval of settlement); Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 95 (2d Cir. 2019) (grant of service awards). A district court abuses its discretion when its decision "rests on a legal error or clearly erroneous factual finding, or [] falls outside the range of permissible decisions." Berni, 964 F.3d at 146 (quotation marks omitted).

**II.**

Before considering whether the District Court properly certified the class under Rule 23(b)(2), we address the threshold issue of standing. Some class members were no longer using Navient to service their loans when the class was certified. Appellants, citing Berni, argue that the class as a whole therefore lacked standing to pursue injunctive relief. See Yeatman Br. 20; Carson Br. 36–37. We disagree.

11

"Whether a plaintiff has constitutional standing is a question of law that we review de novo." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C. ("Cent. States"), 504 F.3d 229, 241 (2d Cir. 2007). Standing is satisfied so long as at least one named plaintiff can demonstrate the requisite injury. Dep't of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019) ("For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue."); Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017) ("[W]hen there are multiple plaintiffs[,] [a]t least one plaintiff must have standing . . . ."); Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 & n.9 (1977) ("[We] have at least one individual plaintiff who has demonstrated standing . . . Because of the presence of this plaintiff, we need not consider whether the other . . . plaintiffs have standing to maintain the suit."). Class actions are no exception to this long-standing rule. See Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019) ("A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing."); Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 185 n.14 (2d Cir. 2020) ("Because we conclude that none of the named plaintiffs has standing to pursue

12

their claims for prospective relief, the class proposed by Appellants necessarily

fails as well."); Cent. States, 504 F.3d at 241 ("As a threshold matter, we note that

only one of the named Plaintiffs is required to establish standing in order to seek

relief on behalf of the entire class."); Comer v. Cisneros, 37 F.3d 775, 788 (2d Cir.

1994) (noting that, in the context of a class action, "only one named plaintiff need

have standing with respect to each claim"); see also 1 Newberg and Rubenstein

on Class Actions § 2:1 (6th ed. 2022) ("Once threshold individual standing by the

class representative is met, a proper party to raise a particular issue is before the

court; there is no further, separate 'class action standing' requirement.").[1]

Here, the amended complaint plausibly alleged that the named plaintiffs

were likely to suffer future harm because they continued to rely on Navient for

---

[1] Some may interpret a single sentence in Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006), as suggesting that all class members must have standing for the class to proceed. See id. at 264 ("[N]o class may be certified that contains members lacking Article III standing."). But Denney was decided before the Supreme Court in Gaos clarified the minimal requirement for standing in class actions. And, in any event, we acknowledged in Denney that "[o]nce it is ascertained that there is a named plaintiff with the requisite standing, [] there is no requirement that the members of the class also proffer such evidence." Id. at 263–64 (quotation marks omitted); see also 1 Newberg and Rubenstein on Class Actions § 2:3 (noting that, "[w]hile [Denney] did contain that sentence, it was embedded in a paragraph that also stated, . . . [in an explanatory parenthetical] that: '[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.'").

information about repaying their student loans.  <u>See</u>, <u>e.g.</u>, App'x 53, 61, 63.  At

least six of the named plaintiffs continue to have a relationship with Navient.

<u>See</u> App'x 574.  That is enough to confer standing on the entire class.  <u>See</u>

<u>Amador v. Andrews</u>, 655 F.3d 89, 99 (2d Cir. 2011) ("In a class action, once

standing is established for a named plaintiff, standing is established for the entire

class." (quotation marks omitted)).

**III.**

Having satisfied ourselves that the class has standing, we turn to whether

the District Court abused its discretion in certifying the settlement class.

"According to the Federal Rules of Civil Procedure, a class may be certified

under Rule 23(b)(2) in a single circumstance: when 'the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole.'"  <u>Berni</u>, 964 F.3d at 146 (quoting Fed. R. Civ. P.

23(b)(2)).  "Rule 23(b)(2) applies <u>only</u> when a single injunction or declaratory

judgment would provide relief to each member of the class."  <u>Id.</u> (quoting <u>Wal-</u>

<u>Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 360 (2011)).  As we put it in <u>Berni</u>, "a

class may <u>not</u> be certified under Rule 23(b)(2) if <u>any</u> class member's injury is not remediable by the injunctive or declaratory relief sought." <u>Id.</u>

Appellants first argue that certification was improper because not all members of the class stand to benefit from the proposed injunctive relief. As part of the settlement, however, Navient has agreed to implement a number of business-practice enhancements, including requiring call center representatives to listen for keywords indicating PSLF eligibility; updating forms sent to borrowers to include more information about PSLF; and improving website and chat communications to better reach borrowers who might be eligible for loan forgiveness. <u>See</u> App'x 304. Navient's reforms will benefit class members whose loans continue to be serviced by Navient. But the reforms will also benefit the remaining class members who, for example, are no longer with Navient or who no longer have student loans, by providing them accurate information about PSLF and helping them determine whether they have viable individual claims for damages. <u>See</u> App'x 635 (Plaintiffs' counsel explaining that the proposed reforms "help borrowers advance their individual claims [] because they are now able to receive accurate information from Navient" regarding their loan histories); <u>see also</u> Oral Arg. at 17:28–18:22 (same). Specifically, improvements to

15

Navient's communications system will make it easier for class members to access their loan-repayment record, learn how PSLF is supposed to work, and assess whether they would have been eligible for loan forgiveness had Navient initially provided them with accurate information. See Oral Arg. at 18:46–19:23. Access to payment records will be particularly useful to class members who may need to explain their credit history to secure mortgages or other loans. See Oral Arg. at 20:21–21:15; see also App'x 379 (declaration of a named plaintiff explaining how his "inflated loan balance posed a substantial barrier while [he] was attempting to purchase a home, as [he] was disqualified from a number of mortgage options in light of [his] outstanding debt alone"). The evidence of these benefits, which plausibly accrue to even those class members who have paid off their loans in full or no longer have Navient-serviced loans, supports the District Court's finding that the settlement was in the best interest of the class.[2]

---

[2] Though we need go no further, we note that the settlement's cy pres award also benefits the whole class by funding a nonprofit, Public Service Promise, that will help all borrowers learn whether or not they are eligible for loan forgiveness and "provid[e] guidance on [PSLF] applications or assistance in challenging denials." App'x 355. Yeatman broadly resists these descriptions of the award's class-wide benefits, responding that a cy pres award "cannot serve as the grounds upon which a class member benefits from a settlement for the (b)(2) analysis" because "[c]y pres is not injunctive or declaratory relief." Yeatman Reply Br. 5. We disagree that a cy pres award cannot be characterized as injunctive, or equitable, relief. See Restatement (Third) of Trusts § 67, cmt. a. (Am. L. Inst. 2003) (noting that "[t]he judicial power of cy

16

Appellants offer two additional reasons why Rule 23(b)(2) certification was improper, neither of which we find persuasive.

First, Yeatman argues that the class should have been certified under Rule 23(b)(3) instead of (b)(2) because the class primarily sought monetary relief for the unjust enrichment claim upon which certification was based.  See Yeatman Br. 27–28.  But we determine whether certification was appropriate by assessing the District Court's justification for certifying the settlement class.  The District Court explained that "Defendants [were] alleged to have acted or refused to act on grounds that apply generally to the Settlement Class."  Navient Corp., 2020 WL 6554826, at *2; see Barrows v. Becerra, 24 F.4th 116, 130 (2d Cir. 2022)

---

pres has evolved in this country along lines generally similar to the equity power under English common law").  That is especially so here.  The award in this case was not a court-fashioned remedy aimed at repurposing funds that would otherwise have been distributed to the class as money damages.  It was instead a provision of a settlement reached by private parties.  Where, as here, the parties in a Rule 23(b)(2) injunctive class action reach a settlement that requires the defendant to make a monetary contribution to a third party, the award is more accurately described as a mandatory injunction to establish or contribute to a selected organization than as a refashioning of monetary relief.  See In re Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 328 (3d Cir. 2019) (certifying a Rule 23(b)(2) class where the cy pres award was "never intended to compensate class members monetarily" but instead served as equitable relief that "enhance[d] the settlement's deterrent effect").  In deciding whether the settlement's equitable relief benefits the class, we may therefore consider the benefits class members receive from the cy pres award in addition to those they obtain from the injunction related to Navient's business practices.  See 4 Newberg and Rubenstein on Class Actions § 12:26 (6th ed. 2022) (describing how a cy pres award "furthers the deterrence goals of the class suit" and "fund[s] activities that are in the class's interest").

17

(certification is proper under Rule 23(b)(2) if defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole" (quoting Fed. R. Civ. P. 23(b)(2))).  That justification finds support in the record, as Plaintiffs' amended complaint sought injunctive relief on behalf of the class to prevent Navient from, among other things, "providing incorrect information to Plaintiffs and members of the Classes regarding PSLF," and "incentiviz[ing] Navient's employees to steer Plaintiffs and members of the Classes into" non-PSLF repayment plans. App'x 157.  Because that conduct clearly applies to all Plaintiffs, we decline Yeatman's invitation to find that the District Court abused its discretion on this ground.  See Barrows, 24 F.4th at 132 ("Rule 23(b)(2) does not require that the relief to each member of the class be identical, only that it be beneficial.  That means that different class members can benefit differently from an injunction." (quotation marks omitted)).

Second, Appellants challenge the certification on the ground that the release obtained by the certified class eliminates the right of individual class members to pursue claims for monetary damages "on an aggregate basis." Yeatman Br. 28.  Fundamentally, they argue that the settlement violates the due

18

process rights of absent class members by denying them the opportunity to opt out of the class and sue for money damages in addition to injunctive relief. But as the District Court explained, "individual class members [in fact] retain their right to bring individual lawsuits," and the settlement does not prevent absent class members from pursuing monetary claims.[3] See App'x 648; see also Navient Corp., 2020 WL 6554826, at *3 ("[A]ll other Settlement Class Members do not release or discharge, but instead expressly preserve, their right to file individual lawsuits for monetary relief on a non-class basis and excluding Aggregate Actions."). We therefore conclude that the District Court did not abuse its discretion when it certified the settlement class under Rule 23(b)(2).

## IV.

Appellants' challenge to the District Court's approval of the settlement itself fares no better.

---

[3] Carson insists that class members will not be able to bring individual actions in practice because such lawsuits "are beyond the[ir] financial means." Carson Br. 48. But one of the functions of Public Service Promise is to advise class members of their litigation options and refer them to outside organizations for further assistance, including representation at lower costs. See Oral Arg. at 19:23–19:50; see also App'x 635 (Plaintiffs' counsel explaining that the organization can "refer borrowers out for litigation of the individual claims").

A. <u>Fairness of the Settlement</u>

First, Appellants ask us to reject the settlement as unfair under Rule 23(e), which authorizes a district court to approve a class action settlement only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To evaluate the fairness, reasonableness, and adequacy of a class settlement, courts employ the nine factors set out in <u>City of Detroit v. Grinnell Corp.</u>:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted). On appeal, "[t]he trial judge's views" of these factors are entitled to "great weight." <u>Joel A. v. Giuliani</u>, 218 F.3d 132, 139 (2d Cir. 2000) (quoting <u>Grinnell</u>, 495 F.2d at 454).

The District Court carefully analyzed each of the nine factors. <u>See</u> App'x 645–48. In particular, in considering the final three factors, the court reasonably concluded that although Navient could have "withst[ood] a greater judgment," the settlement was "absolutely within the range of reasonable settlements,"

especially "because there [was] a grave risk that there would have been no

recovery at all" had the case proceeded.  App'x 647–48.  We find no abuse of

discretion in the District Court's application of the Grinnell factors to the facts

before it.

B.  Cy Pres Award

Appellants separately object to the cy pres award in this case.  As an initial

matter, they say that a cy pres award is never appropriate in a class action

settlement because it provides no direct benefit to class members.  See Yeatman

Br. 33 ("[C]y pres awards typically fail to redress class members' alleged injuries

for which they are waiving their rights."); id. at 37 ("Cy pres . . . provides no

redress to . . . class members."); see generally Yeatman Br. 31–44; Carson Br. 37–

44.  We disagree.  As our sister circuits have recognized, class members can

"benefit – albeit indirectly – from a defendant's payment of funds to an

appropriate third party."  In re Google Inc. Street View Elec. Commc'ns Litig., 21

F.4th 1102, 1116 (9th Cir. 2021); see id. (where a cy pres award has a "direct and

substantial nexus" to the interests of the class and "account[s] for the nature of

the plaintiffs' lawsuit," as the award in question does here, it "necessarily

prioritizes class members' interests, even if it also provides a diffuse benefit to

society at large" (quotation marks omitted)); see also In re Google Inc. Cookie Placement, 934 F.3d at 330 (recognizing that the "proposed cy pres awards would be used for a purpose directly and substantially related to the class's interests"); In re Lupron Mktg. and Sales Practices Litig., 677 F.3d 21, 35 (1st Cir. 2012) (recognizing that cy pres award in the form of funded research can "accrue both to the claimant class members and to the living absent class members"). So it is here: The cy pres award funds Public Service Promise and thereby assists all class members in navigating PSLF and determining whether they have a viable individual monetary claim against Navient.

Appellants also argue that a cy pres award is not appropriate if it is feasible to distribute the funds that support the award directly to the class instead. This argument, however, misconstrues the settlement fund as a damages award that was redistributed to Public Service Promise through the cy pres doctrine. But the settlement fund never belonged to class members as damages (indeed, the class members expressly reserved their individual right to later sue Navient for money damages), and there is no evidence to suggest that Navient would have otherwise agreed to distribute the funds to the class. See App'x 646 (the District Court rejecting objections over "the lack of an award of

22

damages," in part because "there is no sound argument to suggest[] that there could be a class action that would result in a monetary award to individual class members").

C. First Amendment Challenge

Finally, Appellants maintain that the cy pres award to Public Service Promise unlawfully compels speech in violation of the First Amendment. "We review a First Amendment challenge to the district court's approval of a settlement," including a cy pres award, "de novo." In re Google Street View, 21 F.4th at 1110.

We reject Appellants' constitutional challenge to the settlement. The settlement agreement does not involve state action that implicates the First Amendment. Instead, the "[D]istrict [C]ourt's review of the settlement agreement in this case essentially determined whether it was 'fair, reasonable, and adequate' and was merely an exercise in compliance with Rule 23(e)." Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990, 992 (8th Cir. 2003); see also 5 Moore's Federal Practice – Civil 23.161[1] (2022) ("A class-action settlement, like an agreement resolving any other legal claim, is essentially a private contract negotiated between the parties."). Nothing about the settlement

23

"require[d] the court to establish the <u>terms</u> of the agreement." <u>Bloomberg</u>, 315 F.3d at 992-93. Without more (and outside the context of a claim of discrimination under the Equal Protection Clause), "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient" to constitute state action. <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004–05 (1982); <u>see</u> <u>In re Motor Fuel Temperature Sales Practices Litig.</u>, 872 F.3d 1094, 1114 (10th Cir. 2017). The private class settlement agreement in this case thus "may be enforced, without implicating the First Amendment." <u>IMDb.com Inc. v. Becerra</u>, 962 F.3d 1111, 1120 (9th Cir. 2020) (citing <u>Cohen v. Cowles Media Co.</u>, 501 U.S. 663, 671 (1991)); <u>see</u> <u>In re Motor Fuel Temperature Sales Practices Litig.</u>, 872 F.3d at 1114.

D. <u>Involvement of the Labor Union</u>

Appellants object to the relationship between Plaintiffs' counsel and AFT, the labor union that paid Plaintiffs' counsel's bills. They argue that AFT's presence "strongly suggests that the interests of the class were not adequately represented" under Rules 23(a)(4) and 23(g).[4] Yeatman Br. 45 (quotation marks

---

[4] Appellants also argue that Plaintiffs ought to have notified the class of AFT's role in the litigation. <u>See</u> Carson Br. 64; Yeatman Br. 47. We agree with Plaintiffs, however, that "[n]othing in Rule 23 required that the class notice disclose the proposed reimbursement [to AFT]." Plaintiffs-Appellees' Br. 56 n.28. In any event, the District Court took the lack of notice into account in denying the motion for attorney's fees;

omitted); see Marisol A. v. Giuliani, 126 F.3d 372, 378 (2d Cir. 1997) (per curiam) ("Rule 23(a)(4) requires that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation." (quotation marks omitted)); Fed. R. Civ. P. 23(g)(1)(B) (providing that a court, in appointing class counsel, may consider any matter "pertinent to counsel's ability to fairly and adequately represent the interests of the class").

In advancing this claim, however, Appellants have not pointed to any evidence that conflicts with Judge Cote's finding that "the motive behind AFT acting as it has and the commitment it has shown in this litigation . . . is nothing but admirable." App'x 655; see also id. at 654 ("[B]ecause of AFT's work and its decision and its generosity, the class has achieved a significant benefit, and that significant benefit will have or may have a profound impact on all public service employees."). Nor, on review of the record, do we see evidence that class counsel abandoned the litigation or otherwise acted in bad faith in pursuing this case. To the contrary, counsel agreed to settle only after the District Court indicated that Rule 23(b)(3) certification would likely fail. See Plaintiffs-Appellees' Br. 54. Absent settlement, the class members here may not have

---

beyond that, Appellants do not establish how the alleged deficiencies in notice are grounds for invalidating the settlement as a whole. See App'x 654.

25

received anything at all.  See App'x 648 (the District Court noting "a grave risk that there would have been no recovery at all" without the settlement).

**V.**

Finally, Appellants challenge the District Court's decision to approve service awards for the named plaintiffs, arguing that such awards are prohibited under a pair of nineteenth-century Supreme Court cases, Trustees v. Greenough, 105 U.S. 527 (1882), and Central R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885). We are not persuaded.

Greenough involved a suit brought by a bondholder of the Florida Railroad Company, Francis Vose, against the trustees of the Internal Improvement Fund of Florida, which "consisted of ten or eleven million acres of lands belonging to the State," the proceeds of which were "pledged for the payment of the interest accruing on the bonds."  105 U.S. at 528.  On behalf of himself and other bondholders, Vose alleged that the trustees were "wasting and destroying the fund by selling [the land] at nominal prices."  Id. at 528–29.  The litigation was successful:  The trustees were ultimately removed from their positions, and the court appointed agents to sell the land, which resulted in "a

26

large number of sales" and "a considerable amount of money" for the bondholders.  Id. at 529.

Vose, who had financed most of the litigation personally, petitioned to have his expenses reimbursed by the fund.  The Supreme Court held that Vose could receive "reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit," id. at 537, explaining that it would be "unjust" and an "unfair advantage" for the rest of the bondholders to benefit from his efforts without some compensation for the time and money he spent "work[ing] for them as well as for himself," id. at 532.  But the Court held that he could not receive a refund for "his personal services and private expenses," id. at 537, reasoning that "[i]t would present too great a temptation to parties to intermeddle in the management of valuable property or funds . . . if they could calculate upon the allowance of a salary for their time and of having all their private expenses paid," id. at 538; see also Pettus, 113 U.S. at 122–23 (same).

Although Greenough was decided decades before the adoption of Rule 23, Carson argues that it stands broadly for the proposition that "[a] class representative cannot claim reimbursement from a common-fund settlement for his or her own service on behalf of the class."  Carson Br. at 60.  That reading is

27

foreclosed by our decision in Melito.  In that case, we considered whether the

district court had abused its discretion by approving incentive awards of $2,500

for the class representatives in recognition of their litigation efforts.  See Melito,

923 F.3d at 96.  The appellant, the lone objector to the settlement, argued that

such awards were unlawful under Greenough and Pettus.  We rejected that

argument, explaining that Greenough and Pettus were "inapposite" because they

did not "provide factual settings akin to those" present in Melito.  Id. at 96.

Melito compels our conclusion that Rule 23 does not per se prohibit service

awards like the ones at issue here.[5]

Turning to the awards themselves, we note that the District Court offered

compelling reasons for compensating the class representatives, including that

they "opened their lives to scrutiny"; "laid bare their financial circumstances,

their career choices, and their personal histories"; suffered personal attacks; and

were "subjected to vitriol."  App'x 651–52.  These determinations, which were

supported by the record, see App'x 402, 434, 443–44, 456–57 (declarations of

---

[5] We are bound by Melito's holding unless or until it is overruled by the Supreme Court or the Second Circuit in banc.  See Anilao v. Spota, 27 F.4th 855, 873 n.13 (2d Cir. 2022).

named plaintiffs), did not lie outside the bounds of the District Court's discretion.[6]

**CONCLUSION**

We have considered Appellants' remaining arguments and conclude that they are without sufficient merit to warrant reversal.  For the foregoing reasons, we AFFIRM the judgment of the District Court.

---

[6] Carson also cites New York State cases prohibiting service awards under state law, <u>see</u> Carson Br. 61, but those cases are inapposite here since they do not address the grant of service awards under Rule 23.

29